CV 15          1782

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**   ☐ ORIGINAL

| United States District Court | District | Eastern of New York |
|---|---|---|

| Name (under which you were convicted): Harold Gopaul | Docket or Case No.: |
|---|---|

VITALIANO, J.

| Place of Confinement: Clinton Correctional Facility Annex | Prisoner No.: 09A3978 |
|---|---|

| Petitioner (include the name under which you were convicted) HAROLD GOPAUL | Respondent (authorized person having custody of petitioner) v. STEVEN RACETTE, SUPERINTENDENT. |
|---|---|

| The Attorney General of the State of New York: Eric T. Schneiderman | RECEIVED APR - 1 2015 PRO SE OFFICE |
|---|---|

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: County Court, Nassau County, 262 Old Country Rd., Mineola, N.Y. 11501

   (b) Criminal docket or case number (if you know): Indictment No.: 2415N/08

2. (a) Date of the judgment of conviction (if you know): May 15, 2009

   (b) Date of sentencing: July 15, 2009

3. Length of sentence: 12 Years imprisonment with 5 years post-release.

4. In this case, were you convicted on more than one count or of more than one crime?   Yes ☒   No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: 14 counts of sexual abuse in the first degree, a class D felony, P.L. § 160.35. Count 1 determinate sentence of 7-yrs. with 5 post. Counts 2-13, was sentenced to 7-yrs. with 5 post. For count 14, was sentence to 5-yrs. and 5 post to run consecutively with other counts. Counts 1-13 run concurrent.

6. (a) What was your plea? (Check one)

   (1) Not guilty ☒          (3) Nolo contendere (no contest) ☐

   (2) Guilty ☐              (4) Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

   _____

_____
_____
_____
_____
_____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒        Judge only ☐

7. Did you testify at either a pretrial hearing, trial or a post-trial hearing?

Yes ☒   No ☐

8. Did you appeal from the judgment of conviction?

Yes ☒   No ☐

9. If you did appeal, answer the following:

(a) Name of court: Supreme Court, Appellate Division, Second Department.

(b) Docket or case number (if you know): __2009-07167__

(c) Result: __Affirmed__

(d) Date of result (if you know): __112 A.D. 3d 964, 977 N.Y.S. 2d 366 (12/26/13).__

(e) Citation to the case (if you know): __112 A.D. 3d 964, 977 N.Y.S. 2d 366__

(f) Grounds raised: __See page 3A.__

_____
_____
_____
_____
_____

(g) Did you seek further review by a higher state court?   Yes ☒   No ☐

If yes, answer the following:

(1) Name of court: __New York State Court of Appeals__

(2) Docket or case number (if you know): _____

(3) Result: __Leave to appeal denied.__

_____

(4) Date of result (if you know): __March 21, 2014.__

(5) Citation to the case (if you know): __22 N.Y. 3d 1156, 7 N.E. 3d 1128__

(6) Grounds raised: __Same grounds raised in appeal.__

_____
_____
_____

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☒

If yes, answer the following:

(1) Docket or case number (if you know): _____

<u>GROUNDS RAISED ON DIRECT APPEAL</u>

Point 1:

STATEMENTS, VIDEOTAPE, AND PROPERTY SEIZED FROM THE DEFENDANT SHOULD HAVE BEEN SUPPRESSED AS IT WAS OBTAINED, UNDER DURESS, AS THE PRODUCT OF CONSTITUTIONAL VIOLATIONS, AND BASED ON PATENTLY TAILORED TESTIMONY.

Point 2:

THE COURT ERRED DENYING THE DEFENDANT'S MOTION TO LIMIT DIRECT AND CROSS-EXAMINATION BY THE PEOPLE TO CHARGES IN NASSAU COUNTY, PERMITTING THE PEOPLE TO CHARGES OF THE DEFENDANT'S INDICTMENT IN QUEENS COUNTY, THE COURT COMPOUNDING THE ERROR BY GRANTING THE PEOPLE'S MOLINEUX APPLICATION, EFFECTIVELY DENYING THE DEFENDANT THE RIGHT TO TESTIFY.

Point 3:

BASED AS IT WAS ON EVIDENCE THAT WAS INTRINSICALLY INCREDIBLE AND UNRELIABLE, THE SEXUAL ABUSE VERDICT WAS INSUFFICIENTLY SUPPORTED AND IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS  TO BE CONVICTED ONLY WHERE GUILT HAS BEEN ESTABLISHED BEYOND A REASONABLE DOUBT.

Point 4:

THE SENTENCE IMPOSED ON THE DEFENDANT WAS UNDULY HARSH AND EXCESSIVE AND SHOULD BE REDUCED IN THE INTEREST OF JUSTICE.

