# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

**CV-15-1782 (ENV)**

**HAROLD GOPAUL,**

*Petitioner,*

*-against-*

**SUPERINTENDENT STEVEN RACETTE,**

*Respondent.*

## RESPONDENT'S AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

**MADELINE SINGAS**
**Acting District Attorney, Nassau County**
**Attorney for Respondent**
**262 Old Country Road**
**Mineola, New York 11501**
**(516) 571-3800**

**Tammy J. Smiley**
**Sarah S. Rabinowitz**
　**Assistant District Attorneys**
　　*Of Counsel*

## TABLE OF CONTENTS

Page

Respondent's Affidavit in Opposition to Habeas Petition ........................................................i-iii

Respondent's Memorandum Of Law
    Statement of Facts
    Introduction......................................................................................................................1
    Petitioner's Pre-Trial Suppression Hearing, Trial, Appeal,
        and Post-Judgment Motions.........................................................................................2
    The Petition for a Writ of Habeas Corpus ........................................................................2

POINT I
    The State Court's Decision, Finding That Petitioner's Statements Were
    Voluntarily Given To The Police After A Knowing, Voluntary, And
    Intelligent Waiver Of His Constitutional Rights, Was Not Contrary To,
    Or An Unreasonable Application Of, Supreme Court Precedent ......................................4

POINT II
    Petitioner's Fourth Amendment Claim Should Not Be Considered
    By This Court Because He Had A Full And Fair Opportunity To
    Litigate It In The State Courts .........................................................................................9

POINT III
    Petitioner's Claim That The Trial Court Improperly Permitted The
    People To Elicit Evidence Of His Prior Acts Does Not Give Rise To
    Federal Habeas Relief; In Any Event, The Claim Is Meritless And The
    *Molineux* Rulings Did Not Violate Petitioner's Right To Testify ...................................13

POINT IV
    Petitioner's Contention That His Convictions Were Not Supported By
    Legally Sufficient Evidence Is Procedurally Barred And Without Merit........................20

POINT V
    Petitioner's Sentencing Claims Are Partly Procedurally Barred, Partly
    Present No Federal Constitutional Issue, And In Any Event, Are Without
    Merit..............................................................................................................................25

Conclusion ...........................................................................................................................28

Certificate of Service

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

HAROLD GOPAUL,                                    RESPONDENT'S AFFIDAVIT IN
                                                  OPPOSITION TO
                        Petitioner,               HABEAS PETITION

           -against-
                                                  CV-15-1782 (ENV)

SUPERINTENDENT STEVEN RACETTE,

                        Respondent.
----------------------------------------------------------------x

STATE OF NEW YORK )
                      ) ss.:
COUNTY OF NASSAU  )

        SARAH S. RABINOWITZ, being sworn, deposes and states as follows:

        1.      I am an assistant district attorney, of counsel to Madeline Singas, Acting District

Attorney of the County of Nassau, and am admitted to practice before this Court.

        2.      This affidavit is submitted in opposition to petitioner's pro se application for habeas

corpus relief.

        3.      By agreement with the Office of the New York State Attorney General, the Nassau

County District Attorney's Office is representing respondent in this matter.

        4.      Unless otherwise indicated, the following statements are made upon information

and belief, based upon the records and files of the Nassau County District Attorney's Office

concerning petitioner's state criminal prosecution, including a review of the trial transcripts.

        5.      During the spring of 2008, petitioner sexually abused his step-daughter on several

occasions in a Nassau County parking lot, where he fondled her breasts and touched her vagina

using his hands, his mouth, and a vibrator.  Petitioner's abuse of his step-daughter had started when

i

she was only fourteen years old.  For these acts, petitioner was charged, under Nassau County Indictment number 2415N/08, with fourteen counts of sexual abuse in the first degree (Penal Law § 130.65[1]).

6.      Pursuant to a judgment of the Supreme Court, Nassau County, rendered on July 15, 2009, petitioner was convicted, after a jury trial, of fourteen counts of sexual abuse in the first degree (N.Y. Penal Law § 130.65[1]).  Petitioner was sentenced to an aggregate determinate term of imprisonment of seven years, to be followed by five years' post-release supervision (McCormack, J.).

7.      Petitioner appealed from his judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Department (hereinafter "Appellate Division"), raising four points: (1) the hearing court improperly denied petitioner's motion to suppress his statements and the physical evidence recovered from his home and car; (2) the trial court's *Molineux* rulings were improper and violated petitioner's right to testify and his right against self-incrimination; (3) the evidence was legally insufficient; and (4) petitioner's sentence was excessive and vindictive.

8.      On December 26, 2013, the Appellate Division unanimously affirmed the judgment of conviction, addressing each of petitioner's arguments and finding them largely unpreserved, and wholly without merit.  *People v. Gopaul*, 112 A.D.3d 964 (2d Dept. 2013).  On March 21, 2014, leave to appeal to the Court of Appeals was denied.  *People v. Gopaul*, 22 N.Y.3d 1156 (2014) (Graffeo, J.).

9.      Petitioner did not file any post-judgment motions.

10. Petitioner now seeks federal habeas corpus relief on the same grounds raised in his direct appeal in the Appellate Division (*see* ¶ 7, *supra*; petition at pp. 6A-6F, 7A-7E, 9A-9C, 10A-10B).

11. The petition is timely. However, this Court should reject petitioner's claims because they are largely procedurally barred or do not present a cognizable federal constitutional question, and, in any event, all of the claims are meritless.

