1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NASSAU : CRIMINAL TERM PART 49

3    ------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,      :   Indictment
4                                              :   No. 2415N/08
              -against-                        :
5                                              :   NYSID No.
                                                   2253591  Z
6    HAROLD GOPAUL,                            :
                                               :
7                            Defendant.        :
     ------------------------------------------X

8
                                   July 15, 2009
9                                  262 Old Country Road
                                   Mineola, New York
10
     B E F O R E:
11
          HONORABLE JAMES McCORMACK,
12                   Acting Supreme Court Justice

13
     A P P E A R A N C E S:
14
                HON. KATHLEEN M. RICE
15              Nassau County District Attorney
                For the People
16              BY:  JAMIE JOHNSON, ESQ.,
                          Assistant District Attorney
17                        of Counsel

18              DONALD R. SCHECHTER, ESQ.
                Attorney for Defendant
19              80-02 Kew Gardens Road
                Kew Gardens, New York  11415
20

21

22                      -SENTENCE-

23
                     *          *          *
24

25                              KAREN M. MASLER
                                Senior Court Reporter

                                                          kmm

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

kmm

 1              THE CLERK:  On the sentence calendar, the

 2      People of the State of New York against Harold Gopaul,

 3      Indictment Number 2415N of 2008.

 4              MS. JOHNSON:  For the People, assistant

 5      district attorney, Jamie Johnson.

 6              MR. SCHECTER:  On behalf of the defendant,

 7      Harold Gopaul, Donald R. Schecter, 80-02 Kew Gardens

 8      Road, Kew Gardens, New York.

 9              Before we proceed, my client has asked me,

10      and I have followed his instructions to provide this

11      Court ex-parte with a yellow piece of paper that he

12      composed himself while sitting in jail.  I have not had

13      the opportunity to look at that.  The fact my client

14      had requested that I not look at it, but I need to know

15      if there's anything within the parameters of that paper

16      which creates a conflict between the paper and myself,

17      such that I should not represent him any further.

18              THE COURT:  To answer your question, I'm

19      assuming you are talking about your Queens -- I'm

20      assuming you represented him on the Queens matter?

21              MR. SCHECTER:  I do and I represent him here

22      for sentence.  I need to know since I had not had the

23      opportunity to look at it.  I need to know if he has

24      voiced any kind of criticism or anything such that

25      could create a conflict between he and myself, that he

kmm

Proceedings                    4

1      should not be represented by me and should have a

2      lawyer that is not part of that conflict.  In which

3      case, I would have to be relieved in Queens County as

4      well.

5                  THE COURT:  Why don't both of you approach

6      for a moment?

7                  (Whereupon, there was an off-the-record

8      discussion.)

9                  THE COURT:  All right, Mr. Gopaul, I have

10     read the letter that was provided to me by one of my

11     officers this morning.  It's a three-page letter.

12     Although, it's not signed by you.  I'm assuming it was

13     written by you.

14                 THE DEFENDANT:  Yes, your Honor.

15                 THE COURT:  And in the first instance, you

16     are not asking for Mr. Schecter to be relieved; is that

17     correct?

18                 THE DEFENDANT:  That's right, your Honor.

19                 THE COURT:  And you made comment with respect

20     to, in your opinion, either having been misled or

21     having been misrepresented.  You don't really get into

22     specifics.  However, in the next paragraph you talk

23     about in conversation, I'm assuming with the law

24     librarian with the Nassau County Correctional Center,

25     in which you were asked about your plea bargain, and

1    how much jail time was involved, and you said that you

2    had no answer; is that right?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Is that what you're referring to

5    when you talk about having been misled by your attorney

6    and misrepresented?

7              THE DEFENDANT:  That is one of it, yes.

8    That's one of it.  I talk about it.  I didn't mean it

9    -- mean it the way Mr. Schecter put it to me.  I meant

10   it in a way there was things I had that we could have

11   used in the case and I didn't use them.  I didn't mean

12   it in the way he is talking that it is so insultive

13   (sic).

14             MR. SCHECTER:  I'm not taking that as an

15   insult.

