Vol. I of II

1-444

1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NASSAU : CRIMINAL TERM PART 80

3    -------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,        :   Indictment
4                                                :   No. 2415N/08
                 -against-                       :
5                                                :
     HAROLD GOPAUL,                              :   SEX ABUSE 1
6                                                :
                         Defendant.              :   Trial
7    -------------------------------------------X

8                                    May 6, 2009

9                                    252 Old Country Road
                                     Mineola, New York
10

11   B E F O R E:

12              HONORABLE JAMES P. MacCORMACK,
                         Acting Supreme Court Justice
13

14
     A P P E A R A N C E S:
15

16              HON. KATHLEEN M. RICE
                Nassau County District Attorney
17              For the People
                BY:   JAMIE JOHNSON, ESQ.,
18                         Assistant District Attorney
                              of Counsel.
19
                DONALD R. SCHECHTER, ESQ.
20              Attorney for Defendant
                80-02 Kew Gardens Road - Suite 1030
21              Kew Gardens, New York  11415

22
                     *          *          *
23

24                                   WENDY SILAS
                                     Senior Court Reporter
25

                                                            ws

Proceedings                    2

1           A F T E R N O O N   S E S S I O N

2               THE CLERK:  This is the case on trial, the

3       People of the State of New York against Harold Gopaul,

4       Indictment 2415N of 2008.

5               Are the People ready?

6               MS. JOHNSON:  Yes, we're ready.

7               THE CLERK:  Is defense counsel ready?

8               MR. SCHECHTER:  Ready.

9               THE COURT:  Mr. Schechter?

10              MR. SCHECHTER:  Yes, I notice on the People's

11      witness list they're having Denise Alioto and Christine

12      Alioto.

13              Denise Alioto is the former foster parent of

14      Sana Awan and Christine is her daughter.

15              Counsel, I would imagine based upon her

16      representations to the Court, is going to use one or

17      both as instant outcry witnesses.  I think that using

18      them both would be cumulative and bolstering and

19      improperly bolstering and I would ask for an offer of

20      proof as to the reason why Denise Alioto is being used,

21      the mother is being used, as a witness.

22              From what I understand, Christine Alioto is

23      the instant outcry witness.

24              MS. JOHNSON:  Judge, she is not -- the mother

25      is not only an outcry witness along with the daughter,

                                                        ws

Proceedings                    3

1      but the mother actually takes the victim into her own

2      home, cares for her during the time that she is removed

3      from the defendant's home, brings her to the precinct

4      to report the incident.  She's -- chronologically,

5      she's part of the narrative of events and she's part of

6      the prompt outcry aspect of the case.

7                    THE COURT:  What relevance would Denise

8      Alioto, insofar as her caring for Sana Awan -- assuming

9      this is all post-arrest, yes?

10                   MS. JOHNSON:  Yes, Judge.

11                   THE COURT:  What relevance does that have to

12     do with your case or proving the elements in your case?

13                   MS. JOHNSON:  It's important for the jury to

14     understand that aside from the outcry aspect of it,

15     that the victim was living with this family as she was

16     removed by her own choice, eventually by probably CPS's

17     choice, from the defendant's home.

18                   THE COURT:  And what does that add to your

19     case other than, perhaps, shedding some sympathy for

20     the victim?

21                   MS. JOHNSON:  I don't think it's sympathy for

22     the victim, it's to explain that -- and it corroborates

23     the victim's testimony that she didn't go back to the

24     home, that she stayed with this family -- she's no

25     longer living with them anymore, she's actually living

                                                        ws

Proceedings                    4

1       on her own.

2                   MR. SCHECHTER:  Denise could provide that --

3       the child could provide that, Christine.  That's the

4       instant outcry witness.

5                   THE COURT:  Right, I'm not going to permit

6       some other witness's testimony about where this

7       complainant lived after the event.  I mean, certainly

8       the complainant could testify to that.

9                   The other issue is are both of these people

10      going to be put forth as prompt outcry witnesses or is

11      there just one?

12                  MS. JOHNSON:  They are both, your Honor.

13                  THE COURT:  And both in the sense that

14      they're both there at the same time or there's -- is

15      there two instances of prompt outcry?

16                  MS. JOHNSON:  What happens is the victim

17      calls Christine Alioto, the best friend, the teenager,

18      and outcries to her.

19                  Immediately Christine panics and gives the

20      mother to her phone (sic) and in the same phone call,

21      seconds later, she outcries to the mother and then the

22      mother comes with Christine to pick up the victim to

23      take them to the 105th Precinct.

24                  So obviously they would not be testifying as

25      to the nature of the complaint, the mere outcry and

                                                          ws

Proceedings                    5

1    timing of it, because the mother does speak with the

2    victim on the phone along with the friend.

3              THE COURT:  Does the victim say the same

4    thing to both of them or says only certain things to

5    the daughter -- to the friend, I should say, and then

6    certain things to the mother?

7              MS. JOHNSON:  In sum and substance it is

8    pretty similar to what she says to both of them.

9              THE COURT:  And you're objecting to that?

10             MR. SCHECHTER:  As bolstering and cumulative.

11   The only purpose for it is to show sympathy.

12             Additionally, if you will you'll recall, I

13   had subpoenaed ACS records.  Part of the ACS records

14   are the reasons she left that home.

15             I have reason to believe she left that home

16   under very negative circumstances and I believe ACS has

17   a record of that and I would like to know what those

18   records contained and I believe those records were

19   subpoenaed.  I don't know if they sent them to the

20   Court.

21             THE COURT:  I have not received the FedEx

22   package.  They told me I was going to get it, unless

23   it's at the clerk's office across the way.

24             MR. SCHECHTER:  I need those records, your

25   Honor, simply to as --

                                                         ws

Proceedings                    6

1          THE COURT:  I understand.

2          And also, I would just indicate to you as

3    well, certainly it's my position that any statements

4    made by the complainant insofar as -- concerning the

5    allegations with respect to your client, I would

6    certainly consider to be Rosario material, that you

7    would be entitled to them.

8          On the other hand, as I looked at the

9    subpoena closely, you also asked for information

10   concerning the removal of the complainant from

11   Ms. Alioto's home.

12          MR. SCHECHTER:  Yes.

13          THE COURT:  And, as with the People, I also

14   would have the same view as to the defendant as to the

15   relevancy of that material insofar as this trial is

16   concerned.

17          MR. SCHECHTER:  They're putting a witness or

18   two witnesses on the stand basically to say that --

19   lovey-dovey, lovey-dovey, lovey-dovey, "We took her

20   into our house.  She told us she was sexually abused.

21   We went to the precinct and, oh, Lordy."

22          She made statements, from what I understand,

23   my investigation has revealed, she was ejected from the

24   adoptive parents' house.  They threw her out of the

25   house.

                                                    ws

Proceedings                    7

1          Now, I want to know why.  I think I'm

2   entitled to know why, especially if she's going to call

3   them as witnesses and I should not be bound by what

4   they say on the witness stand to possibly put

5   themselves in a favorable light.

6          THE COURT:  If she was ejected what relevance

7   would that have?

8          How would that play into your defense?

9          How would that be relevant to the jury's

10  consideration of the charges here?

11         MR. SCHECHTER:  Because I don't know what

12  things she said to them.  There were things going back

13  and forth at this time by the complaining witness and

14  them and I don't know what was said by each to the

15  other.  There was a reason why she left that house and

16  she didn't leave that house under favorable

17  circumstances and I'm entitled to know that.

18         I had attempted to find that out.  I had my

19  investigators attempt to speak to Ms. Alioto and he was

20  told in no uncertain terms that she under no

21  circumstances will speak to him.

22         So I would like, if possible, to get that

23  information I subpoenaed for at least to have the Court

24  look at it.

25         THE COURT:  I have every intention of looking

                                                      ws

Proceedings                              8

1      at it, but you're talking about something that

2      obviously happened months after --

3                  MR. SCHECHTER:  Yes.

4                  THE COURT:  -- your client was arrested, I

5      assume.

6                  MR. SCHECHTER:  Yes, within the last month or

7      two.

8                  THE COURT:  And other than probably some

9      indication in those records that, yes - and, again, I

10     haven't seen them - that there was some indication

11     there that the Aliotos thought that Sana Awan had made

12     up these allegations concerning your client or had

13     fabricated them, for example, for some reason of her

14     own, that I would think you would certainly be entitled

15     to, even if it was, perhaps, post your client's arrest.

16                 But the circumstances under which she may

17     have been removed from the Alioto's house, I really --

18     I'm going to look at the records, but I don't see what

19     that would have to do or why, for that matter, those

20     materials would have to be turned over to you other

21     than in the circumstance I was just indicating.

22                 The same way I don't think the People are

23     going to be entitled to elicit from the Alioto's the

24     circumstances under which Sana Awan had lived in their

25     house.

                                                          ws

Proceedings                              9

1              People, you better make a choice as to which

2       of the Alioto's you're going to be calling for your

3       prompt outcry.

4              MS. JOHNSON:   Well, your Honor, if that's the

5       Court's ruling we would intend to call the friend as

6       the outcry witness, but I would still offer the mother

7       for purposes of her testimony that she picked up Sana

8       Awan and brought her to the precinct on such and such a

9       date at such and such a time and if that would be the

10      scope of her testimony, then that would be it.

11             THE COURT:   Then that would be the scope of

12      her testimony.

13             MS. JOHNSON:   I would submit to the Court --

14             THE COURT:   Okay.

15             MS. JOHNSON:   -- that I should at least ask

16      her whether or not, without the circumstances, if Sana

17      lived with her, but the Court would not allow that,

18      then her limited testimony would be simply from when

19      and where they picked Sana up and where they went.

20             MR. SCHECHTER:   Was Christine with her?

21             If she was, Christine could also testify, "My

22      mother, Sana and I went to the precinct."

23             THE COURT:   I'm not going to start nitpicking

24      or previewing what these witnesses are going to say.

25             Obviously, I've made a ruling that the People

                                                        ws

Proceedings                    10

1    are going to be forced, if you will, for lack of a

2    better expression, to choose one of the two as far as

3    an outcry witness is concerned.

4            I'll allow them to elicit the fact that the

5    mother drove the complainant to the precinct and

6    dropped her off.

7            Insofar as the living relationship or

8    relationship thereafter between the complainant and Ms.

9    Alioto, I don't think it's relevant for this jury.

10           Mr. Schechter, I know I gave you or somebody

11   gave you the Antommarchi waiver.

12           MR. SCHECHTER:  I gave it to the officer to

13   give to your Honor.

14           THE OFFICER:  I gave it to the clerk.

15           MS. JOHNSON:  Does your Honor's ruling with

16   regard to what Mrs. Alioto be able to testify to also

17   apply to the victim?

18           I believe it would be relevant for the victim

19   to testify after the incident and up until now she is

20   not living with the defendant and has removed herself

21   from the home, was living with a friend who she trusted

22   and now is living out on her own.

23           THE COURT:  In terms of background

24   information regarding your client and her current

25   situation I will allow that, but on a very limited

                                                    ws

Proceedings                        11

1    basis.

2                   Mr. Gopaul, I'm showing you what is a --

3    what's known as a waiver of right to be present during

4    sidebar conference, otherwise known as an Antommarchi

5    waiver.  It bears your name, today's date.  It reads as

6    follows:

7                   "Defendant Harold Gopaul, having been

8    furnished with a copy of Indictment 2415N/08 and having

9    been informed of his right to be present during sidebar

10   discussions with prospective jurors and/or discussions

11   of law and after consulting with his attorney hereby

12   gives up his right to be present during such sidebar

13   conferences.  This waiver may be revoked at any time."

14                  Is that your signature that appears -- one of

15   the two signatures that appears at the bottom right of

16   that paper?

17                  THE DEFENDANT:  Yes, your Honor.

18                  THE COURT:  And, Mr. Schechter, that's your

19   signature that appears below?

20                  MR. SCHECHTER:  It is.

21                  THE COURT:  And, Mr. Gopaul, you had an

22   opportunity to go over this Antommarchi waiver and its

23   meaning with Mr. Schechter?

24                  THE DEFENDANT:  Yes, your Honor.

25                  THE COURT:  And is it your intention at this

1        time to waive your Antommarchi rights?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  And you do so freely and

4        voluntarily?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Do you have any questions of me

7        regarding this waiver?

8                    THE DEFENDANT:  No.

9                    THE COURT:  And as indicated in the waiver,

10       if you should change your mind at any time just

11       indicate that to Mr. Schechter.

12                   THE DEFENDANT:  Okay.

13                   THE COURT:  That will be marked as Court

14       Exhibit Number 1 -- Court Exhibit Number 2, excuse me.

15                   MS. JOHNSON:  What was Number 1?

16                   THE CLERK:  Rosario material.

17                   THE COURT:  Speaking of Rosario material,

18       People, you indicated your office is copying the

19       Rosario material?

20                   MS. JOHNSON:  They're doing it now, Judge.

21                   THE COURT:  I'm going to ask if at the end of

22       today you could provide the complete set of Rosario

23       material to Mr. Secretary Schechter.

24                   MS. JOHNSON:  I don't think I'm going to have

25       it done by the end of today.  I can give him what I

                                                          ws

1      have.

2              THE COURT:   What you have or if Mr. Schechter

3      chooses to have it in the complete package by tomorrow

4      morning.

5              I indicated to Mr. Schechter that what I'm

6      intending to do is pick over the next two days,

7      depending on how fast we go.  I don't think we'll go

8      beyond opening statements, at best, on Friday, if it

9      goes that far.

10             If not, we'll open and start with testimony

11     on Monday, so --

12             MS. JOHNSON:   When would the Court be able to

13     tell us, just so I can start getting subpoenas for

14     witnesses?

15             THE COURT:   I would definitely subpoena your

16     witnesses for Monday.  There's going to be no testimony

17     between now and the end of the week, so the testimony

18     wouldn't won't start until Monday.  The most beyond

19     jury selection will be opening statements.

20             MS. JOHNSON:   Okay.

21             THE COURT:   I indicated what -- what I

22     indicated to you previously, Mr. Schechter, and just to

23     put it on the record, that in terms of the

24     pre-screening, I'll tell the jurors very briefly the

25     nature of the case, the charges, after I introduce both

                                                          ws

Proceedings                    14

1   counsel and the defendant.

2              I will then conduct a pre-screening.  I will

3   tell them that we anticipate the case to be over by

4   May 22nd, which is approximately a little over two

5   weeks; that if anybody has any type of planned

6   vacation, business trip, medical procedure that they

7   cannot rescheduled, any issue with regard to elder care

8   or child care that would render them unable to sit

9   during the course of the trial, what I will then do is

10  have one of my officers then direct them up

11  individually.

12             I will have them come up, identify themselves

13  in front of the bench here.  We'll hear what they have

14  to say in terms of their reasons.  I will not ask my

15  reporter to take down their explanations as they come

16  up.

17             However, if either one of you feel for any

18  reason that you would want to have a record of what

19  these prospective jurors say, by all means let me know

20  and I will certainly give you that, okay?

21             MS. JOHNSON:  Judge, we just have to make the

22  motion to amend the indictment so that Jane Doe now

23  reads as Sana Awan, S-a-n-a, A-w-a-n, with regards to

24  all 14 counts on the indictment.

25             THE COURT:  All right, Mr. Schechter, do you

ws

Proceedings                        15

1        want to be heard on that at all?

2                  MR. SCHECHTER:  No, I have no objection.

3        That's going to be a matter of course anyway.

4                  THE COURT:  All right, anything else before

5        we bring in the prospective jurors?

6                  MS. JOHNSON:  No, nothing from the People.

7                  THE COURT:  Anything, Mr. Schechter?

8                  MR. SCHECHTER:  Not at this time, your Honor.

9                  THE COURT:  Okay.

10                 (Panel of prospective jurors enters the

11       courtroom.)

12                 THE CLERK:  The case on trial, the People of

13       the State of New York against Harold Gopaul,

14       Indictment 2415N of 2008.

15                 Are the People ready?

16                 MS. JOHNSON:  We are ready.

17                 THE CLERK:  Defense counsel ready?

18                 MR. SCHECHTER:  We're ready, your Honor.

19                 THE COURT:  Okay, good afternoon, prospective

20       members of our jury panel.

21                 My name is Judge McCormack.  You are now in

22       the Nassau County Court.  I understand that you just

23       left central jury in Supreme Court.

24                 We're about to begin the selection of a jury

25       in a criminal case.  I'm going to tell you a little bit

                                                           ws

Proceedings                    16

1    about the case in a moment and get into your roles,

2    should you be selected as jurors in this particular

3    case.

4              But before I do that I need to have my clerk

5    swear everybody in, so if you would just kindly rise

6    and give your attention to my clerk?

7              (Panel of prospective jurors duly sworn as to

8    their qualifications.)

9              THE COURT:  Okay, have a seat, everybody.

10             For those of you that are seated in the jury

11   box, I have some good news.  The fact that you're

12   seated there doesn't mean that you've already been

13   picked as the jury in this case.  I wish it was that

14   easy, but it's not.

15             As I indicated to you, prospective members,

16   you're in the County Court.

17             My name is Judge McCormack.  Judge Sullivan,

18   this is his courtroom.  He's been kind enough to allow

19   us to use it.  As you can tell, we barely fit enough

20   prospective jurors for us to really kind of get through

21   a couple of panels in terms of jury selection, so

22   that's why we're here.  My courtroom is down the hall.

23             We've just -- we're just beginning, if you

24   will, the jury selection in this case so I just want to

25   just tell you at the outset that all of you that are

Proceedings                          17

1      here will be here for this afternoon and I feel very

2      confident that you'll all be back or some of you will

3      be back with me tomorrow.  As I indicated, we just

4      began jury selection right now.

5                  As I indicated, this is a criminal case.  The

6      title of the action is the People of the State of New

7      York against Harold Gopaul.

8                  The charges in this case are sexual abuse in

9      the first degree.  It is alleged that between May of

10     2008 and June of 2008, that the defendant had engaged

11     in sexual conduct by forcible compulsion with Sana

12     Awan.

13                 Now, the fact -- what I'm reading from is an

14     indictment and an indictment is only the means by which

15     a felony case is tried in the State of New York.

16                 The fact that I'm referring to an indictment,

17     the fact that there is an indictment that is filed, has

18     no evidentiary value whatsoever.  It doesn't mean the

19     defendant is guilty or not guilty and you're not to

20     consider the fact that an indictment has been filed as

21     any inference negative or otherwise with respect to the

22     defendant.

23                 It's anticipated that this trial is going to

24     last approximately two weeks.  By that I mean it's

25     probably going to conclude May 22nd, which is two weeks

                                                        ws

Proceedings                    18

1    from this Friday.

2              What I'm going to do at this point is

3    introduce the parties in this case that will be trying

4    this case and defendant himself.

5              Seated at the first table to my immediate

6    right is Ms. Jamie Johnson --

7              MS. JOHNSON:  Good afternoon, everyone.

8              THE COURT:  -- from the Nassau County

9    District Attorney's Office.  She's an Assistant

10   District Attorney representing the office of Ms.

11   Kathleen Rice.

12             Seated at the next table to my far right is

13   Mr. Harold Gopaul.

14             THE DEFENDANT:  Good afternoon.

15             THE COURT:  And seated next to Mr. Gopaul is

16   his attorney, Donald Schechter.

17             MR. SCHECHTER:  Good afternoon.

18             THE COURT:  Now, I've told you a little bit

19   about the nature of the case and the length of the

20   case.

21             What I'm going to do at this point is I want

22   to conduct, if you will, a pre-screening and I want you

23   to listen carefully to what I'm about to say.

24             I told you the case is going to last

25   approximately two weeks, to May 22nd.

ws

Proceedings                    19

1           Just keep in mind the following:

2               We typically will try cases between somewhere

3       in the range of 10 o'clock, 10:30, we usually try to

4       break by 4:30 or as close thereto as possible.

5               I do have a regular calendar every day, so

6       sometimes my start times may not be as predictable, if

7       you will, as you may like, but I try to do my best to

8       start the case at the time that I tell you to be here

9       and every day, if you're selected as a juror in this

10      case, you know, the times may change but, as I

11      indicated, I try to be as close to the time as

12      possible.

13              One thing to keep in mind, there is no longer

14      any sequestration in the State of New York, so nobody

15      has to be concerned about the fact that they're going

16      to be -- if you're selected as a juror and during your

17      deliberations you're unable -- or during the course of

18      your deliberations you're going to be sequestered in a

19      hotel somewhere.  Everybody goes home every day,

20      whether during the trial as well as during

21      deliberations.  I don't want anybody to be concerned

22      about that.

23              But what I'm going to ask is that if there's

24      anybody here, and I want to try to do this in as

25      orderly fashion as possible, has, in the next two

Proceedings                    20

1     weeks, from now until May 22nd, either a planned

2     vacation or a business trip - and I've been known on

3     occasion to ask you for proof of that so I may ask you

4     to come back tomorrow morning and show me the plane

5     tickets or itinerary - any type of planned medical

6     procedure that you cannot reschedule, any issue with

7     regard to child care - keep in mind the hours I just

8     indicated that we would be sitting - or elder care for

9     that matter, anybody who takes care of an elderly

10    parent or loved one.

11          So, again, business trip, vacation planned,

12    any type of medical -- any type of medical procedure, I

13    should say, that's going to take place over the next

14    two weeks and any issue with regard to child care or

15    elder care.

16          Now, please, what I'm going to ask Kenny, if

17    you would, we'll do the -- what we'll do is we'll do

18    the jury box first and then we'll move to the back.

19          So the first row in the jury box right

20    directly in front of me, does anybody meet, and only

21    those people that would meet, that criteria?

22          (Discussion held at the bench, off the

23    record.)

24          THE COURT:  You can come on up.

25          One thing, and I failed to point this out, if

                                              ws

Proceedings                    21

1    you get excused from this case just please bear in mind

2    I cannot excuse you from jury duty, so I will be

3    directing you back to Central Jury.  So just please

4    keep that in mind.

5              (Discussion held at the bench, off the

6    record.)

7              THE COURT:  All right, that concludes our

8    pre-screening process.

9              And I don't mean to inconvenience those of

10   you that are in the box, but, as I indicated to you,

11   the fact that you're sitting there doesn't mean that

12   you've been selected as a juror, but what we are going

13   to do now is start to fill that box, so if I could

14   indulge you or you can indulge me, I should say, and if

15   you could just find a seat back out in the audience, I

16   would appreciate it.

17             Just watch your step, particularly those in

18   the second row, as you step off.

19             (Pause in the proceedings.)

20             THE COURT:  All right, so, at this point what

21   we're going to did is we're going to fill the seats in

22   the jury box.

23             As you step into the box in the first row,

24   just go all the way to the back.  That will be the

25   closest seat to where you prospective jurors are seated

                                                    ws

Proceedings                    22

1      at this point and then with respect to the second row,

2      again, all the way to the back and, obviously, fill in

3      the seats as you go forward.

4                As your name is called, please just bring all

5      of your personal belongings with you.  Don't leave

6      anything in your seats, okay?

7                THE CLERK:  Seat 1, Eric Ross, R-o-s-s;

8      Seat 2, K.S. Mellish, M-e-l-l-i-s-h; Seat 3, Richard

9      Riley, R-i-l-e-y; Seat 4, Rena Cohen, C-o-h-e-n;

10     Seat 5, Frances Arroyo, A-r-r-o-y-o; Seat 6, Brian

11     Murray, M-u-r-r-a-y; Seat 7, Frank DeBenedittis,

12     D-e-B-e-n-e-d-i-t-t-i-s; Seat 8, Marilyn Garfinkel,

13     Garfinkel; Seat 9, Daisy Kohler, K-o-h-l-e-r; Seat 10,

14     Kelly Farina, F-a-r-i-n-a; Seat 11, Frank Mazza,

15     M-a-z-z-a; Seat 12, Maureen McHugh, M-c-H-u-g-h;

16     seat 13, Frederick Wu, W-u; Seat 14, Samuel Hoy, H-o-y.

17                THE COURT:  Okay.

18                Could I just see both counsel very quickly

19     before we begin?

20                (Sidebar conference held as follows:)

21                THE COURT:  I neglected to ask you about me

22     charging no adverse inference if your client decides --

23                MR. SCHECHTER:  Yes.

24                THE COURT:  You want me to do that?

25                MR. SCHECHTER:  Yes.

Proceedings                          23

1              THE COURT:  Okay.

2              (Sidebar conference concludes.)

3              THE COURT:  Okay, prospective members of the

4       jury, again, thank you.  Let me thank you for being

5       here this afternoon.

6              I've introduced the parties to the case who

7       are going to be trying this case and the defendant.

8              Does anybody here know either myself, the

9       Assistant DA, Mr. Schechter or Mr. Gopaul?

10             Anybody?

11             Okay, there's people that are going to be

12      involved in this case, prospective witnesses, who

13      obviously you're not going to hear from or see today,

14      but I just want to read -- at this time read their

15      names and again ask you the same question, if any of

16      the 14 -- let me just say, those of you that are seated

17      outside in the audience, if you will, I'm going to ask

18      you, although you're not in the box, as I indicated to

19      you we just began jury selection so more than likely if

20      not today, certainly by tomorrow you're going to be

21      seated in the jury box, so not only myself, but the

22      attorneys as well, this way when you get in the jury

23      box, you'll kind of have an idea of the process and

24      kind of questions that are going to be asked, so I

25      would ask you to listen to what's being said at this

Proceedings                    24

1     time.

2              For those of you that are in the jury box at

3     this time, the following are the names of prospective

4     witnesses.  It doesn't necessarily mean that they will

5     definitely testify, but they are names of either

6     witnesses you may hear or witnesses during the trial:

7     Sana Awan, A-w-a-n, Denise Alioto, A-l-i-o-t-o,

8     Christine Alioto, A-l-i-o-t-o, Detective Leonard

9     Shulman of the New York City Police Department, the

10    105th Squad, Police Officer Cecilia (sic) Alfaro of the

11    Police Department, 105th Precinct in Queens, Assistant

12    District Attorney Brian Hughes of the Queens County

13    DA's Office and Assistant District Attorney Jared

14    Rosenblatt, also of the Queens County DA's Office.

15              Does anybody either recognize those names,

16    heard of those people and if for any reason you do,

17    indicate by a show of hands?

