1            Mr. Schechter, if you would please?

2            MR. SCHECHTER:  Your Honor, may it please the

3       Court, Mr. Gopaul, Ms. Johnson, ladies and gentlemen.

4            Now, at the beginning of this case during

5       voir dire we spoke of not letting emotions get in the

6       way of your approach to this case.

7            If you recall, I had informed you you might

8       hear some disturbing things which, of course, you did

9       during the course of this trial.

10           And, of course, my concern was and still is

11      that because of the emotional impact - you've seen a

12      young lady get up on the witness stand and say some

13      pretty horrific things about her stepfather - that

14      might have, in some way, caused to you close the door

15      insofar as your analysis of this case.

16           And I'm going to ask you to try to somewhat

17      be lawyers in this case and be dispassionate and calmly

18      analyze the facts and the inferences from the facts as

19      I'm going to relate them to you because if you don't do

20      that then you're not giving the People of the State of

21      New York or Mr. Gopaul a fair trial and you all

22      promised that you would be able to do that and I have

23      faith that you will be able to do that.

24           Now, you heard testimony from the complainant

25      and three police officers and we're informed that

Summation - Defendant                    793

1      Mr. Gopaul made three separate statements to the

2      police.

3              Now, what I would like to do is I would like

4      to take you through the series of these statements and

5      analyze them and I'm asking you to do the same thing.

6              Now, firstly, I'm not going to be -- I'm not

7      going to stand up here and ask you to deny what you saw

8      with your own eyes insofar as Mr. Gopaul's last

9      statement, the videotape.

10              Rather than do that what I want to do is I

11     want you to try to understand the circumstances under

12     which those statements were made, to try to put

13     yourself in his mind, to try to put yourself in the

14     situation to see what it is that occurred here.

15              Now, I did not cross-examine

16     Detective Shulman and Police Officer Alfaro to get them

17     in trouble by improper billing of overtime.  That

18     wasn't my purpose in cross-examining them and asking

19     them about their memo books and, "How much overtime did

20     you bill?"

21              I was trying to build a time construction for

22     you.

23              And what do I mean by that?

24              Well, we have a very interesting kind of

25     dynamic here.

1          Detective Shulman says that his tour was

2     approximately 4 to 1 a.m. on June 23rd into June 24th,

3     2008.

4          As such, his tour finished at 1 o'clock.  For

5     some reason that he can't tell you, because I asked him

6     several times, "Well, Detective Schulman, what were you

7     doing between 1 and 2:30 a.m.?"

8                    "I don't recall."

9          Now, police officers, as you heard, are

10    required to keep memo books.  Detective Shulman kept a

11    memo book.  Interestingly, in that memo book there was

12    not one notation about this interaction with

13    Mr. Gopaul, not one notation about when Mr. Gopaul came

14    to the precinct, when he first began to speak to

15    Mr. Gopaul, when he first started to speak to the

16    complainant, whether he did anything in his memo book

17    and that's the first thing they have because the

18    sergeants check their time.  They want to make sure a

19    police officer is not being derelict.  So he signs off

20    on his book, "Okay," sergeant, "you're here, carry on."

21          Interestingly, as well in his memo book,

22    despite what he told you, were the words, which

23    appeared to me, assigned homicide investigation,

24    nothing about Mr. Gopaul.

25          So that raises the question why was

Summation - Defendant                    795

1     Detective Shulman, after his tour of duty was over --

2     firstly, why is he in the precinct and, secondly, why

3     was he assigned to Mr. Gopaul's case.

4                 And that question follows up, why was

5     Police Officer Alfaro assigned to make an arrest that

6     already had occurred and billed the City of New York

7     for two tours of duty, that's 16 hours times time and a

8     half?

9                 Aside from that being not only a waste of

10    taxpayer money, but I don't care about that, we're in

11    Nassau County here, why would the sergeant, O'Hagen,

12    who was on duty at the time Mr. Gopaul came into the

13    precinct, or whatever sergeant it was, think it was

14    O'Hagan, why would he assign an officer from outside

15    the precinct?

16                Why would he assign an officer not even there

17    to take or take credit for an arrest she didn't do?

18                All she did, if you remember her testimony,

19    is when she came to the precinct she had a conversation

20    with the complaining witness, she then processed

21    Mr. Gopaul's fingerprinting, whatever, and then she and

22    the complainant -- and there was a little bit of an

23    inconsistency.

24                The complainant says, "I don't know if

25    Shulman was there."

ws

1          Alfaro can't even remember if Shulman was

2     there and this is very interesting.

3          Why would they not have this in their heads?

4          Shulman did not testify to going out with the

5     complainant to the car.

6          Be that as it may, Alfaro goes to the car and

7     removes this little hatchet thing I'm sure the District

8     Attorney is going to show you, this thing that's about

9     this big.

10          Interestingly enough, the vibrator she

11     removed from the car apparently was not the vibrator

12     allegedly used on Sana Awan, an event, incidentally,

13     that was denied by Mr. Gopaul.  Never accounted for the

14     vibrator.

15          It was described according to Detective

16     Shulman.  He says my client drew that diagram and if

17     you look there is a difference in the way that

18     statement was taken.

19          The first part of the statement was a

20     narrative in my client's writing.  The second was in

21     his writing.  We'll get to that a little bit later.

22          However, the interplay of these police

23     officers and how they came to this case is relevant for

24     this reason.

25          Sergeant O'Hagen apparently told

ws

1   Detective Shulman that he aided in the apprehension of

2   Mr. Gopaul.

3              Mr. Gopaul didn't have to be apprehended.  He

4   went to the precinct to check on the whereabouts of

5   Sana Awan.  Where is she?  She's not home.  So there

6   was no apprehension involved at all.  Mr. Gopaul was,

7   in fact, arrested prior to Detective Shulman and prior

8   to Police Officer Alfaro having any connection with

9   him.

10             So, why would a sergeant assign two unrelated

11   officers to this case?

12             Well, very interesting that Detective Shulman

13   calls himself a detective who was assigned to enhance

14   an arrest.

15             What does it mean to enhance an arrest?

16             That's the first time I ever heard that

17   terminology in 40 years of practicing law, enhancing

18   arrest.

19             Now, if you look at the news I'm sure you

20   know what enhancing interrogation is because we have

21   problems in Abu Ghraib about what is called enhancing

22   interrogation.

23             MS. JOHNSON:  Objection.

24             THE COURT:  No, I'll allow it.  Overruled.

25             MR. SCHECHTER:  So enhancing interrogation

1     means he is the precinct hatchet man.  He is the one

2     who stayed beyond his time, not mentioned in his memo

3     book at all.  He's there to put the force and the

4     threats where they're supposed to be.

5          Now, I had asked him when I put the videotape

6     on and I asked you and he to please look at

7     Mr. Gopaul's appearance on the videotape and you'll

8     notice that his collar is completely dishevelled and

9     separated, separated completely unnaturally to here.

10    There would have been no reason for that to happen

11    unless someone grabbed you by the lapels like that and

12    then threw you down because he's doing force to the

13    garment.

14          Mr. Gopaul, I submit to you, when he came

15    into that precinct, was set upon by more than one

16    police officer, one of whom was Sergeant O'Hagen, who

17    was the desk sergeant, so he couldn't get away from

18    that, and several other police officers.

19          None of those police officers are mentioned

20    in any reports of the Police Department.  They don't

21    even have the name of the original arresting officer.

22          Now, don't you find that to be strange?

23          I make an arrest -- you come into the

24    precinct and I say, "You're under arrest, please put

25    your hands behind your back.  I'm the arresting

1    officer.  It's my tour of duty.  I'm on duty at the

2    precinct.  You're under arrest."

3              That person, Detective Shulman, does a Scooby

4    Doo, "I don't know."

5              Sergeant -- Officer Alfaro, "I don't know."

6              No one knows the identity of this arresting

7    officer.

8              Now, why is that?

9              Why doesn't anybody know who the arresting

10   officer was?

11             I'll tell you why not.  Because they're

12   trying to hide the identity of the arresting officer.

13             And how do we know that?

14             Well, first, no one on duty was given the

15   task of following through with the arrest.  Very

16   strange.  You place the man under arrest, follow

17   through with the arrest.  You're a patrolman on duty,

18   you're working a tour, but the sergeant calls Police

19   Officer Alfaro out of patrol back to the precinct and

20   at the end of her tour she now follows through with the

21   arrest for two separate overtime assignments.

22             The reason they're doing that is to shield

23   the police officers who actually placed him under

24   arrest from scrutiny as to what they did to him.

25             Detective Shulman puts the cherry on top of

Summation - Defendant                    800

1    that.  All right, so, we have Mr. Gopaul arriving at

2    the precinct about 4:45 to 5 a.m. in the morning,

3    June 24th.  Detective Shulman tells us he went in and

4    out, in and out.  He says he was with the complaining

5    witness for approximately two and a half hours, I

6    believe that was his testimony, pretty much had a

7    pretty good interview with the complaining witness,

8    Sana Awan.

9                That being said, Detective Shulman goes back,

10   speaks to my client and he asks him, "Do you want to

11   make a statement," reads him his rights.

12               Now, whether he reads him his rights or not,

13   you're shook up, you're thrown about.  At this point

14   you're isolated in a room, a cubical that I passed

15   around for you to see that's marked for complainants

16   only.  Complainants are victims.

17               Why was he put in a room for complainants

18   when they had that big room downstairs that eventually

19   the videotape was shown in?

20               They had other rooms in the place.

21               Why was he put in the room for complainants?

22               Why wasn't Sana Awan put in there?

23               The reason is -- and he lied to you,

24   incidentally, about the dimensions of the room.  He

25   made it bigger after he testified at the hearing

                                                          ws

1    because he wanted it to seem like it's not as small.

2            The reason he put my client in a confined

3    space to try to coerce a confession out of him, part of

4    his duties as an enhancing officer.

5            My client therefore wrote a statement in

6    which he goes into this -- that the family went to a

7    fair and his daughter was acting up and Mrs. Gopaul

8    apparently had a swollen tooth and he slapped her

9    because she was not being -- not behaving properly.

10   Okay, fine.  That's the statement he makes to

11   Detective Shulman.

12           All of a sudden we now get a metamorphosis.

13   Shulman gets back, even though he knew right away that

14   Sana Awan told him all these nasty things, he comes

15   back and he says, "You're step-daughter made some very

16   serious allegations.  Direct examination of Detective

17   Shulman, "Well, Detective Shulman, did you tell

18   Mr. Gopaul the specifics of what Sana Awan told you?"

19   "No, never did."  I'm going to get into that.  As a

20   matter of fact, I'm going to get into that right now.

21           Sana Awan told Detective Shulman that the

22   incidents for which my client is charged occurred at

23   400 Community Drive.

24           Mr. Gopaul, in his second confession, says

25   the events occurred at Community Drive, never admits

                                                      WS

1       force.  I'll get into that a little later.

2                    The events occurred at 400 Community Drive.

3                    Now, Sana Awan had been there ten times

4       before.

5                    His customer is there.  He's been there

6       hundreds of times before.  So it's later ascertained

7       600 Community Drive.

8                    "Wouldn't you think, Detective Moran, that a

9       person who goes to this place routinely, it's his

10      customer, would know the address 600 Community Drive?"

11                   Now, why is that important?

12                   It's important because the same mistake that

13      was mentioned by Sana Awan, that was 400 Community

14      Drive, independent, was made by Mr. Gopaul.

15                   Now, why would that be interesting?

16                   It's interesting because it's indicative that

17      Detective Shulman told Mr. Gopaul, "This is what you're

18      going to say in your statement.  This is what you're

19      going to say," after terrorizing him in that room.

20      "You're going to say it occurred at 400 Community

21      Drive.  This is what you're going to say."

22                   If it were him freely and voluntarily making

23      that statement -- and he admitted taking her to Nassau

24      County to have some sexual contact with her, on the

25      videotape he admitted that, so why wouldn't he say it

                                                          ws

1       was 600 Community Drive?

2               He didn't because he was forced to dance to

3       Shulman's tune.  And it's very strong evidence that

4       independent of each other this information, the same

5       mistake, was made by the complainant and Mr. Gopaul.

6       That is one of the pieces of proof to show that

7       Schulman, the enforcer, was putting this information in

8       his head.

9               Now, the discrepancies in time are designed

10      to show you that they had Mr. Gopaul longer than they

11      than they say they did by keeping all this juggling and

12      not making any police officer responsible for the

13      actual arrest.  They juggle this around because they

14      had him and they were softening him up.

15              Now, this is America.  We try to behave in a

16      lawful manner.  You're here as jurors.  We rule by law,

17      or we try to, and when we don't rule by law, when our

18      representatives don't behave legally and lawfully, they

19      get prosecuted, some of the time, or maybe most of the

20      time.

21              But we're ruled by law and we're not ruled by

22      emotion.

23              What Mr. Gopaul said to you on that videotape

24      was not nice.  As a matter of fact, it was

25      reprehensible.  I'll say that straight out.  No man

1        should have behaved as he said he behaved, no man, and

2        I could understand being upset or angry at what he said

3        on that videotape.

4                That's a far different cry from somebody

5        forcefully, at knifepoint, sexually abusing a

6        stepdaughter.  Despite everything, he denied that he

7        ever used any force on Sana Awan and I'm going to get

8        to Sana a little bit later.

9                And, very important, is the fact that when he

10       came to the precinct he did not know, obviously, he was

11       going to get arrested so he came to the precinct and he

12       left his car out front and came into the precinct so

13       when the car was searched, presumably what Sana said

14       was in the car should have been in the car and one of

15       the items she knew was in the car because she had been

16       with him at least ten times.  He's had that thing in

17       the car and she told Detective Moran it was always in

18       the car.

19               Now, I believe the District Attorney is going

20       to try to argue to you that when she was talking about

21       always she was only referring to May and June because

22       that was what Detective Moran was talking to her about.

23               You don't use the term always if it's May and

24       June.  Detective Moran didn't say, "In May and June

25       were those in the car?"

1          The answer would have been yes.

2          No, she says that knife was always in the

3     car.  So she knew that knife was in the car beforehand

4     and that was there, so it's not as if she didn't know

5     it was there.

6          Taking what was said on that videotape,

7     Mr. Gopaul told you that he had some kind of sexual

8     relationship with Sana Awan, his stepdaughter.  I admit

9     to you that's disgusting, reprehensible, but despite

10    everything, denied force.

11          Now, was it appropriate?

12          Absolutely not.

13          Was it something that any respectful person

14    would do?

15          No.

16          So does that mean that because on the

17    videotape he said this, that he did it with force?

18          No, he told you he did not.

19          And, what does Sana Awan say?

20          Sana Awan was a very, very attractive young

21    lady, very, very, smart lady, very nice, very good

22    witness, but Sana Awan periodically did give herself

23    away.

24          Now, what do I mean by that?

25          Sana Awan tells us this story that she was

Summation - Defendant                806

1    forced at knifepoint to commit these acts against my

2    client.

3            District Attorney asked her on direct

4    examination about some incident that occurred in 2005

5    and whether she was, basically, terrorized continually

6    because of Mr. Gopaul's actions from 2005 and Sana

7    said, "Yes, I've been terrified."

8            Now, if you remember, I introduced -- I

9    offered and the Judge permitted into evidence Sana's

10   grades from the time she was 14, when this supposedly

11   started, until she graduated.

12           She started with B plus grades and ended with

13   A to A minus grades.  It's phenomenal.  A girl is

14   living at home, terrorized by her stepfather,

15   terrorized, her own words, and she's got A, A minus, B

16   plus grades.  Never absent from school, not a

17   behavioral problem in school.  But she's an A student.

18           Wouldn't you expect someone living in an

19   atmosphere where she's terrorized by the person who's

20   in that place, sees him every day, drives her to

21   school, takes her home from school, how could that

22   person in any way possibly concentrate on her grades?

23           How could anyone under those circumstances

24   concentrate on her grades?

25           She did.  It's a testament to her that she

1     was able to get As and Bs.  Sana is a smart young lady.

2               Additionally, she would frequently, her, not

3     Mrs. Gopaul, not the children, and not Mr. Gopaul, she

4     took pictures of him.  She took videos of him.  She was

5     there wanting to be with him.

6               Now, you saw the Father's Day card.  Father's

7     Day card was right after, right after, she says many or

8     some of these things happened.

9               MS. JOHNSON:  Objection.

10              THE COURT:  Overruled.

11              MR. SCHECHTER:  Father's Day card.  She gave

12    him a Father's Day card with her on it dressed in a

13    shirt, interesting shirt, and I don't know what those

14    are, shorts or something, and two kids, the two other

15    kids.  They got spray cans and it's a Father's Day car.

16    Love, Sana.  Love, Sana.  She gave him a Father's Day

17    card.  Didn't force her to give the Father's Day card,

18    had no input in giving him the father's day card, but

19    she gave him a Father's Day card.

20              Why, then, would Sana, in this situation, in

21    this atmosphere, blame Mr. Gopaul, saying Mr. Gopaul

22    threatened her with a knife to have sex with her and

23    that's the reason.

24              He went too far, "I want to have sex with

25    you," said it on the videotape, "I want to be the

                                                          ws

Summation - Defendant                    808

1    first."  Disgusting, disgusting.

2              You promised me you're not going to judge by

3    morals, you're not going judge to judge with your

4    personal taste and personal positions about what is

5    distasteful, judging on the evidence.

6              Sana did not want that and she has a

7    boyfriend.  She has to save some face here, she doesn't

8    want to let her business out, so she tells her friend,

9    "Get me out of here.  He wants to have sex with me.