-3A-

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

      Yes ☐   No ☒

11.  If your answer to Question 10 was "Yes," give the following information:

  (a)  (1) Name of court: _____

       (2) Docket or case number (if you know): _____

       (3) Date of filing (if you know): _____

       (4) Nature of the proceeding: _____

       (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

       (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

         Yes ☐   No ☐

       (7) Result: _____

       (8) Date of result (if you know): _____

  (b) If you filed any second petition, application, or motion, give the same information:

       (1) Name of court: _____

       (2) Docket or case number (if you know): _____

       (3) Date of filing (if you know): _____

       (4) Nature of the proceeding: _____

       (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

      Yes ☐   No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

      Yes ☐   No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

    (1)  First petition:       Yes ☐   No ☐

    (2)  Second petition:    Yes ☐   No ☐

    (3)  Third petition:     Yes ☐   No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: _____

_____

_____

_____

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

GROUND ONE:  ___See page 6A._____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____
_____See page 6A through 6F._____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____
_____
_____

(c)  **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒ No ☐

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____
_____
_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐ No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

<u>GROUND ONE</u>

<u>THE STATEMENTS, VIDEOTAPE, AND PROPERTY SEIZED FROM THE DEFENDANT SHOULD</u>
<u>HAVE BEEN SUPPRESSED AS IT WAS OBTAINED, UNDER DURESS, AS THE PRODUCT</u>
<u>CONSTITUTIONAL VIOLATIONS, AND BASED ON PATENTLY TAILORED TESTIMONY.</u>

The defendant moved to suppress the statements, videotape, and the seizure of the evidence, i.e., a mini cleaver, and two massagers. A HUNTLEY/MAPP Hearing was held. The petitioner states that the lower courts erred in denying the motion as the evidence was illegally obtained and based on patently tailored testimony.

Petitioner maintains his stand that the County court improperly denied the branches of his omnibus motion to suppress his statements to law enforcement officials as well as specified physical evidence as a result of constitutional violations.

The petitioner, testifying at the hearing, came to the 105th Precinct on June 23rd, 2008, at 2:30 a.m., to report his stepdaughter, the complainant, missing. He was unaware that she was present at the precinct, making allegations against him for sexual abuse. When the petitioner identified himself, he was attacked by about 10 officers who abused and manhandled him in the guise of searching him. No doubt, the officers, rushing to judgment, believed the daughter's claim. The petitioner was thrown against the wall and across a counter, sustaining scratches and bruises as the officers directed foul language and profanity at him.

In route upstairs with Detective Leonard Schulman, to be interviewed, the petitioner was pushed up the steps in a manner that nearly caused him to fall. Petitioner was brought to an eight by ten interrogation room, referred to as the "box", where the petitioner was grabbed by the collar and thrown about. The videotape reveals that the petitioner's collar is distended and in such a condition that would support the petitioner's claims about the detective handling him forcefully by the collar.

The petitioner's repeated requests to obtain counsel and to call his spouse to engage counsel were denied by Schulman. The petitioner was subjected to the detective's threats to have him incarcerated for more than 20 years if he did not confess to sexual abuse if his stepdaughter.

-6A-

A confession is "Involuntarily made" when it is obtained by a public servant engaged in law enforcement activity by means of any promise or statement of facts which creates a substantial risk that a defendant might falsely incriminate himself. Schulman's threats of a 20 year sentence was one of the means used to coerce the defendant into a so-called "confession."

The defendant was in custody for over 15 hours, mainly in the "box", with only a single opportunity to use the restroom, with nothing to eat, and with merely a bottle of water, after about 12 hours. The defendant was also deprived of sleep, from 2:30 a.m., June 23rd, 2008 until the following night , June 24, 2008, having worked a full day that started at 6: 00 a.m. on June 23, 2008, before coming to the precinct.

Astoundingly, Schulman testified that the defendant never requested an opportunity to make any calls and never requested an attorney. This defies logic to believe that the defendant would not have asked to call his wife to notify her of his circumstances and would not have asked to call an attorney over the extended period of his custody.

Petitioner steadily maintains that he made repeated requests for a lawyer, but his pleas went unheeded. As the petitioner had a limited criminal history, he obviously was unaware that it was his constitutional right to have an attorney appointed for him if he so requested.

Although the defendant remained in the "box", with the door secured from the outside, he was not restrained in any way to prevent him from inflicting harm on himself or attempting to escape. As it is customary, subjects in custody, left alone in interrogation rooms, are restrained in some way. It is apparent that the officers believed, that they had succeeded in sufficiently frightening the defendant by physical and mental abuse, not to take any untoward action.