12. In accordance with this Court's order, respondent is providing herewith copies of the pertinent state court record.

WHEREFORE, for the reasons set forth in this affidavit and in the accompanying memorandum of law, the petition for a writ of habeas corpus should be summarily denied.

s/Sarah S. Rabinowitz
SARAH S. RABINOWITZ
Assistant District Attorney

Sworn to before me this
31st day of August, 2015

s/Susan Beallias
Notary Public
SUSAN BEALLIAS
Notary Public, State of New York
No. 30-4728937
Qualified in Nassau County
Commission Expires April 30, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

HAROLD GOPAUL,

                                    Petitioner,              CV-15-1782 (ENV)

             -against-

SUPERINTENDENT STEVEN RACETTE,

                                    Respondent.
----------------------------------------------------------------x

## RESPONDENT'S MEMORANDUM OF LAW

### STATEMENT OF FACTS

Introduction

        Between May 1 and June 20, 2008, petitioner sexually abused his step-daughter, beginning

when she was fourteen years old.  Petitioner fondled her breasts and touched her vagina using his

hands, his mouth, and a vibrator.  Petitioner threatened her with a knife when she resisted.  On

June 24, 2008, petitioner told his step-daughter that he was going to engage in sexual intercourse

with her later that night.  Before that could happen, the victim disclosed the abuse to her friend's

mother, who took her to the police to report the abuse.  Petitioner admitted to the police that he had

abused his step-daughter and he consented to a search of his vehicle and home. The police

recovered several vibrators, as well as the knife he had used to threaten his step-daughter.  For

these acts, petitioner was charged, under Nassau County Indictment number 2415N/08, with

fourteen counts of sexual abuse in the first degree (N.Y. Penal Law § 130.65[1]).

1

At trial, the proof against petitioner included the testimony of the victim, the testimony of the victim's best friend and the best friend's mother, to whom the victim disclosed the abuse, petitioner's written statement of admission, and petitioner's videotaped statement of admission. Petitioner presented no evidence.  He was convicted of fourteen counts of sexual abuse in the first degree, and was sentenced to concurrent determinate terms of seven years' imprisonment and five years' post-release supervision on his convictions for first-degree sexual abuse under the first thirteen counts, and a consecutive determinate term of five years' imprisonment and five years' post-release supervision on his conviction under the fourteenth count.

Petitioner's Pre-Trial Suppression Hearing, Trial, Appeal, and Post-Judgment Motions

Respondent relies on the summary of the hearing and trial evidence set forth on pages 2-29 of its main Appellate Division brief.  Petitioner did not file any post-judgment motions.  The relevant facts pertaining to petitioner's direct appeal, as well as the pertinent procedural history of this case have been summarized in the affidavit that accompanies this memorandum of law.  *See* Respondent's Affidavit at ¶¶ 6-9.  Any additional facts relevant to a determination of the issues raised in petitioner's application for a writ of habeas corpus are set forth in the argument section below.

The Petition for a Writ of Habeas Corpus

In his application for habeas corpus relief, petitioner argues first that the hearing court erred when it held that he voluntarily gave statements to the police after knowingly, voluntarily, and intelligently waiving his constitutional rights.  Petitioner is not entitled to habeas relief on that ground because the Appellate Division correctly rejected petitioner's claim that his statements were involuntary and his *Miranda* rights had been violated.  Moreover, the state courts' determinations

2

were not contrary to, or unreasonable applications of, Supreme Court precedent. *See* 28 U.S.C.
§ 2254(d)(1).

Second, petitioner claims that his Fourth Amendment rights were violated when the police
searched his home and car, and seized physical evidence. Petitioner's Fourth Amendment claim
is not reviewable in a habeas corpus proceeding because he received a full and fair opportunity to
litigate it in the state courts. *See Stone v. Powell*, 428 U.S. 465 (1976). In any event, the claim is
meritless.

Third, petitioner contends that the trial court's *Molineux* rulings were improper, violated
his right to testify, and violated his right against self-incrimination. Petitioner's state evidentiary
*Molineux* claim does not present a federal constitutional question and, therefore, should not be
considered by this Court. In any event, petitioner's arguments relating to the *Molineux* rulings are
meritless.

Fourth, petitioner claims that his guilt was not proven beyond a reasonable doubt.
Petitioner's legal sufficiency claim does not warrant habeas relief. The state court's determination
that the evidence against petitioner was legally sufficient was not contrary to, or an unreasonable
application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

Finally, petitioner claims that his sentence was excessive and constitutionally vindictive.
Petitioner's vindictiveness claim should be deemed exhausted but procedurally forfeited because
petitioner failed to raise these claims in his application for leave to appeal to the New York Court
of Appeals, and he is now foreclosed from obtaining substantive review of the claim in the state
appellate courts. Moreover, petitioner's excessive sentence claim is not cognizable on federal
habeas review. In any event, both sentencing claims are entirely without merit. Accordingly, the
habeas petition should be summarily denied.

3

## POINT I

THE STATE COURT'S DECISION, FINDING THAT PETITIONER'S STATEMENTS WERE VOLUNTARILY GIVEN TO THE POLICE AFTER A KNOWING, VOLUNTARY, AND INTELLIGENT WAIVER OF HIS CONSTITUTIONAL RIGHTS, WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, SUPREME COURT PRECEDENT (responding to Ground One of the Petition).

Petitioner argues, as he did before the Appellate Division, that the hearing court erred when it held that he knowingly, voluntarily, and intelligently waived his constitutional rights before providing voluntary written and videotaped statements confessing that he had sexually abused his step-daughter. In his state court brief, petitioner alleged that he was not advised of his *Miranda* rights, and his statements were not given voluntarily because he was physically and mentally abused by the police personnel prior to making the statements, and because the conditions of his confinement were coercive. The Appellate Division correctly ruled that the hearing court did not err in denying petitioner's motion to suppress the statements. Because this decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law, petitioner's claim relating to his statements does not entitle him to habeas corpus relief.