16             THE COURT:  Sit down.  I want to --

17             THE DEFENDANT:  I meant it in a way maybe we

18   could work on it a little harder on what we did from

19   the -- some of the information we had, and some of the

20   evidence we had and we never used it.  That's the way I

21   was talking about the plea bargain.  When the librarian

22   talked to me, we talked about it.  When we visit the

23   librarian that he asked what was offered me, a plea

24   bargain.  And I said, Yes.  He said, What was it?  I

25   said, He offered me some probation and jail time.  He

1        asked me how much, and I didn't know.  So, I asked, I

2        asked -- I remembered with Judge Donnino, we talked

3        about three and-a-half years or something, and he told

4        you this is it.  I didn't want to tell the librarian

5        the years that was involved, the jail time years

6        involved.

7                    THE COURT:  In other words, that was a

8        decision you made about not wanting to tell the law

9        librarian about how much jail time was involved?

10                   THE DEFENDANT:  Right.  I thought it was the

11       jail plus the probation.

12                   THE COURT:  You knew how much jail time was

13       involved because I, in fact, told you that?

14                   THE DEFENDANT:  Yeah.

15                   THE COURT:  I not only told you what Judge

16       Donnino said, which at one point was three or three

17       and-a-half years concurrent to the Queens sentence.

18                   THE DEFENDANT:  Right.

19                   THE COURT:  But also at one point during the

20       course of the case, the district attorney's office

21       offered you the opportunity to plead to one count in

22       exchange for no jail and probation.

23                   MR. SCHECTER:  That's Nassau.

24                   THE COURT:  Mr. Schecter.

25                   THE DEFENDANT:  Yeah, I understand that.  But

1       I thought it was running with the jail time from the

2       other judge and I didn't know -- I know nothing about

3       the law.  I know nothing about it.  That's why he

4       explained about the judicial system.  I don't know

5       anything, and I want -- one of the reasons why is

6       because I and Mr. Schecter had arguments from

7       understanding each other, and that's one of the reasons

8       that we went to trial with this, and because he told me

9       it was jail time involved.

10                      THE COURT:  You thought there was jail time

11      involved?

12                      THE DEFENDANT:  I thought it was still jail

13      time involved with the last offer they gave me.  I

14      think they were bringing an offer over from Judge

15      Donnino with this one.

16                      THE COURT:  Let's be clear.  The only case

17      that I spoke to you about was this case.

18                      THE DEFENDANT:  Right.  Yes, your Honor.

19                      THE COURT:  And I think it was very clear.

20      In fact, I went out of my way to make it clear to you,

21      what you were facing in terms of the sentencing in this

22      case, if you were convicted; the fact of what the

23      maximum period of time was; the fact there was a

24      potential for consecutive time.  And I also

25      specifically remember on at least two occasions telling

1        you what the offer was.  And quite frankly, it was

2        Mr. Schecter that, he, himself, put the terms of the

3        offer on the record.  He told you and indicated to the

4        Court and made the representation that, in fact, he

5        told you what the plea offer was.  He discussed it with

6        you.  And I think, if my memory may be somewhat clear,

7        I believe at one point it was Mr. Schecter's

8        recommendation that you accept the offer, particularly,

9        when it came to straight probation.  And then I

10       repeated what the offer was, what the plea offer was to

11       you.  You indicated to me you understood it, and you

12       wished to proceed to trial.  That's my recollection of

13       what took place here.

14                THE DEFENDANT:  I remember what you said,

15       your Honor.  I still thought they was still bringing

16       the probation agency, still bringing jail time from

17       Judge Donnino.  I didn't know it was just a probation

18       at that time.  It was the law librarian who started to

19       talk to me and said it could be either or.  Then I said

20       that's what the problem was.

21                THE COURT:  Well, in my view, Mr. Gopaul, it

22       was made crystal clear to you what the offer was, what

23       the plea offer was in this case.  In an unusual

24       situation, the district attorney's office for some

25       unexplainable reason in my view decided to offer

1        probation at one point and we sat right here and in

2        this courtroom, as we are talking now, and it was made

3        clear by your attorney, number one, in the first

4        instance and two, followed-up by myself.

5                So, I'm somewhat skeptical when you say you

6        did not understand what the terms of the plea offer was

7        and that you were facing.  You still thought you were

8        facing jail at one point.  At one point, the plea offer

9        did involve jail but obviously it changed at one point.

10       I didn't understand probation was no jail.  When the

11       law librarian asked me -- he asked me how many jail

12       time was involved with the probation.  I said, Well, I

13       said, I don't know.  That's where we have -- that's

14       where I have a misunderstanding.