18              Anybody?

19              Okay, seeing no hands I'm going to assume

20    nobody knows either myself, the attorneys or the

21    prospective witnesses in this case.

22              All right, I'm going to first give you an

23    overview of what your role will be as a juror if you're

24    selected in this case, what my role is going to be in

25    the case.

                                                         ws

Proceedings                    25

1           I'm going to go and explain, not in great

2      detail, but to some degree, certain principles of law

3      that you will -- that apply in any criminal case.

4           And at the close of that I'm going to ask all

5      of you if you could apply that law, regardless of your

6      personal belief or other considerations.  In other

7      words, apply the law as I give it to you, both from now

8      what you're going to be hearing from me preliminarily,

9      as well as at the close of the case.

10          I'm then going to ask questions of you

11     individually.  I will start in the manner in which you

12     were seated.

13          One thing I just want to keep in mind and

14     tell everybody, that we're not here to embarrass

15     anybody, to make anybody feel uncomfortable.  I'm well

16     aware of the fact that you're sitting here in an open

17     courtroom amongst strangers.  We're not looking to pry

18     into your personal lives.  We are not looking for you

19     to reveal what you may feel is embarrassing

20     information.

21          If there's anything about either the

22     questions I ask or anything that the attorneys may ask

23     you that you feel you want to say in private, you have

24     that right and I would accord you that right.  Just

25     tell us that and I will certainly make that available

                                                        ws

Proceedings                    26

1      to you.  You can do it here privately with myself and
2      the attorneys and my court reporter, so please don't be
3      shy about that.  I don't want anybody to feel that
4      because of this process they have to reveal things that
5      they may feel are of an uncomfortable nature, if you
6      will.
7              The other thing is that at the end of my
8      questioning of you then each of the attorneys will then
9      have an opportunity to question you as well as to your
10     qualifications as jurors.
11             At the end of that each of the attorneys will
12     then consider, if you will, their choices and make
13     whatever decisions they fail is appropriate for this
14     case.
15             So, having said that, let me just explain to
16     you what a trial, particularly in a criminal case, is
17     about.
18             A trial is the process which determines if
19     the defendant is guilty or not guilty of the charges
20     that I read to you or referred to you a moment ago.
21             In that process, those of you who are
22     selected as jurors and I as the judge perform separate
23     functions.
24             As jurors you are going to be called upon to
25     determine whether or not the evidence which you shall

                                                    WS

Proceedings                    27

1    hear and see in this case establishes the defendant's

2    guilt beyond a reasonable doubt.

3            In order to do this, at the end of the trial

4    you'll have to evaluate all the evidence and determine

5    what evidence that you have heard from the witnesses

6    and seen as exhibits is credible and what it means.

7    This is called finding the facts.  That will be your

8    function alone.  I will not find facts in this trial.

9            Your ultimate decision is called a verdict.

10   Your verdict will either be guilty or not guilty.

11           The attorneys here will present -- the

12   attorneys, I should say, will present the evidence,

13   usually by calling witnesses, and may suggest in their

14   closing arguments that you draw certain conclusions

15   from the evidence.

16           You are not bound by what the attorneys say.

17   Only you can decide what really happened and the

18   verdict as to each of the counts will remain your

19   decision alone.

20           As judge I make no determination of guilt or

21   lack of guilt.  My role at trial is to insure that you

22   reach your verdict in accordance with the applicable

23   law as I will explain it to you.

24           In order for the People and the defendant to

25   receive a fair trial I may have to rule on questions

1    concerning the conduct of the trial.  Those rulings

2    have nothing to do with whether the defendant is guilty

3    or not guilty.

4              I may also rule on questions concerning what

5    evidence you may consider and for what purpose.

6              When I make a ruling concerning whether you

7    may hear some testimony or see some exhibit which is

8    offered as evidence I will be ruling on whether or not

9    you are permitted to hear or see it as a matter of law.

10             Likewise, if I instruct you to disregard

11   something you might have heard I will do so because

12   that is the law.

13             None of my rulings should be taken by you as

14   any indication at all of whether you should believe all

15   or part of what is offered as evidence or that the

16   defendant is guilty or not guilty.  That is solely for

17   you to determine.

18             You must accept the law as I give it to you

19   if the defendant and the People are to have the fair

20   trial to which they are entitled to.

21             You have heard my reference to the fact when

22   I read the charges in reference to an indictment.

23   This, too, is not and must not be taken as any evidence

24   of guilt.  An indictment is simply a piece of paper by

25   which a defendant is accused of a crime.

ws

Proceedings                    29

1           Remember, the defendant is presumed innocent.

2       Only you, as members of the trial jury, will determine

3       whether the defendant is guilty or not guilty.

4           A number of you will not be selected to serve

5       on this case, but this is not a reflection on you,

6       either as a citizen or as a person.  It is simply a

7       decision reached during the selection process that you

8       are not to sit on this particular case.

9           As I indicated, my role at the trial, the

10      role of any judge, is to help insure a fair and orderly

11      trial in accordance with our law.  I will do that by

12      presiding over the trial, deciding questions of law

13      that may arise between and among the parties and

14      explain to you, the jury, as I am now, what the law is

15      and that the jury must accept the law as I give it.

16          Thus, we are both judges in this case, but

17      it's important to recognize that we judge different

18      things.

19          You, the jury, judge the facts of the case in

20      order to reach a verdict of guilty or not guilty and I

21      judge the law, meaning I decide questions of law and

22      instruct the jury on the law.

23          Again, as I indicated already, I do not

24      decide the facts.  I do not decide whether the

25      defendant is guilty or not guilty.

Proceedings                    30

1           Again, the reason for that is simple.  Under

2      our law that is not my job, it is your job.  You, the

3      jury, and you alone judge the facts and render a

4      verdict of guilty or not guilty.

5           If there is a verdict of guilty it is my

6      responsibility to impose an appropriate sentence.

7      Thus, in deciding whether the defendant is guilty or

8      not guilty you must not consider or speculate about

9      matters relating to sentence.

10          To decide the facts of this case you must

11     consider only the evidence presented in this case in

12     this courtroom.  So it is important that you understand

13     what evidence is because that is what you base your

14     decision on and it is important to consider some things

15     that you will hear about that are not evidence because

16     you are not -- you do not base your decision on those

17     things.

18          First, what is evidence?

19          There are basically three types of evidence.

20          One, there is evidence that comes from a

21     stipulation of the parties.  A stipulation is

22     information both the parties agree to present to the

23     jury as evidence without calling the witness to testify

24     to the information.

25          Two, there is evidence that comes from the

ws

Proceedings                31

1        introduction into evidence of physical objects such as

2        documents, photographs, clothing or a chart.

3                Three, and finally, and the most common form

4        of evidence, is the testimony of people based on

5        questions asked by the lawyers and occasionally by the

6        Court.

7                What is not evidence?

8                First, the charges in this case that are set

9        forth in the document known as an indictment.   The

10       indictment is simply a piece of paper that states the

11       charges.   The defendant has pled not guilty to the

12       charges contained in the indictment and the trial is to

13       decide whether the defendant is guilty or not guilty.

14               Second, what the lawyers say at any time is

15       not evidence.   The lawyers are not witnesses.

16               And what I say, for that matter, is not

17       evidence.   I am not a witness.

18               Third, a question of a witness by a lawyer or

19       by the Court is, by itself, not evidence.   It is the

20       question with the answer that is evidence, so you are

21       not to conclude from a question alone that anything

22       assumed in the question to be true is true, no matter

23       how detailed or specific the question is, nor are you

24       to draw any inference, either favorable or unfavorable

25       to either side, from the content of the question alone.

1    You must consider the question with the witness's

2    answer and decide whether you find the answer

3    believable and accurate.  Because, again, it is the

4    question with the answer that is the evidence.

5          We now turn to some fundamental principles of

6    our law that apply in all criminal trials; the

7    presumption of innocence, the burden of proof and the

8    requirement of proof beyond a reasonable doubt.

9          Throughout these proceedings the defendant is

10   presumed to be innocent.  As a result, you must find

11   the defendant not guilty unless, on the evidence

12   presented at this trial, you conclude that the People

13   have proven the defendant guilty beyond a reasonable

14   doubt.

15         Also, the fact that a defendant does not

16   testify as a witness is not a factor from which any

17   inference unfavorable to the defendant may be drawn.  A

18   defendant is not required to prove that he is not

19   guilty.  In fact, a defendant is not required to prove

20   or disprove anything.

21         To the contrary, the People have the burden

22   of proving the defendant guilty beyond a reasonable

23   doubt.

24         That means before you could find the

25   defendant guilty of a crime the People must prove

ws

1    beyond a reasonable doubt every element of the crime,

2    including the -- including that the defendant is the

3    person who committed that crime.

4              The burden of proof never shifts from the

5    People to the defendant.  If the People fail to satisfy

6    their burden of proof you must find the defendant not

7    guilty.

8              If the People satisfy their burden of proof

9    you must find the defendant guilty.

10             What does our law mean when it requires proof

11   of guilt beyond a reasonable doubt?

12             The law uses the term proof beyond a

13   reasonable doubt to tell you how convincing the

14   evidence of guilt must be to permit a verdict of

15   guilty.

16             The law recognizes that in dealing with human

17   affairs there are very few things in this world that we

18   know with absolute certainty.

19             Therefore, the law does not require the

20   People to prove a defendant guilty beyond all possible

21   doubt.

22             On the other hand, it is not sufficient to

23   prove that the defendant is probably guilty.  In a

24   criminal case the proof of guilt must be stronger than

25   that, it must be beyond a reasonable doubt.

ws

1           A reasonable doubt is an honest doubt of the

2      defendant's guilt for which a reason exists based upon

3      the nature and quality of the evidence.  It is an

4      actual doubt, not an imaginary doubt.  It is a doubt

5      that a reasonable person, acting in a matter of this

6      importance, would be likely to entertain because of the

7      evidence or because of the lack of evidence.

8           Proof beyond a reasonable doubt is proof that

9      leaves you so firmly convinced of the defendant's guilt

10     that you have no reasonable doubt of the existence of

11     any element of the crime or of the defendant's identity

12     as to the person who committed the crime.

13           In determining whether or not the People have

14     proven the defendant's guilt beyond a reasonable doubt

15     you should be guided solely by a full and fair

16     evaluation of the evidence.

17           If -- after carefully evaluating the evidence

18     each of you must decide whether or not that evidence

19     convinces you beyond a reasonable doubt of the

20     defendant's guilt.

21           Whatever your verdict may be, it must not

22     rest on baseless speculation or by prejudice, sympathy

23     or a desire to bring an end to your deliberations or to

24     avoid an unpleasant duty.

25           If you are not convinced beyond a reasonable

ws

Proceedings                    35

1    doubt that the defendant is guilty of a charged crime,

2    you must find defendant not guilty of that crime.

3              If you are convinced beyond a reasonable

4    doubt that the defendant is guilty of a charged crime

5    you must find the defendant guilty of that crime.

6              As judges of the facts you alone determine

7    the truthfulness of the testimony of each witness.  You

8    must decide whether a witness told the truth and was

9    accurate or, instead, testified falsely or was

10   mistaken.

11             You must also decide what importance to give

12   to the testimony you accept as truthful and accurate.

13   It is the quality of the testimony that is controlling,

14   not the number of witnesses who testify.

15             Now, there is no particular formula for

16   evaluating the truthfulness and accuracy of another

17   person person's statements or testimony.  You bring to

18   this process all of your varied life experiences.

19             In life you frequently decide the

20   truthfulness and accuracy of statements made to you by

21   other people.  The same factors used to make those

22   decisions should be used in this case when evaluating

23   the testimony.

24             At the end of the trial I will give you some

25   examples of those factors.

                                                    ws

Proceedings                          36

1              As I indicated from a reading of the

2    witness -- prospective witness list, in this case you

3    will obviously hear testimony by the police officers or

4    detectives.

5              The testimony of a witness should not be

6    believed solely and simply because the witness is a

7    police officer or a detective.

8              At the same time, a witness's testimony

9    should not be disbelieved solely and simply because the

10   witness is a police officer or detective.

11             In other words, you must not believe or

12   disbelieve a police officer or detective just because

13   he or she is a police officer or detective.

14             You must listen to a police officer or

15   detective's testimony just like you would listen to any

16   other witness and you must evaluate a police officer

17   and/or detective's testimony for truthfulness and

18   accuracy in the same way you would evaluate the

19   testimony of any other witness.

20             Just addressing myself to those of you

21   sitting in the first row in front of me, Seats 1

22   through 7, does anybody here in the front -- first

23   front row here, would anybody have any problem in

24   following those basic principles of law that I've just

25   given, presumption of innocence, burden of proof?

                                                    ws

Proceedings                37

1          Anybody have any problems with that?

2          Police testimony?

3          As I indicated to you, in this trial, in any

4   criminal trial, we need jurors who can make a decision,

5   either guilty or not guilty.

6          Does anybody here in the first row, either

7   for religious reasons or personal reasons, feel that

8   they could not do that?

9          And, again, I'm just talking about the first

10  row.

11         In the second row, with regard to the

12  principles of law that I just discussed with you,

13  burden of proof, presumption of innocence, proof beyond

14  a reasonable doubt, anybody in that second row have any

15  problems in following that?

16         Yes?

17         PROSPECTIVE JUROR:  In my religion we don't

18  accept killing, as a Jewish religion.

19         THE COURT:  I don't think that's going to be

20  an issue in this case.

21         Is there anything else?

22         MR. SCHECHTER:  Friday night?

23         Friday sabbath?

24         THE COURT:  Does anybody have any religious

25  obligations Friday evening?

ws

Proceedings                    38

1               Ma'am?

2               PROSPECTIVE JUROR:  Yes.

3               THE COURT:  You would?

4               PROSPECTIVE JUROR:  Yeah.

5               THE COURT:  I'll keep that in mind.

6               Anybody else in the second row with regard to

7      the principles of law?

8               Anybody for any personal or religious reasons

9      would not be able to either come to a determination of

10     either guilty or not guilty?

11              No?

12              All right, all right, what I'm going to do at

13     this point is -- and, again, I'm going to address each

14     of you individually.  If I -- and, again, as I said

15     about not being shy about asking to approach about

16     something you're uncomfortable talking about publicly,

17     if there's anything -- if there's any -- if I should

18     mispronounce your name, please, correct me, because

19     you'll be doing the lawyers a great favor by correcting

20     me first because this way when they get up there

21     they'll know how to pronounce and if they don't, that

22     means they weren't paying attention, so.

23              What I'm going to do is you give the

24     neighborhood in which you live - you do not have to

25     give me your home address, the neighborhood in which

                                                        ws

1    you live - your marital status or if you're in a

2    committed relationship, if you have any children and,

3    if your children are old enough, if they're employed,

4    what kind of work that they do and then I'm going to

5    ask you some further questions about any prior jury

6    service, criminal, civil, state, federal.

7              I'm going to ask you whether or not any

8    member of your family has worked in law enforcement,

9    either for the police, District Attorneys or for the

10   court system.

11             I will also ask you whether or not anyone,

12   either yourself or a loved one, has been the victim of

13   a crime or anyone in your family who's been accused or

14   convicted of a crime.

15             So what I'm going to do is start with you,

16   Mr. Ross.

17             Could you just tell me the neighborhood in

18   which you live?

19             PROSPECTIVE JUROR:  Great Neck.

20             THE COURT:  Married or committed

21   relationship?

22             PROSPECTIVE JUROR:  Married.

23             THE COURT:  Are you currently working?

24             PROSPECTIVE JUROR:  No, I'm not.

25             THE COURT:  Are you retired?

ws

Proceedings                    40

1              PROSPECTIVE JUROR:  Yes, I am.

2              THE COURT:   What kind of work did you do

3        before you retired?

4              PROSPECTIVE JUROR:  Systems analyst.

5              THE COURT:   Married or committed

6        relationship?

7              PROSPECTIVE JUROR:  You asked me if I was

8        married, yes.

9              THE COURT:  Any children?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  How many?

12             PROSPECTIVE JUROR:  Four.

13             THE COURT:  Their ages, if you know?

14             PROSPECTIVE JUROR:  Thirty-six, 32, 28 and

15       26.

16             THE COURT:  Okay, and their occupations, if

17       they're currently --

18             PROSPECTIVE JUROR:  I have -- my daughter --

19       one daughter is a teacher, one daughter sells real

20       estate, another -- my oldest son works for a truck

21       company in the sales department and my younger son

22       works for a lighting company out on the island.

23             THE COURT:  And you said you were married, am

24       I right?

25             PROSPECTIVE JUROR:  Yes.

                                                      ws

1          THE COURT:  Does your wife currently work?

2          PROSPECTIVE JUROR:  She's also retired.

3          THE COURT:  What was her occupation?

4          PROSPECTIVE JUROR:  Teacher.

5          THE COURT:  Very good.

6          Mr. Mellish?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  The town in which you live in,

9    sir?

10          PROSPECTIVE JUROR:  Plainview.

11          THE COURT:  Married or committed

12    relationship?

13          PROSPECTIVE JUROR:  Single.

14          THE COURT:  Working currently?

15          PROSPECTIVE JUROR:  Waldbaums, doing stock at

16    Waldbaums.

17          THE COURT:  Mr. Riley?

18          Thank you, Mr. Mellish.

19          Town in which you live, sir?

20          PROSPECTIVE JUROR:  Malverne.

21          THE COURT:  Married or committed

22    relationship?

23          PROSPECTIVE JUROR:  Single.

24          THE COURT:  Children?

25          PROSPECTIVE JUROR:  Two.

Proceedings                    42

1              THE COURT:  How old?

2              PROSPECTIVE JUROR:  Thirty-one and 29.

3              THE COURT:  Are they currently working?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  What do they do?

6              PROSPECTIVE JUROR:  My daughter is a garment

7     center executive and my son is a mechanic.

8              THE COURT:  Mr.  -- Ms. Cohen, I should say?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Town in which you live, ma'am?

11             PROSPECTIVE JUROR:  I live in East Meadow.

12             THE COURT:  Married or committed

13    relationship?

14             PROSPECTIVE JUROR:  No, single.

15             THE COURT:  Okay, children?

16             PROSPECTIVE JUROR:  I have one grown

17    daughter.  She's an assistant teacher in Queens.

18             THE COURT:  Okay.  All right, thank you.

19             Mr. Arroyo?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Town in which you live, sir?

22             PROSPECTIVE JUROR:  Syosset.

23             THE COURT:  Married or committed

24    relationship?

25             PROSPECTIVE JUROR:  Married.

                                                    ws

Proceedings                    43

1          THE COURT:  Children?

2          PROSPECTIVE JUROR:  Three.

3          THE COURT:  How old, about?

4          PROSPECTIVE JUROR:  Twenty-three, 26 and 28.

5          THE COURT:  And their occupations, if any?

6          PROSPECTIVE JUROR:  I work at the Bank of New

7    York, administer.

8          THE COURT:  You work there?

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  And your wife, is she currently

11   working?

12         PROSPECTIVE JUROR:  No, she's retired.  She

13   substitutes as a teacher.  She was a teacher.

14         THE COURT:  Any of your children working?

15         PROSPECTIVE JUROR:  My son is a pharmacist.

16   My oldest daughter is -- works for a doctor in an

17   office and my youngest is at Hofstra Law School.

18         THE COURT:  All right, thank you.

19         Mr. Murray, town in which you live, sir?

20         PROSPECTIVE JUROR:  Baldwin.

21         THE COURT:  Married or committed

22   relationship?

23         PROSPECTIVE JUROR:  Married.

24         THE COURT:  Children?

25         PROSPECTIVE JUROR:  Five children.

ws

Proceedings                    44

1              THE COURT:  Are you currently working?

2              PROSPECTIVE JUROR:  I just became unemployed.

3              THE COURT:  What kind of work did you do?

4              PROSPECTIVE JUROR:  Construction supervisor,

5       interior renovations.

6              THE COURT:  For how many years did you do

7       that?

8              PROSPECTIVE JUROR:  Twenty-eight years.

9              THE COURT:  Your wife, is she working?

10             PROSPECTIVE JUROR:  Yes, she's a registered

11      nurse at South Nassau.

12             THE COURT:  Are your children old enough to

13      be working?

14             PROSPECTIVE JUROR:  Oh, yeah -- yes, 29, 27,

15      21, 14 and 11.

16             THE COURT:  Okay.  And the oldest one?

17             PROSPECTIVE JUROR:  He's a telecommunications

18      tech and my second son, Timothy, is executive chef at

19      the Merchants Marine Academy, Kings Point.

20             THE COURT:  Mr., is it, Wu -- I went to 13.

21      Should have went to 7.

22             Mr. DeBenedittis, in what town do you live?

23             PROSPECTIVE JUROR:  Syosset.

24             THE COURT:  Married or committed

25      relationship?

ws

Proceedings                    45

1               PROSPECTIVE JUROR:  No.

2               THE COURT:  Working?

3               PROSPECTIVE JUROR:  No.

4               THE COURT:  Okay, when was the last time you

5       worked?

6               PROSPECTIVE JUROR:  Last summer.

7               THE COURT:  Going to school at all?

8               PROSPECTIVE JUROR:  Yes.

9               THE COURT:  What kind of school?

10              PROSPECTIVE JUROR:  Fordham University.

11              THE COURT:  What year are you in?

12              PROSPECTIVE JUROR:  Entering senior year,

13      just finished junior.

14              THE COURT:  You picked a major by now?

15              PROSPECTIVE JUROR:  Yes.

16              THE COURT:  What is that?

17              PROSPECTIVE JUROR:  Finance.

18              THE COURT:  Ms. Garfinkel, town in which you

19      live?

20              PROSPECTIVE JUROR:  Plainview.

21              THE COURT:  Married or committed

22      relationship?

23              PROSPECTIVE JUROR:  Married.

24              THE COURT:  Children?

25              PROSPECTIVE JUROR:  Two, 25 and 21.

                                                      ws

Proceedings                    46

1          THE COURT:  Okay, are you currently working?

2          PROSPECTIVE JUROR:  I am.

3          THE COURT:  What kind of work you do?

4          PROSPECTIVE JUROR:  Servicing credit cards.

5          THE COURT:  And is your husband currently

6     working?

7          PROSPECTIVE JUROR:  He's an accountant.

8          THE COURT:  And your children, are they

9     working?

10         PROSPECTIVE JUROR:  My daughter is graduating

11    to be a teacher, she's a student right now, and my son

12    does a part-time training, physical training.

13         THE COURT:  Okay.  All right.

14         Ms. Kohler?

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Town in which you live?

17         PROSPECTIVE JUROR:  Great Neck.

18         THE COURT:  Okay, Great neck is well

19    represented on this panel.

20         Married or committed relationship?

21         PROSPECTIVE JUROR:  Married.

22         THE COURT:  Are you currently working?

23         PROSPECTIVE JUROR:  Yes, self-employed.

24         THE COURT:  What kind of work do you do?

25         PROSPECTIVE JUROR:  Jewelry manufacturer.

ws

Proceedings                    47

1              THE COURT:  Okay, and your husband, is he

2         working?

3              PROSPECTIVE JUROR:  Yes, also jewelry

4         manufacturing.

5              THE COURT:  Is that a business you have

6         together?

7              PROSPECTIVE JUROR:  No, separate.

8              THE COURT:  Children?

9              PROSPECTIVE JUROR:  Two.

10             THE COURT:  And --

11             PROSPECTIVE JUROR:  My son is 42, my daughter

12        38.

13             THE COURT:  And either one of them working?

14             PROSPECTIVE JUROR:  Yeah.

15             THE COURT:  What kind of work do they do?

16             PROSPECTIVE JUROR:  My son is director of

17        Deutsche Bank and my daughter is psychologist, school

18        psychologist.

19             THE COURT:  Okay, thank you.

20             Ms. Farina, town in which you live?

21             PROSPECTIVE JUROR:  Massapequa.

22             THE COURT:  Married or committed

23        relationship?

24             PROSPECTIVE JUROR:  Single.

25             THE COURT:  Currently working?

                                                    ws

Proceedings                    48

1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  What kind of work do you do?

3              PROSPECTIVE JUROR:  I do sales for State Farm

4         insurance.

5              THE COURT:  Okay, how long have you been

6         doing that for?

7              PROSPECTIVE JUROR:  Twenty years.

8              THE COURT:  Okay, thank you.

9              Mr. Mazza, county in which you live?

10             PROSPECTIVE JUROR:  Seaford.

11             THE COURT:  Married?

12             PROSPECTIVE JUROR:  Single.

13             THE COURT:  Are you currently working?

14             PROSPECTIVE JUROR:  Unemployed.

15             THE COURT:  And when you were working what

16        kind of work did you do?

17             PROSPECTIVE JUROR:  Insurance adjustor.

18             THE COURT:  For an insurance company?

19             PROSPECTIVE JUROR:  General Motors.

20             THE COURT:  Okay.  All right, thank you,

21        Mr. Mazza.

22             Ms. McHugh, town in which you live?

23             PROSPECTIVE JUROR:  New Hyde Park.

24             THE COURT:  Currently working?

25             PROSPECTIVE JUROR:  Yes.

                                                    ws

Proceedings                     49

1                THE COURT:  What kind of work you do?

2                PROSPECTIVE JUROR:  I'm a teacher's aide in a

3        kindergarten classroom.

4                THE COURT:  Okay, and your husband's

5        occupation?

6                PROSPECTIVE JUROR:  He's a foreman in a labor

7        union.

8                THE COURT:  Children?

9                PROSPECTIVE JUROR:  Four.

10               THE COURT:  Their ages?

11               PROSPECTIVE JUROR:  Twenty, 19, 16 and 14.

12               THE COURT:  I take it -- the 20 and

13       19-year-old working?