10   I'm out of here," and she left.

11             Why did she bring these charges?

12             Why did she claim that her stepfather

13   threatened her with a knife?

14             She claimed that because she was trying to

15   find a face-saving device to account for her actions

16   with Mr. Gopaul.  As inappropriate as they were, they

17   don't rise to the violence that was alleged against

18   him.

19             How do we know, what is the indication, that

20   this was not a violent-driven situation?

21             Sana tells us herself she didn't tell the

22   school, she didn't tell the police - now, this was over

23   a four-year period - didn't tell the police, tell

24   school, tell friends, tell boyfriend, four years.

25             He's not there all the time.  She's in

                                                          ws

1      school.  She could have told the guidance counselor.

2      It would have had to have been reported once she says

3      it.

4           She says, "I was afraid I would break up my

5      parents' marriage," not that she was scared to death.

6      "I was afraid to break up my parents' marriage."

7           You break up your parents' marriage because

8      of the threat?

9           No.

10          Because you had improper contact with her

11     husband, her stepfather.

12          "I didn't want to break up the marriage and I

13     didn't want to have my family not supported."

14          It's noble.  That's the reason.  That's the

15     reason why she didn't bring the charges.  That's what

16     she was thinking about, not that she was threatened,

17     not that she was under duress, not that she was under

18     this kind of compulsion.  She was thinking she did not

19     want to break up her parent's family because she wanted

20     to have her mother supported.  That's why she did not

21     do it for four years.  That was the fear that she had.

22     The fear was not that Mr. Gopaul threatened her or

23     menaced her, the fear was breaking up the family.

24          All of these things came from the testimony.

25     I am not telling you anything you didn't hear in court.

                                                    ws

1          What I'm asking you to do, I'm asking you to

2     review this evidence.  My client, Mr. Gopaul, is

3     entitled to the benefit of every reasonable doubt.  He

4     is entitled to that because it's impossible to prove

5     the negative.  He is entitled to the benefit of every

6     reasonable doubt and if you have a reasonable doubt, as

7     you promised to do, you will please find him not guilty

8     of what he is charged with.

9          You'll be charged by the Judge at the end of

10    the case, okay.  Mr. Gopaul is not being charged with

11    having sex with a minor.  That's not what he's charged

12    with.  A 17-year-old girl -- 17 is the age of consent.

13    He's not charged with having sex with a minor, he's

14    charged with forcibly having sexually -- allegedly

15    sexually abusing Sana, that's what he's charged with,

16    not statutory.

17          Sana also said that neither her father nor

18    her mother objected to her having a boyfriend.  Seems

19    to me if someone wanted to truly be the first and was

20    coercive he wouldn't want her to have a boyfriend, but

21    she said no, they never objected.

22          Now, please don't let your distaste for this

23    subject matter and what you heard substitute for your

24    careful, objective, legal analysis in this case.

25    Please analyze the evidence and listen to the Judge's

ws

1    charge and if you believe after you hear all the

2    evidence you have a reasonable doubt, please vote for

3    my client's acquittal here.

4              Now, after I sit down Ms. Johnson is going to

5    be coming after me, she's going to be speaking to you.

6    I'll not have the opportunity to answer her arguments

7    to you.  I'll not be able to say, "Wait a minute, but

8    you forgot this, forgot that."

9              She has, therefore, an advantage and the

10   reason she has an advantage is because the law gives

11   her the advantage because she has the burden of proof,

12   but I would ask that you all think about what I would

13   have said to answer Ms. Johnson's arguments and then

14   make a decision as to what happened here.

15             Thank you.

16             THE COURT:  All right, thank you,

17   Mr. Schechter.

18             All right, members of the jury, we're going

19   to take a very brief recess, take care of whatever

20   business you need to.  We're going to have the DA's

21   summation.  More than likely I'll try to follow that up

22   with my charge immediately thereafter.  Just follow

23   Kenny outside and we'll have you back in a few minutes.

24             (Jury exits.)

25             MR. SCHECHTER:  Your Honor, I need to be

                                                      ws

Proceedings                    812

1      heard for the record.

2                   THE COURT:  Sure.

3                   MR. SCHECHTER:  I had not raised this for the

4      record because the Court had made a determination

5      inside.

6                   I just want the record to reflect

7      Mr. Rosenblatt, the ADA in Queens, is here and he was a

8      witness on the video they are going to see.

9                   It's extremely prejudicial to my client.

10     It's like having an unsworn witness in the courtroom

11     who is on the videotape present during the testimony.

12                  Additionally, Mr. Rosenblatt might be a

13     witness in the case in Queens.  He knows that and, as

14     such, his presence here is not proper because, as a

15     witness, he was -- he should have been excluded and I

16     had asked the Court in camera -- in chambers for that

17     and the Court had denied my application.

18                  I just wanted that to be made known for the

19     record.

20                  THE COURT:  Right.  And I would also point

21     out, number one, Mr. Rosenblatt was not a witness in

22     this matter and therefore, as my courtroom is open, I

23     think he's, if he wishes, he's entitled to be here.

24                  Secondly, I doubt very highly, Mr. Schechter,

25     that the jury is recognizing Mr. Rosenblatt sitting in

Proceedings                    813

1       the back of the courtroom.  Quite frankly, I don't even

2       know who Mr. Rosenblatt is from scanning the back of

3       the courtroom at this time based upon what I saw in the

4       video, so, I don't think it's prejudicial to your

5       client, I don't think it's improper and -- but you have

6       your exception for the record.

7                   MR. SCHECHTER:  Thank you, Judge.

8                   MS. JOHNSON:  Ten minutes?

9                   THE COURT:  Yeah.

10                  (Recess in the proceedings.)

11                  THE COURT:  All right, while the jury is out

12      and before the People begin their summation, during the

13      break, after your summation, Mr. Schechter, we did some

14      further research.

15                  It does appear that there is a CJI charge for

16      sex abuse third in brackets.  I think it says no

17      acquiescence.  I brought both of you back to my

18      chambers.  I showed it to both of you.

19                  If you had asked for it, Mr. Schechter, I

20      would be inclined to give it as a lesser included

21      offense with respect to the 14 counts that charge sex

22      abuse in the first degree.

23                  I also indicated to you that in light of the

24      fact that you had finished your summation a moment ago

25      I would certainly, in light of my decision to give the

                                                        ws

1    lesser included, allow you to reopen your summation and

2    comment to the jury about it, if you wish.

3              So I assume at this point you're asking for

4    the charge?

5              MR. SCHECHTER:  Your Honor, I do respectfully

6    ask for the charge and my summation, in my opinion,

7    based upon my view of the case and my view of the

8    evidence, basically encompassed that any way.

9              I therefore find it will not profit my client

10   for me to reopen my summation and therefore I would

11   choose to leave my summation as is.

12             THE COURT:  Okay, then we'll do that.

13             All right, Ms. Johnson, you're ready to

14   proceed at this point?

15             MS. JOHNSON:  I am, Judge.

16             THE COURT:  All right.

17             (Jury enters.)

18             THE COURT:  All right, members of the jury,

19   welcome back.

20             At this time we're going to hear from the

21   People.

22             Ms. Johnson, if you would?

23             MS. JOHNSON:  Thank you, Judge.

24             Where there's a victim who never once wavered

25   in telling you what he did to her, never to the police,

                                                    ws

1     never to the prosecution, never to you, the jury, when

2     there is a knife recovered in the very same place in

3     the very same van that the victim told the police they

4     would find it, when there's a written statement in the

5     defendant's own handwriting, in his own words, about

6     how he sexually abused the little girl he raised since

7     the time she was three years old and when there is a

8     video confession in his words telling you what

9     attracted him to the growing body and the developing

10    breasts of his stepdaughter, when you have all that,

11    when you have all that, when you have overwhelming

12    evidence beyond a reasonable doubt that the defendant

13    is guilty of each and every crime charged, that when

14    you have that overwhelming evidence that beyond a

15    reasonable doubt the defendant, Harold Gopaul, forcibly

16    touched the breasts and vagina of the little girl he

17    raised, Sana Awan, in our county, in May and June 2008,

18    when you have all that you blame the police.

19             I submit to you, ladies and gentlemen, that

20    the evidence has proven to you beyond a reasonable

21    doubt that in May and June of 2008 in Nassau County

22    Harold Gopaul forcibly touched the breasts and the

23    vagina of then 17-year-old Sana Awan.

24             I submit to you that each and every time she

25    told him no, but that wasn't good enough for this

1     stepfather and I submit to you the evidence has proven

2     to you beyond a reasonable doubt that he made the

3     choice to escalate his force when she became resistant

4     and tried to push and pull away from him, he made the

5     choice to introduce this weapon to 17-year-old Sana.

6          There should be no question in your minds,

7     based on Sana's testimony, based on Christine, Denise

8     Alioto, based on Detective Shulman and based on Officer

9     Alfaro, based on his video confession, there should be

10    no question in your mind that he touched Sana Awan's

11    breasts and vagina in May and June of 2008.

12         So the real question for you, ladies and

13    gentlemen, is whether or not this defendant did it by

14    force, as the Judge will instruct you what that word

15    means in our law.

16         The answer to you, ladies and gentlemen, the

17    answer -- the only answer consistent with the evidence

18    in this case is that, yes, through his threats, both

19    expressed and implied, and through this knife, and

20    through his power, his strength, his body, yes, this

21    defendant forcibly touched Sana Awan 's breasts and

22    vagina.

23         I'm going to take some time now to go through

24    the evidence and each date that you're going to be

25    asked to consider and we're going to go through why it

1      is that the evidence has proven to you beyond a

2      reasonable doubt not just the touching, but the force.

3                  Sana told you that between May 1st and 13th,

4      2008 this defendant drove her out to Community Drive in

5      Nassau County in his Ecolab van and she told you how he

6      asked her to lean into him and he began to kiss her and

7      as she clenched her lips and tried to push him away and

8      physically resist him with her tiny frame he didn't

9      stop.  She told you how he wouldn't stop and he forced

10     his tongue into her mouth, kissing his stepdaughter.

11                 And she told you how it still didn't stop

12     because as she turned her head and tried to push his

13     body away from hers he touched her breasts and he

14     touched her vagina and I submit to you, ladies and

15     gentlemen, that his body, his frame against hers, his

16     authority, his strength and his power, I submit to you

17     that was the very force that he used upon Sana when she

18     said no.

19                 And she told you how he was bigger than her

20     and stronger than her and she told you how she relied

21     and trusted this man who raised her and she told you

22     how she wasn't able to fight him, how she couldn't push

23     him away, as hard as she tried, and despite that,

24     despite tiny frame trying to push him and pull him away

25     his body overpowered her.

                                                        ws

1          I submit to you, ladies and gentlemen, that

2     that is your physical force.

3          But it didn't stop because Sana told you that

4     after he touched her breasts, after he put his hand on

5     her vagina and told her how wet she was she still tried

6     to push him away, but, again, the power of his body

7     over hers, that physical force, she couldn't fight off.

8     I submit to you that is physical force.

9          But for that time frame of May 1st to May

10    13th, 2008, ladies and gentlemen, you don't just have

11    to rely on that power and that strength that he exerted

12    upon her because she told you that between that time

13    frame his violence escalated and he made the choice to

14    take this knife recovered in his van and threaten her

15    and he took this knife -- he made the choice to take

16    her finger, point this blade at her and tell her, "I'm

17    going to show you how serious I am."

18          Those words, with that knife, members of the

19    jury, that threat, that is forcible compulsion, I

20    submit to you.

21          But Sana told you May 1st through the 13th

22    wasn't the end.

23          Today is May 14th, 2009.  It was a year ago

24    today, May 14th, 2008 that, again, he drove her out

25    from his home in Queens -- at her school in Queens to

1    our county in that same van and he brought her out here

2    again to touch her breasts and to touch her vagina and

3    still she fought, still she said no and no different

4    than in May 1st through 13th than was May 14th.  He was

5    still bigger and stronger than her and, again, despite

6    her pushing and pulling and covering her body from the

7    defendant he didn't stop and he chose to use his power,

8    his strength, his size and that very trust that she

9    relied upon to continue the abuse.

10             And it was that very day that you heard from

11   Sana's mouth that a promise was made, a promise that he

12   was going to be the one, a promise that he, I submit to

13   you, planned on keeping, that he was going to be the

14   one for his stepdaughter to lose her virginity to.  She

15   told you that.  He told you that.

16             But on May 14th, 2008 his physical size, his

17   strength, that knife that he had already threatened her

18   with, members of the jury, members of the jury, just

19   one week earlier, I submit to you, that is your

20   forcible compulsion and I submit to you that that

21   physical force proves to you beyond a reasonable doubt

22   that on May 14th, 2008, in that very same van, this

23   defendant forcibly touched Sana's breasts and vagina.

24             Sana then told you about May 19th through the

25   23rd, 2008 and again she tried to overcome his power

1     and his strength, but through his physical force, his

2     size -- and, make no mistake, we're not looking at a

3     man six foot tall, 300 pounds, but to Sana, who told

4     you she's barely 100 pounds, compared to her he was

5     bigger and stronger than that little girl.

6              And yet again on that date she still said no

7     and she still tried to push him away.  She still tried

8     to pull away from him and cover her body, but just like

9     in the beginning of May, no different, he wouldn't take

10    no for an answer and with that power and with that

11    strength he used his physical force to touch her yet

12    again.

13             She told you about June 2nd through the 6th,

14    2008 and, again, he picked her up from school, drove

15    her to Community Drive and continued to sexually abuse

16    her and despite being unable to fight him off before,

17    she didn't stop, she continued to fight him, she

18    continued to say no, she continued to push away, she

19    continued to pull away, she continued to use both hands

20    to push his body off of her, but, again, she wasn't

21    successful because his physical force, the size

22    compared to her, his strength and his power overcame

23    her tiny frame and, ladies and gentlemen, that is

24    physical force and forcible compulsion as the Court

25    will instruct you.

1          On June 2nd through 6th Sana told you what

2     her fear was.  She told you again he threatened her and

3     she told you again she feared that he was going to kill

4     her if she didn't comply and I submit to you, ladies

5     and gentlemen, her fear was reasonable in her teenage

6     mind because it was only weeks earlier that his threat

7     escalated and I submit to you her fear was reasonable

8     because it was only week earlier that he took this

9     blade and told her in no uncertain terms, "I'm going to

10    show you how serious I am."

11         And it was on June 2nd through the 6th of

12    2008 that not only his physical force was used to

13    forcibly compel Sana into heeding to his demands, but

14    that threat as well and that knife, I submit to you,

15    that was the forcible compulsion used on that date.

16         June 9th through the 13th, again, it didn't

17    stop.  She told you he kept bringing her out to Nassau

18    County, kept touching her breasts, and kept touching

19    her vagina and she told you that still she feared that

20    he would kill her because she saw this knife in the van

21    yet again and I submit to you it's because he

22    threatened her before and because he told her before

23    how serious he was, that the evidence has proven to you

24    beyond a reasonable doubt on those dates he used

25    forcible compulsion to touch her breasts and her

1    vagina.

2            You heard about June 19th to the 20th, no

3    different, no different than May, no different than the

4    beginning of June; again he brought her out to Nassau

5    County, again he touched her and again she resisted and

6    again she said no and again she used her hands, tried

7    to push him away, tried to push him off her and tried

8    to cover her body but, yet again, he didn't stop.

9            Again, his body overpowered her and this same

10   man who had threatened her twice before, she told you

11   still she couldn't fight him off.

12           But, members of the jury, Sana's testimony, I

13   submit to you, standing alone is your proof beyond a

14   reasonable doubt, but I tell you, you don't just have

15   to rely on what she told you.

16           But I ask you, ladies and gentlemen, use your

17   common sense and I submit to you that you know she was

18   being truthful to you and you know you can credit her

19   testimony as worthy of your belief.

20           We talked about on jury selection what it is,

21   what types of skills we use in our everyday lives to

22   tell us whether or not somebody is being honest and

23   truthful with us and those factors we talked about on

24   jury selection were present in this courtroom when she

25   took that witness stand.

ws

1      Many of you agreed that a witness' demeanor

2  is something you look at and consider when determining

3  if somebody is being honest and truthful with you.

4      You saw Sana on that witness stand, soft

5  spoken, both to myself and both to defense attorney.

6  You saw her break down when she described not just the

7  abuse she suffered at the hands of her stepfather, but

8  you saw her break down when she talked about her

9  brother and her sister.

10      Despite those horrific details that she

11  described to you about how he touched her, she never

12  hesitated and she admitted that she loved him, she

13  loved her stepfather, never hesitated.

14      And as difficult as that may seem for many of

15  you to understand and as complicated as that is, I tell

16  you it is that very brutal honesty that tells you who

17  the true Sana Awan is and it is that very brutal

18  honesty that I submit to you tells you that she is

19  worthy of your belief and that her testimony should be

20  credited as truthful and honest when she told you what

21  he did to her.

22      We talked about consistency in a witness's

23  testimony on jury selection.

24      How interesting.  Sana never wavered, not

25  once, in who touched her, when he touched her, where he

ws

1    touched her, how he touched her, not once.

2               Maybe she didn't know times, maybe she didn't

3    know exact dates, maybe she didn't know who was in the

4    car on some date in 2008, but, ladies and gentlemen,

5    what she never wavered in, I submit to you, is what

6    matters to you, the jury.

7               Defense counsel stood up here and told you

8    and argued to you that Sana didn't report the sexual

9    abuse to her teacher, to her guidance counselor, to her

10   principal or to her friends right away, didn't report

11   it to her family.