Mr. Gopaul was physically and mentally abused from the time he identified himself on arrival at the precinct. He was cowed to such an extent that he initialed the Miranda form on which the detective had already written "yes" to each of the inquiries, prior to being given the form. The petitioner was coerced into initialing the affirmative responses that had been written by the detective. Under these circumstances, Mr. Gopaul did not voluntarily waive his rights for custodial questioning.

The statements written by petitioner, about the argument he had with his stepdaughter and the statement of his so called "confession", dictated to him by Schulman, were forced out of him. Clearly these statements were illegaly obtained from the petitioner, in violation of his constitutional rights.

Therefore, the decision of the suppression court should not be "entitled to great deference" as done in other and in this court decision. The record reveals that Mr. Gopaul remained in custody in the "box". He was physically and mentally abused, being demoralized to such an extent that it cannot be construed that he voluntarily waived his right for custodial questioning.

The hearing court had an obligation to weight the evidence and determine whether the jury was justified in its conclusion, beyond a reasonable doubt. These findings must be reviewed by the same standards applicable to a verdict of guilt.

The forceful and threatening behavior of the police demonstrates "coercive police activity", a predicate finding that the petitioner's so called "confession" and "consent" to searches were not obtained voluntarily, within the meaning of the Due Process Clause of the Fourteenth Amendment.

The browbeaten petitioner suffered intimidation to such a degree that he submitted to recording his so-called "confession" on videotape for the Office of the District Attorney. The detective's mere presence was an ever-present reminder of his threat to incarcerate Mr. Gopaul for more than 20 years if petitioner did not comply and if kept insisting for a lawyer.

When the People inquired, during the petitioner's cross-examination at the hearing, why at the videotaping he did not lodge any protest, e.g., call for an attorney, or report physical and emotional abuse he suffered or attacks on his person as well as any verbal threats, he replied that he had been frightened.

Under the circumstances, it is no wonder that petitioner was so frightened by the experience, that he agreed to the videotaping. The petitioner's multiple requests for counsel fell on "deaf ears." In addition, Schulman threatened the defendant that having an attorney would result in going back to square one and not being released. Thus, the so-called videotape "confession" of Mr. Gopaul, under duress, cannot

be deemed to have been obtained voluntarily.

The Supreme Court of the United States has affirmed the proposition that the states bear the burden of establishing a valid waiver of the right to counsel. In New York, the New York Court of Appeals has held that the court has the responsibility to satisfy itself, appropriate to the circumstances, that a waiver of right to counsel is knowing and intelligent.

The lower courts should have conducted a search inquiry to be reasonably assured that Mr. Gopaul fully appreciated the "dangers and disadvantages" of giving up the fundamental right to representation by counsel. Mr. Gopaul maintains his statements to the police were improperly admitted into evidence. His inculpatory statements to law enforcement, under extreme duress, were not made after an intelligent, knowing and voluntary waive of his Miranda rights. Those statements should have been suppressed due to them being product of coercion.

Petitioner states that he was not advised of his rights and under duress when he signed consent forms, agreeing to have his vehicle and his home searched. As such, the property seized by Police Officer Celica Alfaro, to wit: a mini cleaver and white massager from his work truck; and a white and gray massager from his home were illegally recovered and should have been suppressed.

Furthermore, petitioner went to the hospital when he was released on bail, and photographs were introduced at the hearing of his injuries. Albeit Mr. Gopaul acknowledges he suffered no severe injuries, he did acknowledge physical and emotional abuse. The testimony adduced at the hearing demonstrates the statements and videotape of Mr. Gopaul's confession and consent to searches were obtained by coercive tactics.

Courts are guided by the principle that the voluntariness of statements is determined by looking at the "totality of the circumstances" under which they were obtained. The due process test must take into consideration the totality of all the surrounding circumstances, the characteristics of the accused and the details of the interrogation.

In this case, the lower courts failed to consider the "totality if the circumstances" under which statements were obtained and property recovered. A series of circumstances, each alone, may be insufficient to cause a confession or a consent to be deemed involuntary. Here the

combination of circumstances have a qualitative and a quantitative effect.

Petitioner maintains that apart from the emotional and physical abuse, that abuse led to officers using his fear to force him to parrot a confession, on Schulman's direction, based on the sexual allegations that Schulman had garnered from the complainant. Further, the physical evidence was obtained as the result of an involuntary consent of the petitioner.

Focusing on the testimony of the officers involved in this case; the testimonies of Detective Schulman and Police Officer Alfaro, were patently tailored, appearing to be artificially tailored to overcome petitioner's constitutional objections. Neither Schulman or Alfaro, experienced officers, were responsive to inquiries regarding: About why Alfaro was called off patrol to become the arresting officer when the defendant had already been arrested by an "unknown officer" on entering the precinct; about the state of petitioner's attire during their contact with him; and about any interactions he had with the other officers at the precinct. Indubitably, this was to shield the officers, who took the defendant into custody, from the responsibility of physically abusing petitioner. It should be noted that Schulman's denial of the abuse of petitioner was not unequivocal.