The statement of a criminal defendant in police custody is inadmissible unless, prior to any questioning, the defendant is told that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). As to voluntariness, there is a separate analysis.

As set forth by the United State Supreme Court, the voluntariness of a confession is determined by an examination of the "totality of the circumstances" surrounding the confession. *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *Arizona v. Fulminante*, 499 U.S. 279, 285-

4

89 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir. 1993). Some of the relevant factors considered include the lack of any advice to the accused regarding his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, the conduct of law enforcement officials, and the use of physical punishment such as the deprivation of food or sleep. *See Schneckloth*, 412 U.S. at 226; *Columbe v. Connecticut*, 367 U.S. 568, 602 (1961); *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995). While the voluntariness of a habeas petitioner's confession is a question of law entitled to de novo review by a federal court (*Miller*, 474 U.S. at 112), the state court's factual findings "shall be presumed to be correct" in a federal habeas corpus proceeding. 28 U.S.C. § 2254(e)(1). This presumption applies to facts, such as whether "the police engaged in the intimidation tactics alleged by the defendant" that underlie a state court's legal ruling. *Miller*, 474 U.S. at 112, 117; *see also Thompson v. Keohane*, 516 U.S. 99 (1995) (voluntariness of a confession is a question of law; "what happened" issues are entitled to presumption of correctness).

In its decision, the Appellate Division ruled that petitioner's attack on the hearing court's decision -- rejecting petitioner's claim that he had not been advised of his *Miranda* rights and his statements were involuntary -- was meritless. *See People v. Gopaul*, 112 A.D.3d 964, 964-65 (2d Dept. 2013). Petitioner is entitled to habeas corpus relief only if the Appellate Division's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or was based upon an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

An "'unreasonable application of'" such precedent "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702

5

(2014) (quoting *Lockyer v. Andrade*, 123 S. Ct. 1166, 1174-75 [2003]). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-87 [2011]). Under this deferential standard of review, petitioner is not entitled to relief because the evidence supported the hearing court's findings that petitioner voluntarily made written and videotaped statements after he "voluntarily, knowingly, and intelligently waived his constitutional rights" (*Gopaul*, 112 A.D.3d at 964), and that the statements "were not the product of coercion." *Id.*

Indeed, as is discussed in detail in respondent's Appellate Division brief at pp. 30-36, the hearing testimony established that Detective Shulman read petitioner his *Miranda* rights from a pre-printed police form. Petitioner was asked six questions to determine whether he understood his rights, and after each question, he stated that he understood his rights and agreed to waive them. Detective Shulman noted the word "yes" on the form next to each of the six questions, and thereafter petitioner placed his initials next to the words "yes" to indicate the accuracy of Detective Shulman's notations, and he signed his name to the form (People's Exhibit 6). Thereafter, petitioner wrote two statements -- in one of them he admitted that he had sexually abused his step-daughter -- and, on a third piece of paper, he drew a picture illustrating the appearance of the vibrator he told police he owned. Petitioner was subsequently advised of his *Miranda* rights on a second occasion by an ADA, and again stated that he understood his rights and was willing to waive them. On this occasion the administration of his rights was captured on videotape (People's Exhibit 2). Petitioner then made a videotaped statement and once again admitted that he had

6

sexually abused his step-daughter. Petitioner was in custody for approximately four and one-half hours (H30-34, 37, 55-58, 101-04, 107-08, 112–16, 124-25, 128-29, 133, 205, 229–30, 241-47).[1]

The hearing testimony established that throughout this process, petitioner never requested an attorney, was calm and cooperative, and was not threatened, forced, induced or compelled in any way to speak to the police or make a statement. He never complained of injuries, pain or discomfort, and, as reflected on the videotape, did not appear to be injured or in distress (H30-34, 37, 55-58, 101-04, 107-08, 112–16, 124-25, 128-29, 133, 205, 229–30, 241-47). Clearly, therefore, the hearing evidence established that the treatment that petitioner received from the police is hardly consistent with that of a man whose will was overborne. *See Arizona*, 499 U.S. at 285-88; *Reck v. Pate*, 367 U.S. 433, 440 (1961).

Notwithstanding petitioner's unsupported allegations that he was pushed, pulled, tugged, squeezed, scratched, assaulted, cursed at, threatened with twenty years of incarceration, and promised leniency in exchange for his confession, as discussed, the hearing testimony established that petitioner was not threatened or compelled in any way to speak to the police or to make a statement. Indeed, petitioner's account of his time in custody was starkly contradicted by his videotaped interview, in which he did not appear to be injured or in distress, he did not complain of any pain or abuse, and he is seen calmly explaining the circumstances underlying his acts of sexual abuse against his step-daughter (People's Exhibit 1 [videotape of petitioner's statement]).

Contrary to petitioner's contentions (petition at pp. 6A-6F), there can be no question that all of his post-arrest statements were voluntarily made after he validly waived his *Miranda* rights. As demonstrated above, the hearing facts amply support the hearing court's determination that

---

[1] Numbers in parentheses preceded by "H" refer to the minutes of the pre-trial suppression hearing, those preceded by "T" refer to the minutes of the trial, and those preceded by "S" refer to the minutes of the sentencing proceeding.

petitioner's statements were voluntary beyond a reasonable doubt.  Specifically, in its decision, the

hearing court fully credited the testimony of the two police witnesses and discredited petitioner's

testimony, finding that petitioner had indeed made a knowing, intelligent, and voluntary waiver of

his *Miranda* rights, not once, but twice, and that petitioner's statements were made voluntarily

(H434–36).  The hearing court's factual findings are to be accorded great deference because they

were made after a full *Huntley* hearing, and the court's determination that petitioner was advised

of, and properly waived, his *Miranda* rights before making a voluntary statement to the police was

supported by ample evidence in the record.   Moreover, petitioner does not overcome the

presumption of correctness that applies to the state courts' factual findings.  *See* 28 U.S.C.