15               THE COURT:  I think, Mr. Gopaul, the record

16       that was made at that point of the case, was fairly

17       clear what the terms of the plea offer was.  And, in

18       fact, it was at one point straight probation.  Having

19       said all of that, is it your wish at this point to

20       continue with sentencing?

21               THE DEFENDANT:  I don't understand.  I don't

22       understand what you mean.

23               THE COURT:  You indicated a moment ago you do

24       not wish to discharge Mr. Schecter and hire a new

25       attorney; is that right?

kmm

```
 1                THE DEFENDANT:  I don't want him to leave.  I
 2      need Mr. Schecter.
 3                THE COURT:  Is it your wish at this time to
 4      proceed with sentencing?
 5                THE DEFENDANT:  I believe, yes.
 6                THE COURT:  Okay.  Mr. Schecter, do you want
 7      to be heard?
 8                MR. SCHECTER:  If I may, Judge, yes.
 9                My concern with Mr. Gopaul's letter was that
10      he had requested that I not look at the letter when the
11      letter went to your Honor.  And I honored his wish, I
12      didn't look at it.  I don't understand why he would
13      request I not look at the letter.  And then when the
14      letter was brought out, and I was informed that
15      Mr. Gopaul made an allegation in the letter that I
16      misled him and misrepresented him, my concern is that
17      there is alleged misconduct on my part.  And I believe
18      the code of ethics require if Mr. Gopaul believes I've
19      committed a violation of ethics, I misled him, I did
20      not tell him everything involved; how could I continue
21      to represent him?  And that's why I'm confused.
22                I was talking to him beforehand, and he
23      indicated, as he did on the record, he wants me to
24      continue to represent him, including the case in
25      Queens.
```

```
 1                  THE COURT:  Forget about Queens.  I'm not
 2      concerned about Queens.  As far as I'm concerned,
 3      Queens has no bearing on what we have right now.
 4                  MR. SCHECTER:  When the plea offer was
 5      communicated that your Honor made reference to,
 6      Mr. Gopaul alluded to the fact whether or not probation
 7      entailed a certain amount of jail.  I think Mr. Gopaul
 8      was referring to the matter in Queens, which still
 9      remained unresolved for which no offer of probation was
10      offered.
11                  Based upon my conversation with that
12      assistant district attorney, no offer of probation
13      would be forthcoming.  That, it would be, in fact,
14      prison.  So all of those things were made known to
15      Mr. Gopaul.  I don't understand anything concerning the
16      misleading.  I would ask the Court to ask Mr. Gopaul if
17      he still believes I misled him, because if he still
18      believes I misled him, I believe, under the law, the
19      code of ethics, I can't represent him.
20                  THE COURT:  Mr. Schecter, I did make inquiry
21      of your client and as you asked, I did indicate to you
22      what the content of the letter was, if it had any
23      bearing with respect to you here at the bench, and I've
24      gone over it with your client.  And it would appear to
25      me that he thinks that he was not apprised fully of the
```

1        plea offer in this case.  Which, in my view, as I

2        indicated a moment ago, in speaking to your client,

3        that he was made fully aware of what the plea offer was

4        in this case.

5              So at this point, I'm not inclined to

6        conduct any further inquiry of him.  He continues to

7        wish you to represent him and he wishes to proceed with

8        sentencing?

9              MR. SCHECTER:  Yes, your Honor.

10             THE COURT:  Is there anything you want to say

11       on behalf of Mr. Gopaul with respect to sentencing?

12             MR. SCHECTER:  Yes, your Honor.

13             If the Court pleases, I have submitted to the

14       Court many, many, many letters from people who know

15       Mr. Gopaul, including his other two children, Darien

16       and Kaitlyn.  And, of course, under the plea they miss

17       their father and want him back in their lives and wrote

18       a letter to the Court, without the knowledge of their

19       mother, apparently, requesting the Court be merciful

20       with Mr. Gopaul.  Other people have also sent letters

21       to the Court attesting Mr. Gopaul's character, how he

22       has gone out of his way to do things for people in the

23       community, how they trusted their children with him,

24       how they trusted him with doing things for them when

25       they were not able to do it.  And because he had not

1    been working at the time, rather than even thinking

2    about it, he would go and extend himself for other

3    people in the community.