14               PROSPECTIVE JUROR:  No, two full-time

15       college, two full-time high school.

16               THE COURT:  Now I got it.

17               Mr. Wu, town in which you live?

18               PROSPECTIVE JUROR:  Syosett.

19               THE COURT:  Married, committed relationship?

20               PROSPECTIVE JUROR:  Yeah.

21               THE COURT:  Yeah to which, both?  I got ya.

22       We'll let you get out of this one.

23               I'm assuming it's the first one, married?

24               PROSPECTIVE JUROR:  Yeah.

25               THE COURT:  Okay, any children?

                                                        ws

Proceedings                50

1               PROSPECTIVE JUROR:  Yeah, two.

2               THE COURT:  Are you currently working?

3               PROSPECTIVE JUROR:  Yes.

4               THE COURT:  What kind of work do you do?

5               PROSPECTIVE JUROR:  Computer programmer.

6               THE COURT:  Okay, and your wife, what does

7      she do?

8               PROSPECTIVE JUROR:  She works in a trading

9      company as accountant.

10              THE COURT:  And children, if you have any?

11              PROSPECTIVE JUROR:  Yeah, 17 and 14.

12              THE COURT:  And they're, I take it, in

13     school?

14              PROSPECTIVE JUROR:  Yes.

15              THE COURT:  And, finally, Mr. Hoy?

16              PROSPECTIVE JUROR:  First of all, my last

17     name totally wrong.

18              THE COURT:  Okay, is it Ip?

19              PROSPECTIVE JUROR:  Yes.  I adjusted it today

20     because the Hoy is my middle name, but they put both

21     Hoy.

22              THE COURT:  Yeah, they have Hoy Hoy and one

23     Hoy is scratched out and they put Ip in.

24              Town in which you live, sir?

25              PROSPECTIVE JUROR:  Elmont.

Proceedings                    51

```
 1                    THE COURT:  Married?
 2                    PROSPECTIVE JUROR:  Yes.
 3                    THE COURT:  What kind of work do you do, if
 4          you work?
 5                    PROSPECTIVE JUROR:  I'm retired.
 6                    THE COURT:  What did you do when you were
 7          working?
 8                    PROSPECTIVE JUROR:  Carpenter.
 9                    THE COURT:  And is your wife currently
10          working?
11                    PROSPECTIVE JUROR:  Housewife.
12                    THE COURT:  Okay, children?
13                    PROSPECTIVE JUROR:  Three.
14                    THE COURT:  How old?
15                    PROSPECTIVE JUROR:  Thirty-nine, 37 and 33.
16                    THE COURT:  And are they currently working?
17                    PROSPECTIVE JUROR:  Yeah, they are working.
18                    THE COURT:  What kind of work do they do?
19                    PROSPECTIVE JUROR:  My older son is chemical
20          engineer and the younger son work in JP Morgan --
21          JP Chase, I think -- Morgan Chase.
22                    THE COURT:  Okay, JP Morgan Chase, all right.
23                    THE WITNESS:  My daughter is just married and
24          stay home.
25                    THE COURT:  Okay, all right.
```

Proceedings                    52

1          All right, at this time what I'm going to do

2     is I'm just going to go kind of row by row, if you

3     will.

4          The first thing I want to do is ask the

5     people in the first row have either -- any of you, I

6     should say, ever been selected to serve on -- as a

7     juror in either a criminal or civil case, either in the

8     state court system or the federal court system or --

9     and, perhaps, any service in the grand jury, either in

10    state or federal?

11         Anybody in the first row?

12         Mr. Murray?

13         PROSPECTIVE JUROR:  Civil case, about six

14    years ago.

15         THE COURT:  Okay, did it go to verdict?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  What kind of case, if you

18    remember?

19         PROSPECTIVE JUROR:  It was a real -- a

20    gentleman that rented -- leased a gas station that was

21    contaminated and they brought in specialty people as

22    far as the environmentalists were there, the whole

23    schpiel, very interesting.

24         THE COURT:  As opposed to a criminal case,

25    you heard me talk before about burden of proof, in a

                                              ws

Proceedings                    53

1      criminal case it's proof beyond a reasonable doubt.

2      Civil case, generally, although with a couple of

3      exceptions, it's usually by a preponderance of the

4      evidence.  It's a much lesser, if you will, burden of

5      proof.

6               I'm going to assume that you don't remember

7      what, perhaps, the judge said in the civil case, but

8      can you give me your assurance that whatever law,

9      including the burden of proof, that I give in this case

10     you'll follow?

11               PROSPECTIVE JUROR:  Absolutely.

12               THE COURT:  Anybody else prior jury -- just

13     the first row.  I'm going to get to you back there.

14     Just in the first row

15               Ms. Cohen?

16               PROSPECTIVE JUROR:  A drug case in Queens

17     when I lived there going back over 20 years.  That's

18     the only time.

19               THE COURT:  And without telling us what the

20     verdict is, did the jury reach a verdict?

21               PROSPECTIVE JUROR:  Yes.

22               THE COURT:  And you were -- were you a sworn

23     juror or an alternate?

24               PROSPECTIVE JUROR:  A sworn juror.

25               THE COURT:  Okay, anything about that

Proceedings                    54

1        experience that you couldn't serve as a juror in a

2        criminal case again?

3                        PROSPECTIVE JUROR:  No.

4                        THE COURT:  Okay.

5                        Anybody else in that first row?

6                        Mr. Riley?

7                        PROSPECTIVE JUROR:  Criminal case, at least

8        20 years ago.

9                        THE COURT:  Okay, remember what the nature of

10       the charges were?

11                       PROSPECTIVE JUROR:  I think it was assault,

12       but I'm not entirely certain.

13                       THE COURT:  Again, the same question I had

14       for Ms. Cohen.

15                       Anything about that service that you feel you

16       couldn't be a juror in a criminal case again?

17                       PROSPECTIVE JUROR:  No.

18                       THE COURT:  And you were a sworn juror as

19       opposed to an alternate?

20                       PROSPECTIVE JUROR:  I was a sworn juror.

21                       THE COURT:  When I say sworn I mean one of

22       the 12.

23                       Anybody else in the first row?

24                       No?

25                       Second row, prior jury service, criminal,

                                                              ws

Proceedings                    55

1       civil, state or federal or grand jury?

2               Ms. Garfinkel?

3               PROSPECTIVE JUROR:  It was about 32 years

4       ago.  I was on a murder case.

5               THE COURT:  And you were one of the 12?

6               PROSPECTIVE JUROR:  Foreperson.

7               THE COURT:  Okay, without telling us what the

8       verdict is, did you reach a verdict?

9               PROSPECTIVE JUROR:  No.

10               THE COURT:  Okay, so it was, shall we say, a

11      hung jury?

12               PROSPECTIVE JUROR:  Mistrial.

13               THE COURT:  Okay.  Anything about that

14      experience that you feel you couldn't or wouldn't serve

15      as a juror in a criminal case again?

16               PROSPECTIVE JUROR:  No.

17               THE COURT:  And the fact that the jury was

18      not able to come to a unanimous decision would not

19      affect you in serving as a juror in this case if you're

20      selected?

21               No?

22               PROSPECTIVE JUROR:  No.

23               THE COURT:  Ms. Kohler.

24               PROSPECTIVE JUROR:  Yeah, I serve, but --

25               THE COURT:  You could sit down.

                                                        ws

Proceedings                          56

1           PROSPECTIVE JUROR:  I serve, but I was not

2      selected as a juror, six years ago in this building.

3           THE COURT:  In other words, you were summoned

4      as everybody is right now?

5           PROSPECTIVE JUROR:  Yeah.

6           THE COURT:  But you were not picked?

7           PROSPECTIVE JUROR:  I was not picked, no.

8           THE COURT:  Okay.

9           Any other experiences as a juror, Ms. Kohler?

10          No, just that one?

11          PROSPECTIVE JUROR:  Just that.

12          THE COURT:  Anybody else in the second row

13     prior jury service?

14          No?

15          Okay.

16          All right, again, going back to the first

17     row, any member -- any immediate member of your family,

18     close personal friend, who's ever worked for the Police

19     Department, the District Attorney's Office or the court

20     system, first row?

21          Anybody?

22          Mr. DeBenedittis?

23          PROSPECTIVE JUROR:  My uncle is a cop, Queens

24     North task force.

25          THE COURT:  This is somebody that you have

                                                    ws

Proceedings                    57

```
 1          frequent contact with?

 2                    PROSPECTIVE JUROR:  Yes.

 3                    THE COURT:  Does he -- is it a man or woman?

 4                    PROSPECTIVE JUROR:  Man.

 5                    THE COURT:  Does he discuss his work with you

 6          often?

 7                    PROSPECTIVE JUROR:  Not particularly.

 8                    THE COURT:  Okay.  Does your relationship --

 9          would your relationship with your uncle in any way

10          affect your ability to serve as a juror in this case?

11                    By that I mean would you be able to follow

12          the instruction I gave earlier that you're going to

13          treat a police officer or detective just like anybody

14          else?

15                    PROSPECTIVE JUROR:  Shouldn't be a problem.

16                    THE COURT:  Okay.  You won't give them any

17          more credibility or any less credible just because of

18          what their job is?

19                    PROSPECTIVE JUROR:  Correct.

20                    THE COURT:  Anybody else in the first row?

21                    Anybody else?

22                    Okay, any police officers, DAs?

23                    How about the second row?

24                    Ms. Farina?

25                    PROSPECTIVE JUROR:  My cousin is a retired
```

Proceedings                     58

1       police officer.  He just retired.

2                       THE COURT:  From where?

3                       PROSPECTIVE JUROR:  Somewhere in New York.   I

4       don't know where.  Somewhere -- I think in Queens

5       somewhere.

6                       THE COURT:  All right, you heard me ask

7       Mr. DeBenedittis, is there anything about your

8       relationship with that person that you would not be

9       able to evaluate a police officer or detective like

10      anybody else?

11                      PROSPECTIVE JUROR:  No.

12                      THE COURT:  Ms. McHugh?

13                      PROSPECTIVE JUROR:  Yeah, I have an uncle who

14      is a police officer, my brother-in-law just retired

15      from the Police Department in New York and I have a

16      family friend that I've always considered Uncle Tom

17      that's the DA, Tom Spoder, in Suffolk County.

18                      THE COURT:  All right.

19                      PROSPECTIVE JUROR:  I don't think it would

20      affect me at all, but --

21                      THE COURT:  All right, and, you know, make no

22      mistake about it, there's going to be police officers

23      and detectives that are going to get called.

24                      So, again, would you be able to evaluate them

25      just like anybody else?

                                                        ws

Proceedings                    59

1               PROSPECTIVE JUROR:  Yes.

2               THE COURT:  No greater weight, no lesser

3          weight?

4               PROSPECTIVE JUROR:  Absolutely not.

5               THE COURT:  Police officers can tell the

6          truth.

7               PROSPECTIVE JUROR:  Yeah.

8               THE COURT:  Police officers can be mistaken

9          or police officers can lie.

10              Any problem with that?

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  Okay.

13              Anybody else in that second row?

14              Again, going back to the first row, anybody

15         in the first row, yourself, close family member, loved

16         one, been the victim of a crime?

17              Victim of a crime?

18              Nobody?

19              How about the second row?

20              Ms. McHugh?

21              PROSPECTIVE JUROR:  I was mugged in New York

22         City.

23              THE COURT:  How long ago?

24              PROSPECTIVE JUROR:  About 20 years ago.

25              THE COURT:  Was there an arrest made as a

                                                    ws

Proceedings                    60

1      result of it?

2                  PROSPECTIVE JUROR:  No, I wish there was,

3      but --

4                  THE COURT:  Did you have dealings with the

5      police?

6                  PROSPECTIVE JUROR:  Yeah, they came after the

7      fact.

8                  THE COURT:  Okay, anything about your

9      dealings with the police or the fact that somebody

10     wasn't arrested --

11                 PROSPECTIVE JUROR:  No.

12                 THE COURT:  -- that would have an effect on

13     you as a juror in this case?

14                 PROSPECTIVE JUROR:  It wasn't anybody's

15     fault.

16                 THE COURT:  Anything else other than that

17     incident?

18                 Mr. Ip?

19                 PROSPECTIVE JUROR:  My son was robbed for his

20     bicycle about 20 years ago.

21                 THE COURT:  Where did that take place?

22                 PROSPECTIVE JUROR:  In Jamaica.

23                 THE COURT:  Did you have any dealings with

24     the police at that time?

25                 PROSPECTIVE JUROR:  I call the police, but

                                                          ws

Proceedings                    61

1       nothing happened.

2                      THE COURT:  So police report was made, but

3       there was no arrest, nothing further came out of it?

4                      PROSPECTIVE JUROR:  No.

5                      THE COURT:  Anything about that that you feel

6       you couldn't serve as a juror in this case?

7                      PROSPECTIVE JUROR:  No.

8                      THE COURT:  No?

9                      PROSPECTIVE JUROR:  No.

10                     THE COURT:  Ms. Kohler?

11                     PROSPECTIVE JUROR:  Yes, my brother-in-law,

12      he was robbed and killed and, as I mentioned before,

13      they caught the thief, the criminal, and they put him

14      in jail five years and one of my brother-in-law, they

15      were working together, he had to run out from New York

16      to California not to recognize him because he has

17      recognized the person.

18                     THE COURT:  Okay, would that experience,

19      knowing what you know about this case and I explained

20      to you before when you were at the bench what the

21      nature of the charges here, anything about that case

22      that you feel you couldn't serve as a juror in this

23      case? ?

24                     You'll be able to give both the People and

25      the defendant a fair trial?

Proceedings                    62

1              PROSPECTIVE JUROR:  I doubt it.

2              THE COURT:  You doubt it?

3              PROSPECTIVE JUROR:  Yeah.  I be honest.

4              THE COURT:  Okay.

5              Ms. McHugh?

6              PROSPECTIVE JUROR:  You had said if it

7       happened to us.

8              Do you want to know if it happened to our

9       family as well?

10             THE COURT:  I said you, family member, close

11      personal friend.

12             PROSPECTIVE JUROR:  My son, actually not even

13      quite a year ago, he was assaulted in the State of

14      Maryland and we went to trial and two people were

15      arrested and it went to trial and the whole nine yards.

16             THE COURT:  I'm sorry, you said it was your

17      son?

18             PROSPECTIVE JUROR:  My son.

19             THE COURT:  This was how long ago?

20             PROSPECTIVE JUROR:  Not even a year ago.  He

21      was assaulted over a year ago, but it went to trial

22      about 11 months ago.

23             THE COURT:  Do you have, as you sit there

24      now -- obviously, this case was prosecuted.  There's a

25      prosecutor here in this case that's going to be

                                                    ws

Proceedings                    63

1       presenting evidence on behalf of the People of the

2       State of New York.

3              As you sit there do you feel that you could

4       give both sides -- do you feel that both sides are on a

5       level playing field, that you could be fair and

6       impartial to both, that you could hear what both sides

7       have to say?

8              PROSPECTIVE JUROR:  Now that I think about

9       it, I think it would be difficult for me.

10             THE COURT:  You think you would not be able

11      to?

12             PROSPECTIVE JUROR:  I'm questioning myself.

13             THE COURT:  Okay, anybody else in that second

14      row, victim of a crime?

15             Moving on, and sometimes this is the question

16      that triggers people to say, "I would like to

17      approach," have you personally or any member of your

18      family been accused or convicted of a crime?

19             First row?

20             No?

21             Second row?

22             Okay.  I just want to see both lawyers real

23      quick before we go any further.

24             (Discussion held at the bench, off the

25      record.)

                                                    ws

Proceedings                64

1          THE COURT:  What I would prefer to do, does

2    either one of you have any objection, is replace

3    Ms. McHugh, replace Ms. Kohler, and we'll put some

4    fresh people in there?

5               MS. JOHNSON:  No objection to that.

6               MR. SCHECHTER:  No objection to that.

7               THE COURT:  All right, Ms. Kohler and

8    Ms. McHugh, with the thanks of both counsel and the

9    Court you'll be excused at this time.

10          Please just follow my -- the instructions

11   from my sergeant.  Please be careful as you come out of

12   the jury box there.

13               (Prospective jurors excused.)

14               THE COURT:  All right, fill seat Number 9 and

15   12.

16               THE CLERK:  Seat 9, Gem Lilley, L-i-l-l-e-y,

17   G-e-m; Seat 12, Dawn Steiert, S-t-e-i-e-r-t.

18               THE COURT:  All right, Ms. Lilley and

19    Ms. Steiert, welcome to the jury box.

20          Let me ask -- I'm just going to address

21   myself to both of you.

22          You heard me just a moment ago talk about

23   basic principles of law in any criminal case; the

24   burden of proof, that it's always on the People and

25   never shifts to the defendant, proof of guilt beyond a

                                                    ws

Proceedings                    65

1       reasonable doubt, that a defendant does not have to
2       prove himself innocent, if you will, he has no burden
3       of proof, that he's presumed to be innocent throughout
4       the course of the case.
5               You heard me talk about evaluating witnesses'
6       credibility, just like you would anybody else that you
7       come in contact with in your everyday lives.
8               You also heard me talk about police officers,
9       that they are to get no greater or lesser credibility
10      because they are a police officer or a detective.
11              Do either of you -- would either of you,
12      either Ms. Lilley or Ms. Steiert, have any problem with
13      that?
14              Ms. Lilley?
15              PROSPECTIVE JUROR:  No.
16              THE COURT:  Ms. Steiert?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  You seem to hesitate.
19              PROSPECTIVE JUROR:  Well, a little bit.  I
20      mean, my husband is wrongfully incarcerated, so that's
21      the only issue.
22              THE COURT:  All right, I'm going to get to
23      you in a second.
24              Ms. Lilley, can you just tell me the town in
25      which you reside?

                                          ws

Proceedings                          66

1                  PROSPECTIVE JUROR:  Uniondale.

2                  THE COURT:  Married, committed relationship?

3                  PROSPECTIVE JUROR:  My husband passed away.

4                  THE COURT:  Okay, and are you currently

5        working?

6                  PROSPECTIVE JUROR:  Yes.

7                  THE COURT:  What kind of work do you do?

8                  PROSPECTIVE JUROR:  I work with Freeport

9        school bus company.

10                 THE COURT:  Okay, in what capacity?

11                 PROSPECTIVE JUROR:  As a matron on the bus

12       with the children.

13                 THE COURT:  Any children?

14                 PROSPECTIVE JUROR:  Yes.

15                 THE COURT:  How many?

16                 PROSPECTIVE JUROR:  Three.

17                 THE COURT:  How old are they?

18                 PROSPECTIVE JUROR:  Forty-two, 41, 34.

19                 THE COURT:  And can you tell us, to the

20       extent they're working, what their occupations are?

21                 PROSPECTIVE JUROR:  Yes, two do trucking and

22       one is a mechanic.

23                 THE COURT:  All right, any -- is there

24       anything, Ms. Lilley, either for personal reasons or

25       religious reasons -- you heard me indicate in a

                                                    ws

Proceedings                    67

1       criminal case the jury, to the extent that they can

2       come to a unanimous verdict, any reason you would not

3       be able to find either guilty or not guilty depending

4       upon your view of the evidence?

5                   PROSPECTIVE JUROR:  No.

6                   THE COURT:  Okay.  Any prior jury experience,

7       state, federal, criminal, civil, grand jury?

8                   PROSPECTIVE JUROR:  No.

9                   THE COURT:  Anybody in your family -- any

10      close members of your family or friends involved in law

11      enforcement?

12                  PROSPECTIVE JUROR:  No.

13                  THE COURT:  Have you or any close family

14      member been a victim of a crime?

15                  PROSPECTIVE JUROR:  No.

16                  THE COURT:  Okay, and, finally, anybody close

17      to you been accused or convicted of a crime?

18                  PROSPECTIVE JUROR:  No.

19                  THE COURT:  All right, Ms. Steiert, why don't

20      you come up with both the attorneys?

21                      (Sidebar conference held as follows:)

22                  THE COURT:  You started to say -- you were

23      hesitating when I asked about the principles of law and

24      then you started to indicate that there was someone

25      close to you --

                                                            ws

ws

Proceedings                    68

1            PROSPECTIVE JUROR:  My husband.

2            THE COURT:  How long has he been in jail?

3            PROSPECTIVE JUROR:  For eight years now.  He

4    has five more to go, but I hired a lawyer.

5            THE COURT:  And what's he incarcerated for?

6            What's the charge?

7            PROSPECTIVE JUROR:  For robbing and

8    assaulting an elderly woman, but they didn't catch him

9    at the scene of the crime or anything, so.

10           THE COURT:  Was he your husband or were you

11   involved with him?

12           PROSPECTIVE JUROR:  No, I knew of him and

13   married him -- I've been with him about four years now,

14   but I'm married for a year now.

15           THE COURT:  Obviously, you feel that he's

16   wrongly convicted.

17           Do you think you could sit here as a juror in

18   this case and be fair to both sides?

19           PROSPECTIVE JUROR:  Honestly, it's going to

20   be hard for me to be fair to both sides because there

21   are a lot of issues with cops.  I don't fully believe

22   or trust them and they wrongfully put my husband in

23   jail.

24           THE COURT:  So you would be of a mind set

25   that you would, perhaps, give a police officer or a

Proceedings                    69

1      detective lesser credibility?

2                PROSPECTIVE JUROR:  That would be my starting

3      mind set unless I can get convinced otherwise, but --

4                THE COURT:  Any questions?

5                MR. SCHECHTER:  Do you think that you would

6      be able to give Mr. Gopaul a fair trial, my client?

7                PROSPECTIVE JUROR:  If -- I believe so.  I

8      don't know, depending on the evidence, but I don't

9      fully trust in a lot of the cops.

10               THE COURT:  Do you have any questions?

11               MS. JOHNSON:  Nothing other than what your

12     Honor said.

13               THE COURT:  Just, if you would, have a seat

14     right by that file cabinet.  I don't want to tell you

15     to go back up into the box again.

16               (Prospective juror steps down and sidebar

17     conference continues as follows:)

18               THE COURT:  What's your position?

19               MR. SCHECHTER:  The fact she may be skeptical

20     of police officers certainly is beneficial to me

21     because there may be issues concerning police officers,

22     but there's a collateral issue after we deal with this

23     particular one that I think has to be addressed as

24     well, so after we make a decision about this juror I

25     would like to raise other questions that I don't think

Proceedings                    70

1     your Honor went into that apparently are germane in the

2     case.

3                 She said she would be fair.

4                 If your Honor feels based upon her

5     experiences with the cops she can't be fair in this

6     case, that's certainly a decision your Honor makes.

7                 THE COURT:  All right, what I'll do is I'll

8     let both of you explore it and then, depending on her

9     answers, if I need to speak to her further I'll do so.

10                MS. JOHNSON:  Our position at this point is

11    that she said her starting point is she's not going to

12    believe the police officers and based on that we would

13    just ask to have her replaced at this point.

14                THE COURT:  The fact that I raised it now

15    doesn't preclude you from making that argument when it

16    comes time to select.

17                For now I'm going to let --

18                (Sidebar conference concludes.)

19                THE COURT:  Ms. Steiert, you can have a seat

20    back in the jury box.

21                (Sidebar conference held as follows:)

22                MR. SCHECHTER:  There's another issue.

23                Apparently, the District Attorney's witness

24    list, there are two Assistant DAs, as we know.

25                Your Honor didn't make any inquiry, firstly,

                                                      ws

Proceedings                          71

1    whether anyone has any relatives in the DA's Office.

2                 THE COURT:  I did.

3                 MS. JOHNSON:  Yeah.

4                 MR. SCHECHTER:  I apologize.

5                 The other thing is since these two are going

6    to be witnesses, I would like to understand if anybody

7    feels, because there are Assistant DAs that are going

8    to be witnesses in this case, that they should be

9    treated like any other witness.

10                THE COURT:  You want me to give the same

11   charge I did with respect to the police?

12                MR. SCHECHTER:  Yeah.

13                THE COURT:  Okay.

14                MR. SCHECHTER:  And they're to draw no

15   inference that there are Assistant DAs on the witness

16   list.

17                (Sidebar conference concludes.)

18                THE COURT:  All right, I think I may have

19   said this before when I talked about people who had

20   relatives or friends who were in law enforcement and I

21   believe I did ask with respect to, as well, anybody

22   that had any friends, acquaintances, relatives that

23   were Assistant District Attorneys.

24                As you recall me saying when I read the

25   witness list, there's going to be two Assistant -- it's

                                                    ws

Proceedings                72

1    anticipated that there may be two Assistant District

2    Attorneys from Queens County that may be called as

3    witnesses.

4              Can everybody give me their assurance, I'm

5    going to address myself to the first row, that you'll

6    judge someone, even though they may be an Assistant

7    District Attorney, as you would anybody else, the same

8    charge, if you will, that I give you with respect to

9    police officers or detectives?

10             Anybody have any problem with that?

11             And in the second row, anybody have any

12   problem that judging someone, again, as you would

13   anybody else?

14             The fact that they're Assistant District

15   Attorneys, they're not going to get any more

16   credibility or any less credibility because they may

17   represent in their employment capacity the People of

18   the State of New York?

19             Anybody here feel that they would get greater

20   credibility?

21             Okay, and everyone will give me their

22   assurance they are not going to draw any inference

23   favorable to them because they are in their capacity as

24   Assistant District Attorneys?

25             First row anybody?

ws

Proceedings                    73

1        Second row?

2            All right -- by my clock here it's about

3    4:25.  I did say when you first came in here we try to

4    end by 4:30.  I try to get everybody out of here and in

5    their cars and on their way home to beat the Mineola

6    traffic, if you will, which kind of starts to pick up

7    in another 15, 20 minutes.