12              That's true.  And she told you why.

13              We talked on jury selection about the reasons

14   that a victim, especially of sexual abuse, may not feel

15   comfortable and may feel humiliated and embarrassed

16   talking about personal and horrific things that they've

17   been through.

18              Sana told you from that witness stand that

19   she didn't feel like she could confide in her mother,

20   her teacher, her guidance counselor and it should come

21   as no surprise to you, members of the jury, why.

22              It should come as no surprise to you that she

23   felt she couldn't confide in her mother, the very same

24   woman who, when she brought Sana home from the

25   precinct, had the defendant's entire family waiting in

                                                      ws

1      the home, the very same woman who never consoled her

2      daughter about what happened to her and the very same

3      woman who never even asked her if she was okay.

4           But in her mind, in Sana's mind, in her

5      teenage mind, she did what she thought was reasonable

6      and I submit to you what any teenage girl would have

7      done, she confided in her best friend.

8           But, members of the jury, it's not just who

9      she confided in it's when she confided in that tells

10     you she was being truthful and honest with you and

11     worthy of your belief.

12          Sana told you why she picked June 23rd, 2008

13     to confide in her best friend Christine.  It was

14     because days later she was going to have to fulfill the

15     promise he told her, the promise that he was going to

16     have her keep, that 17-year-old virgin Sana Awan was

17     going to lose her virginity to her stepfather and she

18     told you why she couldn't wait until the day before and

19     how she waited until the very moment that her mother

20     was asleep, her brother and sister were asleep and the

21     defendant wasn't home and she even told you she waited

22     until the air conditionings were on in her home so

23     nobody would hear her and see her leave, knowing she

24     couldn't wait until the day before in case she couldn't

25     get out.

1           Smart girl, I tell you, gave herself time and

2      took that bag she had packed days earlier in her closet

3      and ran and called her best friend and finally confided

4      and disclosed the humiliation and embarrassment she had

5      been suffering by him for so long.

6           But it's not just her demeanor and it's not

7      just no inconsistency in her testimony and not just

8      when and where and who she out cried, but Sana's

9      testimony was corroborated by not just other testimony

10     you heard, but the physical evidence that was presented

11     to you in this case, ladies and gentlemen.

12          Officer Alfaro told you that she recovered

13     this knife from the defendant's Ecolab van parked

14     outside of the 105th Precinct on June 24th, 2008,

15     recovered in the very same spot, the very same van, the

16     very same place.

17          But, how interesting, Sana and

18     Detective Shulman told you -- Sana told you she told

19     Detective Shulman about the knife, not knowing the

20     defendant was even at the police precinct, not knowing

21     he had even walked through those doors and parked his

22     van outside, this knife recovered in exactly the same

23     spot in exactly the same place in exactly the same van

24     where she told Detective Shulman it would be before

25     even knowing that he walked through those precinct

1    doors.

2              Defense counsel argued to you that this was a

3    consensual relationship, that Sana Awan, the girl who

4    came into this courtroom and took that witness stand,

5    was having an affair with him?

6              That 17-year-old girl was having a consensual

7    sexual affair with the man who raised her since the

8    time she was three years old, her mother's husband, the

9    father to her brother and her sister.

10             I submit to you, members of the jury, you use

11   your common sense.

12             Does it sound ridiculous, because I submit to

13   you it is, that that girl was having an affair with

14   him?

15             But you don't even have to take her word for

16   it because he told you himself.  If there was any doubt

17   in your mind, any doubt that this was a consensual

18   affair, his own words told you it was not.          I

19   am not going to play this video for you now, but I

20   encourage you when you go back to deliberate you can

21   ask the Court to see any of the evidence, all of the

22   evidence, again.

23             He told you and you saw him say that she said

24   no, his words.  He told you that he had to convince her

25   to let him touch her.  He told you how he convinced

1     Sana to let him touch her.  He told you -- he told you

2     this back in June 2008.  He told you that he told Sana

3     to keep it a secret and that he told her it's okay and

4     that he started the relationship and he told you in

5     disgusting detail, I submit to you, ladies and

6     gentlemen, what it was about; her growing breasts and

7     her growing body that sexually attracted him to his

8     stepdaughter.

9          Those words, out of his mouth, "I'm sorry I

10    started it."

11         She said no.

12         Does that sound like a consensual affair,

13    ladies and gentlemen?

14         Your common sense tells you it sounds

15    ridiculous because it is ridiculous.

16         If you believe that Sana Awan was having an

17    affair with her stepfather, as defense counsel would

18    have you believe, then you must also believe that she

19    lied to you from that witness stand when she told you

20    about the knife, about the force, and about the threats

21    and you know, members of the jury, that she had no

22    reason to lie.  She had no motive.

23         What motive does Sana Awan have to walk into

24    this courtroom and divulge humiliating, embarrassing,

25    disgusting details about what her stepfather did to

ws

1      her?

2                    Do you think that was fun for her?

3                    You saw her.  No motive.

4                    You've heard testimony, you've seen the

5      physical evidence, you've seen his own words, you've

6      seen him on video.

7                    Members of the jury, I submit to you that

8      there is only one verdict consistent with all the

9      evidence in this case.  Tell this defendant what he

10     told you on that video back in June of 2008, tell him

11     what he already told you.  Tell him what he admitted on

12     that videotaped confession, that he is guilty of each

13     and every crime charged.  Tell him that with your

14     verdict.  Thank you.

15                   THE COURT:  All right, Ms. Johnson, thank you

16     very much.

17                   All right, members of the jury, my charge is

18     going to be a little longer than usual.  I want you all

19     to be comfortable.  It's very important you pay

20     attention to my charge.  I'm going to have you excused

21     very briefly.

22                   Please don't discuss this case even though

23     the attorneys are done with their summations.

24                   I'm going to have you back here probably

25     within five minutes and we'll begin my charge.  So, if

                                                            ws

1    you would, just follow Kenny and we'll have you back

2    here real quick.

3              (Jury exits.)

4              (Brief recess in the proceedings.)

5              THE COURT:  Mr. Schechter, before I give the

6    verdict sheet to the jury I'm just going to call both

7    of you up here just before they go out with it.  We're

8    just making some finishing touches on it in light of

9    the changes.

10              (Jury enters.)

11              THE CLERK:  Okay, the Court is about to

12   charge the jury.  Anyone wishing to leave may do so

13   now.  No one will be permitted to enter or leave during

14   the charge of the Court.

15              THE COURT:  All right, members of the jury,

16   at this point it becomes my privilege to charge you on

17   the law.

18              What you will find is that my charge is

19   basically broken up into three major components.

20              The first will be certain principles that

21   apply -- of law that apply in every criminal case.

22   There are certain principles of law that I will charge

23   you that are specific to some of the issues that have

24   been raised during the course of my trial -- during the

25   course of this trial, I should say.

Jury Charge                    831

1        The second part of the charge will then deal

2   with the actual charges themselves.  I'll define the

3   charges and the elements of the charge and.

4        Then, finally, I'll then get into

5   deliberations and how you're to proceed with regard to

6   your deliberations.

7        So that's basically an outline of what my

8   charge will be.

9        So during these instructions, members of the

10  jury, I will not summarize the evidence.  If necessary,

11  I may refer to portions of the evidence to explain the

12  law as it relates to it.  My reference to evidence or

13  my failure to refer to evidence expresses no opinion

14  about the truthfulness, accuracy or importance of any

15  particular evidence.

16       In fact, nothing I have said and no questions

17  I have asked in the course of this trial were meant to

18  suggest that I have an opinion about this case, a

19  witness, the evidence, or whether the defendant is

20  guilty or not guilty.

21       If you have formed an impression that I do

22  have such an opinion you must put it out of your mind

23  and disregard it.

24       The level of my voice or intonation may vary

25  during these instructions.  If I do that it is done to

ws

1    help you understand these instructions.  It is not done

2    to communicate any opinion about the law or the facts

3    of the case or whether the defendant is guilty or not

4    guilty.

5            Remember, it is not my responsibility to

6    judge the evidence here, it is yours.  You and you

7    alone are the judges of the facts and you and you alone

8    are responsible for deciding whether the defendant is

9    guilty or not guilty.

10           In your deliberations you may not consider or

11   speculate about matters relating to sentence or

12   punishment.  If there is a verdict of guilty it will be

13   my responsibility to impose an appropriate sentence.

14           When you judge the facts you are to consider

15   only the evidence.  The evidence in the case includes

16   the testimony of the witnesses, the exhibits that were

17   received in evidence and the stipulation by the

18   parties.

19           Testimony which was stricken from the record

20   or to which an objection was sustained must be

21   disregarded by you.

22           Exhibits that were received in evidence are

23   available upon your request for your inspection and

24   consideration.  Exhibits that were just seen during the

25   trial or marked for identification but not received in

ws

1    evidence are not evidence and thus are not available

2    for your inspection and consideration, but testimony

3    based on exhibits that were not received in evidence

4    may be considered by you, it's just that the exhibit

5    itself is not available for your inspection and

6    consideration.

7              The charges in this case are set forth in a

8    document that's known as an indictment.  The indictment

9    simply states the charges.  Neither the indictment

10   itself nor the fact that an indictment has been filed

11   constitutes evidence.

12             The defendant has pleaded not guilty to the

13   charges contained in the indictment and the trial is to

14   decide whether the defendant is guilty or not guilty.

15             In evaluating the evidence you may consider

16   any fact that is proven and any inference which may be

17   drawn naturally, reasonably and logically from such

18   fact.  To draw an inference means to infer, find,

19   conclude, that a fact exists or does not exist based

20   upon proof of some other fact or facts.

21             For example, if you go to bed one night when

22   it is not raining, when you wake up in the morning you

23   look out your window you do not see rain, but you see

24   that the street and sidewalk are wet and that people

25   are wearing rain coats and carrying umbrellas.

Jury Charge                    834

1          Under those circumstances it may be

2     reasonable to infer, conclude, that it had rained

3     during the night.

4          In other words, the fact of rain during the

5     night is an inference that might be drawn from the

6     proven facts of the presence of water on the street and

7     sidewalk and people in raincoats and carrying

8     umbrellas.

9          An inference must only be drawn from a proven

10    fact or facts and then only if the inference flows

11    naturally, reasonably and logically from the proven

12    fact or facts, not if it is speculative.

13         Therefore, in deciding whether to draw an

14    inference you must look at and consider all the facts

15    in light of reason, common sense and experience.

16         We now turn to the fundamental principles of

17    our law that apply to all criminal trials; the

18    presumption of innocence, the burden of proof and the

19    requirement of proof beyond a reasonable doubt.

20         Throughout these proceedings the defendant is

21    presumed to be innocent.

22         As a result, you must find the defendant not

23    guilty unless on the evidence presented at this trial

24    you conclude that the People have proven the defendant

25    guilty beyond a reasonable doubt.

ws

1              In determining whether the People have

2       satisfied their burden of proving the defendant's guilt

3       beyond a reasonable doubt you may consider all the

4       evidence presented, whether by the People or by the

5       defendant.

6              In doing so, however, remember that even

7       though the defendant introduced evidence, the burden of

8       proof remains on the People.

9              The defendant is not required to prove that

10      he is not guilty.  In fact, the defendant is not

11      required to prove or disprove anything.

12             To the contrary, the People have the burden

13      of proving the defendant guilty beyond a reasonable

14      doubt.  That means before you can find the defendant

15      guilty of a crime the People must prove beyond a

16      reasonable doubt every element of the crime, including

17      that the defendant is the person who committed that

18      crime.

19             The burden of proof never shifts from the

20      People to the defendant.  If the People fail to satisfy

21      their burden of proof you must find the defendant not

22      guilty.  If the People satisfy their burden of proof

23      you must find the defendant guilty.

24             What does your law mean when it requires

25      proof of guilt beyond a reasonable doubt?

                                                           ws

1           The law uses the term proof beyond a

2       reasonable doubt to tell you how convincing the

3       evidence of guilt must be to permit a verdict of

4       guilty.

5           The law recognizes that in dealing with human

6       affairs there are very few things in this world that we

7       know with absolute certainty.  Therefore, the law does

8       not require the People to prove a defendant guilty

9       beyond all possible doubt.

10          On the other hand, it is not sufficient to

11      prove that the defendant is probably guilty.  In a

12      criminal case the proof of guilt must be stronger than

13      that and must be beyond a reasonable doubt.

14          A reasonable doubt is an honest doubt of the

15      defendant's guilt for which a reason exists based upon

16      the nature and quality of the evidence.  It is an

17      actual doubt, not an imaginary doubt.  It is a doubt

18      that a reasonable person acting in a matter of this

19      importance would be likely to entertain because of the

20      evidence presented or because of the lack of convincing

21      evidence.

22          Proof of guilt beyond a reasonable doubt is

23      proof that leaves you so firmly convinced of the

24      defendant's guilt that you have no reasonable doubt of

25      the existence of any element of the crime or of the

Jury Charge                    837

1    defendant's identity as the person who committed the

2    crime.

3           In determining whether or not the People have

4    proven the defendant's guilt beyond a reasonable doubt

5    you should be guided solely by a full and fair

6    evaluation of the evidence.

7           After carefully evaluating the evidence each

8    of you must decide whether or not that evidence

9    convinces you beyond a reasonable doubt of the

10   defendant's guilt.

11          Whatever your verdict may be it must not rest

12   upon baseless speculations nor may it be influenced in

13   any way by bias, prejudice, sympathy or by a desire to

14   bring an end to your deliberations or to avoid an

15   unpleasant duty.

16          If you are not convinced beyond a reasonable

17   doubt that the defendant is guilty of a charged crime

18   you must find the defendant not guilty of that crime.

19          If you are convinced beyond a reasonable

20   doubt that the defendant is guilty of a charged crime

21   you must find the defendant guilty of that crime.

22          As judges of the facts you alone determine

23   the truthfulness and accuracy of the testimony of each

24   witness.  You must decide whether a witness told the

25   truth and was accurate or, instead, testified falsely

ws

1    or was mistaken.  You must also decide what importance

2    to give to the testimony you accept as truthful and

3    accurate.

4            It is the quality of the testimony that is

5    controlling, not the number of witnesses who testified.

6            If you find that any witness has

7    intentionally testified falsely as to any material fact

8    you may disregard that witness's entire testimony or

9    you may disregard so much of it as you find was

10   untruthful and accept so much of it as you find to have

11   been truthfully and accurately given.

12           There is no particular formula for evaluating

13   the truthfulness and accuracy of another person's

14   statements or testimony.  You bring to this process all

15   of your varied life's experiences.

16           In life you frequently decide the

17   truthfulness and accuracy of statements made to you by

18   other people.  The same factors used to make those

19   decisions should be used in this case when evaluating

20   the testimony.

21           Some of the factors that you may wish to

22   consider in evaluating the testimony of a witness are

23   as follows:

24           Did the witness have an opportunity to see or

25   hear the events about which he or she testified?

1            Did the witness have the ability to recall

2       those events accurately?

3            Was the testimony of the witness plausible

4       and likely to be true or was it implausible and not

5       likely to be true?

6            Was the testimony of the witness consistent

7       or inconsistent with other testimony or evidence in the

8       case?

9            Did the manner in which the witness testify

10      reflect upon the truthfulness of that witness's

11      testimony?

12           To what extent, if any, did the witness's

13      background, training, education or experience affect

14      the believability of that witness's testimony?

15           Did the witness have a bias, hostility, that

16      affected the truthfulness of the witness's testimony?

17           You may consider whether Sana Awan complained

18      of the crime promptly or within a reasonable period of

19      time after its alleged commission.  If you find that

20      the complaint was made promptly or within a reasonable

21      time you may consider whether and to what extent, if

22      any, that fact tends to support the believability of

23      the witness's testimony.

24           If you find that the complaint was reasonably

25      delayed -- pardon me, strike that.

ws

1        If you find that the complaint was

2   unreasonably delayed you may consider whether and to

3   what extent, if any, that fact tends not to support the

4   believability of the witness's testimony.

5        In determining whether a complaint was made

6   within a reasonable period of time you may consider

7   such circumstances as the complainant's age, past

8   experiences and mental state, whether or not the

9   complainant feared for his or her own safety or the

10  safety of others, whether or not the complainant had

11  the opportunity to make a complaint and any other

12  circumstance that operated to prevent or delay

13  disclosure within a reasonable period of time.

14       You may consider whether a witness had or did

15  not have a motive to lie.  If a witness had a motive to

16  lie you may consider whether and to what extent, if

17  any, that motive affected the truthfulness of that

18  witness's testimony.

19       If a witness did not have a motive to lie you

20  may consider that as well in evaluating the witness's

21  truthfulness.

22       You may consider whether a witness has any

23  interest in the outcome of the case or, instead,

24  whether the witness has no such interest.  You are not

25  required to reject the testimony of an interested

ws

Jury Charge                    841

1    witness or to accept the testimony of a witness who has

2    no interest in the outcome of the case.

3              You may, however, consider whether an

4    interest in the outcome or the lack of such interest

5    affected the truthfulness of the witness's testimony.

6              You may consider whether a witness made

7    statements at this trial that are inconsistent with

8    each other.

9              You may also consider whether a witness made

10   previous statements that are inconsistent with his or

11   her testimony at trial.

12             You may consider whether a witness testified

13   to a fact here at trial that the witness omitted to

14   state at a prior time when it would have been

15   reasonable and logical for the witness to have stated

16   the fact.