Schulman's memo book, which he finally produced after countless demands made by counsel, was significantly absent of the fact that he was petitioner's interrogator. Further, Schulman was obviously not forthright about how he came to be the interrogator as his tour of duty had ended. Suspiciously, Schulman provided only deliberately vague responses to the time frame of the petitioner being taken into custody and interrogated and his involvement in the case.

Alfaro's testimony did not give any cogent explanation as to: why she was called off patrol to be the arresting officer; whether Schulman accompanied her to the petitioner's vehicle to recover the evidence; why, as the arresting officer, she sat outside the room during videotaping; why Schulman was present at the videotaping instead of herself; and whether she observed the condition of petitioner's shirt. Her cross-examination was disingenuous, permeated with responses of a lack of recall and having no knowledge, merely acknowledging inaccuracy in some responses when the accuracies were brought to her attention.

Courts have refused to credit testimony which had all appearances of having been patently tailored to nullify constitutional objections. In the case at bar, the officers' testimony, Schulman and Alfaro, should be rejected as a matter of law. Without this proffer, the People failed to establish that the defendant's guilt of having forced the complainant to his sexual advances. When the testimonies of officers are rejected as doubtful, as a matter of law, it is impossible to conclude that the events transpired in the manner asserted by those officers.

Obviously, the testimonies of the police were tailored to meet constitutional objections, and they should not be credited. Courts have determined that reversal is warranted where the fact findings of the trial court were so plainly unjustified by the evidence that they were nullified. This court should consider in evaluating testimony, should not discard the factors to be considered, and common sense and knowledge. Here, it is common sense to believe that petitioner, a virtual prisoner, being maltreated, would have asked for a lawyer, at least once, and probably many more times in a period of over 15 hours.

The police stooped to patently tailoring their testimonies, in the instant case, and they attempted to hide the fact that the defendant was physically abused, suffering mistreatment while in custody. The People did not sustain their burden of establishing the legality of the police conduct in recovering the mini cleaver and massagers, after having the defendant signed the consent forms under duress. It must be noted that in the hearing, the People used a different massager than that was found inside the work truck of petitioner. The massager that was found in petitioner's work truck but was not used in trial was a neck massager. In trial, they used a vibrator.

Here, petitioner asserts that the record demonstrates the obtained consents were the result of constitutional violations, and that the lower courts failed to suppress the physical evidence that was recovered unlawfully.

The trial court erred in the instant matter by denying suppression of the petitioner's written and videotaped statements obtained and the property recovered from the search of petitioner's vehicle and of his home, obtained as the product of constitutional violations and based on patently tailored police testimony.

-6F-

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☐   No ☐

(4) Did you appeal from the denial of your motion or petition?

    Yes ☐   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:**   See page 7A. _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

    See pages 7A through 7E. _____

_____

_____

_____

_____

_____

_____

_____

GROUND TWO

THE COURT ERRED IN DENYING THE PETITIONER HIS MOTION TO LIMIT DIRECT AND CROSS-EXAMINATION BY THE PEOPLE TO CHARGES IN NASSAU COUNTY, PERMITTING THE PEOPLE TO INTRODUCE CHARGES OF THE PETITIONER''S INDICTMENT IN QUEENS COUNTY, THE COURT COMPOUNDING THE ERROR BY GRANTING THE PEOPLE'S MOLINEUX APPLICATION, EFFECTIVELY DENYING THE PETITIONER THE RIGHT TO TESTIFY.

Defense counsel submitted a motion in limine, May 1st, 2009, regarding the charges the petitioner was facing in Queens County for an order limiting the use of the petitioner's confessions to the People intended to use on direct examination and on cross-examination, if the petitioner exercised his constitutional right to testify.

The People contended that the complainant's (Ms. Awan) testimony and the video statement were admissible to provide background, to show motive and to demonstrate intent. They argued that prior bad acts of sexual and physical abuse, including the circumstances and the threats that are part of the situation, are relevant and probative under New York's Molineux rule.

The defense contended, that over the past decades Molineux has been related to case of prior uncharged crimes, and the People's Molineux application, was based on cases of prior uncharged crimes. Petitioner states that, in addition to the Nassau County charges, the petitioner had also been charged in Queens County with the same statutory sex crimes against the same victim. Focusing on this matter, petitioner was put under double jeopardy when, he was convicted in Nassau and Queens for the same crimes against the same victim. This violates constitutional rights of petitioner. Petitioner states that the counts of both Queens and Nassau County indictments are duplicitous and should be dismissed. This was preserved for review by defense counsel moving to dismiss the entire indictment in Nassau County.