§ 2254(e)(1) (federal habeas courts are required to presume the correctness of the factual findings

of the state courts unless the petitioner rebuts this presumption with clear and convincing

evidence); *Sumner v. Mata*, 455 U.S. 591, 598 (1982).

        In sum, the record is simply devoid of any credible support for petitioner's claim that he

was not advised of his *Miranda* rights and that his statements were involuntary.   Under these

circumstances, the hearing court's denial of petitioner's suppression motion and the Appellate

Division's decision -- that petitioner's statements were voluntary and admissible -- were not

unreasonable applications of Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1); *Williams*, 592

U.S. at 411-13.  Hence, petitioner is not entitled to federal habeas corpus relief on this basis.

## POINT II

### PETITIONER'S FOURTH AMENDMENT CLAIM SHOULD NOT BE CONSIDERED BY THIS COURT BECAUSE HE HAD A FULL AND FAIR OPPORTUNITY TO LITIGATE IT IN THE STATE COURTS (responding to Ground One of the Petition).

Petitioner claims, as he did on his direct appeal, that his Fourth Amendment rights were violated when the police searched his home and car, and seized several vibrators, as well as the knife that he used to threaten his step-daughter. More specifically, petitioner contends that the physical evidence obtained as a result of consent searches of his vehicle and home should have been suppressed because his consent was obtained under duress, resulting from coercive police conduct (*see* Point I, *supra*; petition at pp. 6A-6F). Petitioner's Fourth Amendment claim is not reviewable in a habeas corpus proceeding because he received a full and fair opportunity to litigate it in the state courts. *See Stone v. Powell*, 428 U.S. 465 (1976).

Under federal law, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482; *see also Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1991); *McPhail v. Warden*, *Attica Correctional Facility*, 707 F.2d 67, 69 (2d Cir. 1983); *Gates v. Henderson*, 568 F.2d 830, 836-37 (2d Cir. 1977). Here, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts.

As discussed, the Nassau County Supreme Court conducted a pre-trial suppression hearing at which the People had the burden of proving the voluntariness of petitioner's consent to the searches, and could only sustain that burden by demonstrating "that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied" by the actions of the police. *People v. Quagliata*, 53 A.D.3d 670, 671 (2d Dept. 1984) (citing *Schneckloth*, 412 U.S. at

9

248). Moreover, petitioner had an opportunity at the hearing to cross-examine the prosecution's witnesses, present his own evidence, and advance any applicable legal arguments in support of his suppression motion.

The hearing court determined that the consent given by petitioner to search his home and car was given voluntarily, and was not the result of any coercion (H434–36). Furthermore, petitioner challenged the hearing court's decision in the state appellate courts. The Appellate Division likewise ruled that petitioner's Fourth Amendment claim was meritless. *See Gopaul*, 112 A.D.3d at 964-65. Thus, because the New York state courts afforded petitioner an opportunity to litigate his Fourth Amendment claim fully and fairly, that claim is procedurally barred from review on a petition for a writ of habeas corpus. *See Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991) (petitioner's Fourth Amendment claim dismissed where he made no argument that he was denied an opportunity to litigate his Fourth Amendment claim fully and fairly in the state courts).

Procedural bar aside, petitioner's Fourth Amendment claim is also meritless. As discussed more extensively in respondent's Appellate Division brief at pp. 37-40, petitioner voluntarily consented to police requests to enter and search his residence and vehicle. Indeed, during the hearing, the People presented evidence that after petitioner was advised of, and waived, his *Miranda* rights, Detective Shulman asked petitioner if he would be willing to consent to a search of his work vehicle and his home. Petitioner stated that he would consent to those searches. The detective read petitioner two identical pre-printed police consent forms and then gave the forms to petitioner to read. Therein, petitioner was advised that (1) he had the right to refuse to consent; (2) he had the right to require that a search warrant be obtained prior to any search; (3) any evidence found as a result of the search, could and would be used against him in any civil or criminal proceedings; (4) he had the right to consult with an attorney of his choosing before or during the

10

search; and (5) he had the right to withdraw his consent to the search at any time prior to its conclusion  (People's Exhibits 7, 8).  After these rights were read to petitioner, and he read these rights to himself, petitioner signed his name to both consent forms authorizing the police to conduct the searches (H45-55).

Moreover, the evidence at the hearing established that Detective Shulman was the only person in the interview room with petitioner, petitioner was not handcuffed, he was allowed to use the restroom, and he was cooperative with the police and did not resist arrest.  Petitioner, a fifty-one-year-old man who was gainfully employed, had no prior criminal history and he appeared on the videotape to be of average or higher than average intelligence and further appeared to fully understand what was occurring (H276).  Petitioner clearly chose to cooperate with the police.  He not only consented to the searches, but he agreed to speak with the police, he executed two written statements, and he consented to speak with an ADA and make a videotaped statement.  On the videotape, petitioner appeared calm, spoke in a normal tone of voice, and was again extremely cooperative.  The tape further establishes that petitioner was questioned in a non-confrontational manner.  Most significantly, petitioner was advised of his rights relative to the consent search, including his right to refuse to give consent, and, by signing the consent form, he acknowledged that he understood those rights, and agreed to waive them (People's Exhibit 1 [videotape of petitioner's statement]).

It is evident, therefore, that no constitutional violation occurred.  *See Schneckloth*, 412 U.S. at 219 (search conducted pursuant to consent is well-established exception to Fourth Amendment's warrant requirement); *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995).  Moreover, the state courts' determinations relating to petitioner's Fourth Amendment claim were not contrary to, nor an unreasonable application of, Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).