4            We're focusing here, your Honor, on a certain

5    period of time in Mr. Gopaul's life.  I believe the

6    Court is going into and Ms. Johnson will go into the

7    fact Mr. Gopaul denied his guilt to the probation

8    officer.  Mr. Gopaul, to this point, to the best of my

9    knowledge, continues to deny his guilt in this matter.

10           Aside from that, Judge, I'm requesting that

11   the Court consider several factors, including the fact

12   that Mr. Gopaul was, in fact, prior to his going to

13   trial, was offered probation in this matter.  That he,

14   in fact, was convicted of sexual abuse.  He's not

15   convicted of murder.  He's not convicted of rape.  He's

16   not convicted of sodomy.  He's not convicted of any of

17   those matters over a D felony.  I'm cognizant of the

18   fact there were several counts.  Even, according to

19   Ms. Johnson, in an informal discussion with the Court

20   prior to trial, she indicated this was a pattern; all

21   part of a single group of acts.  And so, this is not

22   anything where it's treated such as a separate crime

23   because it was a situation which involved a continuance

24   of certain conduct.

25           And I'm not in any way saying that, conceding

1     Mr. Gopaul's guilt on those issues.  Although, the jury
2     said otherwise.

3              However, I'm asking the Court to consider
4     that Mr. Gopaul, even assuming the worst here, for over
5     fourteen years, supported a child and was a father to a
6     child that was not his.  He made that child's life a
7     happy one, took them on vacations, did things and acted
8     as a proper father.  My client denies having ever
9     touched her.

10             As a matter of fact, I have photographs and
11    videos, some of which the Court did not allow me to
12    introduce, but which I believe the Court saw where the
13    young lady in question actually took videos of
14    Mr. Gopaul just as if she were in a very happy
15    family-related situation.  She did not take the videos
16    under compulsion.  She did not take the photographs
17    under compulsion.  She was the person who wanted to do
18    the photographs and videos.  She was conducting the
19    video in the car.  She was conducting the video
20    laughing at Mr. Gopaul's singing in the car.  That is a
21    person not feeling abused.  That is a person enjoying
22    the conduct of someone that she has feelings for.  That
23    does not show a person who was abused.  The
24    photographs, the video of him on vacation, where she is
25    taking -- making a video of him at a body of water,

```
 1          Cozumel, some kind of vacation area.  Then the father's
 2          day pictures that she composed for Mr. Gopaul.  These
 3          are all indications, your Honor, notwithstanding the
 4          current position that she feels this way, but she
 5          cannot trust herself and all this other business.
 6          Those photographs and videos relay that kind of
 7          contention.  I'm not saying -- assuming the allegations
 8          to have been proven and true, that Ms. Sana Awan has
 9          not been affected by anything that has transpired
10          here -- what I'm saying is, he's not convicted of any
11          crime of rape.  He's convicted of a seven-year max
12          count, per count.
13               I'm respectfully asking the Court to be
14          merciful to Mr. Gopaul and consider the fact that, in
15          fact, there is not a three-year period or two-year
16          period, there's more like a seventeen-year period where
17          he acted as a father, where he acted and supported the
18          family, including a young lady, not his daughter, and
19          acted in a very appropriate way.  I'm asking the Court
20          to consider all of those factors and be merciful with
21          Mr. Gopaul.
22               THE COURT:  Ms. Johnson?
23               MS. JOHNSON:  The People's intention was to
24          stand here and ask for the defendant to be sentenced to
25          seven years, which would be the maximum, but to run
```

1     concurrent for each, that was until the People had seen

2     the probation report and despite the video confession,

3     despite the victim's testimony, despite the defendant's

4     counsel standing up at trial indicating this is a

5     consensual relationship and to this very day the

6     defendant denies any of the abuse.

7              MR. SCHECTER:   Incidentally, I object to that

8     characterization.

9              MS. JOHNSON:   Despite that, all to this day,

10    he denies each and every allegation which the jury

11    convicted him on.   And although, we're not here to talk

12    about the Queens case, I think it is relevant he has

13    not pled in Queens and Ms. Awan would be put through

14    yet another trial.   Something which, after this

15    verdict, he should at least have mercy on her to not

16    put her through this again.