8            So I'm going to excuse you for now.

9            Obviously, as I told you, the both attorneys

10   still have to have the opportunity to question those of

11   you that are in the jury box right now.  I'm going to

12   direct that you report back here tomorrow at 9:30.

13   Just let me double check as to where you're going to

14   assemble and I'll tell you that right now.

15            (Pause in the proceedings.)

16            THE COURT:  One of my officers is going to

17   tell you where to go when you come book here.  It's

18   anticipated that we're going to be in the same room

19   tomorrow morning.

20            I'm going to tell you to get here by 9:30.

21   I'm not going to promise you that we're going to be

22   starting by 9:30.  As I told you, we have a regular

23   calendar.  As I'm sure -- well, you probably came here

24   earlier than 9:30 today.  By 9:30 the parking starts to

25   get very tight around here, so it may be in your best

Proceedings                    74

1       interests to avoid the anxiety of trying to find a

2       parking spot.  Maybe get here a little bit early, get

3       yourself a cup of coffee, relax.

4                  Chris is going to tell you where to leave for

5       tomorrow.  I need everybody here, including those of

6       you in the back of the courtroom, to be back here

7       tomorrow at 9:30, okay?

8                  So you're excused for the evening.  Just

9       follow my officer as you step out.

10                 PROSPECTIVE JUROR:  Will we have the same

11      facilities, parking, as we did today?

12                 THE COURT:  The officer will answer that

13      question for you.

14                 COURT OFFICER:  I'll answer everyone.

15                 (Prospective jurors exit the courtroom.)

16                 THE COURT:  Anybody need to put anything on

17      the record?

18                 MR. SCHECHTER:  I have to reiterate one other

19      thing, your Honor.  I have to reiterate one other thing

20      and that is I think it's beginning to sound like a

21      duck, quacks like a duck, white feathers, must be a

22      duck.

23                 We're going to have Assistant District

24      Attorneys testifying, complaining witness, going into

25      matters that happened in Queens.  The Assistant

                                                        ws

Proceedings                    75

1        District Attorney is going to be asking these pointed

2        questions.  They're going to be testifying in court.

3        They're on the videotape.

4              I am concerned, your Honor, that as per those

5        Court of Appeals cases that this jury is going to draw

6        the inference that my client is charged in Queens

7        County with those other charges and I think it's

8        unavoidable.

9              I mean, no matter what limiting instruction

10       your Honor could make -- you know based upon counsel's

11       witness list that she's calling them as witnesses.

12             They're also bolstering, they're going to be

13       used as bolstering.  The videotape pretty much speaks

14       for itself.  You already made a determination as to the

15       validity of the videotape.  They're on the videotape.

16       I think that they're calling the District Attorneys to

17       trial would be improper bolstering and reinforce my

18       earlier argument.

19             THE COURT:  My ruling is my ruling.  I'm not

20       going to change it at this point.  There's nothing,

21       quite frankly, I don't think anybody can do over the

22       fact that a videotape is taken by two Assistants from

23       the Queens County DA's Office.

24             I don't know what you would suggest the

25       People should do, other than call at least one of them.

Proceedings                    76

1          You may have a point as to why it's necessary

2     to call both of them.

3          MS. JOHNSON:  I wasn't planning on it.  I

4     don't know who was going to be available.  Jarred

5     Rosenblatt is on trial right now and he's summing up

6     next week.  So I don't intend to call both of them and

7     my purpose for calling them is simply to put the video

8     into evidence.

9          And just with regard to what counsel said, as

10    a lay person or a juror, my thinking would be that they

11    would just assume it was Queens DA's Office because

12    they lived in Queens, but I don't think there's any

13    presumption that there would be -- there was -- just so

14    your Honor knows, I'm not planning on calling both of

15    them.  I just needed both of them in case Jarred is on

16    trial.

17          MR. SCHECHTER:  I've made my record, Judge.

18          THE COURT:  You made your record.

19          I'll see you tomorrow.  My guess is I would

20    get here by 9:45 and hopefully we'll try to get going

21    as soon thereafter as possible.

22          (Proceedings adjourned to Thursday, May 7th,

23    2009 at 9:30 a.m.)

24

25

                                            ws

77

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NASSAU : CRIMINAL TERM PART 80

3    ------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,     :   Indictment
4                                             :   No. 2415N/08
                  -against-                   :
5                                             :
     HAROLD GOPAUL,                           :   SEX ABUSE 1
6                                             :
                          Defendant.          :   Trial
7    ------------------------------------------X

8                                   May 7, 2009

9                                   252 Old Country Road
                                    Mineola, New York
10

11   B E F O R E:

12                   HONORABLE JAMES P. MacCORMACK,
                          Acting Supreme Court Justice
13

14   A P P E A R A N C E S:

15                   (As previously noted.)

16
                 *        *        *        *        *
17

18                   THE CLERK:  This is the case on trial, the

19        People of the State of New York against Harold Gopaul,

20        Indictment 2415N of 2008.

21                   Are the People ready?

22                   MS. JOHNSON:  Ready.

23                   THE CLERK:  Defense counsel ready?

24                   MR. SCHECHTER:  Ready.

25                   THE COURT:  Ms. Johnson, you want to put

                                                              ws

Proceedings                    78

1    something on the record?

2              MS. JOHNSON:  Yes.  I provided to the Court

3    and counsel some Rosario material that's ready at this

4    point.

5              I made certain to provide counsel with most,

6    if not all, of the grand jury testimony in both Queens

7    County and Nassau County for the witnesses.

8              I hope to have the rest of it finished today

9    for him, but I would just ask he acknowledge receipt of

10   what has been provided this morning.

11             MR. SCHECHTER:  I can only acknowledge

12   receipt of a stack of papers, your Honor.  Whatever

13   they contain, I just need to peruse that before I can

14   make an acknowledgment that I got the Rosario.

15             THE COURT:  We'll give you a chance to see if

16   what you got itemized here is what you have.

17             I'm going to mark mine Court Exhibit 1.

18             All right, I think we're at the point where

19   both counsel are going to begin.

20             As I told you, it's 20 minutes the first

21   round.  That is a real 20 minutes.  You'll hear me say

22   two minutes when it gets to that point.

23             Please, I'm going to ask both of you to

24   refrain from explaining any of the concepts that I went

25   over.  I do that for a reason.  I try to go over it in

Proceedings                    79

1       a little bit more detail than perhaps most other judges

2       do in an effort to not get caught up in attorneys

3       explaining what their idea of reasonable doubt,

4       presumption of innocence, is.

5               I have no problem with either one of you

6       asking them or getting their assurance or commitment,

7       if you will, that they can follow those concepts.

8               But I'm going to ask both of you to refrain

9       from giving your own interpretations and what beyond a

10      reasonable doubt and burden of proof and presumption of

11      innocence may be.

12              MR. SCHECHTER:  Just one thing, if the Court

13      pleases.

14              I would like the Court to ask the jury, as

15      well is as the panel, if the fact that the allegations

16      in this case are sexual abuse, do any of you feel that

17      by virtue of those facts alone you cannot be fair and

18      impartial.  Perhaps that could save some time and pare

19      down whatever jurors are going to be there simply

20      because I'm going to have to ask questions off of that.

21              One of the things that I would like to go

22      into, and I think I have to go into, is that whether or

23      not the jury can dispassionately evaluate the evidence

24      and evaluate each and every element of the crimes and

25      if they find a reasonable as to any one of the elements

                                                         ws

Proceedings                    80

1    of the crime that they will be able to acquit rather

2    than act emotionally.  I think that's very important,

3    especially in the nature of the charges here and the

4    nature of the victim, and I need to be able to go into

5    that because if this jury is going to be hearing

6    Mr. Gopaul allegedly sexually abused his stepchild and

7    then the switch gets turned off the minute they hear

8    those words, then certainly I am not going to be able

9    to properly represent him because I will be speaking to

10   a deaf jury.

11              THE COURT:  What I will do is I'll give them

12   or speak to them with regard to what a definition of a

13   fair juror should be.  I doubt either one of you will

14   take any exception to it.

15              I'm not going to get into -- if you want to

16   get into the nature of the charges, either one of you,

17   that's your business.

18              MR. SCHECHTER:  Okay.

19              THE COURT:  I'm trying to cover as much

20   ground as I can in order to give both attorneys an

21   opportunity to cover the things that I think that they

22   really need to cover.

23              If they're ready?

24              Is anybody going to need the use of the

25   board?

ws

Proceedings                    81

1            MS. JOHNSON:  No, your Honor.

2            THE COURT:  Mr. Schechter, if you need the

3    use of the board when you get up let me know, otherwise

4    I'll keep it next to me.

5            MS. JOHNSON:  Are we picking two alternates?

6            THE COURT:  At least, possibly three.

7            (Prospective jurors enter the courtroom.)

8            THE COURT:  Okay, all right, good morning,

9    prospective members.  Welcome back.  Thank you for your

10   timeliness in being here.

11           We had a couple of preliminary matters we had

12   to cover before we began and I had a couple of calendar

13   matters I had to take care of so we could proceed

14   uninterrupted.

15           We're at the point where both attorneys, as I

16   indicated to you at the close of business yesterday,

17   are going to ask you questions concerning your

18   qualifications as a juror in this particular case, but

19   before they do that I just want to give one more

20   further charge, if you will, with respect to what I

21   believe is a definition of a fair juror and just keep

22   this in mind as you sit here and the attorneys ask you

23   questions and you consider your responses.

24           In reaching its verdict, guilty or not

25   guilty, the jury must be fair.  It's important,

                                                    ws

Proceedings                    82

1     therefore, for you to know what makes a person a fair

2     juror so you can decide whether or not you can be a

3     fair juror.

4              A fair juror is a person who starts out with

5     no view in favor of or against the People or the

6     defendant or any witness, be the witness a police

7     officer or a civilian.

8              A fair juror is a person who will listen

9     carefully to all the testimony and other evidence and

10    not make a final decision on the verdict until the end

11    of the case after the juror has heard all the evidence,

12    has heard the lawyers' summations, has heard the

13    Court's final instructions on the law in the case and

14    has had an opportunity, after all of that, to discuss

15    the evidence with the other jurors and consider their

16    views.

17             And, finally, a fair juror is a person who,

18    without fear, favor, bias, prejudice or sympathy for

19    either the People or the defendant, or any witness, be

20    the witness a police officer or civilian, renders a

21    verdict, guilty or not guilty, the juror is convinced

22    -- is consistent with that juror's honest evaluation of

23    the testimony and other evidence and that juror's

24    honest application of the law.

25             With that, at this time, we'll hear from the

Proceedings                    83

1    People.

2              Ms. Johnson, if you would?

3              MS. JOHNSON:   Thank you, Judge.

4              Good morning everyone, welcome back to jury

5    selection.

6              As the Court introduced me before, yesterday,

7    I am assistant District Attorney Jamie Johnson and it's

8    my privilege to stand here before you on behalf of

9    Kathleen Rice, the District Attorney of Nassau County,

10   in this criminal case.

11             You heard just a little bit from the Judge

12   yesterday about the charges in this case.

13             Mr. Ross, you had the ability to hear the

14   charges as the Judge had read them to you yesterday,

15   correct?

16             PROSPECTIVE JUROR:   Yes.

17             MS. JOHNSON:   Would simply the fact that the

18   charges in this case are about sex abuse, would that

19   fact alone prevent you from being a fair and impartial

20   juror in this particular case?

21             PROSPECTIVE JUROR:   No.

22             MS. JOHNSON:   And, Ms. Garfinkel, how about

23   you?

24             Would that fact alone, that this is a case

25   involving sex abuse, would that fact alone prevent you

                                                      ws

Proceedings                    84

1        from being a fair and impartial juror in this case?

2                    PROSPECTIVE JUROR:  No.

3                    MS. JOHNSON:  Mr. Riley, how about you?

4                    What do you think about that?

5                    PROSPECTIVE JUROR:  No.

6                    MS. JOHNSON:  Is there anybody here, by a

7        show of hands, that feels that the fact alone that this

8        is a sex case, would prevent them from being a fair and

9        impartial juror in this matter?

10                   Mr. Mazza, I see that you raised your hand.

11                   Can you tell us a little bit about what

12       you're thinking?

13                   PROSPECTIVE JUROR:  Well, it's an allegation,

14       so --

15                   MS. JOHNSON:  That is correct.

16                   PROSPECTIVE JUROR:  I feel that I'm biased,

17       basically, to this issue.

18                   MS. JOHNSON:  I just want to make sure --

19       okay, can you tell us what that bias is and if it's

20       something that you feel you want to talk about in

21       private --

22                   PROSPECTIVE JUROR:  Yes, basically, yes, in

23       private.

24                   THE COURT:  Actually, you know what,

25       Mr. Mazza, we'll get back to you before Ms. Johnson is

                                                          ws

Proceedings                    85

 1    finished.

 2              MS. JOHNSON:  Is there anybody here, by a

 3    show of hands -- yes, Mr. Ip?

 4              PROSPECTIVE JUROR:  Yes, I think my English

 5    is not good enough, not fully understand, and I don't

 6    know how to write English and spelling, so I --

 7              MS. JOHNSON:  We're not --

 8              THE COURT:  Let me ask you this, you're not

 9    going to be asked to compose any essays or anything as

10    part of jury service.

11              However, it obviously is important that

12    you're able to hear all -- hear the witnesses, the

13    attorneys and myself as far as the instructions on the

14    law and what the witnesses have to say.

15              You were here, obviously, all day yesterday.

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  I spoke to you yesterday.  It

18    seemed to me as though you were understanding what I

19    was saying.

20              Is there things that you don't understand

21    or --

22              PROSPECTIVE JUROR:  No, the simple English I

23    understand, simple conversation I understand, but when

24    you talking about further details I don't understand.

25              THE COURT:  When I talk about verdict?

                                                        ws

Proceedings                    86

1          PROSPECTIVE JUROR:  Something with a special

2     meaning, I don't understand.

3          THE COURT:  You heard me say that the verdict

4     in this case, should the jury reach a verdict, is

5     either guilty or not guilty.

6          Do you understand that concept?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  And do you understand that the

9     verdict would have to be unanimous, in other words, all

10    12 jurors would have to agree on a particular verdict?

11         You understand that?

12         PROSPECTIVE JUROR:  Yes, I understand, but

13    sometimes, when they show the evidence, those meaning,

14    maybe I don't understand.

15         THE COURT:  Okay.

16         All right, Ms. Johnson?

17         PROSPECTIVE JUROR:  It's hard to explain.

18         MS. JOHNSON:  Mr. Ip, thank you for your

19    honesty.

20         And, members of the jury, this is the time

21    when we get to speak to you and we just ask that you're

22    honest and open with us and if there's anything that

23    comes to mind that you want to talk about, please raise

24    your hand because now is the time, not when you're

25    potentially sworn in as a juror.

ws

Proceedings                    87

1              Yes, Mr. Wu?

2              PROSPECTIVE JUROR:  My wife mentioned to me

3    last night, I forgot to tell the Judge, that actually I

4    have an appointment we made a month ago with my son's

5    college next Friday with the counselor, the guidance

6    counselor of college.

7              THE COURT:  And that's what, Friday the 22nd?

8              PROSPECTIVE JUROR:  22nd.

9              THE COURT:  Or the 15th?

10             PROSPECTIVE JUROR:  It's Friday.  I don't

11   know what date.  Next Friday.

12             THE COURT:  And that's something you had

13   previously planned?

14             PROSPECTIVE JUROR:  Yes, three months ago,

15   actually.  My wife told me.

16             MS. JOHNSON:  And she didn't tell you.

17   That's okay, we do that a lot.

18             PROSPECTIVE JUROR:  She told me, but --

19             THE COURT:  You didn't pay attention.

20             Go ahead, Ms. Johnson.

21             MS. JOHNSON:  Does anybody else have any

22   conflicts or any problems for a potential two-week

23   trial they were unable to address with the Court

24   yesterday?

25             Mr. Riley?

                                              ws

Proceedings                    88

1          PROSPECTIVE JUROR:  I think I resolved that.
2          MS. JOHNSON:  Very good.
3          So just getting back to the nature of the
4     case, is there anybody here who feels based on the
5     allegations and charges they would not be able to sit
6     as a fair and impartial juror in this particular case?
7          Mr. Murray, how about you?
8          PROSPECTIVE JUROR:  Not at all.
9          MS. JOHNSON:  Can you assure both parties
10    that you can give the Court that promise?
11         PROSPECTIVE JUROR:  Absolutely.
12         MS. JOHNSON:  Mr. Arroyo, how about you?
13         PROSPECTIVE JUROR:  Not at all.  It's all
14    right.
15         MS. JOHNSON:  You're going to learn
16    throughout the course of the trial that the defendant
17    and the victim in this case are members of the same
18    family and I'm going to ask you if that fact alone,
19    that they are family members, would that fact alone
20    prevent you from being a fair and impartial juror in
21    this particular case?
22         Mr. Ross, how about you?
23         PROSPECTIVE JUROR:  No.
24         MS. JOHNSON:  Can you assure us, promise us
25    that?

Proceedings                    89

1              PROSPECTIVE JUROR:  Yes.

2              MS. JOHNSON:  Ms. Garfinkel, how about you?

3              PROSPECTIVE JUROR:  Not a problem.

4              MS. JOHNSON:  Ms. Lilley, how about you?

5              PROSPECTIVE JUROR:  Not a problem.

6              MS. JOHNSON:  Is there anybody here, by a

7        show of hands, that would have that would have a

8        problem or be unable to be fair and impartial based on

9        that fact alone?

10             Ms. Farina, how about you?

11             PROSPECTIVE JUROR:  No problem.

12             MS. JOHNSON:  Ms. Cohen?

13             PROSPECTIVE JUROR:  Fine.

14             MS. JOHNSON:  Mr. DeBenedittis, how about

15       you?

16             PROSPECTIVE JUROR:  No.

17             MS. JOHNSON:  Is there anybody that believes

18       that crimes cannot be committed between family members?

19             Mr. Mellish, how about you?

20             PROSPECTIVE JUROR:  No.

21             MS. JOHNSON:  Mr. Arroyo, what are your

22       feelings about that?

23             PROSPECTIVE JUROR:  Not at all, there's no

24       problem.

25             MS. JOHNSON:  Can you accept the fact that

Proceedings                    90

1      members of the same family can commit a crime against

2      each other?

3                   Is that reasonable to you?

4                   PROSPECTIVE JUROR:  Sure, they can.

5                   MS. JOHNSON:  Ms. Cohen, what do you think

6      about that?

7                   PROSPECTIVE JUROR:  It's sad, but it can

8      happen.

9                   MS. JOHNSON:  Ms. Farina, what do you think

10     about that?

11                  PROSPECTIVE JUROR:  It can definitely happen.

12                  MS. JOHNSON:  And, Mr. Murray, can you -- is

13     it reasonable to you and can you accept the fact that a

14     sex crime can be committed between members of the same

15     family?

16                  PROSPECTIVE JUROR:  Sure.

17                  MS. JOHNSON:  Mr. DeBenedittis, how about

18     you?

19                  PROSPECTIVE JUROR:  Yes.

20                  MS. JOHNSON:  Is there anybody here, by a

21     show of hands, that believes a sex crime cannot be

22     committed between members of the same family?

23                  Mr. Mazza?

24                  PROSPECTIVE JUROR:  The chances are much

25     lower in the crime if it's a family member.

Proceedings                    91

1           MS. JOHNSON:  Is there anybody here that

2      feels that way by a show of hands?

3           Ms. Lilley, how do you feel about that?

4           PROSPECTIVE JUROR:  It can happen.

5           MS. JOHNSON:  And would you be able to listen

6      to the evidence and listen to all the testimony and

7      keep an open mind?

8           PROSPECTIVE JUROR:  Sure.

9           MS. JOHNSON:  And would you be able to follow

10     the Judge's instructions that you must keep an open

11     mind until the close of the case and you're instructed

12     as to the law?

13          PROSPECTIVE JUROR:  Sure.

14          MS. JOHNSON:  Mr. Mellish, I see you shaking

15     your head.

16          Can you assure us of that as well?

17          PROSPECTIVE JUROR:  Yes.

18          MS. JOHNSON:  Does anybody here believe that

19     family matters --  or if a crime is committed between

20     family members that that should remain private and that

21     law enforcement should not be involved?

22          Mr. Ross, what do you think about that?

23          PROSPECTIVE JUROR:  That should be no

24     problem.

25          MS. JOHNSON:  And can you -- is it reasonable

Proceedings                    92

1      to you that law enforcement would get involved when

2      there are crimes committed between members of the same

3      family?

4                    PROSPECTIVE JUROR:  If a crime is committed

5      law enforcement should definitely get involved.

6                    MS. JOHNSON:  Mr. Riley, what do you think

7      about what Mr. Ross just said?

8                    Would you agree with that?

9                    PROSPECTIVE JUROR:  If it's reported then

10     it's a crime.

11                   MS. JOHNSON:  Ms. Cohen, I see you shaking

12     your head.

13                   What do you think about that?

14                   PROSPECTIVE JUROR:  I agree with that.

15                   MS. JOHNSON:  Mr. Arroyo, I see you shaking

16     your head as well.

17                   PROSPECTIVE JUROR:  I do agree and it should

18     be exposed and everyone should know, let it out.

19                   MS. JOHNSON:  Is there anybody here that

20     doesn't feel that way?

21                   Ms. Steiert, how about you?

22                   PROSPECTIVE JUROR:  No.

23                   MS. JOHNSON:  Mr. Arroyo, you just mentioned

24     to us if it becomes reported people should know about

25     that.

ws

Proceedings                     93

1            Now, can you understand and is it reasonable

2       to you that a crime may not be reported the instant

3       that it happens?

4            Does that make sense to you?

5            PROSPECTIVE JUROR:  Yeah, it's hush in the

6       beginning, I believe, until it leaks out or someone

7       mentions it.  But in the beginning I believe it's

8       hushed, they don't talk about it.

9            MS. JOHNSON:  And is there anybody here that

10      agrees with what Mr. Arroyo just said, by a show of

11      hands, that sometimes crimes don't get reported right

12      away?

13            I see most of you raising your hands.

14            Mr. Murray, what factors would you think

15      would come into play as to whether or not a crime would

16      get reported right away?

17            PROSPECTIVE JUROR:  Seriousness of the

18      incident, of the actual incident that occurred.

19            MS. JOHNSON:  Mr. DeBenedittis, what factor

20      would you consider?

21            PROSPECTIVE JUROR:  I agree with Mr. Murray,

22      also relationship with the victim -- I mean, with the

23      perpetrator as well.  If it's someone close to you you

24      may be more hesitant to report it.

25            MS. JOHNSON:  Ms. Cohen, how about you, what

                                                          ws

Proceedings                    94

1     do you think about what Mr. DeBenedittis said?

2                   PROSPECTIVE JUROR:  I agree, the victim might

3     be fearful in the beginning and then, for whatever

4     reason, become angry and then want to say something.

5                   MS. JOHNSON:  And you used the word fearful.

6                   What types of things or types of factors

7     would you think would cause somebody to be fearful?

8                   PROSPECTIVE JUROR:  The relationship between

9     the two parties.

10                  MS. JOHNSON:  Ms. Farina, what do you think

11    about what Ms. Cohen just said?

12                  PROSPECTIVE JUROR:  I agree with that.

13                  MS. JOHNSON:  Ms. --

14                  PROSPECTIVE JUROR:  I agree.

15                  MS. JOHNSON:  Ms. Lilley, I see you shaking

16    your head.

17                  PROSPECTIVE JUROR:  I agree.

18                  MS. JOHNSON:  I want to talk about something

19    Ms. Cohen just brought up about fear.

20                  Ms. Lilley, would you agree fear is not

21    something that just happens in a moment in time?

22                  MR. SCHECHTER:  I'm going to object, Judge,

23    at this point.  I think counsel is going a little bit

24    into --

25                  THE COURT:  Do me a favor, Mr. Schechter, if

                                                          ws

Proceedings                    95

1      you have an objection just say objection, don't give us
2      a speech.
3                   The objection is overruled.
4                   MS. JOHNSON:  Ms. Lilley, would you agree
5      with me that fear is not something that just happens at
6      a moment in time?
7                   PROSPECTIVE JUROR:  No.
8                   MS. JOHNSON:  Can you accept the fact that
9      fear is something that can be ongoing?
10                  PROSPECTIVE JUROR:  Yes.
11                  MS. JOHNSON:  Ms. Garfinkel, what do you
12     think about that?
13                  PROSPECTIVE JUROR:  I agree with that.
14                  MS. JOHNSON:  And is anybody here afraid of
15     dogs or afraid of flying?
16                  Show of hands?
17                  It's okay to admit to it.
18                  PROSPECTIVE JUROR:  Afraid of flying.
19                  MS. JOHNSON:  Why are you afraid of flying,
20     Ms. Lilley?
21                  PROSPECTIVE JUROR:  The height, heights, I
22     don't like them.
23                  MS. JOHNSON:  Do you choose not to go on
24     airplanes because of your fear on flying?
25                  PROSPECTIVE JUROR:  I have to go to Jamaica,

                                                         ws

1     but anywhere else I'm not taking the plane.

2               MS. JOHNSON:  And did something happen in

3     your life that led you to be fearful of flying?

4               PROSPECTIVE JUROR:  No.  I think it's just

5     the height that I'm scared of.

6               MS. JOHNSON:  Is anybody else here afraid of

7     flying or dogs or knows somebody that's afraid of dogs?

8               PROSPECTIVE JUROR:  Yes.

9               MS. JOHNSON:  Ms. Cohen, how about you?

10              PROSPECTIVE JUROR:  I know someone afraid of

11    dogs.

12              MS. JOHNSON:  Is it an adult or child?

13              PROSPECTIVE JUROR:  It is an adult who used

14    to own a St. Bernard.

15              MS. JOHNSON:  Is that a friend or family

16    member?

17              PROSPECTIVE JUROR:  Yes, a good friend.

18              MS. JOHNSON:  And do you know why that person

19    is afraid of dogs?