17             In determining whether it would have been

18   reasonable and logical for the witness to have stated

19   the omitted fact, you may consider whether the

20   witness's attention was called to the matter and

21   whether the witness was specifically asked about it.

22             If a witness has made such inconsistent

23   statements or omissions you may consider whether and to

24   what extent they affected the truthfulness or accuracy

25   of that witness's testimony here at this trial.

ws

1        The contents of a prior inconsistent

2    statement are not offered for the truth of what

3    happened.  You may use evidence of a prior inconsistent

4    statement only to evaluate the truthfulness or accuracy

5    of the witness's testimony here at trial.

6        You may consider whether a witness's

7    testimony is consistent with the testimony of other

8    witnesses or whether -- or with other evidence in the

9    case.

10       If there were inconsistencies by or among

11   witnesses you may consider whether they were

12   significant inconsistencies related to important facts

13   or, instead, were the kind of minor inconsistencies

14   that one might expect from multiple witnesses to the

15   same event.

16       The fact that the defendant did not testify

17   is not a factor from which any inference unfavorable to

18   the defendant may be drawn.

19       In this case you have heard testimony of

20   police officers and detectives.  The testimony of a

21   witness should not be believed solely and simply

22   because the witness is a police officer or a detective

23   and, at the same time, a witness's testimony should not

24   be disbelieved solely and simply because the witness is

25   a police officer or a detective.

ws

Jury Charge                    843

1           In other words, you must not believe or

2      disbelieve a police officer just because he or she is a

3      police officer or a detective.  You must evaluate a

4      police officer and detective's testimony the same way

5      you would evaluate the testimony of any other witness.

6           There is evidence in the case that on another

7      occasion the defendant engaged in conduct with Sana

8      Awan in Queens County.  You must not conclude or infer

9      from that testimony that the defendant had a propensity

10     or a predisposition to commit any crime.

11          You may consider that testimony only to

12     permit you to evaluate the believability and accuracy

13     of the witness's testimony as it may relate to the

14     elements of forcible compulsion and intent as I shall

15     define that for you at the end of the case.

16          Again, that testimony was not offered and

17     must not be considered by you for the purpose of

18     proving that the defendant had a propensity or

19     predisposition to commit the crimes charged in this

20     case.

21          It was offered as evidence for your

22     consideration on the question of forcible compulsion

23     and intent.  If you find the evidence believable and

24     accurate you may consider it for that limited purpose

25     and for no other.

                                              ws

Jury Charge                    844

1          I will now discuss the law as it relates to

2     testimony concerning statements of the defendant made

3     to a police officer, detective or Assistant District

4     Attorney.

5          Our law does not require that a statement by

6     a defendant be in any particular form.  It may be oral

7     or written or electronically recorded.  There is no

8     requirement that a statement be made under oath.

9          There is testimony that while the defendant

10    was in custody he was questioned by the police and/or

11    detectives and made certain oral and written

12    statements.  There is also testimony that the defendant

13    made a videotaped statement to an Assistant District

14    Attorney.

15         Under our law, before you may consider any

16    such statement as evidence in the case you must first

17    be convinced that the statement attributed to the

18    defendant was, in fact, made or adopted by him.

19         In determining whether the defendant made or

20    adopted the statement you may apply the tests of

21    believability and accuracy that we have already

22    discussed.

23         Under our law, even if you find that the

24    defendant made a statement you still may not consider

25    it as evidence in the case unless the People have

1    proven beyond a reasonable doubt that the defendant
2    made the statement voluntarily.
3           How do you determine whether the People have
4    proven beyond a reasonable doubt that the defendant
5    made the made a statement voluntarily?
6           Initially, under our law, before a person in
7    custody may be questioned by the police or an Assistant
8    District Attorney that person first must be advised of
9    his rights, second, understand, those rights -- I
10   should say second, understand those rights and, third,
11   must voluntarily waive those rights and agree to speak
12   to the police or an Assistant District Attorney.
13          If any one of those three conditions is not
14   met a statement made in response to questioning is not
15   voluntary and therefore you must not consider it.
16          There is no particular point in time that the
17   police or Assistant District Attorney are required to
18   advise a defendant in custody of his rights so long as
19   they do so before questioning begins.
20          A defendant in custody need be advised only
21   once of the rights, regardless of how many times or to
22   whom the defendant speaks after having been so advised,
23   provided the defendant is in continuous custody from
24   the time he was advised of his rights to the time he
25   was questioned and there is no reason to believe that

ws

Jury Charge                    846

1    the defendant had forgotten or no longer understood his

2    rights.

3              While there are no particular words that the

4    police or the Assistant District Attorney are required

5    to use in advising the defendant, in sum and substance

6    the defendant must be advised of the following:

7              One, that he has a right to remain silent,

8    two, that anything he says may be used against him in a

9    court of law, two (sic), that he has the right to

10   consult with a lawyer before answering any questions

11   and the right to the presence of a lawyer during any

12   questions and, four, that if he cannot afford a lawyer

13   one will be provided for him prior to any questioning

14   if he so desires.

15             Before you may consider as evidence a

16   statement made by the defendant in response to

17   questioning you must find beyond a reasonable doubt

18   that the defendant was advised of his rights,

19   understood those rights and voluntarily waived those

20   rights and agreed to speak to the police or detective

21   or an Assistant District Attorney.

22             If you do not make those findings then you

23   must disregard the statement and not consider it.

24             Under our law, a statement is not voluntary

25   if it is obtained from the defendant by the use or

ws

1       threatened use of physical force upon the defendant.

2                    In addition, a statement is not voluntary if

3       it is obtained by means of any other improper conduct

4       or undue pressure which impairs the defendant's

5       physical or mental condition to the extent of

6       undermining his ability to make a choice of whether or

7       not to make a statement.

8                    In considering whether a defendant was -- in

9       considering whether a statement was obtained by means

10      of any improper conduct or undue pressure which

11      impaired the defendant's physical or mental condition

12      to the extent of undermining his ability to make a

13      choice of whether or not to make a statement you may

14      consider such factors as the defendant's age,

15      intelligence and physical and mental condition and the

16      conduct of the police during their contact with the

17      defendant, including, for example, the number of

18      officers who questioned the defendant, the manner in

19      which the defendant was questioned, the defendant's

20      treatment during the period of detention and

21      questioning and the length of time the defendant was

22      questioned.

23                   It is for you to evaluate and weigh the

24      various factors to determine whether, in the end, a

25      statement was obtained by means of any improper conduct

ws

1    or undue pressure which impaired the defendant's

2    physical or mental condition to the extent of

3    undermining his ability to make a choice of whether or

4    not to make a statement.

5              Under our law, when a person is arrested the

6    police must bring him to court for arraignment without

7    unnecessary delay.

8              Before bringing an arrested defendant to

9    court the police may complete the paperwork associated

10   with the processing of the arrest, may question

11   witnesses or conduct other investigation relevant to

12   the case and may question the defendant.

13             It is not for the jury to determine precisely

14   when the defendant should have been arraigned.

15             However, you may consider whether the police

16   unnecessarily delayed the defendant's arraignment and,

17   if so, whether that delay, along with any other

18   relevant factors, affected the defendant's ability to

19   make a choice about whether to make a statement.

20             A statement is not involuntary solely because

21   of the length of time before a defendant is arraigned.

22   That length of time is only one of the factors you may

23   consider in determining whether the statement was

24   voluntary.

25             If the People have not proven beyond a

                                                        ws

1    reasonable doubt that a statement of the defendant was

2    voluntarily made, then you must disregard that

3    statement and not consider it.

4         If the People have proven beyond a reasonable

5    doubt that a statement of the defendant was voluntarily

6    made, then you may consider that statement as evidence

7    and evaluate it as you would any other evidence.

8         At this point, members of the jury, I'm going

9    to start to turn towards the actual charges in this

10   case.

11        You're going to notice that I am submitting

12   for your consideration the offense of sex abuse in the

13   third degree, that's under Penal Section 130.55, which

14   was not mentioned at the beginning of this trial.

15        That crime is called a lesser included

16   offense of sex abuse in the first degree, which is

17   Penal Law Section 130.65, Subdivision 1.

18        As a result, our law requires the jury --

19   requires that the jury consider sexual abuse in the

20   first degree and sex abuse in the third degree as

21   follows:

22        You can find the defendant not guilty of both

23   charges or guilty of one of the two charges.

24        Thus, you will consider sex abuse in the

25   first degree and render a verdict of guilty or not

                                              ws

1    guilty.  If your verdict is guilty then you will not

2    consider sex abuse in the third degree.  If your

3    verdict is not guilty, then you will consider sexual

4    abuse in the third degree and render your verdict

5    according to that charge.

6              And there is a jury verdict sheet that I will

7    give you that will outline, in essence, what I refer to

8    here.

9              The first count is sexual abuse in the first

10   degree.

11             Under our law, a person is guilty of sexual

12   abuse in the first degree when he or she subjects

13   another person to sexual contact by forcible

14   compulsion.

15             Under our law, it is also an element of this

16   offense that the sexual act was committed without

17   consent.

18             Sexual contact takes place without a person's

19   consent when the lack of consent results from forcible

20   compulsion.

21             Some of the terms used in this definition

22   have their own special meaning in our law.  I will now

23   give you the meaning of the follow terms:  Sexual

24   contact without a person's consent and forcible

25   compulsion.

Jury Charge                              851

1          Sexual contact means any touching of a sexual
2    or other intimate parts of a person for the purpose of
3    gratifying the sexual desire of either party.  It
4    includes the touching of the actor by that person as
5    well as the touching of that person by the actor,
6    whether directly or through clothing.
7          Forcible compulsion means to intentionally
8    compel either, one, by the use of physical force, or,
9    two, by a threat, expressed or implied, which places a
10   person in fear of immediate death or physical injury to
11   himself or herself.
12         In order for you to find the defendant guilty
13   of this crime the People are required to prove from all
14   the evidence in the case beyond a reasonable doubt both
15   of the following two elements:
16         One, that on or about May 1st, 2008, through
17   May 13th, 2008, in the County of Nassau, the defendant,
18   Harold Gopaul, subjected Sana Awan to sexual contact
19   and, two, that the defendant did so without Sana Awan's
20   consent by use of forcible compulsion.
21         Therefore, if you find that the People have
22   proven beyond a reasonable doubt both of those elements
23   you must find the defendant guilty of the crime of
24   sexual abuse in the first degree as charged in the
25   first count.

ws

1       On the other hand, if you find that the that

2   the People have not proven beyond a reasonable doubt

3   either one or both of those elements, you must find the

4   defendant not guilty of the crime of sexual abuse in

5   the first degree as charged in the first count.

6       I'm now going to turn to now the lesser

7   included offense of sexual abuse in the third degree as

8   it applies to count one and you'll see throughout

9   there's 14 counts of sexual abuse in the first degree,

10  each one of those counts will then have its own lesser

11  included offense which is sexual abuse in the third

12  degree.

13      I'm now going to give you the meaning and

14  define the terms of sexual abuse in the third degree as

15  the lesser included of sexual abuse in the first degree

16  as it pertains to the first count.

17      The second count of sexual abuse in the third

18  degree.

19      Under our law, a person is guilty of sexual

20  abuse in the third degree when he or she subjects

21  another person to sexual contact without that person's

22  consent.

23      Some of the terms used in this definition

24  have their own special meaning in our law.  I will now

25  give you the meaning of the following terms:  Sexual

ws

Jury Charge                              853

1      contact and without a person's consent.

2                  Sexual contact means any touching of a sexual

3      or other intimate parts of a person not married to the

4      actor for purposes of gratifying the sexual desire by

5      the party.  It includes the touching of the actor by

6      that person as well as the touching of that person by

7      the actor, whether directly or through clothing.

8                  Sexual contact takes place without a person's

9      consent when it results from any circumstances in which

10     a person does not expressly or impliedly acquiesce in

11     the actor's conduct.

12                 In order for you to find the defendant guilty

13     of this crime the People are required to prove from all

14     the evidence in the case beyond a reasonable doubt both

15     of the following two elements:

16                 One, that on or about May 1st, 2008 through

17     May 13th, 2008, in the County of Nassau, the defendant,

18     Harold Gopaul, subjected Sana Awan to sexual contact

19     and, two, that the defendant did so without the consent

20     of Sana Awan in that she did not expressly or impliedly

21     acquiesce to the defendant's conduct.

22                 Therefore, if you find that the People have

23     proven beyond a reasonable doubt both of those elements

24     you must find the defendant guilty of the crime of

25     sexual abuse in the third degree as charged in the

                                                          ws

Jury Charge                                854

1    second count.

2              On the other hand, if you find that the

3    People have not proven beyond a reasonable doubt either

4    one or both of those elements you must find the

5    defendant not guilty of the crime of sexual abuse in

6    the third degree as charged in the second count.

7              Turning to the third count, again, sexual

8    abuse in the first degree.

9              Under our law a person is guilty of sexual

10   abuse in the first degree when he or she subjects

11   another person to sexual contact by forcible

12   compulsion.

13             Under our law it is also an element of this

14   offense that the sexual act was committed without

15   consent.

16             Sexual contact takes place without a person's

17   consent when the lack of consent results from forcible

18   compulsion.

19             Some of the terms used in that definition

20   have their own special meaning in our law.  I will now

21   give you the meaning of the following terms:  Sexual

22   contact without a person's consent and forcible

23   compulsion.

24             Sexual contact means any touching of sexual

25   or other intimate parts of a person for the purpose of

                                                        ws

1       gratifying the sexual desire of either party.  It

2       includes the touching of the actor by that person as

3       well as the touching of that person by the actor,

4       whether directly or through clothing.

5               Forcible compulsion means to intentionally

6       compel either, one, by the use of physical force, or,

7       two, by a threat, expressed or implied, which places a

8       person in fear of immediate death or physical injury to

9       himself or herself.

10              In order for you to find the defendant guilty

11      of this crime the People are required to prove from all

12      the evidence in the case beyond a reasonable doubt both

13      of the following two elements:

14              One, that on or about May 1st, 2008, through

15      May 13th, 2008, in the County of Nassau, the defendant,

16      Harold Gopaul, subjected an Sana Awan to sexual contact

17      and, two, that the defendant did so without Sana Awan's

18      consent by use of forcible compulsion.

19              Therefore, if you find that the People have

20      proven beyond a reasonable doubt both of those elements

21      you must find the defendant guilty of the crime of

22      sexual abuse in the first degree as charged in the

23      third count.

24              On the other hand, if you find that the

25      People have not proven beyond a reasonable doubt either

ws

Jury Charge                      856

1   one or both of those elements, you must find the

2   defendant not guilty of the crime of sexual abuse in

3   the first degree as charged in the third count.

4       Turning to the lesser included offense in

5   that count, sexual abuse in the third degree, that's

6   count four, under our law a person is guilty of sexual

7   abuse in the third degree when he or she subjects

8   another person to sexual contact without that person's

9   consent.

10       Some of the terms used in this definition

11   have their own special meaning in our law.  I will now

12   give you the meaning of the following terms:

13       Sexual contact and without a person's

14   consent.

15       Again, sexual contact means any touching of

16   sexual or other intimate parts of a person not married

17   to the actor for the purpose of gratifying the sexual

18   desire of either party.  It includes the touching of

19   the actor by that person as well as the touching of

20   that person by the actor, whether directly or through

21   clothing.

22       Sexual contact takes place without a person's

23   consent when it results from any circumstances in which

24   a person does not expressly or impliedly acquiesce in

25   the actor's conduct.

ws

Jury Charge                    857

1          In order for you to find the defendant guilty
2     of this crime the People are required to prove from all
3     the evidence in the case beyond a reasonable doubt both
4     of the following two elements:
5          One, that on or about May 1st, 2008 through
6     May 13th, 2008 in the County of Nassau, the defendant,
7     Harold Gopaul, subjected Sana Awan to sexual contact
8     and, two, that the defendant did so without the consent
9     of Sana Awan in that she did not expressly or impliedly
10    acquiesce to the defendant's conduct.
11         Therefore, if you find that the People have
12    proven beyond a reasonable doubt both of those elements
13    you must find the defendant guilty of the crime of
14    sexual abuse in the third degree as charged in the
15    fourth count.
16         On the other hand, if you find that the
17    People have not proven beyond a reasonable doubt either
18    one or both of these elements you must find the
19    defendant not guilty of the crime of sexual abuse in
20    the third degree as charged in the fourth count.
21         I'm going to continue -- members of the jury,
22    I at this point have given you the definitions, if you
23    will, in at least two instances for both sexual abuse
24    in the first degree and sexual abuse in the third
25    degree as I've outlined.  I'm not going to keep on

                                                    ws

Jury Charge                     858

1    repeating those definitions.

2           If during the course of your deliberations

3    there's any question in your minds about some of those

4    definitions, you want to hear them again, I will gladly

5    give that instruction to you.

6           So as I continue at this point I'm going to

7    go through the sexual abuse in the first degree and the

8    lesser included sexual abuse in the third degree as it

9    relates to the different times that have been charged

10   in this particular case.

11          The fifth count is sexual abuse in the first

12   degree.

13          Under our law, a person is guilty of sexual

14   abuse in the first degree when he or she subjects

15   another person to sexual contact by forcible

16   compulsion.

17          Under our law, it is an element of this

18   offense that the sexual act was committed without

19   consent.

20          Sexual contact takes place without a person's

21   consent when the lack of consent results from forcible

22   compulsion.