The trial court ruled that it would not make any redactions from the petitioner's written statements or the videotaped statement, allowing the People to introduce them. It was stated by the court that the evidence was admissible, being more probative than prejudicial.

The court determined, regarding the People's Molineux application, that it would allow the People to elicit testimony regarding the time and circumstances when the petitioner's relationship changed from being

-7A-

unforced to being forced. Also, the People would be allowed to elicit testimony about the time and circumstances that the defendant indicated "he wanted to be the one."

It was claimed by the court that the allegations were intertwined with what occurred in Queens County and Nassau County, up until the petitioner was arrested. The defense excepted to each other and every aspect of the court's ruling.

Defense counsel questioned whether the the court addressed the due process argument that the People should not be allowed to elicit testimony regarding Queens County charges acts as it would be a violation against self-incrimination and due process. In an attempt to minimize the court error, the People had the charges to the jury altered, deleting "In Nassau County" to "commit any crime".

The court stated the People were not permitted to cross-examine the petitioner, should he testify, regarding the pending Queens charges. Unless the petitioner "opened the door" to the Queens County matters, his Fifth Amendment rights would be protected.

The counsel contended that there was a reason that Molineux was restricted to uncharged crimes. If the court allowed testimony about the charged crimes in Queens, the petitioner would have to make a Hobson's choice, where there was only one option offered. If Mr. Gopaul testified, in this case, about the charges in Queens, then he would be incriminating himself in Queens. If he did not testify, then the Queens charges would go unrefuted to the jury in Nassau.

It was argued by counsel that petitioner's right to be protected against self-incrimination outweighed the People's showing of propensity evidence that could not be cured by limiting instructions of the court. Since there were charges of force in Nassau County, and the petitioner was charged with violent and statutory crimes in Queens, the petitioner would be denied his opportunity to testify if the Queens evidence were presented.

The court ruling erred in allowing the People to cross-examine the petitioner, if he testified in his own defense, regarding the Queens criminal charges the were pending against him. the trial court's pre-

trial ruling permitting cross-examination on other pending Queens County charges requires reversal of petitioner's conviction and a new trial.

In this case, the court's ruling effectively precluded the petitioner from testifying on his own behalf as the People would have been unfairly permitted to cross-examine him about charges in Queens County which had enormous prejudicial potential. This ruling denied the petitioner a fair trial.

Mr. Gopaul maintains that the court's ruling created prejudice so severe that he was convicted by virtue of propensity evidence and his rights against self-incrimination were violated. It figuratively placed him between Scylla and Charybdis, "a rock and a hard place."

Petitioner could testify, as was his right, risking being forced to testify about Queens charges on which he was not yet tried, "opening the door," or he could remain silent, not controverting the Queens charges to the jury, acquiescing to his guilt by tacitly agreeing to the charges and keeping silent. In addition, it must be noted that petitioner was arrested in Queens County, but was tried first in Nassau using the evidence that Queens had handed over to them for the Nassau trial. Petitioner was never arrested in Nassau for the crimes alleged in the indictment. It is petitioner's belief that he should have been tried first in Queens County then handed over to Nassau County. Nassau County fabricated their indictment off the one in Queens County, using the same crimes and same time frames for each of the said crimes.

The court compounded its error, denying the petitioner's motion, by granting the People's Molineux application which allowed the People to present evidence of the Queens "charged crimes," unfairly demonstrating propensity of the petitioner.

In referencing Molineux, Molineux was a landmark decision by the Court of Appeals of New York over 100 years ago. Which, has remained hornbook law with only refinements in procedure. As this court knows, the defendant Roland B. Molineux was convicted of murder but he appealed to the Court of Appeals which granted him a new trial. At the original trial, the prosecution had entered evidence to suggest that Molineux had been responsible for an earlier murder to demonstrate that he had a propensity to murder. However, Roland B. Molineux had never been convicted of that murder.

The court ruled in Molineux decision that the use of evidence of an unproven previous act of murder against the defendant was a violation of the basic principle of the presumption of innocence, making the evidence inadmissible.

In essence, the ruling in Molineux is that the state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged. Here, the courts violated the right of the petitioner to the presumption of innocence by allowing the People to present evidence of the Queens charges against petitioner, which in fact demonstrated propensity.

The New York Court of Appeals determined that a defendant should not be forced to testify about a crime with which he has been charged, but not tried. Here, the People cannot do indirectly what cannot do directly. Furthermore, petitioner maintains that as the People cannot cross-examine him about another pending indictment, they cannot offer evidence of that indictment in their direct case.