11

     In sum, petitioner's claim that the police illegally searched his home and car is procedurally barred from habeas review because petitioner had a full and fair opportunity to litigate that claim in the state courts.  In any event, his claim is meritless.  Therefore, this Court should not grant a writ of habeas corpus on this ground.

12

POINT III

PETITIONER'S CLAIM THAT THE TRIAL COURT IMPROPERLY PERMITTED THE PEOPLE TO ELICIT EVIDENCE OF HIS PRIOR ACTS DOES NOT GIVE RISE TO FEDERAL HABEAS RELIEF; IN ANY EVENT, THE CLAIM IS MERITLESS AND THE *MOLINEUX* RULINGS DID NOT VIOLATE PETITIONER'S RIGHT TO TESTIFY (responding to Ground Two of the Petition).

This Court should reject petitioner's claim that the trial court's *Molineux* rulings (1) permitted the introduction of improper propensity evidence; and (2) effectively denied him the right to testify on his own behalf because to do so would subject him to cross-examination regarding the Queens charges, thereby violating his right against self-incrimination. *See* Petition at pp. 7A-7E. As a threshold matter, petitioner's state evidentiary *Molineux* claim does not present a federal constitutional question and, therefore, is not properly before this Court. In any event, all of the evidence at issue was integral to the People's case because it completed the narrative of events, provided appropriate background information that enabled the jury to understand the nature of the relationship between petitioner and the victim, and was relevant to prove the elements of forcible compulsion and intent. Moreover, as the Appellate Division correctly determined, the probative value of the prior-bad-act evidence far outweighed any potential prejudice, the trial court's ruling did not deprive petitioner of his right to testify in his own defense, and it did not violate petitioner's Fifth Amendment privilege against self-incrimination. *See Gopaul*, 112 A.D.3d at 965.

Before the trial began, the People submitted a written application pursuant to *People v. Molineux*, 168 N.Y. 264 (1901), seeking to introduce evidence of petitioner's sexual and physical abuse of the victim in Queens County that were the subject of the pending Queens County indictment. Specifically, the People sought to introduce evidence that, in Queens County, petitioner kissed the victim, touched her breasts and vagina, placed his mouth on her vagina, and

13

forced her to touch his penis as part of an on-going course of forced and threatened sexual abuse. The People also sought to introduce evidence of petitioner's threat to the victim to cut her finger off and to bury her, going so far as to tell her where she was going to be buried, all of which occurred in Queens County (H378). The People argued that this evidence was admissible to establish petitioner's motive, intent, and absence of mistake, and that it constituted necessary background information and was inextricably interwoven into the narrative of events to explain why the victim disclosed when she did, to illustrate the progression and nature of petitioner's relationship with the victim, and to demonstrate the victim's state of mind (H385).

The court held an extensive pre-trial hearing on the issues raised in the motions (H358-412). Subsequent to the hearing, and after reading the Queens County grand jury minutes, the court ruled that it would allow the People to introduce evidence of only three specific incidents: (1) when petitioner forced the victim to allow him to perform oral sex on her in the bathroom of the Queens home when the victim was fourteen years old, which marked the first time petitioner sexually abused the victim (H404; T300); (2) when petitioner threatened to cut off the victim's finger in May 2008 in Queens County, however the court specifically disallowed testimony establishing that petitioner threatened to show the victim, or actually showed the victim, places where he would bury her (H404; T301-02); and (3) when petitioner forced the victim to pick a date to have sexual intercourse with him, which incident led to the victim's disclosure of the sexual abuse (H405; T302). The court further ruled that the People would not be required to redact any portion of the written or videotaped statements because their probative value far outweighed any potential prejudice (H405). Finally, the court ruled that the People would be prohibited from eliciting any testimony that there was a pending Queens County case or indictment (H404), and further, that the

14

People would be prohibited from cross-examining petitioner about the pending Queens case unless petitioner opened the door to such questioning (H393, 403-44, 407).

Petitioner now claims, as he did on his direct appeal, that the trial court's *Molineux* ruling was improper because the prejudicial effect of the prior-bad-act evidence outweighed the probative value. He further argues that the evidence deprived him of his constitutional right to testify, and violated his right against self-incrimination (*see* petition at 7E).

A federal court is authorized to entertain an application for a writ of habeas corpus on behalf of a state prisoner only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, a claim that relies solely on the interpretation and application of state law does not present a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

With respect to the allegedly erroneous admission of evidence, it is well settled that state evidentiary rulings generally do not implicate the federal constitution. *See Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986); *Ponnapula v. Spitzer*, 297 F. 3d 172, 182 (2d Cir. 2002). Thus, "[i]n order to prevail on a claim that an evidentiary error deprived [a] defendant of due process . . . he must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985); *see also Estelle*, 502 U.S. at 72; *Dowling v. United States*, 493 U.S. 342, 352-53 (1990); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990) (habeas petitioner "bears a heavy burden; mere evidentiary errors generally do not rise to constitutional magnitude").

The standard for determining whether a petitioner has been denied a fair trial by an alleged evidentiary error in state court is "whether the erroneously admitted evidence, viewed objectively in the light of the entire record before the jury, was sufficiently material to provide the basis for

15

conviction or to remove reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19; *Ross v. Johnson*, 955 F.2d 178, 181 (2d Cir. 1992); *see generally Estelle*, 502 U.S. at 72. Because the state court's decision to admit evidence of petitioner's uncharged crimes or bad acts under *Molineux* constituted an evidentiary ruling based on state law, and, as discussed, *infra*, petitioner has failed to show that the trial court's ruling was so egregious that it deprived him of a fundamentally fair trial, petitioner has failed to establish that his claim raises an issue of constitutional magnitude. *See, e.g.*, Roldan v. Artuz, 78 F.Supp.2d 260, 276-77 (S.D.N.Y. 2000).