17              The Court has been given a copy of Ms. Awan's

18    victim impact statement, which I would like to read

19    into the record at her request.   She did not want to be

20    here today.   She indicated not only to me, through her

21    attorney, it would be too much for her to come to court

22    emotionally, so I have also provided counsel with a

23    copy of the impact statement and it reads as follows:

24              This experience has impacted me in complex

25    ways.   My relationship with my brother and sister has

1       been especially strained.  I have not seen or spoken to
2       them for seven months.  I feel that I missed an
3       important part of their lives, and it will be hard to
4       get the relationship back.  Now they don't have a
5       father or big sister.  During these difficult times, I
6       have not been able to support them.  The repercussions
7       have been great.  No one knows the truth and there are
8       rumors about me circulating within the family and in
9       the neighborhood.  I cannot even explain myself to
10      these people because the legal issues prevent me from
11      talking about the case.  The fact that I'm not there
12      has changed everything.  I miss my brother and my
13      sister.  My mother must have had a difficult time
14      dealing with everything on her own.  I am graduating
15      and I have no one there to invite.

16              Since I told someone and left the house, I
17      have not had anyone that I can trust completely or feel
18      safe with.  I am always living in fear.  When traveling
19      to school and home, I am extra cautious and watching my
20      back to make sure I am not being followed.  At first I
21      would worry that he might come back and hurt me.  Now
22      I'm afraid that his family will want to take revenge
23      because they don't believe it happened.  In fear of my
24      family finding out where I live, I have to watch what I
25      say to friends or teachers.

1           Looking back, I realize what he did to me

2    also affected my grades.  I know that people thought my

3    grades were good throughout my education.  Looking at

4    my grades over the years, I see my averages have

5    significantly decreased in high school when the abuse

6    was going on.  In school, there were many assemblies

7    about abuse and domestic violence, but I was too

8    embarrassed to say anything.  I was distant from

9    everyone.  I was sad and conflicted about what to do.

10   I felt like two different people.  At school, I acted

11   like I was happy.  At home, I tried to stay in my room

12   and keep myself occupied.

13           I have sought help in dealing with my

14   feelings of guilt, sadness and fear.  I do not want to

15   be pitied, and I want to stop living in fear.  I just

16   want to feel safe.  I want to be assured he won't come

17   after me and I leave it to the power of the courts to

18   decide the best way to accomplish that.

19           It's our recommendation the defendant be

20   sentenced to a period of seven years per count with two

21   counts to run consecutive with the maximum post-release

22   supervision.

23           THE COURT:  Okay, Mr. Gopaul, is there

24   anything you want to say, sir?

25           THE DEFENDANT:  Yes, your Honor.

1           Your Honor, I know I was found guilty of the

2       crime, but I want you, the Court, to know that in the

3       life that we live and the place and the country I came

4       from, we always believed in like sex after marriage.

5       And in this case, we were trying to protect our

6       daughter. We were protecting her from everything that

7       she wrote in books, that she had a home, that she

8       wanted to do when she was fourteen-years old and trying

9       to be protective of her. We never want her to go to

10      the deli, run around with kids and make noise in the

11      pizza shop and stuff like that. She was to come home.

12      That is why my wife wasn't working. Besides, my wife

13      is sickly and has to have surgery. She was home with

14      the parents.

15          My daughter can come home and have a home.

16      The thing is, she was away from my home since last

17      year, June. And not one time did I ever went -- not

18      one time I ever go looking for my daughter to cause any

19      problems. And I know where she was. We all know where

20      she was. I never caused any problem. I know where she

21      works, and I never caused any problem. I had to stay

22      500 feet away from the other two children. I have

23      Kaitlyn and Darien. I'm begging for a plea, your

24      Honor. I'm begging because my wife is home, as I wrote

25      to you. Right now the business is shut down. No

1        income to my house, none at all.

2                The house, that is still promised to Sana,

3        that I want to pay for and leave it to Sana.  I have

4        other property that I want to pay off also for the

5        other children.  But I have property that belongs to

6        Sana, and as I said, she is the one that sacrificed

7        from the very beginning.  I didn't do anything to hurt

8        Sana.  And this accusation from being protective,

9        turned right back to me.  If it turned right back to

10       me, the accusation, the protective parents we wanted to

11       be, the thing is, they point right back at us, the

12       protective parents, and I found guilty of a crime.  I

13       have no proof and no evidence I could prove, and

14       there's a lot of things that could have been used in

15       the case and we never used it.

16               And, your Honor, I'm sorry, for what I put

17       this Court through not understanding my plea bargain.

18       I'm very sorry for that.  I hope that you have it in

19       your heart to see so much I did for my community, for

20       my family and to see we will lose everything with my

21       incarceration.  We're going to lose everything.  My

22       wife is -- she is not even licensed to run a business.