20              PROSPECTIVE JUROR:  She has no idea either.

21              MS. JOHNSON:  Have you ever been in a

22    situation with your friend where she has, perhaps,

23    avoided going to somebody's house because they have a

24    dog?

25              PROSPECTIVE JUROR:  Yes.

1               MS. JOHNSON:  And is that reasonable to you

2       that she would react that way because of this fear?

3               PROSPECTIVE JUROR:  Sure.

4               MS. JOHNSON:  And can you accept the fact

5       that your friend changes her activities and changes

6       parts of her life because of this fear?

7               PROSPECTIVE JUROR:  Very little, but, yeah.

8               MS. JOHNSON:  And you may not agree with it,

9       but you can understand that, right?

10              PROSPECTIVE JUROR:  Oh, yeah.

11              MS. JOHNSON:  If you were ever walking down

12      the street with her, would she probably cross the other

13      street if there was a dog?

14              PROSPECTIVE JUROR:  We do walk in a group and

15      whenever we see dogs we stand in front of her.

16              MS. JOHNSON:  Because she's fearful?

17              PROSPECTIVE JUROR:  Yes.

18              MS. JOHNSON:  Is this a fear that is ongoing

19      with her?

20              PROSPECTIVE JUROR:  Yeah.

21              MS. JOHNSON:  It's not just a fear she had

22      one day, right?

23              PROSPECTIVE JUROR:  Oh, no, no, no, many

24      years.  She used to live on a farm and never went near

25      the animals.

Proceedings                                    98

1          MS. JOHNSON:  And that was her reaction to

2     her fear, right?

3          PROSPECTIVE JUROR:  Yeah.

4          MS. JOHNSON:  Is there anybody here that

5     believes that fear is something that just happens at a

6     moment in time and isn't something that can stay with

7     you for a long time?

8          Mr. Ross, what do you think about that?

9          PROSPECTIVE JUROR:  Fear could stay with you

10    for a long period of time, it can.

11         MS. JOHNSON:  And is it reasonable to you

12    that you may change your activities or things that you

13    do in your life because of that fear?

14         PROSPECTIVE JUROR:  Without a doubt.

15         MS. JOHNSON:  And, Mr. Riley, would you agree

16    that some people would react differently to a fear

17    based on their life experience?

18         Does that make sense to you?

19         PROSPECTIVE JUROR:  Yes.

20         MS. JOHNSON:  Ms. Lilley, how about you?

21         PROSPECTIVE JUROR:  Yes.

22         MS. JOHNSON:  Mr. DeBenedittis, does it make

23    sense to you that it would be difficult for a witness

24    to come into a courtroom and tell a group of strangers

25    about something that happened to them?

Proceedings                    99

1          PROSPECTIVE JUROR:  Correct.

2          MS. JOHNSON:  And would you agree with me

3     that the nature of what they would tell you would

4     affect their emotions and their demeanor in a

5     courtroom?

6          PROSPECTIVE JUROR:  Yes.

7          MS. JOHNSON:  Mr. Murray, what factors do you

8     think would play into how a witness testifies other

9     than the nature of what they're testifying about?

10         What things would you look for?

11         PROSPECTIVE JUROR:  Can you repeat the

12    question one more time?

13         MS. JOHNSON:  Sure.

14         What factors do you think would affect how a

15    witness testifies in court in front of a group of

16    strangers?

17         PROSPECTIVE JUROR:  Seriousness, the nature

18    of the allegation, nature of the alleged crime.

19         THE COURT:  Two minutes, Ms. Johnson.

20         MS. JOHNSON:  Thank you.

21         Mr. Arroyo, would you agree with me that age

22    may be a factor as to how somebody testifies?

23         PROSPECTIVE JUROR:  I -- yes, a person could

24    be embarrassed in front of everyone and maybe she

25    couldn't express herself well.

                                              ws

1              MS. JOHNSON:  Ms. Cohen, what do you think

2      about that?

3              PROSPECTIVE JUROR:  I agree.

4              MS. JOHNSON:  Ms. Garfinkel, what are your

5      thoughts about that?

6              PROSPECTIVE JUROR:  I agree.  They could be

7      ashamed or embarrassed.

8              MS. JOHNSON:  And we use the word in the law

9      called corroboration or to support.

10             Mr. Ross, if I told you that there was a car

11     accident on the corner of Old County Road and you

12     didn't see it, what types of evidence or types of

13     things would you look for to corroborate what I told

14     you that there's a car accident?

15             Would you agree with me that if there was

16     glass on the floor, that would be a type of

17     corroboration?

18             PROSPECTIVE JUROR:  Yes, I would.

19             MS. JOHNSON:  Ms. Garfinkel, what about you?

20             PROSPECTIVE JUROR:  If you heard a crash, an

21     ambulance came.

22             MS. JOHNSON:  Mr. Riley, what types of things

23     would you look for?

24             PROSPECTIVE JUROR:  A report, police report,

25     accident report, what have you.

Proceedings                    101

1              MS. JOHNSON:  And that's physical

2       evidence.

3              Would you agree with that?

4              PROSPECTIVE JUROR:  Yes, yes.

5              MS. JOHNSON:  Now, Ms. Cohen, what if

6       somebody else didn't see the car accident, would

7       physical evidence be enough for you to corroborate what

8       somebody told you about a car accident?

9              PROSPECTIVE JUROR:  I don't know.

10             MS. JOHNSON:  Can you accept the fact that

11      crimes are not committed in public all the time?

12             Does that make sense to you?

13             PROSPECTIVE JUROR:  Of course.

14             MS. JOHNSON:  Mr. Arroyo, I see you shaking

15      your head.

16             Would you agree with that?

17             PROSPECTIVE JUROR:  Yes, I was agreeing.

18             MS. JOHNSON:  I maybe have 30 seconds left,

19      so is there anything we've missed that you haven't had

20      a chance to talk about thus far?

21             Any thoughts or feelings that have come up

22      that any of you haven't had the ability to speak about?

23             By a show of hands, can everybody promise

24      yourself and promise myself and the defendant and this

25      Court that if I prove our case beyond a reasonable

                                                        ws

Proceedings                                      102

1     doubt that you can find this defendant guilty?

2              By a show of hands can everybody make me that

3     promise?

4              Mr. Mazza, I see you're not raising your

5     hand.

6              Would you not --

7              THE COURT:  We're going to speak to Mr. Mazza

8     right now.

9              Mr. Mazza, step up with both counsel, please.

10             (Sidebar conference held as follows:)

11             THE COURT:  You said that you had, I think, a

12    bias.

13             PROSPECTIVE JUROR:  Yes, I'm in a huge court

14    battle right now for over two years and basically just

15    everybody in the system seems to be incompetent.  They

16    don't know what's going on.  He's innocent for all I

17    know and just a huge battle I'm going through right

18    now --

19             THE COURT:  So you're of a mind set right now

20    you feel you couldn't be fair?

21             PROSPECTIVE JUROR:  Especially when it comes

22    to a woman saying something that's allegedly true.

23             THE COURT:  Do you have any questions of

24    Mr. Mazza?

25             MR. SCHECHTER:  I have no questions --

                                                  ws

Proceedings                    103

1      Mr. Mazza, do you think if the Judge instructs you on

2      the law --

3                    PROSPECTIVE JUROR:  No.

4                    MS. JOHNSON:  That's enough.

5                    PROSPECTIVE JUROR:  There there's an

6      allegation on me which is a lie and it's -- this is a

7      cut-throat case, shouldn't be going on for two years.

8      It's ridiculous.  It's upsetting my five-year-old

9      daughter, which it started out she was three and now

10     she's five.

11                   THE COURT:  Okay.

12                   PROSPECTIVE JUROR:  Disrupted my job, my

13     professional license.  I have five professional

14     licenses, fingerprinted and bonded.

15                   THE COURT:  You're clearly, at this point,

16     upset.

17                   At this point, unless anybody has any

18     objection, I'm going to excuse Mr. Mazza.

19                   MS. JOHNSON:  No.

20                   MR. SCHECHTER:  No.

21                   THE COURT:  Give my clerk your name.

22                   PROSPECTIVE JUROR:  Sorry.

23                   THE COURT:  That's all right.  Give my clerk

24     your name.

25                   (Prospective juror excused.)

                                                        ws

Proceedings                    104

1              THE COURT:  I'm not going to ask them to step

2       out at this point, I just wanted to get this guy out of

3       here, unless you feel you want him --

4              MR. SCHECHTER:  Both him and Ip.

5              THE COURT:  13 and 14, I'm just telling you

6       now, so you don't waist time on them.

7                   (Sidebar conference concludes.)

8              MS. JOHNSON:  Time's up?

9              THE COURT:  Time's up.

10             MS. JOHNSON:  Thank you all.

11             THE COURT:  All right, Mr. Schechter, if you

12      would, please?

13             MR. SCHECHTER:  May it please the Court.

14             Good morning, ladies and gentlemen.

15             Now, there's only one way to approach this

16      and that is directly.

17             The charges in this case are, frankly, very,

18      very difficult.  Mr. Gopaul is accused of sexually

19      abusing his stepdaughter.

20             Now, do any of you feel that because those

21      are the charges, either by virtue of your own

22      experiences, what you may have read in the paper or of

23      things that you might just feel intrinsically, that

24      those factors make it very difficult for you to sit on

25      a case of this nature?

ws

1           I'm asking as a group.  Okay.

2           Now, have any of you had experiences in your

3    family or close friends of people who have alleged that

4    a relative or friend has been sexually abused, a child,

5    someone below the age of 17?

6           Now, of course, my concern is that my client

7    will get a fair trial.

8           What do I mean by a fair trial?

9           There are many things that go into evaluating

10   whether a witness is telling the truth.

11          Now, for example, Ms. Lilley, you are a

12   school bus driver.

13          PROSPECTIVE JUROR:  I work in the bus taking

14   care of the kids.

15          MR. SCHECHTER:  Let me give you a

16   hypothetical, and this is a theoretical situation.

17   You're a school bus driver.  There's one child left in

18   the bus for you to drop off.  It's you and the child on

19   the bus.  Child drops -- you drop the child off.  The

20   next thing you know you get a call from the supervisor,

21   "Well, little Jimmy alleges, Ms. Lilley, that you

22   touched him inappropriately."

23          MS. JOHNSON:  Objection.

24          THE COURT:  No, I'll overrule that.

25          MR. SCHECHTER:  Thank you, Judge.

1              Little Jimmy alleges that you touched him

2     inappropriately.

3              You say, truthfully, "Wait a minute, that's

4     not true.  I didn't do that."

5              And they say, "Well, little Jimmy says you

6     touched him right in a certain little place and he

7     showed there is a mark in a certain little place.  We

8     have no choice to arrest you and you get arrested."

9              You understand that in situations like this

10    it's almost impossible for you to prove the negative.

11             Now, do you feel that that kind of

12    possibility could exist?

13             PROSPECTIVE JUROR:  Well, yes, but I have

14    never seen it, I have never heard about it, with the

15    school bus company.

16             MR. SCHECHTER:  Not this school bus company,

17    I'm talking about any school bus company.  You've read

18    the newspapers.

19             Or that you slapped a child.  It doesn't have

20    to be sexually.  You slapped the child.  It's you and

21    the child on that bus.

22             It's impossible to prove the negative and the

23    law gives somebody protection because they realize it's

24    impossible to prove the negative and that protection is

25    the presumption of innocence and the other protections

                                                        ws

1     that the Judge is going to mention to you.

2          Now, my concern is that that presumption of

3     innocence could be difficult for people to maintain

4     when they hear testimony from what might be considered

5     to be a vulnerable witness, a young girl.

6          Now, the Judge is going to charge you that

7     each crime has elements.

8          What do I mean by elements?

9          Elements mean in order to prove their case

10    the People must prove my client guilty beyond a

11    reasonable doubt of each specific element of the crime

12    that he will describe to you.

13         So that, for example, if I tell you in order

14    to prove someone guilty you must show that he raised

15    his arm in the air, he had a yellow balloon in his hand

16    and he had red slacks - I'm giving you an absurd

17    example - they prove he has red slacks, he has a yellow

18    balloon, but they can't prove he's got his arm in the

19    air.

20         Now, this might be a situation where you feel

21    sorry for the victim because maybe he's got a problem

22    with his arm, he can't raise his arm in the air.

23         That kind of sympathy, that kind of empathy,

24    while admirable, cannot, must not, be used in

25    deliberations.

Proceedings                    108

1              Instead, what must be used in deliberations

2         is a cool, dispassionate analysis.

3              You might hear evidence and that may make you

4         angry.  It may affect you.  You may say, "My G-d, I

5         would never do something like that."

6              Would you let -- any of you, any of you,

7         would you let those feelings interfere with your

8         deliberation or how you would evaluate the evidence?

9              Mr. DeBenedittis?

10             PROSPECTIVE JUROR:  No, I don't think so.

11             MR. SCHECHTER:  Mr. Murray?

12             PROSPECTIVE JUROR:  No.

13             MR. SCHECHTER:  Mr. Arroyo?

14             PROSPECTIVE JUROR:  No.

15             MR. SCHECHTER:  Ms. Cohen?

16             PROSPECTIVE JUROR:  No.

17             MR. SCHECHTER:  Mr. Riley?

18             PROSPECTIVE JUROR:  The facts speak for

19        themselves.

20             MR. SCHECHTER:  Sorry?

21             PROSPECTIVE JUROR:  I said the facts would

22        speak for themselves and I think I concur with what you

23        said.

24             MR. SCHECHTER:  It's very difficult.  I have

25        two daughters.  Many of you have children.  I haven't

                                                          ws

Proceedings                    109

1       gotten into that yet.

2                    Would the fact that the case involves an

3       allegation that a man sexually abused -- allegedly

4       sexually abused his stepdaughter and the stepdaughter

5       is going to testify, my concern is that the switch gets

6       turned the minute you hear her testimony and you don't

7       follow the rest of the case.

8                    Do any of you feel that there's a danger of

9       that?

10                   PROSPECTIVE JUROR:  No.

11                   MR. SCHECHTER:  Mr. Mellish?

12                   PROSPECTIVE JUROR:  No.

13                   MR. SCHECHTER:  Mr. Riley?

14                   PROSPECTIVE JUROR:  No.

15                   MR. SCHECHTER:  Mr. Ross?

16                   PROSPECTIVE JUROR:  No.

17                   MR. SCHECHTER:  Ms. Garfinkel?

18                   PROSPECTIVE JUROR:  No.

19                   MR. SCHECHTER:  How about you, Ms. Lilley?

20                   PROSPECTIVE JUROR:  No.

21                   MR. SCHECHTER:  Ms. Farina?

22                   PROSPECTIVE JUROR:  No.

23                   MR. SCHECHTER:  Incidentally, I usually

24      address ladies as Ms. -- I grew up in a different

25      generation, so I try to tread the middle line.  Please

Proceedings                    110

1        forgive if I address you as Ms. And you want to be

2        called something else.

3                How about you, Ms. Steiert?

4                PROSPECTIVE JUROR:   No.

5                MR. SCHECHTER:   Mr. Wu?

6                PROSPECTIVE JUROR:   No.

7                MR. SCHECHTER:   Mr. Ip?

8                PROSPECTIVE JUROR:   I didn't quite

9        understand.

10               MR. SCHECHTER:   Now, did you have a question

11       you wanted to ask me, Mr. Riley?

12               PROSPECTIVE JUROR:   No.

13               MR. SCHECHTER:   Now, do all of you agree that

14       sometimes when we react to things we don't always react

15       to them verbally?

16               Sometimes we do things or say things in

17       private moments that might be the true indication of

18       what might have happened in a certain situation or you

19       might say, "I looked at this person."  The person

20       says -- I'll give you a prime example.

21               Guy makes a claim that he got injured in a

22       car accident.

23               Well, the insurance company is really

24       doubtful about the fact that this guy got involved in

25       an accident and what they do is record the guy working

                                                        ws

1   out in his garden because he says his legs hurt him,

2   his back hurts him, they got a video of him dancing at

3   a wedding or a bar mitzvah.

4         Now, the man's back may have been hurting

5   him, but there he is dancing at a wedding or bar

6   mitzvah or doing his garden.

7         So there are indications from other conduct

8   that might belie or contradict what that person says.

9         For example, how many of you like to dance on

10  this jury?

11        Is it possible to dance well angry, if you're

12  angry, right?

13        So if you view a person under various

14  circumstances, you view that person's conduct and that

15  conduct seems to contradict or belie what she might say

16  to you, no matter how emotional, no matter how

17  persuasive, you're looking into the psyche of another

18  person basically, do I have your assurance that you

19  will evaluate everything in this case, including that

20  kind of evidence, if you see it?

21        Okay?

22        Now, are there any of you, any of you, that

23  believe that they cannot, they cannot, come in with a

24  verdict of not guilty because there is a 17 --

25  18-year-old girl, young woman, that's going to testify,

ws

Proceedings                          112

1        she might get upset, she might be emotional, and that's

2        certainly emotionally evocative to all of us.  It's my

3        concern those emotions will be communicated to you.

4               Now, we have a very beautiful system in our

5        country.  Sometimes when we feel that an administration

6        is too conservative or too reactionary, right wing, we

7        come back in the next election and go the other way.

8               Then we may feel this guy is giving away the

9        market here, "Yeah, we elected him, but now he's just

10       not doing it for me," so now we go the other way.

11              That kind of American patriotism, American

12       feeling, is what we need in a jury.  We need you to be

13       analytical, not emotional.  We need you to look at all

14       of the evidence and not close your minds because a

15       young woman testifies and may be upset and may say

16       horrible things, may say horrible things about my

17       client.

18              Now, one other thing, and that's a police

19       officer.

20              As I explained to you many -- rather, as the

21       Judge explained to you, and I don't mean to put myself

22       in that chair, far from it, but as the Judge explained

23       to you a police officer is a human being.  As such, a

24       police officer is not immune to reacting emotionally to

25       a situation.

                                                              ws

Proceedings                    113

1            Now, once again, very hard to prove a
2       negative.
3            A police officer, most of the time, is like a
4       fox in charge of the chicken coop.
5                MS. JOHNSON:  Objection.
6                THE COURT:  Yeah, sustained.
7                MR. SCHECHTER:  What I mean is if a person is
8       under arrest, ain't nobody else coming into that
9       precinct unless they want him to.
10               MS. JOHNSON:  Objection.
11               THE COURT:  I'll allow that.  Overruled.
12               MR. SCHECHTER:  So, a person arrested is
13      there and the cop is there and the police officers are
14      there and everybody is there, if they want to be there.
15           So sometimes, in order to evaluate what might
16      have happened before -- let's say someone makes a
17      statement.  In order to evaluate if that statement was
18      made voluntarily, there are also indicia you look to -
19      maybe his clothing is ruffled, maybe he was in custody
20      for 16 hours - to determine if a statement was made
21      fairly, was made accurately, made truthfully, or
22      whether it was perhaps forced.
23           Now, once again, I leave it to you to do the
24      evaluation.
25           Bless you.

                                                      ws

Proceedings                    114

1           MS. JOHNSON:  Bless you.

2           MR. SCHECHTER:  Look at the evidence and

3   please keep your minds open.  My biggest fear here is

4   that your minds will close once the complainant gets on

5   the witness stand.  I need you to be strong and I need

6   you to wait to hear all of the evidence.

7           Do I have your promises that you will do

8   that?

9           Thank you.

10          Your Honor?

11          THE COURT:  Thank you very much.

12          Can I just see Ms. Steiert and both counsel

13  real quick, please?

14          (Sidebar conference held as follows:)

15          THE COURT:  I thought one or both of the

16  lawyers would ask you some questions after your

17  comments yesterday, but obviously they left it to me.

18          I know yesterday you mentioned the fact that

19  your husband is in jail and you made a couple of

20  comments yesterday that you felt that you would not be

21  able to treat the police officer or detective like

22  anybody else.

23          You've now sat through -- you've heard me a

24  little bit more, you've heard both attorneys.  I just

25  want to follow up with you with regard to that.

Proceedings                    115

1           Do you feel that, in your present mind set

2      now, you'll be able to give both sides a fair trial?

3           PROSPECTIVE JUROR:  Yes.

4           THE COURT:  You're shaking your head.  You

5      have to answer yes or no.

6           PROSPECTIVE JUROR:  Yeah.

7           THE COURT:  You feel you can evaluate a

8      police officer like anybody else?

9           PROSPECTIVE JUROR:  I think it would be a

10     little hard, but I think I can.

11          THE COURT:  Do you think you could be fair to

12     the People in this case?

13          Obviously, they're going to be call the

14     police and the detectives.

15          PROSPECTIVE JUROR:  Yes.

16          MR. SCHECHTER:  And the defendant?

17          THE COURT:  And the defendant?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  I mean, I had to ask you about

20     the People because obviously -- in light of your

21     comment yesterday, but obviously both sides.

22          PROSPECTIVE JUROR:  I feel that after I

23     looked at the evidence I can make a fair decision.

24          THE COURT:  You haven't seen anything yet.

25          PROSPECTIVE JUROR:  I know.

Proceedings                    116

1            THE COURT:  You've heard a little bit about

2    the case.  The attorneys are not allowed to really

3    preview that.  You know a little bit about the case at

4    this point, more than you did yesterday, that's why I

5    brought you up.

6            If you can give me your assurance that you

7    can be fair to both sides, knowing what type of case it

8    is, knowing who's going to be called as witnesses --

9            PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Anybody have any questions?

11           MR. SCHECHTER:  No.

12           MS. JOHNSON:  You said that you think you can

13   be fair.

14           Can you promise us 100 percent that you would

15   be fair, though, and if you can't, it's okay, we just

16   need to know now.

17           PROSPECTIVE JUROR:  Honestly, I don't know.

18   All I know is the until the circumstances --

19           THE COURT:  I need to have an unequivocal

20   assurance that you can be fair and I know I'm putting

21   you on the spot, but I would rather you tell me yes or

22   no.

23           PROSPECTIVE JUROR:  I think it will be hard,

24   but I think, yes, I can.

25           THE COURT:  Okay, anybody else have any

                                            ws

Proceedings                117

1    questions?

2              MR. SCHECHTER:  No questions.

3              MS. JOHNSON:  No questions.

4              THE COURT:  When both of you are ready just

5    let me know.

6              MS. JOHNSON:  Okay.

7              (Sidebar conference concludes.)

8              (Pause in the proceedings.)

9              THE COURT:  For those of you in the box and

10   those that are in the audience, the attorneys are going

11   to consider your answers, make their selections, if you

12   will.

13             I'm going to ask if anybody needs to use the

14   bathroom, just ask one of my officers, they'll let you

15   know, but, please, I'm going to ask you to be back here

16   within the next, you know, five minutes, have everybody

17   back in the courtroom.  If anybody needs to move around

18   for any reason, step outside and stretch, use the

19   bathroom.

20             For those of you that are in the jury box,

21   just look around, make sure you remember who your

22   neighbor is, okay?

23             (Brief recess in the proceedings.)

24             THE COURT:  We're considering the whole

25   board.  Mazza was discharged for cause.

```
                          Proceedings            118
```

 1            MR. SCHECHTER:  Mr. Ip and Mr. Wu I think we
 2    agreed are going, too.
 3            MS. JOHNSON:  Yes, I agree.
 4            MR. SCHECHTER:  So then we're left with
 5    perempts.
 6            THE COURT:  Not so fast.
 7            MS. JOHNSON:  Slow down a second.
 8            THE COURT:  Thirteen and 14 are discharged
 9    for cause, Mr. Wu and Mr. Ip.  Mr. Mazza was previously
10    discharged for cause.  Those are on consent of both
11    parties.
12            People, any challenges for cause, the entire
13    board?
14            MS. JOHNSON:  People challenge for cause
15    Juror Number 12, Ms. Steiert, based on the fact that
16    both yesterday she said that her starting point would
17    not be believing cops, today at the bench she says --
18    she was quite equivocal.  Says she thinks she can be
19    fair and then she wasn't sure.  I don't believe she
20    gave us 100 percent.  Just her whole hesitance with
21    answering and her words that she thinks she can, we
22    would challenge her for cause.
23            THE COURT:  Mr. Schechter?
24            MR. SCHECHTER:  I disagree.  I think she had
25    rehabilitated herself.  I think she said after

                                                      ws

1    listening to the comments and listening to the comments

2    of counsel and the Court that she could be fair and

3    impartial, that she could sit on this case.  I don't

4    think it was equivocal at all.  She was struggling with

5    her demons, but obviously everybody comes into court

6    with demons of one sort other another.

7                  THE COURT:  She indicated yesterday she would

8    have some problem with listening to law enforcement,

9    but after hearing both parties and after listening to

10   the comments, although she initially hesitated when I

11   asked her point blank if she could give an unequivocal

12   assurance that she could be fair to both sides, I

13   believe her words were -- I think she said, "I think it

14   would be difficult, but, yes."

15                  So I think under those circumstances I'm

16   going to deny the application for cause.

17                  People, peremptory -- by the way, we're

18   dealing with a Class D Felony as a top count?

19                  MS. JOHNSON:  Yes.

20                  MR. SCHECHTER:  Yes.

21                  THE COURT:  Everyone has ten peremptories

22   each.

23                  People, the entire board, peremptory?

24                  MS. JOHNSON:  The first perempt would be

25   Juror Number 2, Mr. Mellish, second perempt, Juror

ws

Proceedings                    120

1       Number 10, Ms. Farina, third perempt, Juror Number 12,

2       Ms. Steiert.

3                     THE COURT:  All right, and that's it?

4                     MS. JOHNSON:  That's it.

5                     THE COURT:  People have exercised three

6       peremptories.