23          The definitions of sexual contact and

24   forcible compulsion I've previously given you and they

25   apply to this count as well.

ws

Jury Charge                    859

1        In order for you to find the defendant guilty

2    of this crime the People are required to prove from all

3    the evidence in the case beyond a reasonable doubt both

4    of the following two elements:

5        One, that on May 14th, 2008, in the County of

6    Nassau, the defendant, Harold Gopaul, subjected Sana

7    Awan to sexual contact.

8        And, two, that the defendant did so without

9    Sana Awan's consent by use of forcible compulsion.

10       Therefore, if you find that the People have

11   proven beyond a reasonable doubt both of those elements

12   you must find the defendant guilty of the crime of

13   sexual abuse in the first degree as charged in the

14   fifth count.

15       On the other hand, if you find that the

16   People have not proven beyond a reasonable doubt either

17   one or both of these elements you must find the

18   defendant not guilty of the crime of sexual abuse in

19   the first degree as charged in the fifth count.

20       The sixth count is sexual abuse in the third

21   degree.

22       Under our law, a person is guilty of sexual

23   abuse in the third degree when he or she subjects

24   another person to sexual contact without that person's

25   consent.

                                              ws

Jury Charge                          860

1              The same definitions I gave you previously

2      apply to this count as well with regard to sex abuse in

3      the third degree as it pertains to sexual contact and

4      without a person's consent.

5              In order for you to find the defendant guilty

6      of this crime the People are required to prove from all

7      the evidence in the case beyond a reasonable doubt both

8      of the following two elements:

9              That on or about May 14, 2008, in the County

10     of Nassau, the defendant, Harold Gopaul, subjected Sana

11     Awan to sexual contact.

12             And, two, that the defendant did so without

13     the consent of Sana Awan in that she did not expressly

14     or impliedly acquiesce to the defendant's conduct.

15             Therefore, if you find that the People have

16     proven beyond a reasonable doubt both of these elements

17     you must find the defendant guilty of the crime of

18     sexual abuse in the third degree as charged in the

19     sixth count.

20             On the other hand, if you find that the

21     People have not proven beyond a reasonable doubt either

22     one or both of these elements you must find the

23     defendant not guilty of the crime of sexual abuse in

24     the third degree as charged in the sixth count.

25             Turning to the sex -- pardon me, the seventh

                                                           ws

Jury Charge                    861

1     count, which, again, charges sexual abuse in the first

2     degree, under our law a person is guilty of sexual

3     abuse in the first degree when he or she subjects

4     another person to sexual contact by forcible

5     compulsion.

6              The same definitions I gave you previously

7     with respect to the elements of this charge, sexual

8     abuse in the first degree, apply to this count as well.

9              In order for you to find the defendant guilty

10    of this crime the People are required to prove from all

11    the evidence in the case beyond a reasonable doubt both

12    of the following two elements:

13             One, that on or about May 14th, in the County

14    of Nassau, the defendant, Harold Gopaul, subjected

15    Anna -- Sana Awan to sexual contact and, two, that the

16    defendant did so without Sana Awan's consent by use of

17    forcible compulsion.

18             Therefore, if you find that the People have

19    proven beyond a reasonable doubt both of these elements

20    you must find the defendant guilty of the crime of

21    sexual abuse in the first degree as charged in the

22    seventh count.

23             On the other hand, if you find that the

24    People have not proven beyond a reasonable doubt either

25    one or both of these elements you must find the

Jury Charge                    862

1    defendant not guilty of the crime of sexual abuse in

2    the first degree as charged in the seventh count.

3            The eighth count of sexual abuse in the third

4    degree is the lesser included count of the seventh

5    count that I just read to you.

6            Under our law, a person is guilty of sexual

7    abuse in the third degree when he or she subjects

8    another person to sexual contact without that person's

9    consent.

10           Same definitions I gave you previously with

11   respect to this charge pertain to this count as well.

12           In order for you to find the defendant guilty

13   of this crime the People are required to prove from all

14   the evidence in the case beyond a reasonable doubt both

15   of the following two elements:

16           One, that on or about May 14th in the County

17   of Nassau, the defendant, Harold Gopaul, subjected Sana

18   Awan to sexual contact.

19           And, two, that the defendant did so without

20   the consent of Sana Awan in that she did not expressly

21   or impliedly acquiesce to the defendant's conduct.

22           Therefore, if you find that the People have

23   proven beyond a reasonable doubt both of these elements

24   you must find the defendant guilty of the crime of

25   sexual abuse in the third degree as charged in the

Jury Charge                    863

1    eighth count.

2            On the other hand, if you find that the

3    People have not proven beyond a reasonable doubt either

4    one or both of these elements you must find the

5    defendant not guilty of the crime of sexual abuse in

6    the third degree as charged in the eighth count.

7            The ninth count is sexual abuse in the first

8    degree.

9            Under our law, a person is guilty of sexual

10   abuse in the first degree when he or she subjects

11   another person to sexual contact by forcible

12   compulsion.

13           The same definitions I gave you previously

14   with respect to sexual contact and forcible compulsion

15   pertain to this count as well.

16           In order for you to find the defendant guilty

17   of this crime the People are required to prove from all

18   the evidence in the case beyond a reasonable doubt both

19   of the following two elements:

20           One, that on or about May 19th through

21   May 23rd, 2008, in the County of Nassau, the defendant,

22   Harold Gopaul, subjected Sana Awan to sexual contact.

23           And, two, that the defendant did so without

24   Sana Awan's consent by use of forcible compulsion.

25           Therefore, if you find that the People have

ws

Jury Charge                    864

1      proven beyond a reasonable doubt both of those elements

2      you must find the defendant guilty of the crime of

3      sexual abuse in the first degree as charged in the

4      ninth count.

5                On the other hand, if you find that the

6      People have not proven beyond a reasonable doubt either

7      one or both of those elements you must find the

8      defendant not guilty of the crime of sexual abuse in

9      the first degree as charged in the ninth count.

10               Let me just see both counsel real quick.

11               (Discussion held at the bench, off the

12     record.)

13               (Sidebar conference held as follows:)

14               THE COURT:  What the Court is proposing in

15     terms of the remainder of the charge is to go through

16     each count, identifying what the crime is, and indicate

17     the dates that this particular count refers to.

18               Does anybody have any objection?

19               MR. SCHECHTER:  No.

20               MS. JOHNSON:  No.

21               THE COURT:  Does anybody suggest anything

22     different?

23               MR. SCHECHTER:  No, I think that's the most

24     expeditious way of doing this, Judge.

25               MS. JOHNSON:  We consent.

                                                    ws

Jury Charge                    865

1          (Sidebar conference concludes.)

2          THE COURT:  Members of the jury, with

3     counsel's consent, I know I'm sounding repetitive at

4     this point.  It's just, as I said, there was initially

5     14 counts.  Once we get into lesser included offenses

6     for each count it now literally doubles the amount of

7     counts.

8          With counsels' consent, what I'm going to do

9     at this point is identify the count for which the

10    offense is charged and I'm going to go through the

11    dates for that particular offense just to try to move

12    things along.

13         We're now up to, I believe, the tenth count.

14    That is sexual abuse in the third degree and, again,

15    that is the lesser included offense with regard to the

16    ninth count which charged sexual abuse in the first

17    degree that, in this particular count -- that applies

18    to the dates of May 19th of 2008 through May 23rd,

19    2008.

20         Might I just say that going forward the same

21    definitions with respect to sexual abuse in the first

22    degree are the same for each of the counts from here on

23    out as they have been throughout since I began.

24         And the same with respect to sexual abuse in

25    the third degree.

ws

Jury Charge                    866

1          Turning to the 11th count, that charges

2     sexual abuse in the first degree.

3          The same definitions apply to this count.

4          That deals with the dates of May 19th, 2008

5     through May 23rd, 2008.  I'm just -- just for

6     completeness, the two elements with respect to that

7     date are that on or about May 19th, 2008 through May

8     23rd, 2008, in the County of Nassau, defendant, Harold

9     Gopaul, subjected Sana Awan to sexual contact and, two,

10    that the defendant did so without Sana Awan's consent

11    by use of forcible compulsion.

12         The 12th count is sexual abuse in the third

13    degree.  Those deal with the dates, again, same

14    previous dates, May 19th of 2008 through May 23rd,

15    2008.

16         One, that on or about May 19th, 2008 through

17    May 23rd, 2008, in the County of Nassau, the defendant,

18    Harold Gopaul, subjected Anna Sawan (sic) to sexual

19    contact and, two, that that defendant did so without

20    the consent of Sana Awan in that she did not expressly

21    or impliedly acquiesce to the defendant's conduct.

22         Thirteenth count, sexual abuse in the first

23    degree, that deals with the dates of May 26th, 2008

24    through May 30th, 2008, that on or about May 26th, 2008

25    through May 30th, 2008, in the County of Nassau, the

ws

Jury Charge                    867

1    defendant, Harold Gopaul, subjected Anna Sawan (sic) to

2    sexual contact.

3                And, two, that the defendant did so without

4    Sana Awan's consent by the use of forcible compulsion.

5                Sexual abuse in the third degree is the

6    lesser included.  That deals with the same dates I

7    previously just indicated; that on or about May 26th,

8    2008 through May 30th, 2008, in the County of Nassau,

9    defendant, Harold Gopaul, subjected Sana Awan to sexual

10   contact.

11               And, two, that the defendant did so without

12   the consent of Sana Awan in that she did not expressly

13   or impliedly acquiesce to the defendant's conduct.

14               The 15th count, sexual abuse in the first

15   degree, that deals with the dates of May 26th, 2008

16   through May 30th, 2008, that on or about May 26th, of

17   2008 through May 30th, 2008, in the County of Nassau,

18   the defendant, Harold Gopaul, subjected Anna Sawan

19   (sic) to sexual contact and, two, that the defendant

20   did so without Sana Awan's consent by use of forcible

21   compulsion.

22               The 16th count is sexual abuse in the third

23   degree as the lesser included offense of the 15th

24   count.  That deals with the same dates.

25               On or about May 26th, 2008 through May 30th,

ws

Jury Charge                          868

1    2008, in the County of Nassau, the defendant, Harold

2    Gopaul, subjected Anna Sawan (sic) to sexual contact.

3              And, two, defendant did so without the

4    consent of Sana Awan in that she did not expressly or

5    impliedly acquiesce to the defendant's conduct.

6              Moving to the 17th count, again, sexual abuse

7    in the first degree, that deals with the dates of June

8    2nd, 2008 through June 6th, 2008.

9              The People are required to prove beyond a

10   reasonable doubt from all the evidence both of the

11   following two elements:

12             One, that on or about June 2nd, 2008 through

13   June 6th, 2008, in the County of Nassau, defendant,

14   Harold Gopaul, subjected Anna Sawan (sic) to sexual

15   contact.

16             And, two, defendant did so without Sana

17   Awan's consent by use of forcible compulsion.

18             The lesser included of that count is the 18th

19   count, sexual abuse in the third degree; that on or

20   about

21   June 2nd, 2008 through June 6th, 2008 in the County of

22   Nassau, the defendant subjected Sana Awan to sexual

23   contact.

24             And, two, that defendant did so without the

25   consent of Sana Awan in that she did not expressly or

ws

Jury Charge                              869

1    impliedly acquiesce to the defendant's conduct.

2              The People are required to prove both of

3    those elements of that lesser included offense in the

4    18th count beyond a reasonable doubt.

5              Moving to the 19th count, again, sexual abuse

6    in the first degree, the dates, again, are June 2nd of

7    '08 through June 6th of '08.

8              The People are required to prove from all of

9    the evidence in the case beyond a reasonable doubt both

10   of the following two elements:

11             One, that on or about June 2nd of '08 through

12   June 6th of '08, in the County of Nassau, the

13   defendant, Harold Gopaul, subjected Anna Sawan (sic) to

14   sexual contact.

15             And, two, that the defendant did so without

16   Sana Awan's consent by use of forcible compulsion.

17             The 20th count is the lesser included count

18   of sexual abuse in the third degree.

19             In order for the defendant to be found guilty

20   of this charge the People are required to prove from

21   all the evidence in the case beyond a reasonable doubt

22   both of the following two elements.

23             One, that on or about June 2nd of '08 through

24   June 6th of '08, in the County of Nassau, defendant,

25   Harold Gopaul, subjected Anna Sawan (sic) to sexual

ws

1     contact.

2                And, two, that the defendant did so without

3     the consent of Sana Awan in that she did not expressly

4     or impliedly acquiesce to the defendant's conduct.

5                The 21st count, sexual abuse in the first

6     degree, in order for you to find the defendant guilty

7     of this crime the People are required to prove from all

8     the evidence in the case beyond a reasonable doubt both

9     of the following two elements:

10               One, that on or about June 9th, 2008 through

11    June 13th, 2008, in the County of Nassau, the

12    defendant, Harold Gopaul, subjected Anna Sawan (sic) to

13    sexual contact and, two, that the defendant did so

14    without Sana Awan's consent by use of forcible

15    compulsion.

16               The 22nd count is sexual abuse in the third

17    degree.  Again, that's the lesser included count of the

18    21st count; that, on or about June 9th, 2008 through

19    June 13th, 2008, in the County of Nassau, the

20    defendant, Harold Gopaul, subjected Anna Sawan (sic) to

21    sexual contact.

22               And, two, that the defendant did so without

23    the consent of Sana Awan in that she did not expressly

24    or impliedly acquiesce to the defendant's conduct.

25               Hold on, we only have two more counts left.

Jury Charge                    871

1              The 23rd count, sexual abuse in the first

2       degree, that deals with the dates of June 9th, 2008

3       through June 13, 2008.

4              In order for you to find the defendant guilty

5       of this crime the People are required to prove from all

6       the evidence in the case beyond a reasonable doubt both

7       of the following two elements:

8              One, that on or about June 9th, 2008 through

9       June 13th, 2008, in the County of Nassau, the

10      defendant, Harold Gopaul, subjected Sana Awan to sexual

11      contact.

12             And, two, that the defendant did so without

13      Sana Awan's consent by use of forcible compulsion.

14             With regard to the 24th and final count of

15      sex abuse in the third degree, that being a lesser

16      included offense of the 23rd count, that deals with the

17      same dates.

18             In order for you to find the defendant guilty

19      of this crime the People are required to prove from all

20      the evidence in the case beyond a reasonable doubt both

21      of the following two elements:

22             One, that on or about June 9th, 2008 through

23      June 13th, 2008, in the County of Nassau, the

24      defendant, Harold Gopaul, subjected Sana Awan to sexual

25      contact.

Jury Charge                          872

1          And, two, that the defendant did so without

2     the consent of Sana Awan in that she did not expressly

3     or impliedly acquiesce to the defendant's conduct --

4     actually, I stand corrected.

5          The 25th count, sex abuse in the first

6     degree, that deals with the dates of June 19th, 2008

7     through June 20th, 2008.

8          In order for you to find the defendant guilty

9     of this crime the People are required to prove from all

10    the evidence in the case beyond a reasonable doubt both

11    of the following two elements:

12         One, that on or about June 19th, 2008 through

13    June 20th, 2008, in the County of Nassau, defendant,

14    Harold Gopaul subjected Sana Awan to sexual contact.

15         And, two, that the defendant did so without

16    Sana Awan's consent by use of forcible compulsion.

17         With regard to the lesser included count of

18    sex abuse in the third degree, that's the 26th count,

19    that is the lesser included count of the 25th count

20    which I just read to you, the same dates apply to this

21    count as well.

22         The 27th count is sex abuse in the first

23    degree.  Dates in that count deal with June 19th 2008

24    through June 20th, 2008.

25         In order for you to find the defendant guilty

ws

Jury Charge                    873

1      of this crime the People are required to proven from

2      all the evidence in the case beyond a reasonable doubt

3      both of the following two elements:

4              One, that on or about June 19th, 2008 through

5      June 20th, 2008, in the County of Nassau, defendant,

6      Harold Gopaul, subjected Sana Awan to sexual contact.

7              And, two, that the defendant did so without

8      Sana Awan's consent by use of forcible compulsion.

9              And, finally, the 28th count deals with the

10     same dates.  It's the same lesser included count of the

11     27th count which I just read to you.

12              In order for to you find the defendant guilty

13     of this crime the People are required to prove from all

14     the evidence in the case beyond a reasonable doubt both

15     of the following two elements:

16              One, that on or about June 19th, 2008 through

17     June 20th, in the County of Nassau, the defendant,

18     Harold Gopaul, subjected Sana Awan to sexual contact.

19              And, two, that the defendant did so without

20     the consent of Sana Awan in that she did not expressly

21     or impliedly acquiesce to the defendant's conduct.

22              We have now come to that part of my charge

23     dealing with the process of deliberations.

24              Your verdict on each count you consider,

25     whether guilty or not guilty, must be unanimous; that

ws

Jury Charge                    874

1    is, each and every juror must agree to it.

2              No one expects that all jurors will have the

3    same view of the case when they first enter the jury

4    room.   To reach a unanimous verdict you must deliberate

5    with the other jurors.   That means you should discuss

6    the evidence and consult with each other, listen to

7    each other, give each other's views careful

8    consideration and reason together when considering the

9    evidence.

10             And when you deliberate you should do so with

11   the view toward reaching an agreement if it can be done

12   without surrendering your individual judgment.   Each of

13   you must decide this case for yourself, but only after

14   a careful and impartial consideration of the evidence

15   with the other jurors.

16             You should not surrender an honest view of

17   the evidence simply because you want the trial to end

18   or you're outvoted.

19             At the same time, you should not hesitate to

20   re-examine your views and change your mind if you

21   become convinced your position was not correct.