The trial court attempted to justify the granting of the People's Molineux application by making reference a case decided in 2009. Since petitioner cannot cite law, petitioner is unable to cite the case to which the court justified its action. Petitioner can only give the name of the case which was People v. Leeson.

The court stated that in cases involving sexual misconduct, relating to the same complainant and the same defendant, the prior bad acts will be admissible, on the People' direct case, if the evidence used for material issues, not used for propensity purposes.

However in Leeson, unlike in this case, the admission of evidence was of uncharged crimes, and here, the People were granted their motion to admit evidence of the supposed charged crimes in Queens County. Here, this indubitably underscored a criminal propensity of the defendant who was unable to testify without addressing the Queens charges or leaving them uncontroverted, being denied his due process rights, against self-incrimination, and the Double Jeopardy clause.

The People have argued that under Molineux they were entitled, use evidence that included the Queens County charges to provide motive,

intent, lack of mistake or accident, identity, or common scheme or plan. However, evidence that would demonstrate a defendant's criminal propensity bars admission to a defendant's prior bad acts.

Albeit the court stated the People's Molineux application was granted for non-propensity purposes, the admission of the evidence, of the charged sexual crimes with the same victim, in Queens County, did indeed demonstrate a propensity of the petitioner. The trial court abused its discretion by admitting evidence that was more prejudicial than probative, creating unfair prejudice to the petitioner.

The petitioner maintains that the court abused its power when it allowed evidence that must be deemed demonstrative of propensity, even if limiting instructions are given. The court erred in denying the petitioner's motion and granting the People's Molineux application, which in effect denied the petitioner his constitutional rights to testify, self-incrimination, and against double jeopardy.

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____
_____
_____
_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒   No ☐

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____
_____
_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐   No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☐   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that

you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** __ See page 9A. _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

See pages 9A through 9C.

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒   No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐   No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

## GROUND THREE

BASED AS IT WAS ON EVIDENCE THAT WAS INTRINSICALLY DOUBTFUL AND
UNRELIABLE, THE SEXUAL ABUSE VERDICT WAS INSUFFICIENTLY SUPPORTED AND
IN VIOLATION OF THE PETITIONER'S CONSTITUTIONAL RIGHTS TO BE CONVICTED
ONLY WHERE GUILT HAS BEEN ESTABLISHED BEYOND A REASONABLE DOUBT

At the conclusion of the case, defense counsel made a motion to
dismiss the indictment on the grounds that the People failed to prove a
prima facie case, not proving their case beyond a reasonable doubt. The
motion was denied by the court.

In order to preserve a defendant's claim of an insufficient
verdict, it is expedient for a defense attorney to make a motion and
offer specific argument at the conclusion of the People's case. The
petitioner firmly maintains that the evidence adduced at trial was
insufficiently supported. As well as being doubtful and unreliable, the
People failed to prove the charges of sexual abuse, and to sustain their
burden of proving the defendant's guilt of sexual abuse beyond a
reasonable doubt. A review of the evidence supports that the petitioner
is not guilty of sexual abuse.

One of the People's key witnesses, Detective Schulman, hid the
identity of the officer who actually arrested the petitioner, calling
Police Officer Alfar, who was on patrol, to take credit for the arrest.
This was to shield the unknown officer from the abusive manner in which
petitioner was taken into custody.

Schulman, the interrogating officer, and Alfaro, who became the
arresting officer after the fact, were not forthright about the events
that took place during petitioner's custody: being nebulous about what
transpired in terms of the time frames of their involvement; and being
unable to recall any specifics despite inquiries. Under theses
circumstances, their lack of candor and responsiveness, renders their
proffers doubtful and unreliable.

The sexual abuse was supposedly to have taken place at the Great
Neck location of a customer of the petitioner. However, the location
provided by the complainant's "so-called" complaint, was not a veritable
location of where the alleged crimes supposedly occurred. In his so-
called "confession," it is unlikely the petitioner erroneously would
provide that information, having worked for the customer routinely
through out the years. The confession was no doubt dictated or wrote by

Schulman, based on erroneous information the police officer who wrote the complaint that was obtained from the complainant, not drafted or written by the petitioner.

The complainant testified that the knife with which the complainant was allegedly threatened, during May and June 2008, was always in the vehicle. It is not unlikely that the petitioner had a knife in his truck for practical, non-threatening purposes. Albeit the petitioner's behavior was reprehensible, Mr. Gopaul vehemently denies having sexually abused his stepdaughter, under the threat of the knife and under all the circumstances.