Although evidence of uncharged criminal conduct is inadmissible if it is offered to show only a defendant's propensity or predisposition to commit the crime charged, it may still be admissible under both New York and federal law. *See People v. Ventimiglia*, 52 N.Y.2d 350, 359 (1981); *Molineux*, 168 N.Y. at 264; Federal Rules of Evidence Rule 404(b) ("other crimes" evidence "may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); *Old Chief v. United States*, 519 U.S. 172, 181-82 (1997). Indeed, as a matter of federal evidentiary law, the Second Circuit takes an "inclusionary approach," allowing admission of evidence of prior bad acts whenever it goes to any issue other than propensity and the probative value is not substantially outweighed by the prejudice. *See United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002).

The Second Circuit has also approved the use of prior crimes evidence as "background." *See United States v. Jackson*, 2002 WL 31101718 *2 (2d Cir. September 20, 2002) (basis for police pursuit);[2] *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). And one court has noted

---

[2] This and all other unpublished decisions are being provided to petitioner together with a copy of respondent's opposition papers.

that the introduction of uncharged crimes as "inextricably interwoven" with the narrative violates no clearly established federal right of a defendant. *See LoVacco v. Kelly*, 2002 WL 31045942 *13-14 (S.D.N.Y. June 13, 2002) (Magistrate's Report, adopted at 2005 WL 2482518 [October 7, 2005]).

In New York, it is well-established law that prior-bad-act background evidence is particularly appropriate in domestic violence cases and cases involving sexual conduct against a child -- such as the instant case -- where evidence of the defendant's uncharged misconduct against the victim both before and after the charged events is relevant to show the defendant's motive, provides necessary background information regarding the nature of the relationship at issue, "as well as to place the events in question in a believable context and explain the victim's delay in reporting defendant's conduct." *People v. Haidara*, 65 A.D.3d 974 (1st Dept. 2009); *People v. Dorm*, 12 N.Y.3d 16, 19 (2009); *People v. Leeson*, 12 N.Y.3d 823, 826-27 (2009); *see also People v. Thompson*, 158 A.D.2d 563 (2d Dept. 1990) (evidence pertaining to previous incidents in which the defendant sexually molested the complainant admissible because it demonstrated complainant's ongoing fear of the defendant).

Here, as discussed in the People's Appellate Division brief at pp. 41-51, the testimony regarding petitioner's initial sexual assault of the victim and his threat in Queens County to cut off her finger, as well as the fact that petitioner forced the victim to pick a date to have sexual intercourse with him, was relevant for purposes other than petitioner's criminal propensity; specifically, it completed the narrative, demonstrated the nature of the relationship between petitioner and the victim, and was probative as to the issue of forcible compulsion, the victim's state of mind and fear of petitioner, and petitioner's intent. Moreover, the trial court properly weighed the probative value of the evidence and determined that it outweighed any potential for

17

prejudice, and gave proper limiting instructions to the jury.  As such, the court's actions were entirely appropriate.

Petitioner has likewise failed to establish that the trial court's *Molineux* rulings deprived him of his right to testify in his own defense, or violated his Fifth Amendment privilege against self-incrimination.  In *People v. Betts*, 70 N.Y.2d 289 (1987), the New York Court of Appeals ruled that cross-examination of a defendant on pending charges for credibility purposes only, is prohibited, except where the defendant's own assertions "open the door" to such questioning (*id.* at 295).  *Betts* is premised on a recognition that forcing a defendant to sacrifice the privilege against self-incrimination as to a pending charge in order to take the stand in one's own defense in an unrelated case exerts "an undeniable chilling effect upon a real 'choice' whether to testify." *Id.* at 292.

As is discussed in respondent's main Appellate Division brief at pp. 48-57, however, unlike the scenario in *Betts*, the court here never ruled that evidence pertaining to the charges that were pending in Queens could be used by the People on the issue of credibility.  On the contrary, the court specifically stated that it would not allow the People to cross-examine petitioner on the pending Queens case for credibility purposes, and that the People could only cross-examine as to the Queens case if petitioner himself "opened the door" to such questioning (H403).  *See People v. Soto*, 70 A.D.3d 981 (2d Dept. 2010) (trial court's ruling that, if the defendant testified, the People would be allowed to cross-examine him on a pending assault charge did not violate *Betts* because the assault charge was relevant to, and directly probative of, the charges at issue, and because the court appropriately determined that the probative value of the testimony outweighed this potential prejudicial effect); *People v. Mack*, 234 A.D.2d 565 (2d Dept. 1996) (trial court's ruling allowing

18

the People to use evidence of a pending charge on the issue of identity did not run afoul of the *Betts*
decision because the court never ruled that the evidence could be used on the issue of credibility).

As discussed, *supra*, the court properly exercised its discretion in determining that the
probative value of the prior-acts evidence at issue far outweighed any potential prejudice because
it was relevant to the elements of intent and force, and to establish the background and nature of
the relationship between petitioner and the victim.  That ruling was in keeping with New York law,
and certainly did not improperly prejudice petitioner to the point that he was deprived of a fair trial.
*See Collins*, 755 F.2d at 18.

Simply put, the admission of the evidence in question does not give rise to federal habeas
relief, and all of the evidence was properly admitted.  Accordingly, this Court should not entertain
petitioner's evidentiary claim.

POINT IV

PETITIONER'S CONTENTION THAT HIS CONVICTIONS WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE IS PROCEDURALLY BARRED AND WITHOUT MERIT (responding to Ground Three of the Petition).