23       She is not licensed to do anything.  She won't be able

24       to pay anybody to do it either.  I hope you did have it

25       in your heart to believe me and to have mercy on me.

1              THE COURT:  You can have a seat, Mr. Gopaul.

2      Two things strike me about the case and about yourself,

3      and I have read the letter that was sent to me on your

4      behalf.

5              As Mr. Schecter indicated, there are numerous

6      -- they describe somebody who these various people have

7      encountered, someone big, a family man, someone

8      supportive of their family, who worked many jobs to

9      support their family.  But what is particularly

10     striking, is just the absolute lack of remorse.  I

11     understand that you deny the allegations and that's

12     notwithstanding the fact that there was a videotape

13     that was shown here where you -- and the very matter of

14     fact language described in great detail, in your words,

15     inappropriate sexual life that you are having with this

16     stepdaughter of yours that I think began at the age of

17     somewhere of fourteen or fifteen years of age.  And

18     even in your own words it was not an isolated incident,

19     but rather it was a repeated course of conduct that

20     graduated into seriousness to the point where a young

21     lady, I think of sixteen years of age, literally has to

22     flee your home in the middle of the night and run to

23     her friend's house where she had nowhere to go to

24     escape what was going to be the ultimate step in the

25     course of your behavior with her, which was to be

kmm

1       having sexual intercourse with her.  And I think you

2       even alluded to that in the videotape statement.

3                   I will read these letters from these people.

4       I read your letter here today, and I do feel sympathy,

5       particularly for your other two children that you had

6       with your wife.  But the fact that you would jeopardize

7       their lives to gratify your sexual desire is a

8       conscious decision you made, nobody else made.  You

9       decided to engage in and embark upon this course of

10      behavior.

11                  And another point, at one point in your

12      letter you talk about your family, talk about the

13      damage that has been done and will be done to them by

14      your behavior.  And you at one point, to use your

15      words, say you don't even make reference or even use

16      the name Sana Awan.  You say that this was a small

17      situation, taken so far.  That's what you think of

18      this.

19                  I read these letters from your friends and

20      from neighbors who describe Sana Awan as some

21      conniving, manipulating young lady that concocted this

22      whole web of lives, in their words, to convict you.

23      And I mean for what?  What has happened to this young

24      lady's world?  Did she come into untold amounts of

25      money?  Did she inherit some vast fortune?  She's lost

1       everything that she had.  She's lost her innocence

2       because of you.  I'm sure she will never be able to,

3       for the rest of her life, engage in a relationship that

4       is not going to be compromised and hopefully not to a

5       great degree by the behavior you've been engaging with

6       her.

7                   Her own mother, her own flesh and blood

8       abandoned her.  It was if she was a piece of garbage

9       that someone takes and puts in the garbage can, that

10      puts on the side of the street with the garbage

11      collector to come and pick up.  That's what happened to

12      this girl.  She ended up having to flee to her friend's

13      house.  She is now living in foster care with people

14      she had no idea who they were.  She talks about losing

15      the relationships she had with brothers and sisters.

16      And quite frankly, to her credit, she doesn't ask for

17      vengeance.  She doesn't ask for a particular period of

18      years of jail or anything.  But when I look at all of

19      these letters and even your own letter, I understand in

20      your probation report that you didn't want to perhaps

21      acknowledge or make any kind of incriminating statement

22      in light of the fact you had a case pending in Queens.

23      I understand that completely, but to not even

24      acknowledge what has happened to this young girl, is in

25      my view, just incredible.

1              And the other thing I'm struck with is your
2       arrogance.  I think that you felt that this young lady
3       was not going to come into court and testify to what
4       she testified to.  And believe me, the reason you got
5       convicted is because of your own conduct.  And,
6       obviously, a jury felt differently than what you think
7       the situation is.

8              As far as you not knowing what my offer was
9       in this case, believe me, Mr. Gopaul, it was made clear
10      to you by Mr. Schecter.  Quite frankly, you are
11      represented by a veteran defense attorney of many
12      years, extremely experienced, who did as good a job for
13      you, under the circumstances, as he could.  He made a
14      terrific record throughout the course of the trial,
15      pretrial hearings, the preliminary, the trial itself.