7                     Defendant, any challenges for cause?

8                     MR. SCHECHTER:  No, Judge.

9                     THE COURT:  One through nine at this point?

10                    MR. SCHECHTER:  Yes.

11                    THE COURT:  Any peremptory challenges?

12                    MR. SCHECHTER:  Yes, three, four and that's

13      Richard Riley and Rena Cohen, Juror Number 7 and

14      Juror Number 8, Ms. Garfinkel.

15                    MS. JOHNSON:  Was that three by the defense?

16                    MR. SCHECHTER:  No, I had four.

17                    THE COURT:  Four.

18                    Is that correct, Mr. Schechter?

19                    MR. SCHECHTER:  Yes, four.

20                    THE COURT:  They are Mr. DeBenedittis,

21      Ms. Cohen, Mr. Riley and Ms. Garfinkel.

22                    That means Mr. Ross will be our first sworn

23      juror, our alternate (sic), Mr. Arroyo will be our

24      second sworn juror, Mr. Murray third.

25                    MR. SCHECHTER:  Mr. Ross is an alternate?

1              THE COURT:  I apologize.  I meant to say

2      foreman.

3              Mr. Murray is Juror Number 3 and Ms. Lilley

4      is Juror Number 4.

5              Does that comport with everybody's --

6              MS. JOHNSON:  Yes, Judge.

7              MR. SCHECHTER:  Yes, Judge.

8              THE COURT:  All right, People have exercised

9      three the first round, defendant four.

10             We'll fill the box.

11             All right, can I just see both attorneys real

12     quick?

13             (Sidebar conference held off the record.)

14             THE COURT:  I wanted to cover in the back one

15     other thing.  I reconsidered doing openings by Friday.

16             What I'm going to do is start with openings

17     and testimony Monday morning.

18             Does anybody have any objection to me

19     discharging the four sworn until Monday morning at

20     9:30?

21             MS. JOHNSON:  Absolutely not.

22             MR. SCHECHTER:  No.

23             THE COURT:  The ones that are selected?

24             MR. SCHECHTER:  So Monday we're beginning

25     testimony and we're opening Friday?

Proceedings                    122

1              THE COURT:  No.

2              MR. SCHECHTER:  Opening and testimony Monday?

3              THE COURT:  I think it makes it a little bit

4     easier on everybody because I think, at best, you know,

5     at the rate we're going, I don't know if we're going to

6     have a jury by today.  I don't want to do openings at

7     3:30 Friday afternoon, it's silly.

8              MS. JOHNSON:  Okay, thank you.

9              (Prospective jurors enter.)

10             THE COURT:  All right, for those of you in

11    the jury box, please give your kind attention to my

12    clerk, if you would, please?

13             THE CLERK:  The following jurors whose names

14    I call have been selected to be on this jury:

15             Juror Number 1 is Eric Ross, Juror Number 2

16    is Frances Arroyo, Juror Number 3 is Brian Murray and

17    Juror Number 4 is Gem Lilley.

18             If your name has been called please remain in

19    your seat.

20             If your name has not been called you're

21    excused from this case and must return to central jury.

22             THE COURT:  All right, for those of you that

23    are excused are excused with the thanks of the Court.

24    Thank you very much.  Please watch your step as you

25    step out.

ws

Proceedings                    123

1                    (Prospective jurors excused.)

2              THE CLERK:  Are the remaining jurors

3        satisfactory to the People?

4              MS. JOHNSON:  Yes.

5              THE CLERK:  To the defense?

6              MR. SCHECHTER:  Yes, Judge.

7                    (Jurors duly sworn.)

8              THE COURT:  All right, you could have a seat,

9        our first sworn jurors in the case.  Thank you, again.

10             The good news for you four is that you're

11       going to be excused right now and you're going to be

12       directed to report back Monday morning at 9:30 and the

13       reason I say that is obviously we just began jury

14       selection.  There's really no reason for you to come

15       back here or remain here, for that matter, as we go

16       through the rest of the jury selection process.

17             So I feel reasonably confident that we're

18       going to be able to get going first thing Monday

19       morning with opening statements by the People and the

20       defendant, should he choose to make one, and the

21       calling of witnesses.

22             So what I'm going to do at this point is

23       excuse you.  We'll have you back here Monday morning,

24       either Chris or Kenny, my court officers, will go over

25       with you, as you step out, parking issues and what you

Proceedings                    124

1      can expect at this point going forward.

2                So, enjoy the rest of the week, have a good

3      weekend.  We'll see you back here Monday morning, 9:30,

4      in this building.

5                (Sworn jurors exit.)

6                THE COURT:  All right, the remainder of the

7      people in the audience, again, as I indicated to you

8      yesterday, there's almost 100 percent likelihood you're

9      going to be in the jury box by the end of today.  We're

10     going to fill the next 14 seats.

11               If you hear your name called please bring all

12     your personal belongings.  Watch your step as you step

13     in the jury box.  We're going to fill the jury box all

14     the way back coming forward.

15               So just listen to my clerk, Artie, for your

16     name and if you hear your name called please step

17     forward.

18               THE CLERK:  Seat 1, Lisa Juergens,

19     J-u-e-r-g-e-n-s; Seat 2, Victoria Volpe, V-o-l-p-e;

20     Seat 3, Donna Loverde, L-o-v-e-r-d-e; Seat 4, Samantha

21     Grob, G-r-o-b; Seat 5, Kenneth Fowler, F-o-w-l-e-r;

22     Seat 6, Frank Ciminiello, C-i-m-i-n-i-e-l-l-o;

23     Seat 7, Frederick Meyers, M-e-y-e-r-s; Seat 8, Jerry

24     Ashe, A-s-h-e; Seat 9, Edna Striffolino,

25     S-t-r-i-f-f-o-l-i-n-o; Seat 10, Gregory DiLeo,

                                                          ws

Proceedings                    125

1     D-i-L-e-o; Seat 11, William Galletti, G-a-l-l-e-t-t-i;

2     Seat 12, Michael Mongelli, M-o-n-g-e-l-l-i, Seat 13,

3     Antonio Casesa, C-a-s-e-s-a; Seat 14, Elena Ferrigno,

4     F-e-r-r-i-g-n-o.

5                THE COURT:  All right, for our new 14, again,

6     thank you for being here and welcome to the jury box.

7                I'm not going to repeat what I went into

8     yesterday.  As I indicated to you yesterday, there was

9     a good likelihood you'd be seated in the jury box, but

10    I'm just going to kind of briefly kind of cover some of

11    the things that I covered with the first 14 that were

12    here yesterday.

13                Does anybody recognize any of the parties to

14    the case?

15                Does anybody need for me to repeat the names

16    on the witness list?

17                If you do, if there was a name you heard

18    yesterday that sounded familiar, I would be more than

19    happy to repeat it.

20                I don't see any hands raised so nobody

21    recognized any names?

22                Obviously, from both hearing myself yesterday

23    and now the attorneys this morning, you have heard a

24    little bit about the case.  I explained to you

25    yesterday what your role would be if you're selected as

ws

Proceedings                126

1    a juror.  You're the finder of the facts.  I do not

2    find facts in this particular case.  That's not my job.

3    You are the finder of facts.  You make a determination

4    as to whether or not the defendant is guilty or not

5    guilty.

6              My job is to explain the law, to preside over

7    the trial, make rulings concerning issues of law and

8    evidence.

9              Anybody have any problem with that?

10             Anybody feel for any reason they couldn't do

11   that?

12             You've heard, somewhat, about the nature of

13   the case.

14             You've heard me explain the first thing this

15   morning that a fair juror is one who comes in here

16   without any predisposition to either side, could be

17   fair to both sides, who can render a verdict without

18   bias, prejudice, sympathy for either side or for any

19   witness, complainant, police, detectives.

20             Anybody here feel that they couldn't do that?

21             That's quite a few people.  Sounds like

22   people have been paying very close attention to what's

23   been going on.

24             All right, first row, just show me by way of

25   hands.

ws

Proceedings                    127

1          All right, Mr. -- Ms. Juergens, and your

2     reason would be?

3               PROSPECTIVE JUROR:  Personal reasons.

4               THE COURT:  Okay, you feel --

5               PROSPECTIVE JUROR:  I could not be objective

6     at all.  I could not be fair.

7               THE COURT:  Okay.  Let me just say this

8     before I ask any other questions.

9          No -- I don't expect everybody to come in

10    here, if you will, without any type of prior

11    experiences, some negative, some positive, and not

12    have, perhaps, certain prejudices or bias.  It's part

13    of who we are and what we are and we're all a product,

14    if you will, of our experiences.  So it's not that I

15    expect, you know, people to income in here, if you

16    will, with a blank slate.

17              The issue is, is that should you have these

18    types or have had these types of experiences or

19    situations in your life, whether they're positive or

20    negative, can you put those aside and render a verdict

21    based upon the evidence and the testimony that you hear

22    in the case?

23              That's what we're all asking you if you could

24    do.

25              If you can't do it then obviously now is the

                                                        ws

Proceedings                    128

1   time to tell us, but it's -- I don't want anybody to

2   have this unrealistic expectation that, you know,

3   there's a quote-unquote perfect juror.  You know, when

4   you heard me before, I talked about what a fair juror

5   should be.  There's no such thing as a perfect juror,

6   if you will.  So I want you to just kind of keep that

7   in mind.

8              Ms. Juergens, you feel that given, from what

9   you've either heard so far, the nature of the case, you

10  wouldn't be able to be --

11             PROSPECTIVE JUROR:  I would not be fair.

12             THE COURT:  Okay.

13             Anybody else?

14             Ms. Volpe?

15             PROSPECTIVE JUROR:  I guess because I'm

16  female and I feel that, you know, women are supposed to

17  be not messed with.

18             THE COURT:  All right, well, I mean --

19             PROSPECTIVE JUROR:  That's pretty much just

20  the way I feel, you're not supposed to.

21             THE COURT:  Do you feel because of the

22  allegation in this case, because the allegation

23  involves a female, that you feel that you would be more

24  disposed to giving her more credibility because of it?

25             PROSPECTIVE JUROR:  I would imagine so.

                                                   ws

1          THE COURT:  All right.

2          Anybody else in that first row?

3          Ms. Loverde?

4          PROSPECTIVE JUROR:  I just don't feel

5     comfortable with the whole situation.  I'm just

6     uncomfortable, completely.

7          THE COURT:  This may come as a surprise to

8     you, but jury service, and particularly in criminal

9     cases, is never meant to be easy.  It's not an easy

10    process.  It's not easy to pass judgment on another

11    human being, believe me, I recognize that and nobody

12    here, the participants in this case, don't expect you

13    to say this is going to be real easy to do.  It's

14    difficult.

15         PROSPECTIVE JUROR:  But I mean the situation

16    of what he's being charged with, I don't feel

17    comfortable with it.

18         THE COURT:  And you think that because of the

19    nature of the charges you would not be able to, if you

20    will, cooly and calmly go through the evidence and make

21    a decision?

22         PROSPECTIVE JUROR:  Yeah.

23         THE COURT:  Okay.

24         Anybody else in that first row?

25         Ms. Grob, and your reason is?

                                              ws

Proceedings                    130

1              PROSPECTIVE JUROR:  Personal experiences.

2              THE COURT:  That would render you to be

3      unable to be fair and impartial?

4              PROSPECTIVE JUROR:  Right.

5              THE COURT:  Mr. Ciminiello?

6              PROSPECTIVE JUROR:  Yes, I don't think I

7      could be fair in a sexual case.

8              THE COURT:  I might as well ask you,

9      Mr. Meyers.

10             PROSPECTIVE JUROR:  I think I could be fair.

11             THE COURT:  You can, okay.

12             Going to the back row, anybody else?

13             Mr. DiLeo?

14             PROSPECTIVE JUROR:  Due to the nature of this

15     crime, I've pretty much already made a decision and I

16     don't think I can be fair to either side.

17             THE COURT:  To either side, okay.

18             Anybody else in the second row?

19             Mr. Galletti?

20             PROSPECTIVE JUROR:  It's all personal.

21             THE COURT:  All right, and I'm not looking

22     for you to reveal something that you may be

23     uncomfortable with, but is it of such a nature you

24     don't feel you could put it aside and decide this case?

25             PROSPECTIVE JUROR:  No.

                                                    ws

Proceedings                    131

1           THE COURT:  Mr. Mongelli?

2           PROSPECTIVE JUROR:  I don't think I could be

3     fair in this trial.  It's personal nature.

4           THE COURT:  Ms. Ferrigno?

5           PROSPECTIVE JUROR:  Personal, very similar

6     situation.

7           THE COURT:  All right, make that call to

8     central jury.  We're going to need some more jurors

9     coming over here this afternoon.

10          Let me see all the attorneys first.

11          (Sidebar conference held as follows:)

12          THE COURT:  Let's not waste any time.

13          We'll go through them one by one.  If I miss

14    somebody let me know.

15          Juergens, Volpe, Loverde, Grob, Ciminiello in

16    the first row.

17          Then Mr. Fowler and Mr. Meyers is going to

18    stay put.

19          Mr. DiLeo, Mr. Gallette, Mongelli and

20    Ferrigno.

21          MR. SCHECHTER:  I don't know if -- Edna

22    Striffolino, prospective juror number nine, I don't

23    know if she raised her hand.

24          THE COURT:  I didn't see it.  Believe me, it

25    doesn't look like anybody is shy at this point.

                                                    ws

Proceedings                    132

1        MR. SCHECHTER:  Maybe you could just ask her
2   if she raised her hand.
3            (Sidebar conference concludes.)
4        THE COURT:  Ms.  Striffolino, did you raise
5   your hand at all?
6        PROSPECTIVE JUROR:  I did.  I should have
7   brought it up yesterday.  I have a medical procedure at
8   3:30 today, but I didn't know if it warranted -- it's a
9   stress test.
10        THE COURT:  I know you're all the way in the
11   back, just come up real quick, if you will.  I
12   apologize.
13            (Sidebar conference held as follows:)
14        THE COURT:  Okay, you have a stress test this
15   afternoon?
16        PROSPECTIVE JUROR:  At 3:30.  I'm sorry.
17        THE COURT:  You should be out of here by this
18   morning.
19        PROSPECTIVE JUROR:  Okay.
20        THE COURT:  Either you get picked and you
21   won't be back until Monday or you don't get picked and
22   you'll be gone.
23        PROSPECTIVE JUROR:  That would be great.
24   Thank you.
25        THE COURT:  Have a seat.

ws

Proceedings                    133

1              (Sidebar conference concludes.)

2              THE COURT:  All right, as you hear your

3       names, please take your belongings and be careful as

4       you step out, particularly past other jurors.

5              Ms. Juergens, Ms. Volpe, Ms. Loverde,

6       Ms. Grob, Ms. -- Mr. Ciminiello, Mr. DiLeo,

7       Mr. Galletti, Mr. Mongelli, and Ms. Ferrigno.

8              (Prospective jurors excused.)

9              THE COURT:  Those of you who remain, just

10      stay where you are so we don't cause havoc in terms of

11      the seating arrangements.

12             Those of you, please, we're going to fill the

13      box.  Please listen to your name and, again, if your

14      name is called please bring your personal belongings as

15      well and being careful stepping into the jury box.

16             THE CLERK:  Seat 1, Lee Mucci, M-u-c-c-i.

17             PROSPECTIVE JUROR:  It's actually Leeann.

18             THE CLERK:  Seat 2, Maureen Troy, T-r-o-y;

19      Seat 3, Anthony Siena, S-i-e-n-a; Seat 4, Donald

20      O'Shea, O-'-S-h-e-a; Seat 6, Rebecca Cioffi,

21      C-i-o-f-f-i, Seat 10, Nancy Doughty, D-o-u-g-h-t-y;

22      Seat 11, William Notholt, N-o-t-h-o-l-t, Seat 12,

23      Octavia Melendez, M-e-l-e-n-d-e-z; and, seat 14, John

24      Lynch, L-y-n-c-h.

25             THE COURT:  All right, those of you who have

                                                        ws

1    just been called again, welcome.  Thank you for being

2    here.

3            Those of you that just came into the box, is

4    there anybody who either needs for me to repeat the

5    witness list or recognizes any names or is familiar

6    with anybody in the case that you've heard so far?

7            Anybody?

8            All right, you've heard, and I might as well

9    get to this first, from both sides, you've heard me

10   yesterday as well as this morning, talk about what a

11   fair juror should be or what we hope they will be and

12   you've heard about the nature of the case.

13           You heard me discuss different legal

14   principles which I'll go over with you in a minute, but

15   is there anybody in the first row for any reason,

16   insofar as the nature of the case is concerned or what

17   you've heard so far, that you feel that you could not,

18   not that you don't want to serve, but you cannot be

19   fair and impartial?

20           Anybody?

21           Ms. Mucci?

22           PROSPECTIVE JUROR:  Right.

23           THE COURT:  And what is it that would make

24   you unable to serve Ms. Mucci?

25           PROSPECTIVE JUROR:  I'm a nurse.  I'm usually

Proceedings                    135

1       for the underdog and I'm also partial to cops.  I have

2       a lot of friends that are cops.

3                    THE COURT:  And you feel you would, perhaps,

4       give them greater credibility than somebody else?

5                    PROSPECTIVE JUROR:  I feel I would.  It's

6       their job to assess.  We kind of see the world the same

7       way.

8                    THE COURT:  You work in an emergency room?

9                    PROSPECTIVE JUROR:  No, critical care area.

10                   THE COURT:  Anybody else in that first row?

11                   Mr. Siena?

12                   PROSPECTIVE JUROR:  Yes, my cousin got

13      started as an ADA in Queens County.

14                   My daughter's godfather, Suffolk County

15      police officer.  My goddaughter's grandfather is

16      vice-president of SBA and I wouldn't be able to

17      discount their testimony as anything other than law.

18      That's their environment that they deal in on a regular

19      thing.  I wouldn't be able to judge against them, you

20      know, knowing that's their niche.

21                   THE COURT:  All right, you feel that

22      regardless of what you would hear during the course of

23      the case, whatever --

24                   PROSPECTIVE JUROR:  I would tend to side with

25      them being that's their niche, yes.

Proceedings                    136

1          Anybody else in the first row?

2          PROSPECTIVE JUROR:  I do know police

3     officers.

4          THE COURT:  That's fine.  We all know police

5     officers.  That's not uncommon.  That's not a reason to

6     be disqualified, if you will.

7          Anybody in the second row?

8          Mr. --

9          PROSPECTIVE JUROR:  Notholt.

10         My step-granddaughter was molested at seven

11    years old by her mother's boyfriend and he was

12    acquitted.  I don't know if I could give this guy the

13    same break.

14         THE COURT:  Do you think because of that

15    experience --

16         PROSPECTIVE JUROR:  His whole testimony is

17    rattling my nerves.

18         THE COURT:  And Mr. Melendez?

19         PROSPECTIVE JUROR:  I have a close experience

20    with that, but I would like to share with you because I

21    wouldn't like to state it in public.

22         THE COURT:  Okay, anybody else?

23         Mr. Lynch?

24         PROSPECTIVE JUROR:  I'm fine.

25         THE COURT:  All right, Mr. Melendez, why

                                              ws

Proceedings                    137

1    don't you come up with both attorneys?

2                   (Sidebar conference held as follows:)

3                   PROSPECTIVE JUROR:  About a couple of years

4    ago my wife was accusing me with something similar with

5    one of my step-daughters, which never happened, but

6    that experience still haunts me to this day.

7                   THE COURT:  Did you get charged wit?

8                   PROSPECTIVE JUROR:  No, it was just I have a

9    lot of problems in the relationship because of that.   I

10   have a step-daughter, she's a schizophrenic.  She's

11   telling my wife --

12                  THE COURT:  Any questions?

13                  MR. SCHECHTER:  No, Judge.

14                  MS. JOHNSON:  Do you do you feel that that

15   personal experience would be something you would have

16   trouble putting aside in this particular case?

17                  PROSPECTIVE JUROR:  Definitely.  It still

18   haunts me to this day.

19                  THE COURT:  Just have a seat back in the box.

20                  (Prospective juror steps down.)

21                  MR. SCHECHTER:  While I'm here, is there

22   still a peremptory for seven and above?

23                  THE COURT:  To be honest, I don't know.

24                  You're talking about Mr. Notholt?

25                  MR. SCHECHTER:  I'm talking about Mr. Lynch.

                                                            ws

Proceedings                    138

1              THE COURT:  I'll look into that between now

2        and when we make the selection.

3              Unless I hear differently, I'm assuming the

4        following are excused on consent, Ms. Mucci --

5              MS. JOHNSON:  Yes.

6              MR. SCHECHTER:  Yes.

7              THE COURT:  -- Mr. Siena, Mr. Notholt,

8        Mr. Melendez, obviously.

9              I think we're good on everybody else, right?

10             MR. SCHECHTER:  I think that's it, Judge, so

11       far.

12             MS. JOHNSON:  Um-hum.

13             (Sidebar conference concludes.)

14             THE COURT:  All right, as you hear your name

15       called just, again, with the thanks of the Court,

16       just -- you can step out.  Please take your belongings

17       as you step out and my clerk or one of my officers will

18       tell you where to go.

19             Ms. Mucci, Mr. Siena, Mr. Notholt and

20       Mr. Melendez.

21             (Prospective jurors excused.)

22             THE COURT:  Again, we'll do our best to keep

23       this box full.  If you hear your name step forward with

24       your belongings and be careful as you step into the

25       jury box.

                                                    ws

Proceedings                    139

1              THE CLERK:  Seat 1, C.C. Saladino,

2       S-a-l-a-d-i-n-o; Seat 3, Ann Gordon, G-o-r-d-o-n;

3       Seat 11, Neil Sklar, S-k-l-a-r; Seat 12, Linda Burton,

4       B-u-r-t-o-n.

5              THE COURT:  For those new members, again,

6       welcome.  It's Mr. Saladino, Ms. Gordon, Ms. --

7       Mr. Sklar and Ms. Burton is the last one.

8              Let me ask you at the outset, anybody have

9       any problems for any reason that they feel they could

10      not be fair and impartial in this kind of case, given

11      what you've heard so far?

12             Ms. Gordon?

13             PROSPECTIVE JUROR:  My sister was raped.

14      This is not --

15             THE COURT:  This is not a case for you?

16             PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  Anybody else?

18             Ms. Burton?

19             PROSPECTIVE JUROR:  I also could not.  I

20      can't sit on this case for personal reasons.

21             THE COURT:  All right, either side have any

22      objection to excusing these two jurors?

23             MS. JOHNSON:  No, Judge.

24             MR. SCHECHTER:  None.

25             THE COURT:  So, Ms. Burton and Ms. Gordon,

Proceedings                          140

1     with my thanks.  My officer will tell you what to do at

2     this point.

3                  (Prospective jurors excused.)

4                  THE COURT:  All right, chances are 50/50 out

5     there.

6                  THE CLERK:  Seat 3, Rommel Daniel,

7     D-a-n-i-e-l, R-o-m-m-e-l.

8                  THE COURT:  Mr. Daniel, before I have you go

9     all the way back there, is there any reason you can't

10    be fair and impartial?

11                 PROSPECTIVE JUROR:  Just the length of the

12    trial, that's it.

13                 THE COURT:  All right, well -- I'll let the

14    attorneys and I'll talk to you a little bit about that,

15    but come and join us.

16                 THE CLERK:  Seat 12, John Lopori,

17    L-o-p-o-r-i.

18                 THE COURT:  How about you, Mr. Lopori?

19                 PROSPECTIVE JUROR:  I have a lot of close

20    friends that are cops.  I don't think they're foxes in

21    a chicken coop.  I feel I may favor what the cop has to

22    say.

23                 Also, the nature of the case with the girl

24    being raped.

25                 THE COURT:  All right, take your card with my

                                                           ws

1      thanks.

2                      (Prospective juror excused.)

3                      THE COURT:  Still 50/50.

4                      THE CLERK:  Seat 12, Zeeshan Humayun.  First

5      name, Z-e-e-s-h-a-n, last name, H-u-m-a-y-u-n.

6                      THE COURT:  Come join us.

7                      PROSPECTIVE JUROR:  I have a problem with

8      this case.  I have a personal problem and I've already

9      made my decision.  I can't do this.

10                     THE COURT:  Mr. Humayun has a problem.  He

11     cannot be fair and impartial.

12                     Anybody have any problems?

13                     MS. JOHNSON:  No, Judge.

14                     MR. SCHECHTER:  No.

15                     THE COURT:  Okay.

16                     THE CLERK:  Seat 12, Adam Toro, T-o-r-o.

17                     PROSPECTIVE JUROR:  No objections.

18                     THE COURT:  All right, again, everybody

19     welcome.

20                     Moving to the concepts of law that I

21     discussed yesterday; the burden of proof, always on the

22     People, never shifts to the defendant.

23                     There's often a very big misconception that a

24     defendant in a criminal case has to prove his or her

25     innocence.  They do not.  The defendant never has any

                                                        ws

Proceedings                    142

1          burden.  The defendant does not have to testify in a

2          criminal case and, more importantly, that's not -- the

3          fact that a defendant does not testify is not an

4          inference from which you can make an adverse inference,

5          if you will, or negative inference over the fact if

6          they choose to exercise that right.

7                    Presumption of innocence.  Defendant is

8          presumed innocent throughout the course of the trial

9          and only unless and until you're satisfied beyond a

10         reasonable doubt that the charges, if you will, have

11         been proven beyond a reasonable doubt.

12                   Anybody have any problems with any of those

13         concepts?

14                   Those are bedrock fundamental principles in

15         any criminal case in the United States of America.

16                   Anybody have any problems with that?

17                   Okay.  All right, what I'm going to do, then,

18         is then I'm going to, at this point, begin to go

19         through the questions I asked everybody individually.

20         I'm going to go through the same manner we did

21         yesterday.

22                   Again, town in which you live, married or

23         committed relationship, your occupation, your spouse's

24         occupation, if your children are of an age where they

25         are working, if you could just tell us the nature of

ws

Proceedings                143

1         their work.

2                     Mr. Saladino, we'll start off with you, sir.

3                     The town in which you live?

4                     PROSPECTIVE JUROR:  Massapequa Park.

5                     THE COURT:  And married or committed

6         relationship?