22             In other words, ladies and gentlemen, when

23   you enter the jury room you may have individually

24   reached certain tentative opinions and conclusions.

25   Before finalizing those opinions and conclusions you

ws

Jury Charge                    875

1     should deliberate with the other jurors.  You should be
2     open to reason and be willing to either adhere to your
3     opinion and conclusions if persuaded you are correct or
4     to change your opinion or conclusions if persuaded you
5     are not correct.
6           In the interests of justice, please make
7     every effort consistent with your conscience and the
8     evidence in this case to harmonize your views and
9     decisions in this case with those of your fellow jurors
10    and make every effort to come to a unanimous agreement
11    based on the law and the facts of this case.
12          To the best of your ability, I ask you to
13    apply common sense and good judgment.
14          Do not let fear, favor, sympathy, bias,
15    prejudice or consideration of a possible sentence or
16    punishment sway your minds in any way in analyzing the
17    testimony.
18          Decide this case as you have promised;
19    fairly, on the evidence and on the law, whether you
20    agree with the law or not.
21          You may see any or all exhibits which were
22    received in evidence.  Simply write me a note telling
23    me which exhibit or exhibits you wish to see.
24          You may also have the testimony of any
25    witness read back to you in whole or in part.

WS

Jury Charge                        876

1           Again, if you want a readback write me a note

2      telling me what testimony you wish to hear.

3           If you are interested in hearing only a

4      portion of a witness's testimony please specify in your

5      note which witness and, with as much detail as

6      possible, which part of the testimony you want to hear.

7           If you want to hear all or part of a

8      witness's testimony only during a particular

9      examination, for example, direct or cross-examination,

10     please so specify.

11          Please feel free to identify the particular

12     examination you want to hear by using the name of the

13     lawyer who conducted the examination.  The names of the

14     lawyers will be listed on the verdict sheet in the

15     order in which they examined the witnesses.

16          The detailed description of what you want to

17     hear is necessary because we must read each question

18     and answer in order to decide whether it is part of

19     what you asked for.  That process normally takes some

20     time, so please be patient while we search the record

21     to answer your requests.

22          In the alternative, we can respond faster to

23     a request to read back the entire testimony of a

24     witness or the entire testimony of a witness during a

25     particular examination and, if you wish, you can

ws

Jury Charge                        877

1    authorize your foreperson to raise his hand when the

2    court reporter has read everything you wanted to hear.

3              Of course, when testimony is read back

4    questions to which an objection was sustained and

5    material otherwise struck from the record is not read

6    back.

7              If you have a question on the law please

8    write a note specifying what you want me to review with

9    you.

10             Under our law, the first juror selected is

11   known as our foreperson.  I believe it's you, Mr. Ross.

12   You're our first juror selected.

13             During deliberations the foreperson's opinion

14   and vote are not entitled to any more importance than

15   that of any other juror.

16             What we ask the foreperson to do during

17   deliberations is to sign any written note that the jury

18   sends to the Court.  The foreperson does not have to

19   write the note or agree with its contents.  The

20   foreperson's signature only indicates that the writing

21   comes from the jury.

22             The foreperson may also chair the jury's

23   discussions during deliberations.

24             When the jury has reached a verdict, guilty

25   or not guilty, the entire jury will be asked to come

                                                    ws

1       into court.  The foreperson will be asked whether the

2       jury has reached a verdict.

3               If the foreperson says yes he will then be

4       asked what the verdict is for each charged crime and

5       considered in accordance with my instructions.

6               After that the entire jury will be asked

7       whether that is their verdict and will answer either

8       yes or no.

9               Finally, upon the request of a party each

10      juror will be asked individually whether the announced

11      verdict is the verdict of that juror and then, upon

12      being asked, each juror will answer yes or no.

13              All right, when you retire to begin your

14      deliberations I will give you a form known as a verdict

15      sheet.  The verdict sheet lists each count submitted

16      for your consideration, the manner in which you are to

17      consider the counts and the possible verdicts.

18              Please use the form to record your verdict

19      with an X or a check mark in the appropriate place for

20      each count you consider in accordance with my

21      instructions.

22              With regard to jury deliberation rules, there

23      are a few remaining rules which you must observe during

24      deliberations which are very important.

25              Number one, while you are here in the

ws

1     courthouse deliberating on the case you will be

2     sequestered, meaning you will all be kept together in

3     the jury room under the supervision of a court officer.

4             You may not leave the jury room without

5     permission and if you have a beeper or a cell phone or

6     other electronic device please give it to a court

7     officer to hold for you while you are engaged in

8     deliberations.

9             Number two, you must deliberate about the

10    case only when you are all gathered together in the

11    jury room.

12            You must not, for example, be discussing the

13    case as you go to and from the courtroom.  It is simply

14    important that each juror have the opportunity to hear

15    whatever another juror has to say about the case and by

16    that -- and that, by law, must only be done when you're

17    all gathered together in the jury room.

18            Thus, if for any reason all 12 of you are not

19    gathered together in the jury room please stop

20    deliberating until all 12 jurors are present in the

21    jury room.

22            During your deliberations you must only

23    discuss the case amongst yourselves.  You must not

24    discuss the case with anyone else, including a court

25    officer, or permit anyone other than a fellow juror to

1    discuss the case in your presence.

2              If you have a question or request you must

3    communicate with me by writing a note.  The law

4    requires you communicate with me in writing, in part,

5    to make sure there are no misunderstandings.  Give the

6    note to a court officer who, in turn, will give it to

7    me.

8              When the jury room door is opened to give the

9    court officer the note please stop deliberating until

10   the officer has left and the door is closed.

11             In any note that you send me do not tell me

12   what the vote of the jury is on any count.

13             Sometimes I may need a note clarified and if

14   that can be done by asking the foreperson a question

15   that can be answered yes or no I may do so.  Otherwise

16   I will ask you to write another note answering my

17   question.

18             I should explain, under our law I am not

19   permitted to have a conversation about the facts of the

20   case or possible verdict or a vote of the jury on any

21   count with any one juror or group of jurors or even all

22   the jurors.

23             If a juror wants to speak with me during

24   deliberations an appropriate meeting here in the

25   courtroom with the parties will be arranged.

1        No juror, however, can tell me what is being

2    said about the facts of the case or possible verdict or

3    what the vote of any juror or jury is on any count.

4        While I will, of course, listen to whatever a

5    juror has to say that does not involve those subjects,

6    I may not be able to respond to those jurors if the

7    response involves instructions on the law.  I may be

8    required to call into -- I may be required, I should

9    say, to call into court the entire jury and respond by

10   speaking to the entire jury.

11       The reason for that is that our law wants to

12   make sure that each and every juror hears at exactly

13   the same time whatever I have to say about the law.

14   Our law wants to make sure that the jury hears those

15   instructions from me and not another juror.

16       Before I let you begin deliberations I just

17   want to see both counsel.

18       (Sidebar conference held as follows:)

19       MR. SCHECHTER:  I'm going to ask that the

20   alternate juror be discharged.

21       THE COURT:  You want that?

22       MR. SCHECHTER:  I want the alternate juror

23   discharged.

24       THE COURT:  Anybody, while -- off the

25   record.)

ws

 1              (Discussion held off the record.)

 2              (Sidebar conference concludes.)

 3              THE COURT:  All right, members of the jury,

 4      just stay there one minute.

 5              (Sidebar conference held as follows:)

 6              THE COURT:  I'm giving a copy of the proposed

 7      verdict sheet to both counsels.

 8              Anybody have any objections?

 9              MS. JOHNSON:  At this time I don't see any,

10      Judge.

11              MR. SCHECHTER:  I don't either, Judge.

12              THE COURT:  Does anybody have any objections

13      or requests for any further charge with respect to the

14      charge at this time?

15              MR. SCHECHTER:  No, Judge.

16              MS. JOHNSON:  No.

17              THE COURT:  All right, members of the jury,

18      the verdict sheet, which is what we were just

19      finalizing here, is a little lengthy, obviously, in

20      light of the number of counts.  It's going to be marked

21      as a Court exhibit.

22              You're going to see from the verdict sheet it

23      gives the count of each charge, the crime charged,

24      there's a box for guilty or not guilty.  There's the

25      title to the action here.

1           As you go through the counts you'll see with

2      respect to the charges of sexual abuse in the first

3      degree, you'll see as they appear throughout the

4      verdict sheet there's an instruction that indicates if

5      guilty of count one, which is, for example, sexual

6      abuse in the first degree, do not consider count two,

7      which is sexual abuse in the third degree, proceed

8      directly to count three.  It's kind of

9      self-explanatory, if you will.

10          If not guilty of count one, which is the sex

11     abuse in the first degree, then consider the lesser

12     included offense of sexual abuse in the third degree.

13          It's rather self-explanatory, if you will.

14          It also has the dates of each incident as

15     I've referred to here in my charge.

16          So that's been marked as a Court exhibit.

17     It's going to go in with you to the jury room.

18          At this time --

19          MS. JOHNSON:  Judge, could we actually just

20     approach for one second, I'm sorry?

21          (Discussion held at the bench, off the

22     record.)

23          THE COURT:  All right, so, at this time,

24     members of the jury, I appreciate your patience.  I

25     know that was a long charge.  I think it was just the

Proceedings                    884

1       nature -- once you include the lesser includeds that

2       obviously lengthened it.

3              So at this time we're going to allow to you

4       begin your deliberations.  Obviously, I think you're

5       going to take up lunch first, which is here.

6              Just follow my sergeant.

7              (Jury exits.)

8              THE COURT:  Mr. Schechter, do you have any

9       objection if we bring the alternate back at 3; let her

10      have her lunch and then we'll excuse her?

11             MR. SCHECHTER:  Yes, no problem with that,

12      Judge.

13             THE COURT:  Counsel, do I have a stipulation

14      that should the jury request any exhibits marked in

15      evidence that they can get them without coming back to

16      the courtroom?

17             MS. JOHNSON:  Yes.

18             MR. SCHECHTER:  No objection.

19             MS. JOHNSON:  No objection, your Honor.  No

20      objection.

21             As to the knife and video, whatever the

22      Court's pleasure.

23             THE COURT:  If they ask for the knife it will

24      go in with a court officer.

25             If they ask to see the video it would be my

                                                      ws

Proceedings                    885

1     intention to bring them back to the courtroom to play

2     it.

3                    MS. JOHNSON:  I'll leave the knife and the

4     video.

5                    THE COURT:  Yes.

6                    (The luncheon recess was taken at this time.)

7                    *       *       *       *       *

8                    A F T E R N O O N   S E S S I O N

9                    THE COURT:  If we could go on the record?

10                   All right, Ms. Johnson and Mr. Schechter,

11    we're received a note from the jury.  It's been marked

12    Court Exhibit Number 7.  The contents of the note have

13    been shared with both of you.  It lists, in essence,

14    ten items.

15                   First item is explanation for sexual abuse in

16    the first degree and sexual abuse in the third degree

17    and then in writing -- and then, in a different color

18    ink, it says in writing, if possible, and forcible

19    compulsion.

20                   My intention is to read both the first degree

21    sexual abuse and the third degree sexual abuse charges

22    to them and their definitions, including forcible

23    compulsion.  I'm going to tell them they cannot get it

24    in writing for obvious reasons.

25                   The next request is testimony -- it says

                                                          ws

Proceedings                    886

1        testify, I believe it's testimony, of Officer Alfaro.

2                    My reporter will read both, her entire

3        testimony, unless they indicate that they want it

4        differently.

5                    Number 3 is Father's Day card with pictures

6        and family in Ecolab uniform.

7                    I do not believe that was introduced into

8        evidence.  I would indicate to them, of course,

9        however, that there was testimony regarding that from,

10       I think, Sana Awan.

11                   MR. SCHECHTER:  Yes.

12                   THE COURT:  And should they want that they

13       can request that item.

14                   Number 4 is a videotaped confession which we

15       will play once we're concluded.

16                   Number 5, Mr. Gopaul's written

17       confessions/statements.

18                   They've been provided.

19                   Number 6, Sana's statement taken at the 105th

20       precinct, those statements were not introduced in

21       evidence although there was some testimony with respect

22       to them but they were not introduced into evidence and

23       therefore not available to them.  I think they may have

24       been marked as exhibits for identification.

25                   Number 7 is the notes that were taken by

Proceedings                    887

1      Detective Moran during his interview with Sana.

2              Again, that's not -- that item was only

3      marked for identification.  It was not introduced into

4      evidence.  I would also indicate to them that there was

5      some testimony regarding those notes.  If they want

6      that they're entitled to that.

7              Number 8 is Shulman's testimony when he

8      claimed not to have discussed the charges with

9      Mr. Gopaul prior to the written confession.

10             My reporter is going to search that out and

11     get that.  I don't know if we'll get to it by the end

12     of today, but we'll try.

13             Number 9 is the clarification that Anna Sawan

14     (sic) referred to during the charge to the jury is the

15     same person as Sana Awan.  If I misspoke I will tell

16     them that I did and it is one and the same person.

17             Finally, number ten, the fear -- first four

18     lines of the poem that was read.  That was -- that

19     page, I should say, or that page -- or that book, I

20     should say, was admitted into evidence, the first four

21     lines.

22             I've had a photocopy made of those first four

23     lines and I believe counsel has a photocopy of them and

24     I'll mark this as a Court exhibit.

25             MR. SCHECHTER:  Right.

                                                    ws

Proceedings                888

1          THE COURT:  And we'll give this to the jury.

2               MR. SCHECHTER:  Thank you.

3               THE COURT:  Anybody have any objections or

4     further requests?

5               MS. JOHNSON:  No objection, Judge.

6               MR. SCHECHTER:  No.

7               (Pause in the proceedings.)

8               MS. JOHNSON:  Judge, what are we going to do

9     with the alternate now?

10              THE COURT:  We'll take care of her after we

11    take care of this.

12              (Jury enters.)

13              THE COURT:  All right, Mr. Ross, is there a

14    further note that you want to give us?

15              THE FOREPERSON:  Yes, I have a question on

16    this document that you were nice enough to supply us

17    with.

18              THE COURT:  Why don't we do this?

19              Let me deal with the note you sent up.

20              Whatever it is that you want me to address

21    with respect to what you have in your hand there, write

22    me another note because I need to have any kind of

23    requests that you make in writing.  I know it may be

24    very simple and I can answer it yes or no, but I need

25    to have a note.

                                              ws

Proceedings                        889

1            All right, speaking of notes, members of the

2    jury, we received a note today's date, it's been marked

3    a Court exhibit as Court Exhibit Number 7, signed by

4    our foreperson at 2:42 this afternoon.

5            The contents of the note have been shared

6    with both of the attorneys and the note reads as

7    follows:

8            Number 1, explanation of sexual abuse in the

9    first degree and sexual abuse in the third degree and

10   then, in brackets, in writing if possible, and forcible

11   compulsion.

12           I can certainly read you back those two

13   charges and the definitions that pertain to them.

14           I cannot give it to you, however, in writing

15   but, I will certainly read it back to you.

16           Number 2, it appears to, looking at it, say

17   testify of Officer Alfaro.  I'm assuming that's

18   testimony of Officer Alfaro.  If I'm incorrect in that

19   let me know.

20           Number 3, Father's Day card with pictures of

21   family in Ecolab uniform.

22           That is not introduced in evidence and, if

23   you recall, I said that only those documents that were

24   introduced in evidence you're -- you can obviously see.

25           Items that were marked for identification you

                                                        ws

Proceedings                890

1      cannot.  They're not in evidence and therefore you

2      cannot see it.

3                However, I would just also say that there was

4      some testimony regarding that Father's Day card, I

5      believe, by Ms. Sana Awan.

6                Should you request testimony with respect to

7      the card, obviously that's something that is in

8      evidence and you can obviously ask me for that and

9      we'll provide that to you.

10               Four, videotaped confession.  When I get done

11     with the note we're going to play the videotaped

12     confession while we're here.

13               Number 5, Mr. Gopaul's written

14     confession/statements.  I've provided them to you

15     already.

16               Number 6, Sana's statements taken at the

17     105th precinct.

18               Again, there was an item marked for

19     identification.  It is not in evidence.  I cannot give

20     you something that is not in evidence.

21               However, to the extent that there was any

22     testimony regarding that item that was marked for

23     identification, if you want it you could certainly ask

24     for it.

25               Number 7, the notes that were taken by

ws

Proceedings                    891

1    Detective Moran during his interview with Sana.

2            Same thing.  It's not in evidence.  It was

3    only marked for identification.  There was some

4    testimony, I believe, regarding his -- Detective

5    Moran's notes.  Should you ask for that, want it, we'll

6    provide it to you.

7            Number 8, Shulman's testimony when he claimed

8    not to have discussed the charges with Mr. Gopaul prior

9    to the written confession.

10            Wendy is going to be searching that out while

11    you're looking at the videotape in a moment.

12            Number 9, clarification that Anna Sawan

13    referred to during the charge to the jury is the same

14    person as Sana Awan.

15            To the extent I may have crossed you up with

16    that, they are one and the same person.  If I said Anna

17    Sawan, my apologies, I meant Sana Awan.

18            Number 10, the first four lines of the poem

19    that was read.

20            We have made a photocopy of those first four

21    lines.  It's been marked as a Court exhibit and that

22    will be given to you when you go downstairs to resume

23    your deliberations.

24            At this time I'm going to address the first

25    portion or the first thing you asked for in your note,

Proceedings                    892

1      which was explanation of sexual abuse in the first

2      degree and sexual abuse in the third degree and

3      forcible compulsion.