The People attempted to present a picture of the complainant existing in a terrifying environment since 2005, allegedly when the first incident occurred. However the facts belie that was the case. Her achievements at school got increasingly better. In fact, she became an excellent student, certainly demonstrating that she was functioning well, not in a state of fear.

Furthermore, medical reports of the complainant showed no signs of sexual, emotional, and mental abuse. As per the medical report taken on 6/24/08, there was only a sign of physical abuse, to which petitioner testified that he did hit her due to the complainant arguing with her mother. In the report, petitioner testified that he hit her on the left shoulder.

In addition, the complainant admitted to enjoying spending time with the petitioner, her stepfather, driving her to and from school, and she overtly expressed loving him. This was substantiated by the testimony of her best friend, Christine. In fact, she wrote a poem about going to work nights with the petitioner, sleeping on the back seat of the truck, revealed her positive relationship with the petitioner as being one of trust and no concern. She expressed that "her thoughts vacation to a place without worry." She had nothing negative written in her diary that was presented at testimony.

It is also evident from the videos and pictures the complainant took with the petitioner and the family doing Trinidadian dancing and engaging in other activities, that she has positive feelings for him and the family unit. She even photographed the petitioner in his Ecolab uniform, making it part of a Father's Day card presented to him. She referred to have taken the pictures and videos as being part of "family

memories." Clearly the complainant had a desire to preserve them as part of her positive feelings for the petitioner and the rest of her family. It is logical to say that when a traumatic event has occurred to a person, especially a child that goes through sexual abuse, that person would not have the mental capacity to function normally. It is not to say that grades would drop overnight, but it is safe to say that there would be a gradual decrease in the person's performance overall instead of a drastic increase in school grades and social behavior.

The People have not presented evidence which provides the required confidence that the petitioner's guilt of sexual abuse has been established beyond a reasonable doubt. Proof beyond a reasonable doubt cannot rest on a free floating inference supplied by proof which is merely suggestive and which lacks the definitiveness and form necessary to extinguish the real, latent doubt which lingers in this case. A mere scintilla, or even some proof is insufficient to create an issue of fact.

In New York, the Criminal Procedure Law provides that no conviction of an offense by verdict is valid unless based upon trial evidence which is legally sufficient and which establishes beyond a reasonable doubt every element of such offenses and the defendant's commission thereof. The United States Supreme Court has held that the due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of ever fact necessary to constitute the crime of sexual abuse for which a defendant is charged. The People's case rested mainly on evidence that was unreliable, and insufficiently supported the verdict. The People clearly failed to demonstrate that the defendant was guilt of sexual abuse.

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☐  No ☐

(4) Did you appeal from the denial of your motion or petition?

    Yes ☐  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

_____

**GROUND FOUR:** _____  See page 10A. _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

      See pages 10A through 10B.

_____

_____

_____

_____

_____

## GROUND FOUR

## THE SENTENCE IMPOSED WAS UNDULY HARSH AND EXCESSIVE AND SHOULD BE REDUCED IN THE INTEREST OF JUSTICE.

The petitioner was sentenced as follows: to a maximum of seven years with five years post-release supervision under count one; to a maximum sentence of seven years with five years post-release supervision on count two through count thirteen, to run concurrently with the sentence imposed under count one; to five years with five years post-release supervision, this sentence to run consecutively to the other counts.

Though this sentence is within the statutory limits, it is unduly harsh and excessive, the petitioner receiving a maximum sentence for count one, a class D Felony, and a consecutive sentence for count fourteen, a class D Felony. The petitioner had been given a plea offer with no incarceration, in full satisfaction of the indictment, conditioned on probation and the waiver of his right to appeal his plea and sentence, as well as an order of protection, to which he denied and chose to go to trial to prove his innocence.

The sentence he received, after going to trial, are totally disproportional in light of the plea offer. It is apparent that petitioner is being excessively punished by exercising his constitutional right to trial by jury with what can be labeled draconian sentences. A reduction of sentence is sought in the interest of justice in the alternative if the case is not dismissed entirely or if the case is not remanded back for a new trial.

Letters were submitted to the lower court from his two children, Darien and Kaitlyn, expressing how much they miss their father and requesting mercy from the court. There were also inumerable other letters attesting to the petitioner's character and indicating that he had gone out of his way to do things for people in the community, that they trusted their children with him, and that they trusted him to accomplish things for them which they were unable to do. The petitioner had greatly extended himself to people in the community.

Now it is not the intention of the petitioner to avoid responsibility nor unduly diminish the seriousness of the matter herein. The sexual abuse offense, for which the petitioner was found

guilty, is not to be cavalierly condoned. However, in the realistic panoply of the penal law spectrum, the petitioner's sentence was unusually harsh and excessive, especially in the light of the plea offer of probation and no incarceration. There should be a real focus on rehabilitation, not retribution.