Petitioner contends that the evidence supporting his first-degree sexual abuse convictions (N.Y. Penal Law § 130.65[1]) was legally insufficient because Detective Shulman conspired with others to hide the identity of the arresting officer, and he crafted petitioner's statement based upon erroneous information that he received from the victim.  Petitioner further contends that there was insufficient medical evidence of abuse, that the victim's claims about being sexually abused by petitioner were contrived, and that her claim that she feared petitioner was contradicted by family photos and videos, a poem that she wrote, as well as evidence that her grades did not suffer.  Petition at pp. 9A-9C. These contentions are procedurally barred from federal habeas corpus review and meritless in any event.  The evidence presented at petitioner's trial proved all of the essential elements of his sexual abuse convictions beyond a reasonable doubt.

In his motion for a trial order of dismissal, petitioner simply claimed that the "People have failed to prove a prima facie case" (T766).  At no time did defense counsel raise the claims that petitioner sets forth now.  When petitioner then raised these claims for the first time on direct appeal, the Appellate Division ruled that they were "unpreserved for appellate review."  *Gopaul*, 112 A.D.3d at 965 (citing N.Y. C.P.L. § 470.05[2]; *People v. Hawkins*, 11 N.Y.3d 484, 492 [2008]; *et al.*).  The court went on to hold that the claims were meritless "[i]n any event."  *Gopaul*, 112 A.D.3d at 965.  Thus, the state court has "expressly relied on a procedural default as an independent and adequate state ground" (*Velasquez v. Leonardo*, 898 F.2d 7, 9 [2d. Cir. 1990]) in denying petitioner's unpreserved claims.

20

"Federal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 122 S. Ct. 877, 885 [2002]).  The failure to preserve an issue for appellate review is just such an independent and adequate state ground.  *Garvey*, 485 F.3d at 720 ("[T]he procedural bar of [N.Y. C.P.L.] § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division's holding.").  Accordingly, petitioner's contention that his convictions were not supported by legally sufficient evidence is procedurally barred from review by this Court. *See Rattray v. Brown*, 261 F. Supp. 2d 149, 156 (E.D.N.Y. 2003) ("It is well settled that where a state court decision states that a claim is procedurally barred, and then rules 'in any event' on the merits, the claim is procedurally barred.") (citing *Harris v. Reed*, 109 S. Ct. 1038, 1044 n.10 [1989]; *Velasquez*, 898 F.2d at 9).

Petitioner could nonetheless overcome the procedural bar by establishing cause for his default and resulting prejudice, or by showing that the federal court's failure to review his claim will result in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crimes of which he was convicted. *See Coleman v. Thompson*, 111 S. Ct. 2546, 2564-66 (1991); *Murray v. Carrier*, 106 S. Ct. 2639, 2649-50 (1986).  Here, however, petitioner makes no showing at all with respect to those standards.  He has not even alleged any cause for his procedural default, much less demonstrated that he was prejudiced as a result. *See Velasquez*, 898 F.2d at 9.  Furthermore, petitioner has not -- and cannot -- make a showing that he is actually innocent of the charges. *See* Respondent's Appellate Division brief at pp. 14-28, 55-56.

Even if there were no procedural bar, petitioner still would not be entitled to habeas corpus relief based on his claim that the evidence was legally insufficient to establish his guilt beyond a

21

reasonable doubt. Petitioner has failed to establish that the state court's conclusion, that the evidence was legally sufficient to support his convictions, resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 120 S. Ct. at 1522-24. As discussed in Point I, *supra*, this is a very deferential standard. *See Woodall*, 134 S. Ct. at 1702.

The standard for reviewing the legal sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). "A petitioner 'bears a very heavy burden' when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus." *Ayala v. Ercole*, 2007 WL 1135560, \*6 (E.D.N.Y. 2007) (quoting *Eingaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 [2d Cir. 1997]).

The crux of petitioner's complaint is that, in his view, the testimony of both Detective Shulman and the victim was not credible. The question in a legal sufficiency analysis is not, however, whether the People's evidence is believable, but whether, if believed by the jury, the evidence is sufficient. Petitioner also points out that there was no medical evidence demonstrating that the victim had been abused. *See* Petition at pp. 9A-9C. Here, the evidence was legally sufficient to establish that petitioner, "subject[ed] another person to sexual contact . . . by forcible compulsion." N.Y. Penal Law § 130.65(1). Indeed, the evidence establishing the foregoing elements of petitioner's crime was overwhelming.

As discussed in respondent's main Appellate Division brief at pp. 55-57, the testimony of Detective Shulman and the victim was entirely reasonable and credible, and was consistent with, and corroborated by, the other evidence in this case. Furthermore, the victim's testimony

22

established that on at least ten occasions, in Nassau County, petitioner fondled her breasts and touched her vagina with his hands and with a vibrator.  Moreover, her testimony established that petitioner did these acts by forcible compulsion in that he threatened to cut off her finger if she resisted, and indeed showed her a knife and told her that he was serious.  He also told the victim to stop attempting to resist him, and to be quiet, when she tried to push him off of her, or when she tried to tell him to stop touching her.  The victim testified that petitioner had initially begun to assert physical force on her during the incident in the Queens bathroom, when he forcibly pushed her legs open, and despite her physical attempts to push him off of her, he forced his mouth onto her vagina (T417-18).  She also testified that based on petitioner's threats she was fearful that petitioner might kill her (T466-69, 470-71).

The victim's best friend, Christine Alioto, and her best friend's mother, Denise Alioto, testified that when the victim ran from her home and disclosed the abuse to them, she was terrified, distraught, and in a state of panic (T342; T356).  Moreover, the proof included petitioner's written statement of admission, as well as his videotaped confession of the abuse (People's Exhibits 1, 11, 13).  The knife petitioner used to threaten the victim was located in petitioner's car (People's Exhibit 5; T581-82; T485-86).  Finally, contrary to petitioner's implication, there is no requirement that the People present medical evidence of abuse in order to establish a defendant's guilt of first-degree sexual abuse.  That is particularly so when the sexual abuse does not involve penetration and thus is not detectable through medical testimony.  In fact, the victim's testimony alone constituted legally sufficient evidence.  *See People v. Clas*, 54 A.D.3d 770 (2d Dept. 2008) (the sworn testimony of the victim establishing the required elements of the crime constituted legally sufficient evidence).