16             I recall you testifying in your own defense,
17      if you will, during the pretrial hearings.  So
18      obviously, in terms of decision-making and strategic
19      decisions were concerned, I'm very skeptical of the
20      fact of what you claim now, that you were somehow in
21      the dark about what was going on with your case.  I
22      know I made it clear to you what you were facing, that
23      you were facing seven years in jail maximum on each
24      count; that at one point the DA's office was offering
25      you probation, which you refused.  I quite frankly

1    think you thought she wasn't going to come in here and

2    testify.  And, guess what?  You were wrong.  You see,

3    by that time she was -- had broken free from your

4    grasp, if you will, and whatever power you had over her

5    all those years.  What you thought was never going to

6    get revealed, was no longer there.  There's a reason

7    you ran down to that 105 Precinct when you woke up to

8    find your daughter was no longer in the room.  And

9    believe me, Mr. Gopaul, it wasn't because you were

10   worried she was on the street corner somewhere.  You

11   were worried that she was down in some police precinct,

12   somewhere telling people what had gone on with you for

13   the last seven years.

14                So I have a great deal of sympathy for your

15   family, particularly for your children.  For the life

16   of me I can't understand why your wife, who was the

17   mother of this young daughter, would turn her back on

18   her.  But that's a decision that obviously she will

19   have to live with for the rest of her life.  And

20   hopefully, Ms. Awan, at the next milestone in her

21   life -- unlike her recent high school graduation where

22   she couldn't have somebody there to share in the

23   achievement of graduating high school -- hopefully, as

24   time goes on in her life, there will be other people

25   there that will support her, not victimize her like you

1       did in the position as a stepfather.

2              It is the judgment of this Court for the

3       crime of sex abuse in the first degree, 14 counts,

4       under Indictment 2415N of 2008, for which you stand

5       convicted after trial, you are hereby sentenced on

6       count one to a determinate term of seven years

7       incarceration with a period of five years post-release

8       supervision.

9              With respect to counts two through thirteen,

10      you are hereby sentenced to a period of incarceration

11      of seven years and five years post-release supervision,

12      concurrent on each count and that sentence under counts

13      two through thirteen are to run concurrent with the

14      sentence imposed on count one.

15             Finally, with count number fourteen, you are

16      hereby sentenced to five years determinate term of

17      incarceration, with a period of five years post-release

18      supervision.  And this sentence is to run consecutively

19      to the remaining counts.

20             With regard to the mandatory surcharge and

21      crime victims' assistance fee, you are hereby required

22      to pay a mandatory surcharge of $250, a crime victims'

23      assistance fee of $20, DNA database fee of $50, and an

24      additional $50 sex offense registration fee, as well a

25      $1,000 supplemental sex offender victim fee that is to

kmm

1      be collected by civil judgment.

2                      And finally, you have, as I understand, the

3      order of protection for Sana Awan, and you are hereby

4      committed to New York State Department of Correctional

5      Services to be dealt with according to law.

6                      MR. SCHECHTER:  With respect to the fines and

7      the crime victims' fee and so forth, my client will be

8      incarcerated for a long period of time, and as his

9      family now is destitute, the wife doesn't work, I ask

10     the Court if it's possible to waive those fees or have

11     them picked up by the state.

12                     THE COURT:  That's why I had them collected

13     by civil judgment.

14                     THE CLERK:  I have served as a copy of the

15     permanent order of protection on the defendant and

16     defense counsel, a protective order.

17                     MS. JOHNSON:  Acknowledge receipt.

18                     MR. SCHECTER:  Acknowledge receipt.

19                     THE CLERK:  Mr. Gopaul, you have the right to

20     appeal from sentence and these proceedings.  If you

21     wish to appeal, you must file a notice of appeal with

22     the Clerk of the Court within 30 days.  If you cannot

23     afford a lawyer or the minutes of these proceedings,

24     you may make an application to the Appellate Division

25     which will, upon being satisfied that you cannot afford

1           the same, order that an attorney be appointed and the

2           minutes provided without any charge to you.  Your

3           lawyer is directed by the Court to advise you in full

4           and to take whatever necessary steps indicated in this

5           regard.

6

7                    *              *              *

8

9                The foregoing is hereby certified to be a true and

10          accurate transcript of the proceedings as transcribed

11          from the stenographic notes.

12

13

14

15                       _____
                         KAREN M. MASLER
16                       Senior Court Reporter

17

18

19

20

21

22

23

24

25