7                     PROSPECTIVE JUROR:  Single.

8                     THE COURT:  Okay, are you currently working?

9                     PROSPECTIVE JUROR:  Yes.

10                    THE COURT:  What type of work?

11                    PROSPECTIVE JUROR:  CPA.

12                    THE COURT:  In your own business?

13                    PROSPECTIVE JUROR:  No, with a public

14        accounting firm.

15                    THE COURT:  Ms Troy, town in which you live?

16                    PROSPECTIVE JUROR:  New Hyde Park.

17                    THE COURT:  Married or committed

18        relationship?

19                    PROSPECTIVE JUROR:  Single and I do computer

20        work for an online tech support company.

21                    THE COURT:  Okay.

22                    Mr. Daniel?

23                    PROSPECTIVE JUROR:  Yes.

24                    THE COURT:  Type of work?

25                    PROSPECTIVE JUROR:  I'm an attorney.

                                                    ws

Proceedings                    144

1          THE COURT:  You're an attorney?

2          PROSPECTIVE JUROR:  Yes, I am.

3          THE COURT:  Married or committed

4    relationship?

5          PROSPECTIVE JUROR:  I'm single.

6          THE COURT:  What kind of law do you practice?

7          PROSPECTIVE JUROR:  I'm self-employed.  I do

8    different things.

9          THE COURT:  Okay.  And is that in Nassau

10   County or some other location?

11         PROSPECTIVE JUROR:  Nassau County.

12         THE COURT:  I indicated yesterday that we

13   anticipate, and I try to give an outside date, if you

14   will, when I try to do this and most of the time I'm

15   right, sometimes I'm off by a day or two, but of the

16   22nd of May.  That's two weeks from this Friday.

17         PROSPECTIVE JUROR:  That's highly burdensome

18   to me.  I'm by myself.

19         THE COURT:  And you got no coverage, nobody

20   else to cover?

21         What kind of work, a little bit of

22   everything?

23         PROSPECTIVE JUROR:  I do personal injury, I

24   do real estate, you know, whatever comes through.

25         THE COURT:  All right, Mr. O'Shea, town in

                                              ws

Proceedings                    145

1        which you live?

2                    PROSPECTIVE JUROR:  Baldwin.

3                    THE COURT:  Married or --

4                    PROSPECTIVE JUROR:  Married, three children.

5                    THE COURT:  What kind of work do you do?

6                    PROSPECTIVE JUROR:  I work for a customs and

7        border patrol agency.

8                    THE COURT:  In a law enforcement capacity?

9                    PROSPECTIVE JUROR:  Yes.

10                    THE COURT:  For how long?

11                    PROSPECTIVE JUROR:  Eighteen years.

12                    THE COURT:  Any particular location?

13                    PROSPECTIVE JUROR:  JFK airport.

14                    THE COURT:  Your wife, is she currently

15        working?

16                    PROSPECTIVE JUROR:  She's a travel consultant

17        in her own business.

18                    THE COURT:  You have three children?

19                    PROSPECTIVE JUROR:  Yes.

20                    THE COURT:  How old?

21                    PROSPECTIVE JUROR:  Nine, 11 and 13.

22                    THE COURT:  All either in high school or

23        middle school?

24                    PROSPECTIVE JUROR:  Middle and elementary.

25                    THE COURT:  Mr. Fowler, town in which you

Proceedings                146

1          live?
2                    PROSPECTIVE JUROR:  Long Beach.  I have a
3          residency concern.  I live in Long Beach.  I go to
4          school and I teach in the Bronx.  I have an apartment
5          in Harlem.  I just don't want to possibly cause a
6          problem.  I live with my parents.  I'm just out of
7          college.
8                    THE COURT:  In terms of either your voter
9          registration, your driver's license --
10                    PROSPECTIVE JUROR:  All is in Nassau County,
11         Long Beach, and I spend summers, weekends, home in Long
12         Beach.
13                    THE COURT:  Okay, very good.
14                    PROSPECTIVE JUROR:  Single and a student and
15         teacher.
16                    THE COURT:  Okay, great.
17                    Ms. Cioffi, town in which you live?
18                    PROSPECTIVE JUROR:  Bellmore.
19                    THE COURT:  Married or committed
20         relationship?
21                    PROSPECTIVE JUROR:  Single.
22                    THE COURT:  Working?
23                    PROSPECTIVE JUROR:  Tax accountant.
24                    THE COURT:  Okay.  Any particular company or
25         you work for yourself?

                                                        ws

Proceedings                    147

1              PROSPECTIVE JUROR:  I work for a company.

2              THE COURT:  Okay.

3              MS. JOHNSON:  Your Honor, can we approach for

4     one just quick second before your Honor continues?

5              THE COURT:  Something you need to put on the

6     record?

7              MS. JOHNSON:  Probably not.

8              (Discussion held at the bench, off the

9     record.)

10             THE COURT:  Mr. Meyers, town in which you

11    live, sir?

12             PROSPECTIVE JUROR:  Freeport.

13             THE COURT:  Married --

14             PROSPECTIVE JUROR:  Single.

15             THE COURT:  Currently working?

16             PROSPECTIVE JUROR:  At C.W. Post College.

17    I'm a chef.

18             THE COURT:  How long have you been doing

19    that?

20             PROSPECTIVE JUROR:  Ten years.

21             THE COURT:  Children?

22             PROSPECTIVE JUROR:  No children.

23             THE COURT:  Mr. Asche, town in which you

24    live, sir?

25             PROSPECTIVE JUROR:  Lakeview.

Proceedings                    148

```
 1                 THE COURT:  Okay, married or committed
 2         relationship?
 3                 PROSPECTIVE JUROR:  Single.
 4                 THE COURT:  Are you currently working?
 5                 PROSPECTIVE JUROR:  Yes.
 6                 THE COURT:  What type of work do you do?
 7                 PROSPECTIVE JUROR:  Okay, Town of Hempstead,
 8         part-time clergy.
 9                 THE COURT:  Town of Hempstead.
10                 PROSPECTIVE JUROR:  And I'm a part-time
11         clergy.
12                 THE COURT:  Town of Hempstead and you're a
13         part-time clergy?
14                 What do you do for the Town of Hempstead?
15                 PROSPECTIVE JUROR:  Department of General
16         Services.
17                 THE COURT:  And children, if any?
18                 PROSPECTIVE JUROR:  Nope.
19                 THE COURT:  Okay.
20                 Ms. Striffolino?
21                 PROSPECTIVE JUROR:  Massapequa.  I'm a
22         teaching assistant in the Massapequa school district.
23                 THE COURT:  Married or committed
24         relationship?
25                 PROSPECTIVE JUROR:  Married.
```

                                                        ws

Proceedings                    149

1              THE COURT:  Children?

2              PROSPECTIVE JUROR:  Children, three.

3              THE COURT:  What does your husband do for a

4        living?

5              PROSPECTIVE JUROR:  He's a principal in a

6        school.

7              THE COURT:  Your children, approximately how

8        old?

9              PROSPECTIVE JUROR:  Sixteen, 13 and 15.

10             THE COURT:  Okay, all right, great.

11             Ms. Doughty, town in which you live?

12             PROSPECTIVE JUROR:  Hicksville.

13             THE COURT:  Married or committed

14        relationship?

15             PROSPECTIVE JUROR:  Married.

16             THE COURT:  Children?

17             PROSPECTIVE JUROR:  Two.

18             THE COURT:  How old?

19             PROSPECTIVE JUROR:  Twenty-seven and

20        nineteen.

21             THE COURT:  Are you currently employed?

22             PROSPECTIVE JUROR:  Yes, I am, teacher's aide

23        in Trinity Lutheran School.

24             THE COURT:  And your husband, is he currently

25        working?

                                                    ws

Proceedings                    150

```
1              PROSPECTIVE JUROR:  Yes, he works for the
2     IRS.
3              THE COURT:  Okay, and your children, are they
4     working as well?
5              PROSPECTIVE JUROR:  Handicapped daughter, 19,
6     is going for her GED and working.
7              THE COURT:  Okay, great.
8              Mr. Sklar, town in which you live?
9              PROSPECTIVE JUROR:  I live in Lynbrook.  I'm
10    a single teacher with no children.
11             THE COURT:  Mr. Toro, town in which you live?
12             PROSPECTIVE JUROR:  East Meadow.
13             THE COURT:  Married or committed
14    relationship?
15             PROSPECTIVE JUROR:  Single.
16             THE COURT:  Your employment, if any?
17             PROSPECTIVE JUROR:  I work in finance foreign
18    exchange.
19             THE COURT:  In what capacity?
20             PROSPECTIVE JUROR:  I work for an online
21    foreign exchange brokerage, business development and
22    institutional sales.
23             THE COURT:  All right, Mr., is it, Casesa?
24             PROSPECTIVE JUROR:  Casesa.
25             THE COURT:  Town in which you live?
```

Proceedings                    151

1              PROSPECTIVE JUROR:  Floral Park, married, two

2       kids, 32 and 29.

3              THE COURT:  Are you currently working?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  What kind of work do you do?

6              PROSPECTIVE JUROR:  School bus driver.

7              THE COURT:  Is your wife currently working?

8              PROSPECTIVE JUROR:  She's on disability.

9              THE COURT:  Okay, how about your children?

10             PROSPECTIVE JUROR:  My son is a tennis

11      instructor, lives in San Diego, and my daughter works

12      at the Garden City Hotel, customer service.

13             THE COURT:  All right, and, finally,

14      Mr. Lynch, town in which you live?

15             PROSPECTIVE JUROR:  East Williston.

16             THE COURT:  Working currently?

17             PROSPECTIVE JUROR:  Recently retired.

18             THE COURT:  What did you do before you

19      retired?

20             PROSPECTIVE JUROR:  Banking.

21             THE COURT:  Married or committed

22      relationship?

23             PROSPECTIVE JUROR:  Married, three sons.

24             THE COURT:  How old?

25             PROSPECTIVE JUROR:  Forty-one, 32, 35.

                                                      ws

Proceedings                        152

1          THE COURT:  Can you tell us what they do for
2    a living, if anything?
3          PROSPECTIVE JUROR:  The oldest is both a
4    paramedic and a lieutenant in the FDNY.
5          Second lives at home with me and works at
6    Target.
7          The youngest is an officer in the United
8    States Marine Corps.
9          THE COURT:  What I'm going to do at this
10   point, I'm going to ask the questions I asked
11   everybody.  I'll go row by row.
12          I'm going to ask about prior -- the questions
13   about prior jury service, victim of a crime, any
14   relationships with respect to law enforcement.
15          With respect -- and only to the first row,
16   have any of you previously served in a criminal or
17   civil trial in federal or state court or grand jury
18   service?
19          Mr. Meyers?
20          PROSPECTIVE JUROR:  District Court in
21   Hempstead.
22          THE COURT:  How long ago?
23          PROSPECTIVE JUROR:  Five, six, years ago.
24          THE COURT:  Okay, and the type of case?
25          PROSPECTIVE JUROR:  DWI.

Proceedings                    153

1              THE COURT:  Without telling us, did the jury
2       come to a verdict?
3              PROSPECTIVE JUROR:  Yes.
4              THE COURT:  Any reason that you wouldn't want
5       to serve again in a criminal case because of that
6       experience?
7              PROSPECTIVE JUROR:  No.
8              THE COURT:  Anybody else in the first row
9       prior jury service?
10             Mr. Saladino?
11             PROSPECTIVE JUROR:  Yeah, criminal case about
12      ten to 15 years ago regarding selling of drugs.
13             Also a civil case about five or six years ago
14      regarding negligence.
15             THE COURT:  Okay, both of them go to verdict?
16             PROSPECTIVE JUROR:  Yep.
17             THE COURT:  The most recent one being?
18             PROSPECTIVE JUROR:  The negligence case was
19      probably about roughly five years ago, six years ago,
20      something like that.
21             THE COURT:  Okay, you heard me yesterday.
22      Somebody had a similar type of experience where they
23      did a civil trial and I said the burden of proof in a
24      civil trial is usually by a preponderance of the
25      evidence in most instances, in a criminal trial it's

Proceedings                    154

1    beyond a reasonable doubt.

2              Any reason that you'll have -- any reason you

3    wouldn't be able to follow my instructions when you

4    hear about what the burden of proof is and how to apply

5    it in this case?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  Anything about those jury

8    experiences that you feel you couldn't serve as a juror

9    in this case?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Anybody else prior jury

12   experience?

13             Mr. O'Shea?

14             PROSPECTIVE JUROR:  Served as a witness in

15   federal grand juries, never served as a juror.

16             THE COURT:  How about the back row, any type

17   of prior jury service, state, federal, criminal, civil?

18             Mr. Casesa?

19             PROSPECTIVE JUROR:  Four years ago I was

20   disqualified.  I did not agree with the -- the lawyer

21   didn't like the way I talked about the case.

22             THE COURT:  He didn't like your answers?

23             PROSPECTIVE JUROR:  Okay.

24             THE COURT:  Hopefully they'll like your

25   answers this time around.

                                                    ws

Proceedings                    155

1              Civil or criminal?

2              PROSPECTIVE JUROR:  It was civil.

3              THE COURT:  Anybody?

4              MS. JOHNSON:  Your Honor, I believe

5      Ms. Doughty had her --

6              PROSPECTIVE JUROR:  I was a witness for the

7      People for attempted assault, robbery.

8              THE COURT:  Okay, so you were a witness for

9      the DA?

10             In this county?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  How long ago?

13             PROSPECTIVE JUROR:  Four years ago.

14             THE COURT:  Okay:  I assume you were spoken

15     to by the DA's Office prior to testifying?

16             You were kind of prepped, if you will?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Okay, obviously there's a DA, or

19     Assistant DA, in this case that's going to be

20     presenting evidence on behalf of the People of the

21     State of New York.

22             Would you, for any reason, feel impartial

23     towards her or her position because of being called as

24     a witness in this other case?

25             PROSPECTIVE JUROR:  I don't think so.

                                                    ws

Proceedings                  156

1              THE COURT:   Okay.  Would you be able to give

2      the defendant a fair trial, notwithstanding the fact

3      you were called as a witness by the People?

4              PROSPECTIVE JUROR:   I'll try.

5              THE COURT:   Anybody else prior jury service?

6              Mr. Asche?

7              PROSPECTIVE JUROR:   Okay, I was -- four years

8      ago I was in a civil case, but they dismissed me.

9              Then, once before, I got to testify before

10     the grand jury.

11             THE COURT:   As a witness?

12             PROSPECTIVE JUROR:   No, it was a case

13     involving me, but they had me to come before because

14     after that they got a true bill across the board on a

15     person that was involved.

16             THE COURT:   So you testified as a witness?

17             You were called, or subpoenaed, if you will,

18     either by the DA's Office or the grand jury to testify

19     as a witness?

20             PROSPECTIVE JUROR:   Yeah.

21             THE COURT:   All right.

22             The same questions that I asked Ms. Doughty

23     about her experience, is there any reason that because

24     there's a DA here presenting evidence on behalf of the

25     DA's Office that you would be inclined to favor her or

                                                    ws

1       her position because of your experience, Mr. Asche?

2                   PROSPECTIVE JUROR:  Well, looking at this

3       case I still have -- I'm still kind of in limbo.

4                   THE COURT:  All right, when you say in limbo

5       could you elaborate on that a little bit because that

6       doesn't really --

7                   PROSPECTIVE JUROR:  Really -- really, with

8       the way I feel, there's a possibility I may lean

9       towards the prosecution's corner.

10                  THE COURT:  You may lean towards the DA?

11                  PROSPECTIVE JUROR:  Yeah.

12                  THE COURT:  Okay, all right, I'll let the

13      lawyers explore that with you in a little bit.

14                  Going back to the first row, anybody who's --

15      has any close family members, friends, acquaintances

16      that are in law enforcement?

17                  Police, detectives?

18                  Mr. Meyers?

19                  PROSPECTIVE JUROR:  Yeah, I have a cousin

20      that's a detective-sergeant in Freeport and I have a

21      lot of friends in the Freeport, Nassau County and New

22      York City Police Department and I cater the Freeport

23      PBA's annual barbecue.

24                  THE COURT:  Okay.  You heard me yesterday,

25      and I repeated this a number of times, that, you know,

Proceedings                158

1    police officers are like anybody else.  They're like

2    any of us.

3                   PROSPECTIVE JUROR:  True.

4                   THE COURT:  They could be telling the truth,

5    they could be mistaken on occasion, they could also lie

6    on occasion.

7                   I just want to be -- I just want to have your

8    assurance that you'll just treat them like any other

9    person, any other human being.

10                  PROSPECTIVE JUROR:  Yes, I will.

11                  THE COURT:  Any problem with that?

12                  PROSPECTIVE JUROR:  No.

13                  THE COURT:  Mr. Fowler?

14                  PROSPECTIVE JUROR:  My grandparents, my two

15   grandfathers, were New York City police officers and I

16   have a neighbor and uncle.

17                  THE COURT:  Same question.

18                  PROSPECTIVE JUROR:  Absolutely fair.

19                  THE COURT:  Mr. O'Shea, do you have your hand

20   up?

21                  PROSPECTIVE JUROR:  Yes, besides what I do,

22   my father and his brother were Department of Correction

23   employees for the city.  I had an uncle that is NYPD

24   retired.

25                  THE COURT:  Would you be able to, you know,

                                                          ws

Proceedings                159

1    evaluate police officers or detectives like anybody

2    else?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Would you agree with me with the

5    concept that, like anybody else, police officers could

6    be telling the truth, be mistaken on occasion and lying

7    on occasion?

8              PROSPECTIVE JUROR:  Yes, certainly.

9              THE COURT:  Anybody else in that first row,

10   law enforcement?

11             Ms. Cioffi?

12             PROSPECTIVE JUROR:  Out-of-state police.  I'm

13   not from New York.

14             THE COURT:  Where are you from?

15             PROSPECTIVE JUROR:  Vermont.

16             THE COURT:  All right.  Anything about those

17   experiences that you feel you couldn't be --

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  You know, fairly evaluate a

20   police officer?

21             Anybody in the second row, law enforcement

22   question?

23             Okay, all right, anybody - again, going back

24   to the first row - who's -- either yourself, a family

25   member, who's been a victim of a crime?

Proceedings                          160

1              Anybody in the first row?

2              Ms. Troy?

3              PROSPECTIVE JUROR:  Yes, several.  One was a

4    hit-and-run on a bicycle, another was a mugging and the

5    last one was a sexual assault.

6              THE COURT:  Now, I think you mentioned about

7    three instances.

8              Do they all involve you or somebody else?

9              PROSPECTIVE JUROR:  No, they're all me.

10             THE COURT:  Okay.  Is it something that you

11   feel more comfortable talking about privately or --

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Okay.  We'll get to that in a

14   second.

15             Anybody else in that -- Mr. O'Shea?

16             PROSPECTIVE JUROR:  Yeah, my mother was

17   assaulted and robbed, you know, many years ago in

18   Manhattan.

19             THE COURT:  Anything about that experience

20   that would affect you here?

21             PROSPECTIVE JUROR:  Not at all.

22             THE COURT:  Anybody else in the first row?

23             How about the second row, victim of a crime,

24   yourself, loved one?

25             Mr. Asche?

                                                    ws

Proceedings                161

1          PROSPECTIVE JUROR:  Well, this goes back to

2     the grand jury thing.  I got into a fight with a drug

3     addict and during the fight he broke a bone in my face

4     and that goes back to the grand jury ordeal.

5          THE COURT:  Okay, and that's why you were

6     called as a witness in that case?

7          PROSPECTIVE JUROR:  Yeah, what happened, the

8     detective said he came to them, he came open handed,

9     because he stole drugs from a Rastafarian dealer and

10    they put a contract out on his life.

11         THE COURT:  And I think you said a few

12    moments ago because of that you feel you may be

13    predisposed to the DA.

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Anybody else in that second row,

16    victim of a crime?

17         All right.  And, finally, anybody who has

18    been either accused or convicted of a crime, close

19    family member, anybody?

20         First row?

21         Mr. Fowler?

22         PROSPECTIVE JUROR:  When I was in high school

23    I got a ticket for disorderly conduct that was thrown

24    out.

25         THE COURT:  And Mr. O'Shea?

ws

Proceedings                 162

1        PROSPECTIVE JUROR:  Driving while ability
2   impaired.
3            THE COURT:  Okay.
4            Was that out here or some other location?
5            PROSPECTIVE JUROR:  Here on Long Island.
6            THE COURT:  How long ago was that?
7            PROSPECTIVE JUROR:  1986.
8            THE COURT:  Anybody in the second row,
9   accused, convicted of a crime?
10            Okay.  All right, at this point I'm going to
11   turn it over to the attorneys.
12            Ms. Johnson, you got about 15 minutes.
13            MS. JOHNSON:  Thank you, Judge.
14            Still good morning, everybody.  It gets
15   easier each round.
16            I hope you had a chance to listen to what was
17   going on with the other prospective members of the
18   jury.  I'm going to go through a lot of the same
19   questions and same concepts.
20            If there's anything you hear that you want to
21   talk about, please raise your hand.  Now is the time to
22   do it, not later when you're possibly sworn in as a
23   juror in this case.
24            Now, you all heard what the charges were and
25   the nature of the case.

                                                  ws

Proceedings                    163

1              Is there anybody here that, based on that

2        fact alone, feels that they cannot be a fair and

3        impartial juror in this particular case?

4              Mr. Asche, thank you for your honesty.  I

5        think we understand what your concerns are and thank

6        you for that.

7              Is there anybody else here other than

8        Mr. Asche that feels that way?

9              Yes, Ms. Troy, and that's something you

10       wanted to talk about in private.

11             THE COURT:  Ms. Troy, I beg your pardon,

12       you're absolutely right.

13             Why don't you come up here with both counsel?

14             (Sidebar conference held as follows:)

15             PROSPECTIVE JUROR:  I did want to be honest

16       and up front so they both understood.  I understand how

17       important this is.  I am also the victim of my father

18       abusing me for years.  I'm on the fence -- I really

19       think I could be very analytical, but when somebody

20       walks in and starts talking about it, I'm already like

21       hyper.

22             THE COURT:  If you're already getting a

23       physical reaction --

24             PROSPECTIVE JUROR:  Oh, absolutely.

25             THE COURT:  -- before hearing the

                                                        ws

Proceedings                    164

1        testimony --
2                  PROSPECTIVE JUROR:  But I just understood how
3        important this was, involving a child.
4                  THE COURT:  Believe me, we appreciate your
5        candor.
6                  Anybody, any questions?
7                  MR. SCHECHTER:  No.
8                  THE COURT:  I'm just going to ask you to bear
9        with us.  You'll be out of here by 12:30, all right?
10                 (Sidebar conference concludes.)
11                 MS. JOHNSON:  May I continue, Judge?
12                 THE COURT:  Yes.
13                 MS. JOHNSON:  Mr. Saladino, knowing the case
14       involves a sexual allegation and charges of sex abuse,
15       would that fact alone prevent you from being a fair and
16       impartial juror in this particular case?
17                 PROSPECTIVE JUROR:  No.
18                 MS. JOHNSON:  Mr. O'Shea, how about you?
19                 PROSPECTIVE JUROR:  No, it wouldn't.
20                 MS. JOHNSON:  And knowing that there is a
21       family relationship between the victim and the
22       defendant in this case, would that fact alone prevent
23       anybody from being a fair and impartial juror in this
24       particular case?
25                 Mr. Toro, how about you?

                                                              ws

Proceedings                165

1          PROSPECTIVE JUROR:  No problem.

2          MS. JOHNSON:  Can you assure us of that?

3          PROSPECTIVE JUROR:  Yes.

4          MS. JOHNSON:  Mr. Sklar, how about you?

5          PROSPECTIVE JUROR:  No problem.

6          MS. JOHNSON:  Ms. Cioffi, welcome to New

7    York.

8          PROSPECTIVE JUROR:  Thanks.

9          MS. JOHNSON:  When did you move here?

10         PROSPECTIVE JUROR:  Three years ago.

11         MS. JOHNSON:  Mr. Meyers, would that fact

12   alone prevent you from being a fair and impartial juror

13   in this case?

14         PROSPECTIVE JUROR:  No.

15         MS. JOHNSON:  What type of food do you make?

16         What's your favorite?

17         PROSPECTIVE JUROR:  Barbecue, of course.

18         MS. JOHNSON:  We talked with the other group

19   about difficulty coming to court in front of a group of

20   strangers and talking about sensitive and personal

21   issues.

22         Ms. Striffolino, what types of feelings would

23   you -- do you feel are reasonable for a witness to come

24   into court and talk about personal intimate things?

25         What type of feelings do you think would be

ws

Proceedings                166

1       something reasonable you would expect?

2                   MR. SCHECHTER:  Objection, your Honor.

3                   MS. JOHNSON:  I'll rephrase that.

4                   Ms. Striffolino, would you agree with me that

5       it would be difficult for a witness to come in in front

6       of a group of strangers and talk about something

7       personal and intimate?

8                   PROSPECTIVE JUROR:  Sure.

9                   MS. JOHNSON:  And can you accept the fact

10      that a witness may cry or not cry, depending on their

11      personal backgrounds?

12                  PROSPECTIVE JUROR:  Um-hum.

13                  MS. JOHNSON:  You have to use words.

14                  PROSPECTIVE JUROR:  I'm sorry, sure.

15                  MS. JOHNSON:  Mr. Sklar, how about you?

16                  PROSPECTIVE JUROR:  Of course.

17                  MS. JOHNSON:  Ms. Doughty?

18                  PROSPECTIVE JUROR:  Doughty.

19                  MS. JOHNSON:  What do you think about that?

20                  PROSPECTIVE JUROR:  Yeah, it would be tough

21      for someone to come.

22                  MS. JOHNSON:  And is it something that you

23      think would be emotional?