4              Under our law, a person is guilty of sexual

5      abuse in the first degree when he or she subjects

6      another person to sexual contact by forcible

7      compulsion.

8              Under our law, it is also an element of this

9      offense that the sexual act was committed without

10     consent.

11             Sexual contact takes place without a person's

12     consent when the lack of consent results from forcible

13     compulsion.

14             Some of the terms used in this definition

15     have their own special meaning in our law.

16             I will now give you the meaning of the

17     following terms:

18             Sexual contact, without a person's consent

19     and forcible compulsion.

20             Sexual contact means any touching of the

21     sexual or other intimate parts of a person for the

22     purpose of gratifying the sexual desire for either

23     party.

24             It includes the touching of the actor by that

25     person as well as the touching of that person by the

                                                    ws

1    actor, whether directly or through clothing.

2              Forcible compulsion means to intentionally

3    compel, either by, one, the use of physical force, or,

4    two, by a threat expressed or implied which places a

5    person in fear of immediate death or physical injury to

6    himself or herself.

7              Okay, turning to sexual abuse in the third

8    degree, under our law, a person is guilty of sexual

9    abuse in the third degree when he or she subjects

10   another person to sexual contact without that person's

11   consent.

12             Some of the terms used in this definition

13   have their own special meaning in our law.

14             I will now give you the meaning of the

15   following terms:

16             Sexual contact and without a person's

17   consent.

18             Sexual contact means any touching of the

19   sexual or other intimate parts of a person not married

20   to the actor for the purpose of gratifying the sexual

21   desire of either party.

22             It includes the touching of the actor by that

23   person as well as the touching of that person by the

24   actor, whether directly or through clothing.

25             Sexual contact takes place without a person's

                                                    ws

Proceedings                          894

1    consent when it results from any circumstances in which

2    a person does not expressly or impliedly acquiesce to

3    the actor's conduct.

4              All right, that takes care of the first

5    request in your note.

6              At this point what we're going to do is turn

7    to the videotape which I think Ms. Johnson has queued

8    up and ready to go?

9              (People's Exhibit 1 published at this time.)

10             THE COURT:  All right, members of the jury,

11   Wendy has been able to get to the testimony that you

12   had asked in your note under Number 8 -- I stand

13   corrected.

14             We do have Officer Alfaro's testimony so we

15   will take that first.

16             (Record read.)

17             THE COURT:  All right, members of the jury,

18   what I'm going to do at this point, Wendy, I think, has

19   Detective Shulman's direct, she hasn't had a chance to

20   go through the cross with respect to your question

21   Number 8, so what I'm going to do is send you back

22   downstairs and continue deliberating with what you have

23   heard in terms of our response to your notes.  I am

24   going to send you back with the four lines from the

25   poem.  I don't know the exhibit number.  So I'm going

                                                    ws

Proceedings                895

1    to send you back downstairs.

2              Mr. Ross, when you came up it looked like you

3    were going -- you wanted to ask me something and, as I

4    said to you, whatever you want to ask please just put

5    it in a note and just bear in mind I'm probably going

6    to have you back up here, I'm assuming, shortly, but

7    I'm definitely going -- it depends on how long Wendy

8    tells me the testimony is.

9              I like to break by 4:30.  If it's going to go

10   beyond 4:30 we'll probably take up Shulman's testimony

11   in the morning, but for now, while we're looking at it,

12   why don't you go downstairs?

13              (Jury exits.)

14              THE COURT:  Mr. Schechter, I think you

15   indicated that you're consenting at this time to

16   excusing Ms. Torres, our alternate?

17              MR. SCHECHTER:  Yes.

18              THE COURT:  All right, so I'm going to take

19   care of that at this point.

20              MR. SCHECHTER:  Thank you, Judge.

21              (Alternate enters.)

22              THE COURT:  Ms. Torres, good afternoon.

23              As our lone alternate at this point, in

24   speaking to the attorneys, at this point it would be

25   only with their permission you would be allowed to

ws

Proceedings                     896

1    enter the jury deliberations, should one of our sworn

2    12 not be able to continue.

3              At this point they would not be -- they've

4    indicated to me that they would not be inclined at this

5    point to do that, so I don't want to have you stay

6    around here any longer than necessary since you would

7    not be allowed to go into the deliberating jury at this

8    point.

9              But I do want to thank you for your

10   participation.  I know it's difficult being an

11   alternate, not being able to deliberate, as they are

12   now, but obviously they serve an important function.

13   As you saw, one of the sworn alternates, the gentleman

14   before you, actually became one of the sworn jurors in

15   this case.

16             So it's with my deepest thanks.  You're free

17   to speak to whomever you wish.  You are under no

18   obligation to speak to anybody.

19             THE JUROR:  Okay.

20             THE COURT:  So thank you again and we hope to

21   see you back soon.

22             THE JUROR:  All right.

23             (Alternate juror excused.)

24             (Recess in the proceedings.)

25             (Jury enters. )

Proceedings                897

1             THE COURT:  All right, members of the jury,

2    as I indicated before, I was going to have you up by

3    4:30.

4             I see we've got another note which I'll deal

5    with in the morning.

6             At this point I'm going to ask you to cease

7    deliberations, obviously, until you're all together

8    back in the jury room tomorrow morning.

9             One thing I just want to bring up and it

10   didn't occur to me until after you went back

11   downstairs.

12            With regard to your request on Number 8, item

13   Number 8, Shulman's testimony when he claimed not to

14   have discussed the charges with Mr. Gopaul prior to the

15   written confession, both myself and counsel have agreed

16   that there really wasn't any testimony with respect to

17   charges and by that I mean charges in the sense that

18   I've charged you here today as to the charges that

19   you're to be considering.

20            There was some testimony about as to whether

21   or not Detective Shulman had discussed with Mr. Gopaul

22   what Ms. Awan had said in his interview of her, whether

23   or not he had discussed that with him.   I'm

24   paraphrasing, in sum and substance.

25            If that's what you're looking for then there

                                                       ws

Proceedings                          898

1    is testimony to that effect and Wendy is going to

2    locate it if she hasn't located most of it already.

3              So tomorrow when you come back in would you

4    please write me a note with respect to that so it's

5    clear, because I do need it in a note that that's what

6    you're looking for as to whether or not Detective

7    Shulman had discussed prior to interviewing Mr. Gopaul

8    or -- or when he interviewed Mr. Gopaul what his

9    conversations were with respect to Miss Sana Awan,

10   okay?

11             So at this point I'm going to ask you to

12   cease deliberations.

13             Please don't discuss the case at this time

14   amongst yourselves or with anyone else.

15             Please don't view or visit any of the areas

16   that you've heard described.

17             Have a good evening.  We'll see you back here

18   tomorrow at 9:30.  We will again be taking your lunch

19   order first thing in the morning, okay?

20             (Jury exits.)

21             (Proceedings adjourned to Friday, March 15th,

22   2009 at 9:30 a.m.)

23

24

25

                                                    ws

899

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NASSAU : CRIMINAL TERM PART 80

3    -------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,      :   Indictment
4                                              :   No. 2415N/08
              -against-                        :
5                                              :
     HAROLD GOPAUL,                            :   SEX ABUSE 1
6                                              :
                         Defendant.            :   Trial
7    -------------------------------------------X

8                                 May 15, 2009

9                                 252 Old Country Road
                                  Mineola, New York
10

11   B E F O R E:

12              HONORABLE JAMES P. McCORMACK,
                          Acting Supreme Court Justice
13

14   A P P E A R A N C E S:

15              (As previously noted.)

16         *       *       *       *       *

17              THE CLERK:  Case on trial of the the People

18       of the State of New York against Harold Gopaul,

19       Indictment 2415N of 2008.

20              Are the People ready?

21              MS. JOHNSON:  Ready, Judge.

22              THE CLERK:  Defense counsel ready?

23              MR. SCHECHTER:  Ready.

24              THE COURT:  Counsel, at the close of business

25       yesterday we received a further note from the jury

                                                         ws

Proceedings                    900

1    which I've now shared with both of you.  It's been

2    marked Court Exhibit 9 signed yesterday afternoon at

3    4:22 p.m. by our foreperson.  It reads as follows:

4              "Number 1.  On the verdict sheet why are the

5    date ranges identical for multiple counts of the same

6    charge?  Example Counts 1 and 3," with a question mark.

7              "Number 2.  Any part of Detective Moran's

8    testimony that dealt with the notes that he took during

9    or after he interviewed Sana.

10             "Number 3.  At least one juror's concerned

11   about how to evaluate," what appears to the Court to

12   be, "14 times two, 28 counts, without being able to

13   consult written material so that we are able to remain

14   clear on which testimony relates to which dates.

15   That's a lot to commit to memory."

16             MR. SCHECHTER:  You have to rely on the

17   testimony.

18             THE COURT:  In my view, Counts 1 and 3 --

19   pardon me, Questions 1 and 3 in the note are somewhat

20   interrelated.

21             And what I was going to say to the jury

22   initially, as it is on the verdict sheet, there are the

23   dates of incident or periods of time, if you will, that

24   were alleged in this indictment.  There's several

25   either dates of incident or periods of time and that

Proceedings                901

1    with respect to the charges in the indictment that

2    allege sex abuse in the first degree.  For each or for

3    every date of incident there's an allegation the

4    defendant, by forcible compulsion, touched the breasts

5    of the complainant and that the defendant, by forcible

6    compulsion, touched the vagina of the complainant by

7    forcible compulsion.

8              And that with respect to the lesser included

9    offenses, again, for each count that charged sex abuse

10   in the first degree there is a lesser included offense

11   of sex abuse in the third degree under the theory that

12   the defendant touched either the breast or the vagina

13   of the complainant without that person's consent when

14   it results from any circumstance in which a person does

15   not expressly or impliedly acquiesce to his conduct.

16   I'm reading from the definition with respect to that.

17             So I was going to explain that to them that

18   for each count there's two separate acts that are

19   alleged with respect to, if you will, either the breast

20   or the vagina and when you have the lesser included

21   offenses it now becomes four counts and therefore

22   that's why we have 28 counts as opposed to 14.

23             Is there any dispute about my understanding

24   of the indictment as far as that's concerned?

25             MR. SCHECHTER:  No.

ws

Proceedings                    902

1                MS. JOHNSON:  No.

2                THE COURT:  The second issue is I've drawn a

3       new verdict sheet that I would substitute with the one

4       that they've previously been given.  It's essentially

5       the same verdict sheet as they previously had and the

6       only difference is that I've added in brackets with

7       respect to each count what particular body part, if you

8       will, it applies to, breast and vagina, and I've given

9       a copy to both counsel and it was my intention that in

10      an effort to alleviate any confusion, to just to submit

11      this and take back the other verdict sheet.

12                Does anybody have any objection to that?

13                MS. JOHNSON:  We consent to that.

14                THE COURT:  Mr. Schechter, any objection to

15      that?

16                MR. SCHECHTER:  To the amended charge sheet?

17                THE COURT:  To the new verdict sheet.

18                MR. SCHECHTER:  No.

19                THE COURT:  All right, so that at this point

20      we'll -- I'll mark that verdict sheet, if we haven't

21      done so already, a Court exhibit.  I'll give that to

22      the jury when they come upstairs.

23                As for Detective Moran's testimony, I think

24      that's pretty self-explanatory.

25                MR. SCHECHTER:  That would be cross and --

                                                        ws

1          THE COURT:  Absolutely.  They want testimony

2      that dealt with the notes he took during or after the

3      interview of Sana Awan.

4          (Recess in the proceedings.)

5          THE COURT:  We've received a further note

6      from the jury.  I'll allow both of you to see it once

7      we deal with -- but I'm going to read it into the

8      record at this point.

9              "We, the jury, would like to hear the portion

10     of Shulman's testimony where he claimed not to have

11     discussed with Mr. Gopaul any part of the detective's

12     conversation with Sana prior to having Mr. Gopaul write

13     his statement."

14              We could take care of that now.

15              "We would also like to hear all parts of

16     Sana's testimony where she is describing interaction

17     with Mr. Gopaul.

18              "Finally, we would like to hear the

19     definition of forcible compulsion repeated three times

20     in a row."

21              What I'm going -- what I propose to do, since

22     we have the jury outside ready to come in, Wendy has

23     the first part of this note.  She can respond to it

24     regarding Shulman's testimony.  We can do that now.

25              The second part of it, obviously she's going

Proceedings                      904

1    to have to -- which, to me, it seems to me that you

2    might as well just have her direct and

3    cross-examination read back because I think to be able

4    to parse out, you know, her interaction with Mr. Gopaul

5    is going to take more time to do that than to just read

6    her direct and cross, redirect, recross, whatever the

7    case may be.

8              "Finally, we would like to hear the

9    definition of forcible compulsion three times in a

10   row."

11             I'm going to do that so I'm going to cover

12   two-thirds of this and Moran and then you'll get Sana's

13   testimony.

14             Anybody have any objection to what I'm

15   suggesting?

16             (Jury enters.)

17             THE COURT:  All right, members of the jury,

18   we received one note from you yesterday late as you

19   left for the day and that's been marked Court Exhibit

20   Number 9.  It's contents have been shared with counsel

21   and I want to address that first.

22             "Number 1.  On the verdict sheet why are the

23   date ranges identical for multiple counts of the same

24   charges,"  in brackets, "for example, Counts 1 and 3?"

25             "Number 2.  Any part of Detective Moran's

                                            ws

1    testimony that dealt with the notes that he took during

2    or after he interviewed Sana.

3              And, "Number 3.  At least one juror is

4    concerned about how to evaluate," and it appears to me

5    to say, "14 times two, 28 counts, without being able to

6    consult written material so that we are able to remain

7    clear on which testimony relates to which dates.  That

8    is a lot to commit to memory."

9              All right, the question or I should say your

10   request with respect to one and three are somewhat

11   interrelated, so what I'm going to do is address them

12   to you now and then we're going to get to Detective

13   Moran's testimony.

14             If you noticed in your verdict sheet, and I'm

15   going to replace that verdict sheet with the consent of

16   both counsel with another verdict sheet when you go

17   back downstairs, you'll see that there is, in addition

18   to the verdict sheet, in order to try to alleviate

19   whatever confusion there may be, if you look at the

20   verdict sheet there are seven separate either dates of

21   incidents or periods of time that are alleged in that

22   indictment, okay?

23             In the indictment with regard to the charges

24   of sexual abuse in the first degree, for each incident

25   there's an allegation with regard to sex abuse in the

ws

1    first degree with regard to -- an allegation that the

2    defendant, by forcible compulsion, or the defendant

3    touched the breast by use of forcible compulsion and

4    the defendant touched the vagina by forcible

5    compulsion.

6            So for each one of those dates there are two

7    different allegations with respect to the intimate

8    parts of the body, breasts, vagina.

9            Now, that's one theory that -- that was the

10   charges that are contained in the indictment.

11           So that's why, therefore, there's 14 counts

12   on the initial indictment.

13           In each instance, although it's separate

14   dates or separate periods of time, the allegation is

15   the same with respect to the body part, either breast,

16   vagina.

17           With the inclusion of the sex abuse in the

18   third degree, it's the same allegation with respect to

19   the body part, however, the distinction is that the sex

20   abuse in the third degree is when he or she subjects

21   another person to sexual contact without that person's

22   consent.

23           In sex abuse in the third degree without that

24   person's consent reads, "when it results from any

25   circumstances in which a person does not expressly or

                                                      ws

Proceedings                    907

1        impliedly acquiesce in the actor's conduct."

2                So that's the distinction.

3                So therefore, for each date there's two

4        separate charges of sex abuse in the first degree and

5        then you have two separate charges for each of those

6        dates of sex abuse in the third degree.

7                Therefore, that's why we have 28 counts,

8        seven times four is 28 still?

9                Okay, so I hope that adds or alleviates

10       somewhat of a concern.

11               What we -- what I did, just to -- we're going

12       to take back the verdict sheet that we gave you

13       initially.  We're going to substitute it with a new

14       verdict sheet and on the new verdict sheet the only

15       thing that changes is we've added the words breast or

16       vagina and that's throughout the -- all of the 28

17       counts.

18               Okay, and, again, you'll notice that we have

19       the dates that reference throughout the course of the

20       verdict sheet.

21               Again, there's only separate -- seven, I

22       should say, either dates or periods of time.

23               So I hope I've answered your concern about

24       why we have all of these counts.  In essence, for each

25       date or period of time there's like four counts, so

                                                        ws

Proceedings                    908

1        therefore the 28 counts, all right?

2                    And, again, please keep in mind my

3        instruction to you as to how to consider the counts as

4        I've indicated to you here on the verdict sheet.

5                    What we're going to do at this point is we're

6        going to get into Detective Moran's testimony that

7        dealt with the notes that he took either during or

8        after he interviewed Sana and then we're going to

9        also -- we have -- in anticipation of your note, the

10       other note this morning, which I'm going to get into

11       after we get done with Detective Moran's testimony, we

12       do have Detective Schulman's testimony with regard to

13       whether or not he -- whether he claimed not to have

14       discussed with Mr. Gopaul any part of the detective's

15       conversation with Sana prior to having Mr. Gopaul write

16       his statement.  We have that ready at this point as

17       well.

18                   So why don't we at this point, Wendy, deal

19       with Detective Moran's testimony and then Detective

20       Shulman?

21                   (Record read.)