The petitioner denied his guilt in the matter. Although there were several counts, they were part of a single group of acts, a continuance of certain conduct to which the petitioner maintains his innocence. The statements and videotape of so called "confession" obtained from the petitioner was a result of coercion and constitutional violations.

The petitioner is devoted to his family. He has expressed concern about the welfare when he is incarcerated as his wife is not well and he is the sole breadwinner of the family. The petitioner has supported and been a father to the complainant for 14-years albeit she is not the natural child of his. The defense informed the lower courts of videos and photographs, some even taken by the complainant, displaying her happiness with the petitioner and with the family.

Since the petitioner has close connections to his family, he can be expected to benefit from his relationship with them. New York courts have cited "strong family ties" in reducing sentences.

The petitioner has been a steadfast provider to his wife, two children, and his stepdaughter, having not been involved in any significant criminal activities. "Favorable employment histories" and only "a modest history of involvement in criminal conduct" are often cited by courts as justification for reducing sentences.

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

> (1) If you appealed from the judgment of conviction, did you raise this issue?
>
> Yes ☒   No ☐
>
> (2) If you did not raise this issue in your direct appeal, explain why: _____
>
> _____

(d) **Post-Conviction Proceedings:**

> (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
>
> Yes ☐   No ☒
>
> (2) If your answer to Question (d)(1) is "Yes," state:
>
> Type of motion or petition: _____
>
> Name and location of the court where the motion or petition was filed: _____
>
> _____
>
> Docket or case number (if you know): _____
>
> Date of the court's decision: _____
>
> Result (attach a copy of the court's opinion or order, if available): _____
>
> _____
>
> (3) Did you receive a hearing on your motion or petition?
>
> Yes ☐   No ☐
>
> (4) Did you appeal from the denial of your motion or petition?
>
> Yes ☐   No ☐
>
> (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
>
> Yes ☐   No ☐
>
> (6) If your answer to Question (d)(4) is "Yes," state:
>
> Name and location of the court where the appeal was filed: _____
>
> _____
>
> Docket or case number (if you know): _____
>
> Date of the court's decision: _____
>
> Result (attach a copy of the court's opinion or order, if available): _____
>
> _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?     Yes ☐   No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: Ground 4 of this petition was presented in "The Interest of Justice" in the appellate court. Counsel when doing Leave to appeal, did not bring this issue up to highest level court. _____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? Yes ☐   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinions or orders, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     Yes ☐  No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   Donald R. Schechter, Esq.----Address: 80-02 Kew Gardens Rd., Kew Gardens, N.Y. 11415. ** This attorney has passed away.**

(b) At arraignment and plea:   Donald R. Schechter, Esq.

(c) At trial:   Donald R. Schechter, Esq.

(d) At sentencing:   Donald R. Schechter, Esq.

(e) On appeal:  Leon H. Tracy, Esq.---Address: 366 North Broadway, Suite 410-D9, Jericho, New York 11753. Tel.# (516) 942-4233

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☒  No ☐

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: Supreme Court, Queens County, sentenced to 18 years incarceration. This sentence is running concurrently with this one, except I will still have to do time to finish the Queens case.

(b) Give the date the other sentence was imposed: _____  September 10, 2010.

(c) Give the length of the other sentence:    18 years with 10 post-release supervision.

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  Yes ☒  No ☐

Yes, petitioner has filed a Federal Habeas Corpus to the Queens County case. It is annexed with this habeas petition.

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must

explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Petition is timely pursuant to 28 U.S.C. § 2244(d).

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d)
provides in part that:

   (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody
   pursuant to the judgment of a State court.  The limitation period shall run from the latest of —
      (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the
      time for seeking such review;
      (B) the date on which the impediment to filing an application created by State action in violation of the
      Constitution or laws of the United States is removed, if the applicant was prevented from filing by such
      state action;
      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the
      right has been newly recognized by the Supreme Court and made retroactively applicable to cases on
      collateral review; or
      (D) the date on which the factual predicate of the claim or claims presented could have been discovered
      through the exercise of due diligence.
   (2) The time during which a properly filed application for State post-conviction or other collateral review with
   respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under
   this subsection.

Page 15

Therefore, petitioner asks that the Court grant the following relief: For all the foregoing reasons, the judgment of conviction should be reversed and the indictment dismissed, or the conviction reversed and the case remanded for a new trial, or the sentence reduced.
or any other relief to which petitioner may be entitled.

_____ -NA- _____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on MARCH 15, 2015

_____ (month, date, year).

Executed (signed) on MARCH 15, 2015 (date).

_Harold Gopaul_
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____