23

In sum, notwithstanding petitioner's procedurally barred claim to the contrary, a review of the evidence -- viewed in the light most favorable to the People -- could lead any rational trier of fact to conclude that the essential elements of the crime of sexual abuse in the first degree were established, and that the evidence was more than sufficient to support petitioner's convictions. Thus, petitioner's guilt was proven beyond a reasonable doubt, and the Appellate Division's denial of his legal insufficiency claim was entirely reasonable and not contrary to any Supreme Court precedent. Accordingly, the claim should be rejected again.

POINT V

PETITIONER'S SENTENCING CLAIMS ARE PARTLY PROCEDURALLY BARRED, PARTLY PRESENT NO FEDERAL CONSTITUTIONAL ISSUE, AND IN ANY EVENT, ARE WITHOUT MERIT (responding to Ground Four of the Petition).

Petitioner's claims with regard to his sentence include assertions that the sentence was harsh and excessive, and that the court used petitioner's sentence to punish him for exercising his constitutional right to go to trial. *See* Petition at p. 10A. Petitioner's vindictiveness claim should be deemed exhausted but procedurally barred because petitioner failed to raise it in his application for leave to appeal to the New York Court of Appeals, and petitioner is now foreclosed from obtaining substantive review of the claim in the state appellate courts. Petitioner's excessive sentence claim is not cognizable on federal habeas review. In any case, both of his claims lack merit.

Initially, review of petitioner's vindictiveness claim is procedurally barred because he failed to exhaust it. In order to exhaust a claim, a defendant must fairly present it to the highest court able to hear it. *See Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *Daye v. Attorney General*, 696 F.2d 186, 190, n.3 (2d Cir. 1982). In his application for leave to appeal to the New York Court of Appeals, however, petitioner raised only his suppression, *Molineux*, and legal sufficiency claims, and did not raise any claim pertaining to his sentence. While petitioner's excessive sentence claim was not reviewable in the Court of Appeals (*see People v. Miles*, 61 N.Y.2d 635, 637 [1983]), his remaining sentencing claim was reviewable. Clearly, then, he did not fairly present his vindictiveness claim to the highest New York state court, rendering the claim unexhausted. *See id.*; *Rivera v. Henderson*, 690 F. Supp. 1191 (E.D.N.Y. 1988).

Having failed to present his sentencing claim to the New York Court of Appeals, there is now no procedural mechanism for petitioner to raise them before any state court. *See Aparicio v.*

25

*Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).  Accordingly, the claim is unexhausted but deemed procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 749-51 (1991); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006).  Consequently, this Court may reach the merits of petitioner's sentencing claim only if he first demonstrates "either cause and actual prejudice, or that he is actually innocent." *Jones v. Keane*, 329 F.3d 290, 296 (2d Cir. 2003).  Petitioner's failure to even attempt to meet this standard precludes review of his claims.

Moreover, petitioner's claim that his sentence was unduly harsh and excessive is not cognizable on federal habeas corpus review.  It is well settled that an excessive sentence claim is not a ground for federal habeas corpus relief as long as the sentence is "within the range prescribed by state law." *Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (quoting *White v. Keane*, 969 F.2d 1381, 1383 [2d Cir. 1992]); *see also Alfini v. Lord*, 245 F.Supp.2d 493, 502 (E.D.N.Y. 2003).

Here, petitioner was sentenced to consecutive terms of imprisonment of five and seven years on two of the fourteen counts of sexual abuse, and concurrent time on the remaining counts (S26-27).  Petitioner's sentence was not only within the authorized range -- a fact never disputed by petitioner, either here or in state court -- but it was less than the maximum sentence that he could have received, as the court could have sentenced petitioner consecutively on all fourteen counts of sexual abuse.  Thus, petitioner's sentence was legal and was not excessive in any way.  Moreover, as is discussed fully in respondent's Appellate Division brief at pp. 58-61, the sentence imposed by the court was a fair and proportionate response to his conduct.

Finally, petitioner has failed to meet his burden of proving that his sentence was constitutionally vindictive.  There is nothing in the record to support petitioner's assertion that the court sentenced him vindictively, and petitioner's "self-serving statement that the sentencing judge

26

acted vindictively is insufficient to support a claim of actual vindictiveness." *Mateo v. Fishkill Correctional Facility*, 2007 WL 2362205 at *8 (E.D.N.Y. 2007).

In sum, petitioner's current sentencing claims are partly procedurally barred and partly not cognizable on federal habeas corpus review. Moreover, his sentencing claims are uniformly meritless.

## CONCLUSION

THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED IN ALL RESPECTS.

Dated:     Mineola, New York
           August 31, 2015

                         Respectfully submitted,

                         Madeline Singas
                         Acting District Attorney, Nassau County
                         Attorney for Respondent
                         262 Old Country Road
                         Mineola, New York 11501
                         (516) 571-3800

              By:     s/Sarah S. Rabinowitz
                      SARAH S. RABINOWITZ

Tammy J. Smiley
Sarah S. Rabinowitz
  Assistant District Attorneys
    *Of Counsel*

28

**Certificate of Service**

I hereby certify that, on August 31, 2015, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon:

Harold Gopaul
DIN 09-A-3978
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929

Madeline Singas
Acting District Attorney, Nassau County
Attorney for Respondent
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

By:     s/Sarah S. Rabinowitz
        SARAH S. RABINOWITZ