24                  PROSPECTIVE JUROR:  Yes.

25                  MS. JOHNSON:  And in our everyday lives we

Proceedings                    167

1   judge the credibility of people that we meet, family
2   members and of strangers.
3              Mr. O'Shea, what types of things in your
4   everyday life do you look for in a person to judge
5   whether or not they're being truthful and honest with
6   you?
7              PROSPECTIVE JUROR:  In my everyday life I
8   make those decisions on a daily basis through my
9   employment.
10             MS. JOHNSON:  And what factors do you look
11  for to determine if somebody is being truthful with
12  you?
13             PROSPECTIVE JUROR:  Based on information we
14  have, based on individual's statement, it's based on
15  officer's statements.  It's a collection of everything
16  that I make decisions on.
17             MS. JOHNSON:  Would you agree with me that
18  consistency in what somebody tells you would possibly
19  be a factor in what you would consider?
20             PROSPECTIVE JUROR:  Yes, consistency.
21             MS. JOHNSON:  How about somebody's demeanor?
22             Would you also think that would be a factor
23  you would consider?
24             PROSPECTIVE JUROR:  It can be looked at.
25             MS. JOHNSON:  Mr. Daniel, do you agree with

                                                  ws

Proceedings                          168

1    what Mr. O'Shea is saying?

2                PROSPECTIVE JUROR:  Absolutely.

3                MS. JOHNSON:  And would you also agree that

4    somebody's age would be a factor that you would

5    consider?

6                PROSPECTIVE JUROR:  Certainly.

7                MS. JOHNSON:  And you indicated before, I'm

8    just going to ask you now, that you're a sole

9    practitioner?

10               PROSPECTIVE JUROR:  Yes, I am.

11               MS. JOHNSON:  Knowing this trial will last

12   two weeks, will that in any way prevent you from being

13   a fair and impartial juror in light of you have a

14   practice to run?

15               PROSPECTIVE JUROR:  It wouldn't prevent me

16   from being fair and impartial, however I feel I may not

17   be as focused as I should be in order to make a fair

18   and impartial decision.

19               MS. JOHNSON:  Are you concerned, and please

20   just be honest with us now, that your focus may be

21   directed at your business or practice?

22               PROSPECTIVE JUROR:  Unfortunately, it may be.

23               MS. JOHNSON:  Would that prevent you from

24   being fair in this case?

25               PROSPECTIVE JUROR:  It wouldn't prevent me

                                                        ws

Proceedings                    169

1      from being fair, but my concern is really whether or

2      not I will be able to assess evidence as thoroughly as

3      I should be in order to reach a fair and impartial

4      decision.

5                     MS. JOHNSON:  Mr. Toro?

6                     PROSPECTIVE JUROR:  I agree with him.  I

7      don't own my own business, but I am in a similar

8      situation.

9                     MS. JOHNSON:  What is it about your situation

10     that would prevent you from being a fair and impartial

11     juror in this particular case?

12                    PROSPECTIVE JUROR:  I think the way he worded

13     it, there is nothing presented so far that would keep

14     me from being unfair, but just the fact I wouldn't be

15     100 percent focused due to the fact I have a lot of

16     other things on my mind.

17                    MS. JOHNSON:  Thank you for your honesty.

18                    Anybody else feel that way?

19                    PROSPECTIVE JUROR:  I feel that way.  I

20     couldn't afford to take two weeks off work to come

21     here.

22                    MS. JOHNSON:  Would that prevent you from

23     listening?

24                    PROSPECTIVE JUROR:  It wouldn't prevent me

25     from being an impartial juror, but I would be focused

                                                          ws

Proceedings                    170

1     on trying to pay my car, pay everything.

2                  MS. JOHNSON:  Would you be able to listen to

3     the evidence --

4                  PROSPECTIVE JUROR:  Yeah.

5                  MS. JOHNSON:  -- and keep an open mind, be

6     objective?

7                  PROSPECTIVE JUROR:  I would be objective,

8     yes, but I don't think I will be as focused as I should

9     be.

10                 MS. JOHNSON:  Thank you for your honesty on

11    that.

12                 Anybody else who feels that way?

13                 Mr. Lynch, would you agree with me that fear

14    is not something that happens at a moment in time and

15    it's something that can continue?

16                 PROSPECTIVE JUROR:  Could be either way,

17    depending on the situation.

18                 MS. JOHNSON:  And you heard the -- or

19    hopefully you heard the example I was using with the

20    other group about somebody being afraid of dogs or

21    afraid to fly.

22                 Would you agree with me that it is reasonable

23    that somebody could hold a fear of something for a

24    period of time and not just at a brief moment?

25                 PROSPECTIVE JUROR:  Absolutely.  My mother is

                                                        ws

Proceedings                171

1    always petrified of dogs and I've always had a dog my

2    adult life.

3                MS. JOHNSON:  And did she react to your dog

4    in a certain way?

5                PROSPECTIVE JUROR:  She wouldn't come into

6    the house.  She's scared stiff.

7                MS. JOHNSON:  And was her not coming into the

8    house, is it fair to say that was her way with dealing

9    with her fear?

10               PROSPECTIVE JUROR:  Yes.

11               MS. JOHNSON:  Whether you agree with it or

12   not, it was her personal way of handling it.

13               Would you agree with that?

14               PROSPECTIVE JUROR:  Yes, and I reacted by

15   putting the dog into the basement, locking the dog in

16   the basement.

17               MS. JOHNSON:  Your son is a lieutenant in the

18   Fire Department?

19               PROSPECTIVE JUROR:  I'm sorry, Fire

20   Department, yes.

21               MS. JOHNSON:  Where does he work?

22               PROSPECTIVE JUROR:  On the Brooklyn side of

23   the Manhattan Bridge.

24               MS. JOHNSON:  How long has he been doing

25   that?

                                                    ws

Proceedings                           172

 1                    PROSPECTIVE JUROR:  A lot of years.  For

 2          eight years he was a paramedic with the New York City

 3          EMS and it was taken over by the FDNY.  He was taken

 4          over and at the same time he got called as a fireman

 5          for the FDNY and he has been there, total, about 18

 6          years.

 7                    MS. JOHNSON:  Two years to retire, right?

 8                    PROSPECTIVE JUROR:  He could retire soon.

 9                    MS. JOHNSON:  Mr. Casesa, would you agree

10          that fear is not something that is just a moment in

11          time and it can continue?

12                    PROSPECTIVE JUROR:  Yes.

13                    MS. JOHNSON:  Would you agree with Mr. Lynch

14          that sometimes people react or handle fear by not

15          participating in certain activities?

16                    PROSPECTIVE JUROR:  I agree, yeah.

17                    MS. JOHNSON:  Is that reasonable to you?

18                    PROSPECTIVE JUROR:  Yeah.  I have personal --

19          some dogs, big ones, I'm petrified and I don't know

20          why.  As a kid I was bitten and it's still here and

21          that's 50 years ago.

22                    MS. JOHNSON:  And when you were bit as a

23          child by the dog, that is something that stayed with

24          you, right?

25                    PROSPECTIVE JUROR:  Yeah, every time I see a

                                                            ws

Proceedings                    173

1       huge dog coming my way I cross the other way.  I can't

2       help it.  We have a little one at home, but no problem

3       with that.

4              MS. JOHNSON:  They're usually the loudest,

5       right?

6              PROSPECTIVE JUROR:  Yeah.

7              MS. JOHNSON:  Mr. Fowler, does it make sense

8       to you that a crime would not be committed in public,

9       in a public setting?

10             Does that make sense to you?

11             PROSPECTIVE JUROR:  Yes.

12             MS. JOHNSON:  And is it also reasonable to

13      you that a sex crime, in particular, would not be

14      committed in public in front of other people?

15             PROSPECTIVE JUROR:  Yes.

16             MS. JOHNSON:  And what factors would you --

17      do you think are reasonable as to why someone would not

18      report a crime immediately after it occurred?

19             What things do you think are reasonable?

20             PROSPECTIVE JUROR:  Fear of reprisal, the

21      taboo factors.  You know, newspapers don't publish

22      names of victims of sexual crimes.  There's certainly a

23      taboo.

24             MS. JOHNSON:  Mr. Saladino, do you agree with

25      Mr. Fowler?

Proceedings                    174

1              PROSPECTIVE JUROR:  Yes, embarrassment.

2              MS. JOHNSON:  Would you agree fear would be a

3        factor?

4              PROSPECTIVE JUROR:  Yes.

5              MS. JOHNSON:  Not the only, but fear would be

6        a factor?

7              PROSPECTIVE JUROR:  Yes.

8              MS. JOHNSON:  Ms. Striffolino?

9              PROSPECTIVE JUROR:  Fear of telling people,

10       people knowing or how they would react to it or believe

11       it.

12             MS. JOHNSON:  Ms. Doughty, how about you?

13             PROSPECTIVE JUROR:  I agree with her.

14             MS. JOHNSON:  Mr. Sklar, do you agree with

15       that and both those ladies?

16             PROSPECTIVE JUROR:  Yeah, I think there are a

17       lot of reasons why somebody might not talk about an

18       experience they had; fear or the feelings of blame or

19       not wanting to hurt somebody close to you.

20             MS. JOHNSON:  And would you agree that a

21       person's age may be a factor that would be a

22       consideration?

23             PROSPECTIVE JUROR:  Sure.

24             MS. JOHNSON:  What about the relationship

25       between the victim and the person that they are making

                                              ws

1      allegation against, would that be a factor that you

2      think is reasonable?

3                    PROSPECTIVE JUROR:  Oh, yeah, it's

4      reasonable.  It certainly could be a factor.

5                    MS. JOHNSON:  Mr. Daniel, how about you?

6                    Would you agree with Mr. Sklar about that?

7                    PROSPECTIVE JUROR:  What is the question,

8      again?

9                    MS. JOHNSON:  About the relationship between

10     the victim and the person allegedly committing the

11     crime, that that relationship could affect when the

12     person reports the crime.

13                   PROSPECTIVE JUROR:  Absolutely.  Absolutely.

14                   MS. JOHNSON:  Mr. O'Shea, do you agree with

15     that?

16                   PROSPECTIVE JUROR:  Yes.

17                   MS. JOHNSON:  We talked a little bit about

18     how crimes don't always occur in public.

19                   Now, Mr. O'Shea, let's say Mr. Fowler, who

20     you never met before, right?

21                   PROSPECTIVE JUROR:  No, never met.

22                   MS. JOHNSON:  Told you there was a car

23     accident on the corner of Old Country Road and he saw

24     it.  You've never met him before, never spoken to him.

25                   What factors would you look for and what

Proceedings                    176

1      other evidence would you look for to determine whether

2      or not he's being honest and truthful with you?

3                    PROSPECTIVE JUROR:  You stated earlier about

4      the glass in the street, but "Did you hear sirens at

5      the time it allegedly occurred," things of that nature.

6                    MS. JOHNSON:  We call that corroboration or

7      we call that supporting what Mr. Fowler told you.

8                    Mr. Sklar, would you agree that physical

9      evidence would be something that would corroborate what

10     Mr. Fowler says about a car accident?

11                   PROSPECTIVE JUROR:  Sure.

12                   MS. JOHNSON:  Mr. Daniel, would you agree

13     with that?

14                   PROSPECTIVE JUROR:  Absolutely.

15                   MS. JOHNSON:  Mr. Saladino, how about you?

16                   PROSPECTIVE JUROR:  Yes.

17                   THE COURT:  Two minutes, Ms. Johnson.

18                   MS. JOHNSON:  Thank you, Judge.

19                   Mr. Meyers, do you agree with that?

20                   PROSPECTIVE JUROR:  Yes.

21                   MS. JOHNSON:  Would you agree that how a

22     witness testifies would be a factor you would consider

23     in determining if they were being honest and truthful

24     with you?

25                   PROSPECTIVE JUROR:  Yes.

                                                        ws

1          MS. JOHNSON:  And what types of factors about

2     a witness would you think are reasonable when judging

3     their credibility?

4          PROSPECTIVE JUROR:  Their demeanor, their

5     appearance, their nervousness, whatever.

6          MS. JOHNSON:  How many of you here have

7     teenage children or live with a teenager, lived through

8     having a child who is a teenager?

9          PROSPECTIVE JUROR:  Still living it.

10         MS. JOHNSON:  You're still surviving?

11         PROSPECTIVE JUROR:  Just starting.

12         MS. JOHNSON:  Does she ever come home and

13    tell you something that happened in school?

14         PROSPECTIVE JUROR:  Yes.

15         MS. JOHNSON:  And sometimes she's truthful

16    and sometimes not.

17         PROSPECTIVE JUROR:  Sometimes you don't know.

18         MS. JOHNSON:  And you don't want to just

19    always take her word for it, would you look to other

20    factors in determining whether or not she's being

21    truthful with you?

22         PROSPECTIVE JUROR:  Depending on what it was

23    she said.  It might not be something I need to look

24    into.

25         MS. JOHNSON:  And do you use your everyday

ws

Proceedings                178

1    life skills to determine whether or not she's being

2    truthful with you?

3              PROSPECTIVE JUROR:  Certainly.

4              MS. JOHNSON:  Anything I haven't covered or

5    anything anybody wants to talk about that I haven't

6    raised now?

7              And is there anybody here who, if I prove my

8    case beyond a reasonable doubt -- that cannot convict

9    this defendant of the crimes he is charged with if I

10   prove my case to you beyond a reasonable doubt?

11             Is there anybody that would not be able to

12   find the defendant guilty?

13             Thank you all for your time.

14             THE COURT:  Thank you, Ms. Johnson.

15             Mr. Schechter?

16             MR. SCHECHTER:  May it please the Court.

17             For lack of a better word, I think we can

18   call it a pregnant pause.

19             Now, ladies and gentlemen, I'm sure you heard

20   some of my questions when you were sitting in the

21   gallery outside there and I don't mean to be

22   repetitive, but your answers and your feelings are

23   extremely important to me and to my client, as well as

24   to the prosecution.

25             Now, several of you have indicated that you

Proceedings                    179

1   have either people in law enforcement, your families or

2   you're friendly with them or have been exposed to them.

3          And some have very favorable opinions of

4   police, some have, perhaps, not as favorable opinions

5   of police, but those opinions that you've expressed are

6   certainly things I would like to explore.

7          Firstly, anybody remember the rock-and-roll

8   song CC Rider?

9          Sorry, about that, Mr. Saladino, that's what

10  came to my mind when I first heard CC.  It just shows

11  my age I guess.

12         Mr. Meyers, you work as a chef at C.W. Post,

13  are single.

14         Not only is my concern that you have a lot of

15  friends in the Police Department, but part of that is

16  BBQ.

17         None are going to be testifying from

18  Freeport, but one is a New York City police officer,

19  and my concern is you may be feeling any kind of

20  pressure being compelled to feel in a positive way

21  towards police which would make your evaluation of them

22  somewhat tarnished because of your dealings with them.

23  You have relatives you care about on the force.

24         Do you think that might enter into it at all?

25         PROSPECTIVE JUROR:  Of course, I do have a

ws

Proceedings                    180

1      favorable opinion of police officers, but you can't

2      give their word any more credence than you would anyone

3      else.

4              MR. SCHECHTER:  Well, as I said before, and I

5      used the metaphor the fox in charge of the chicken

6      coop, and what I mean by that is that when a person is

7      arrested and he's locked up in the precinct, there's no

8      outside people coming in to oversee what's going on so

9      what happens in the precinct occurs between the people

10     in the precinct and the police officers.

11              And so when you evaluate what someone is

12     saying or how they say it or whether a person is

13     terrorized or not terrorized or whether a person feels

14     he has to go by a certain script or something

15     pre-programmed, it's not always easy to tell, would you

16     agree?

17              PROSPECTIVE JUROR:  Yes.

18              MR. SCHECHTER:  And I'll tell you straight

19     up, with respect to one or more of those police

20     officers I'm going to be going into certain areas with

21     respect to this matter which might not be pleasant with

22     respect to the implications of my questions.

23              Would that make you uncomfortable?

24              PROSPECTIVE JUROR:  Probably not.

25              MR. SCHECHTER:  You said probably, then

Proceedings                              181

1      probably not.

2                    PROSPECTIVE JUROR:  Probably not.  It

3      wouldn't -- like I said, it wouldn't make a difference

4      whether they said it as a policeman or a person.  They

5      would be telling what they feel is right.

6                    MR. SCHECHTER:  Okay.  Do you feel that a

7      police officer is more likely than a civilian to tell

8      the truth?

9                    PROSPECTIVE JUROR:  Not more likely.

10                   MR. SCHECHTER:  Mr. O'Shea, I perked up my

11     ears.  You work for the federal government.

12                   In what capacity?

13                   PROSPECTIVE JUROR:  Border patrol agency.

14                   MR. SCHECHTER:  ICE?

15                   PROSPECTIVE JUROR:  CBP, same department.

16                   MR. SCHECHTER:  You've testified in federal

17     grand juries?

18                   PROSPECTIVE JUROR:  Yes.

19                   MR. SCHECHTER:  You obviously have a lot of

20     contact with police officers.

21                   PROSPECTIVE JUROR:  Yes.

22                   MR. SCHECHTER:  Are you more inclined to

23     believe a police officer than a civilian?

24                   PROSPECTIVE JUROR:  No, I'm not.

25                   MR. SCHECHTER:  Ms. Cioffi, you indicated you

                                                              ws

Proceedings                    182

1       would have difficulty focusing because of --

2                     PROSPECTIVE JUROR:  Financial difficulties.

3                     MR. SCHECHTER:   -- work issues.

4                     I think you also indicated that Mr. Daniel?

5                     PROSPECTIVE JUROR:  Absolutely.

6                     MR. SCHECHTER:  And you are a colleague, I'll

7       get into that in a second, not that we know each other,

8       but we will go into that in just one second.

9                     PROSPECTIVE JUROR:  Not a problem.

10                     MR. SCHECHTER:  Now, remember I had asked

11      other jurors in this case whether when you evaluate

12      someone and the truth or exaggeration or untruthfulness

13      of their testimony, that there may be surrounding

14      factors that you would consider.

15                     I mean, I gave the example of very difficult,

16      if not impossible, to dance angry.  You can't dance

17      angry because you're angry and you're tense and can't

18      move like that.

19                     But also would you say you would look at that

20      person's actions contemporaneous or basically at the

21      same time that they're saying one thing, perhaps their

22      reaction showed that they're feeling or living another?

23                     What do I mean by that?

24                     In other words, let's say I tell you I'm

25      angry and then I go out onto that dance floor and I

                                                              ws

Proceedings                          183

1    rock it.

2              You say, "He doesn't look angry to me,"

3    something like that.

4              If you saw that would you use that in

5    determining is he is really angry, is he really in that

6    situation he says he's in?

7              Would you be able to do that?

8              PROSPECTIVE JUROR:  Determine whether his

9    voice compared to his actions are different?

10             MR. SCHECHTER:  Yeah.

11             In other words, you're looking at the

12   surrounding actions of that person around the time he

13   says he's angry.

14             Maybe he's dancing.

15             Maybe he says, "I don't like to talk to

16   women," and there he is talking to A, B, C, D, E, F and

17   G.

18             Or, "I don't like talking to guys," and so on

19   and so forth and then all of a sudden you see his

20   conduct belies what he's saying.

21             PROSPECTIVE JUROR:  Actions speak louder than

22   words.

23             MR. SCHECHTER:  Okay, thank you.

24             Anybody have any problems with that, actions

25   speak louder than words?

1           Now, one of my concerns with you, Mr. Sklar,

2       is you are a teacher.

3               PROSPECTIVE JUROR:  Yes.

4               MR. SCHECHTER:  And, as such, from what I

5       gather from your answers, you appear to be a very

6       caring teacher.

7               And the young lady that's going to be

8       testifying here is 18 years old.  The allegations are

9       that the incident occurred when she was in high school

10      and I would like to know do you feel because of the

11      fact that you are a teacher, do you feel more

12      empathetic with her, you would feel more inclined to

13      either believe her or you might -- and that might color

14      the way you feel or think about this case?

15              PROSPECTIVE JUROR:  I don't think so.  No, I

16      think kids -- I teach younger kids, but kids and adults

17      can both tell the truth or lie and I've seen plenty of

18      kids do either.

19              MR. SCHECHTER:  Now, there might be reasons

20      why people lie and you might not have a clue about

21      those reasons.

22              PROSPECTIVE JUROR:  That's true.

23              MR. SCHECHTER:  As a teacher, and I think

24      somebody else indicated that you are a teacher as well

25      and the same thing goes for you, you seem to be very

Proceedings                                    185

1      dedicated to your profession.

2                  You teach in the Bronx?

3                  PROSPECTIVE JUROR:  Yes.

4                  MR. SCHECHTER:  Let me give you general

5      hypothetical, the same example I gave to that lady

6      sworn in as a juror before, and that is you're in

7      class.  Student comes over to you and says,

8      "Mr. Sklar," or, "Mr. Fowler, I have a problem," and

9      they come to the class and they say, "Well, you know,

10     things aren't good at home.  My parents this, my

11     parents that."

12                 Now, I was a teacher when I went to law

13     school at night so I understand what it's like to be a

14     teacher.  And I had to deal with students and

15     situations as I'm indicating to you.

16                 A student comes in and -- a young attractive

17     girl, 14 years old.

18                 Now, we lawyers have a natural caution.  We

19     just have it and it's programmed from law school,

20     everything has to be PYA, basically.

21                 Here's this girl.  You have no idea what

22     she's about.  You only see her in school and she's shy

23     and reticent.

24                 Next thing you know she spends 15 minutes --

25     she has an attention issue.  Next thing you know she

                                                        ws

Proceedings                        186

1        brags to the whole school, "I was really intimate with

2        Mr. Sklar and Mr. Fowler."

3                    MS. JOHNSON:  Judge, can I ask what's PYA?

4                    MR. SCHECHTER:  Well, PYB, protect your butt.

5        I didn't want to --

6                    THE COURT:  Are you glad you asked that

7        question, Ms. Johnson?

8                    MS. JOHNSON:  Now I know what they both mean.

9                    THE COURT:  We all learned something new

10       today.

11                   MR. SCHECHTER:  Led her right into that one.

12                   So now an unfounded allegation is made

13       against you.

14                   You would agree, it's very hard to prove the

15       negative.  It's your word against her word, sometimes,

16       and it's a child and she's there and she's going to

17       make an allegation against you, but the fact is you

18       didn't do it.

19                   You would agree that that requires a very

20       important analysis on the part of the fact finder as to

21       what really happened here, right?

22                   PROSPECTIVE JUROR:  I would hope, yeah.

23                   MR. SCHECHTER:  And so you could imagine a

24       situation when someone is charged with something it's

25       almost impossible to prove the negative.

                                                        ws

Proceedings                    187

1          PROSPECTIVE JUROR:  Sure.

2          MR. SCHECHTER:  Now, here's another scenario

3     and this other scenario is something I asked the other

4     jurors.

5          You may not like the person.  You may think,

6     "I would not get a beer with that person.  I would not

7     want to have coffee with that person.  I don't like

8     that person."

9          Person has got a bad reputation.  Barry

10    Bonds, hopefully -- most people know Barry Bonds, great

11    athlete.  Maybe you don't like him as a fan, but he's

12    very personable one on one.  The fact is you may not

13    like him.

14         Do I have the assurance of everyone here that

15    you will put aside whatever personal feelings you may

16    have for someone in analyzing what the situation is?

17         That person may do things you wouldn't do.

18    Barry Bonds used steroids.  You may not use steroids.

19    But that doesn't mean Barry Bonds beat his wife, okay?

20         Now, if I tell you all -- I gave this analogy

21    before.  In order to prove this person is guilty of a

22    theoretical crime I'm making up, you have to show he

23    has got red pants, he's carrying a yellow balloon and

24    he puts his hands in the air.

25         People showed he's got red pants, yellow

                                                        ws

Proceedings                    188

1    balloon, but can't put the arm in the air.

2              But you don't like this guy, wouldn't wear

3    those red pants, wouldn't engage in that conduct, red

4    pants, yellow balloon, and those feelings you have are

5    strong.   I'm doing this metaphorically, you

6    understand.   They haven't proved he raised his hands in

7    the air.

8              You would like to, perhaps, because you don't

9    like this guy, do something to him, not physically,

10   maybe, but otherwise.

11             Would you be able, individually, to set aside

12   your opinions, your personal opinions, of this person

13   and vote according to your analysis, vote according to

14   the Judge's definition of reasonable doubt and give

15   that person a fair shake?

16             Do any of you feel that because of the

17   personal feelings that you might have -- there's a

18   young girl that's going to be testifying here.  She's

19   18.   This allegedly happened to her when she was 17.

20             Do any of you feel that because that person

21   is going to testify that you would not be able to

22   maintain this objectivity and do this analysis,

23   utilizing what I've asked you with respect to the

24   surrounding circumstances, perhaps activities done by

25   that person, things she's done that might belie what

                                                          ws

Proceedings                    189

1    she says happened?

2                   Anybody unable to do that?

3                   Mr. Meyers?

4                   PROSPECTIVE JUROR:  No.

5                   MR. SCHECHTER:  Will you be able to set aside

6    whatever emotions or personal feelings you have to

7    analyze the situation?

8                   PROSPECTIVE JUROR:  Yes.

9                   MR. SCHECHTER:  How about you, Ms. Cioffi?

10                  PROSPECTIVE JUROR:  Yes.

11                  MR. SCHECHTER:  Would you be able to set

12   aside the fact you've got to get back to work and look

13   and listen and analyze?

14                  PROSPECTIVE JUROR:  Possibly.

15                  MR. SCHECHTER:  Just possibly.  Thank you.

16                  Mr. Fowler?

17                  PROSPECTIVE JUROR:  I'm a big fan of John

18   Adams and he was the one who defended the Boston

19   massacre.  Five were acquitted and two were convicted

20   and, to me, that's a real testament to the American

21   justice system.

22                  MR. SCHECHTER:  Saw that on HBO?

23                  PROSPECTIVE JUROR:  Read it in McCullock's

24   book.

25                  MR. SCHECHTER:  He wasn't liked very much.