22                   THE COURT:  All right, then this morning,

23       members of the jury, we received your further note.  It

24       was marked today's date at 10:30.  It reads as follows,

25       I've gone over it with both counsel:

                                                              ws

Proceedings                    909

1           "We, the jury, would like to hear the portion

2     of Detective Shulman's testimony where he claimed not

3     to have discussed with Mr. Gopaul any part of the

4     detective's conversation with Sana prior to having

5     Mr. Gopaul write his statement."

6           We just obviously covered that.

7           It continues, "We would also like to hear all

8     parts of Sana's testimony where she is describing

9     interaction with Mr. Gopaul."

10          And then, finally, "We would like to hear the

11    definition of forcible compulsion repeated three times

12    in a row."

13          At this point, with respect to the, if you

14    will, the second half of your note, "We would like to

15    hear all parts of Sana's testimony where she's

16    describing interaction with Mr. Gopaul," I think it

17    would be rather difficult for my reporter to kind of

18    parse out, you know, all of those -- all of that

19    testimony, so in an effort to be complete and to give

20    you everything we've agreed - when I say we, me, myself

21    and counsel, have agreed - to just read -- have the

22    testimony given back to you completely in light of your

23    note here because I really -- I think that it would

24    really be difficult to extract all of that and possibly

25    lose something that you may think is important.

Proceedings                        910

1         So we're going to do that now and then I will
2    conclude by reading to you the definition of forcible
3    compulsion as you've requested.
4              (Record read.)
5              THE COURT:  Okay, how is everybody doing?
6              Does anybody need a break?
7              THE JUROR:  I do.
8              THE COURT:  We're going to take a very quick
9    break.
10             Please, while you're outside, please do not
11   discuss the case until you come back in.  Obviously you
12   haven't heard the entire testimony until you come back.
13             Okay, if you could just step out we'll have
14   you back in about 5 five minutes.
15             (Jury exits.)
16             (Recess in the proceedings.)
17             THE COURT:  All right, members of the jury,
18   we're going to continue with the read back of Sana
19   Awan's testimony.
20             If you would?
21             (Record read.)
22             MR. SCHECHTER:  Your Honor, I don't mean to
23   interrupt, but could I approach?
24             (Discussion held at the bench, off the
25   record.)

                                                    ws

Proceedings                    911

1           (Record read.)

2           THE COURT:  All right, before I let you go,

3     and hopefully your lunch is downstairs, I'll take care

4     of the last part of the note.

5           "Finally, we would like to hear the

6     definition of forcible compulsion repeated three times

7     in a row," which I'll now do.

8           Forcible compulsion means to intentionally

9     compel either, one, by the use of physical force, or,

10    two, by a threat expressed or implied which places a

11    person in fear of immediate death or physical injury to

12    himself or herself.

13          Again, forcible compulsion means to

14    intentionally compel either by, one, the use of

15    physical force, or, two, by a threat expressed or

16    implied which places a person in fear of immediate

17    death or physical injury to himself or herself.

18          And, for the final time, final -- forcible

19    compulsion means to intentionally compel either by the

20    use of physical force -- number one, by the use of

21    physical force, or, two, by a threat expressed or

22    implied which places a person in fear of immediate

23    death or physical injury to himself or herself.

24          With that, I will let you continue your

25    deliberations.  You can continue to deliberate through

ws

Proceedings                      912

1      lunch and hopefully your lunch is awaiting.

2                  (Jury exits.)

3                  (The luncheon recess was taken at this time.)

4                  THE COURT:  All right, counsel, we've

5      received a note from our foreperson, Mr. Ross, that

6      states as follows:

7                  "We have reached a verdict.  It's dated

8      today's date and 1:40 this afternoon.  It will be

9      marked as a Court exhibit.

10                 THE COURT:  Okay, we're all set.

11                 (Jury enters.)

12                 THE CLERK:  Case on trial, the People of the

13     State of New York against Harold Gopaul,

14     Indictment 2415N of 2008.

15                 Do both counsel stipulate all the jurors are

16     present and properly seated?

17                 MS. JOHNSON:  Yes.

18                 MR. SCHECHTER:  So stipulated.

19                 THE COURT:  All right, members of the jury,

20     we received your note indicating that you have reached

21     a verdict.

22                 At this time my clerk will take the verdict.

23                 THE CLERK:  Will the foreperson please rise?

24                 Has the jury reached a verdict?

25                 THE FOREPERSON:  Yes.

ws

Proceedings                     913

1              THE CLERK:  Will the defendant please rise?

2              In the case of the People against Harold

3    Gopaul, Indictment 2415N of 2008, what is your verdict

4    as to count one, sexual abuse in the first degree,

5    guilty or not guilty?

6              THE FOREPERSON:  Guilty.

7              THE CLERK:  What is your verdict as to

8    Count 3, sexual abuse in the third degree, guilty or

9    not guilty?

10             MR. SCHECHTER:  Guilty.

11             MS. JOHNSON:  Wait.

12             THE COURT:  I think count three is sex abuse

13   in the first degree.

14             THE CLERK:  I'm sorry, Judge.

15             What is your verdict as to Count 3, sexual

16   abuse in the first degree, guilty or not guilty?

17             THE FOREPERSON:  Guilty.

18             THE CLERK:  What is your verdict as to

19   Count 5, sexual abuse in the first degree, guilty or

20   not guilty?

21             THE FOREPERSON:  Guilty.

22             THE CLERK:  What is your verdict as to

23   Count 7, sexual abuse in the first degree?

24             THE FOREPERSON:  Guilty.

25             THE CLERK:  What is your verdict as to

ws

Proceedings                914

1              Count 9, sexual abuse in the first degree?

2                      THE FOREPERSON:  Guilty.

3                      THE CLERK:  What is your verdict as to

4              Count 11, sexual abuse in the first degree?

5                      THE FOREPERSON:  Guilty.

6                      THE CLERK:  What is your verdict as to

7              Count 13, sexual abuse in the first degree?

8                      THE FOREPERSON:  Guilty.

9                      THE CLERK:  What is your verdict as to

10             Count 15, sexual abuse in the first degree?

11                     THE FOREPERSON:  Guilty.

12                     THE CLERK:  What is your verdict as to

13             Count 17, sexual abuse in the first degree?

14                     THE FOREPERSON:  Guilty.

15                     THE CLERK:  What is your verdict as to

16             count 19, sexual abuse in the first degree?

17                     THE FOREPERSON:  Guilty.

18                     THE CLERK:  What is your verdict as to

19             Count 21, sexual abuse in the first degree?

20                     THE FOREPERSON:  Guilty.

21                     THE CLERK:  What is your verdict as to

22             Count 23, sexual abuse in the first degree?

23                     THE FOREPERSON:  Guilty.

24                     THE CLERK:  What is your verdict as to

25             Count 25, sexual abuse in the first degree?

ws

Proceedings                    915

1              THE FOREPERSON:  Guilty.

2              THE CLERK:  What is your verdict as to

3    Count 27, sexual abuse in the first degree?

4              THE FOREPERSON:  Guilty.

5              THE CLERK:  Please be seated.

6              Members of the jury, listen to your verdict

7    as it stands recorded by the Court.

8              You say you find the defendant, Harold

9    Gopaul, guilty of Count 1, sexual abuse in the first

10   degree, guilty of Count 3, sexual abuse in the first

11   degree, guilty of Count 5, sexual abuse in the first

12   degree, guilty of Count 7, sexual abuse in the first

13   degree, guilty of Count 9, sexual abuse in the first

14   degree, guilty of Count 11, sexual abuse in the first

15   degree, guilty of Count 13, sexual abuse in the first

16   degree, guilty of Count 15, sexual abuse in the first

17   degree, guilty of Count 17, sexual abuse in the first

18   degree, guilty of Count 19, sexual abuse in the first

19   degree, guilty of Count 21, sexual abuse in the first

20   degree, guilty of Count 23, sexual abuse in the first

21   degree, guilty of Count 25, sexual abuse in the first

22   degree and guilty of Count 27, sexual abuse in the

23   first degree.

24              Is that your verdict, so say you all?

25              (Jury responds collectively in the

ws

Proceedings                        916

1       affirmative.)

2                   THE COURT:  Does anybody -- Mr. Schechter, do

3       you wish to have the jury polled?

4                   MR. SCHECHTER:  Yes, Judge.

5                   THE CLERK:  Members of the jury, listen to

6       your verdict as it stands recorded by the Court.

7                   You say you find the defendant Harold Gopaul

8       guilty of Count 1, sexual abuse in the first degree,

9       guilty of Count 3, sexual abuse in the first degree,

10      guilty of Count 5, sexual abuse in the first degree,

11      guilty of Count 7, sexual abuse in the first degree,

12      guilty of Count 9, sexual abuse in the first degree,

13      guilty of Count 11, sexual abuse in the first degree,

14      guilty of Count 13, sexual abuse in the first degree,

15      guilty of Count 15, sexual abuse in the first degree,

16      guilty of Count 17, sexual abuse in the first degree,

17      guilty of Count 19, sexual abuse in the first degree,

18      guilty of Count 21, sexual abuse in the first degree,

19      guilty of Count 23, sexual abuse in the first degree,

20      guilty of Count 25, sexual abuse in the first degree

21      and guilty of Count 27, sexual abuse in the first

22      degree.

23                  Is that your verdict, Juror Number 1?

24                  THE JUROR:  Yes.

25                  THE CLERK:  Is that your verdict,

                                                        ws

Proceedings                    917

1          Juror Number 2?

2                    THE JUROR:  Yes.

3                    THE CLERK:  Is that your verdict,

4          Juror Number 3?

5                    THE JUROR:  Yes.

6                    THE CLERK:  Is that your verdict,

7          Juror Number 4?

8                    THE JUROR:  Yes.

9                    THE CLERK:  Is that your verdict,

10         Juror Number 5?

11                   THE JUROR:  Yes.

12                   THE CLERK:  Is that your verdict,

13         Juror Number 6?

14                   THE JUROR:  Yes.

15                   THE CLERK:  Is that your verdict,

16         Juror Number 7?

17                   THE JUROR:  Yes.

18                   THE CLERK:  Is that your verdict,

19         Juror Number 8?

20                   THE JUROR:  Yes.

21                   THE CLERK:  Is that your verdict,

22         Juror Number 9?

23                   THE JUROR:  Yes.

24                   THE CLERK:  Is that your verdict,

25         Juror Number 10?

ws

Proceedings                        918

1                    THE JUROR:  Yes.

2                    THE CLERK:  Is that your verdict,

3        Juror Number 11?

4                    THE JUROR:  Yes.

5                    THE CLERK:  Is that your verdict,

6        Juror Number 12?

7                    THE JUROR:  Yes.

8                    THE CLERK:  Your Honor, the verdict is

9        unanimous.

10                    THE COURT:  All right, members of the jury, I

11       first and foremost want to thank you on behalf of the

12       entire Nassau County court system for being willing to

13       be a juror.  There is no, in my view, higher civic duty

14       that a citizen can perform than serving on a trial jury

15       and I certainly know and I can appreciate that it's not

16       easy to pass judgment on another individual, but I want

17       to thank you for your diligence, for your service, for

18       the attention that you've paid throughout the course of

19       the trial and for your timeliness in being here each

20       and every day and for your patience in taking time away

21       from your normal day-to-day duties, your jobs, your

22       family.

23                    I want to thank you, again, on behalf of the

24       entire Nassau County Court system.

25                    I'm going to excuse you at this time.  I

                                                            ws

Proceedings                          919

1       would like to thank you more personally in my chambers

2       in a moment.

3                  A couple of things to bear in mind.

4                  One, you're excused from this jury term.  You

5       do not have to be a juror or in jury service for the

6       next four years, I believe, unless that should

7       change -- six?  It's changed since the last time.

8                  The other issue is this.  You are free to

9       speak to whomever you wish to.  You are under no

10      obligation to speak to anybody.  Occasionally,

11      attorneys in cases sometimes, if they want, may ask

12      jurors certain questions about the case, but, again,

13      you're free to speak to them, you don't have to speak

14      to them.  You're under no obligation.

15                 So with that, I would like you to just follow

16      Mike, my sergeant, back in chambers, and I'll be back

17      in a moment.

18                 (Jury exits.)

19                 THE COURT:  All right, Mr. Schechter, is

20      there any motions at this time or do you want to

21      reserve them for the time of sentence?

22                 MR. SCHECHTER:  No, your Honor, I think I can

23      make those motions now.

24                 I would ask for a verdict of acquittal,

25      notwithstanding the judgment of the jury, the verdict

                                                        ws

Proceedings                    920

1     of the jury, on the grounds that the People have failed

2     to prove, as a matter of law, guilt beyond a reasonable

3     doubt.

4                 I further ask that a mistrial be granted once

5     again because I believe that the Court, in permitting

6     the District Attorney to bring in proof of things that

7     happened in Queens County, both by way of testimony

8     from the complainant and not minimizing the video to

9     exclude those particular items has inexorably

10    prejudiced my client and therefore I respectfully ask

11    that either a directed verdict of not guilty be imposed

12    or that the Court grant a mistrial.

13                THE COURT:  All right, Ms. Johnson, I take it

14    you oppose that application?

15                MS. JOHNSON:  In all respects, Judge.

16                THE COURT:  All right, at this time that

17    application will be denied.

18                MR. SCHECHTER:  Thank you, Judge.

19    Respectfully except.

20                THE COURT:  Does either side wish to be heard

21    on the question of bail?

22                MS. JOHNSON:  Your Honor, we would ask that

23    the defendant be remanded.

24                THE COURT:  All right, Mr. Schechter.

25                MR. SCHECHTER:  If the Court pleases, my

ws

Proceedings                    921

1       client has been out on bail.  His total bail here and

2       in Queens is $600,000.  He has been out on bail.  The

3       bail represents his family's home and is partly his

4       sister's home and his passport has been surrendered as

5       a condition of that bail, so defendant is not a flight

6       risk, there's nowhere for him to go.

7              His family is here.  His family, outside of

8       his wife and children, are here.  There is no basis at

9       all to remand the defendant.  He will be here for

10      sentence.

11             Additionally, he will have to make

12      provisions, if he can, whatever way, for the support of

13      his family and to make sure that the children -- the

14      other children are taken care of as well as his wife,

15      who is unemployed.

16             So for those reasons I respectfully ask that

17      the Court maintain the current bail until sentence at

18      which time the Court is, of course, free to sentence

19      him to whatever the Court believes is proper.

20             THE COURT:  All right, at this time, in light

21      of the jury's verdict, having been found guilty on 14

22      counts of a Class D Felony, the defendant's bail will

23      be revoked and he will be --

24             MR. SCHECHTER:  Rather than revoked, your

25      Honor, will that bail be exonerated?

                                                        ws

Proceedings                              922

1                THE COURT:  It's exonerated.  He's remanded

2      pending sentence.

3                The date, Mr. Schechter?

4                MR. SCHECHTER:  June 19th.

5                THE COURT:  6/19 for sentence.  PSR will be

6      ordered.

7                           *    *    *    *

8                     It is hereby certified that the
                      foregoing is a true and accurate
9                     transcript of the proceedings.

10

            WENDY SILAS
11          OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        ws

923

I N D E X

|  | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| People's Witnesses: | | | | |
| 1. Christine Alioto | 332 | 344 | | |
| 2. Denise Alioto | 353 | 358 | 364 | |
| 3. Brian Hughes | 368 | 389 | 396 | 400 |
| 4. Sana Awan | 401/447 | 496 | 515 | |
| 5. P.O. Celica Alfaro | 578 | 584 | | |
| 6. Det. Leonard Shulman | 620 | 681 | | |
| 7. Det. Edmond Moran | 733 | 749 | | |

E X H I B I T S

|  | FOR IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| People's Exhibits: | | |
| 1. Video | 373 | 376 |
| 2. Miranda | 386 | 387 |
| 3. Photo | 451 | 452 |
| 4. Vibrator | 453 | 456 |
| 5. Knife | 458 | 460 |
| 6. Miranda | 633 | 635 |
| 7. Consent (vehicle) | 640 | 642 |
| 8. Consent (home) | 641 | 648 |
| 9. Defendant's statement | 653 | 655 |
| 10. Defendant's statement | 656 | |
| 11. Defendant's statement | 664 | 666 |
| 12. Defendant's statement | 667 | |
| 13. Defendant's statement | 671 | 673 |
| 14. Defendant's statement | 673 | |
| 15. 2-page statement | 741 | |
| Defendant's Exhibits: | | |
| A. Photo | 395 | |
| B. Photo | 395 | |
| C. Photo | 395 | |
| D. Photo | 395 | |

ws

924

1                        I N D E X

2
                                    FOR IDENTIFICATION        IN EVIDENCE
3
       Defendant's Exhibits:
4
        E.  Photo                        399
5       F.  Transcript                   504                    505
        G.  Poem                         509                    515
6       H.  Photocopy                    516
        I.  Photocopy                    517
7       J.  Statement                    518
        K.  Photocopy                    519
8       L.  Photocopy                    520
        M.  Photocopy                    521
9       N.  Photos                       553
        O.  Photo                        553
10      P.  Photo                        553
        Q.  Photo                        553
11      R.  Statement                    565
        S.  Omniform                     593
12      T.  Memo                         684                    689
        U.  Complaint follow-up          696
13      V.  Photo                        701                    704
        W.  Photo                        701                    704
14      X.  Photo                        701                    704
        Y.  Photo                        701                    704
15      Z.  Photo                        758
       AA.  Photo                        758
16     BB.  Photo                        758
       CC.  Photo                        758
17

18

19

20

21

22

23

24

25

                                                              ws